# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X:
                                    :

SIMO HOLDINGS INC.,             :

                                :

Plaintiff,                  :   No. 1:18-cv-05427 (JSR)

                                :

-against-                 :

                                :

HONG KONG UCLOUDLINK NETWORK  :
TECHNOLOGY LIMITED and       :
UCLOUDLINK (AMERICA), LTD.,    :

                                :

Defendants.               X

--------------------------------------------------------

## SUPPLEMENTAL EXPERT REPORT OF MARTIN J. FEUERSTEIN REGARDING U.S. PATENT NO. 9,736,689

Executed on February 24, 2019

Martin J. Feuerstein

TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................. 1

II.   RELEVANT LAW AND LEGAL STANDARDS................................................. 1

   A.   Date of Invention ........................................................................................ 1

   B.   Prior Art ...................................................................................................... 3

   C.   Objective Indicia of Non-Obviousness ...................................................... 4

   D.   Standard of Proof ........................................................................................ 4

III.   THE '689 PATENT IS NOT ENTITLED TO AN EARLIER FILING DATE .......... 5

IV.   THE PROVISIONAL APPLICATION OF *PATARKAZISHVILI* SUPPORTS HIS
NON-PROVISIONAL APPLICATION PUBLICATION ......................................... 7

   A.   The Provisional Application Properly Supports the Subject Matter Relied Upon to
Meet the Claim Elements ............................................................................ 7

      1.   Claim 8............................................................................................. 7

      2.   Claim 11 - "relaying verification information to the remote administration
system, wherein the verification information identifies the wireless communication
client or extension unit as being associated with a user account of the remote
administration system" ........................................................................... 13

      3.   Claim 12 - "the wireless communication client or the extension unit comprises a
foreign wireless communication device not subscribed to the local network".............. 13

      4.   Claim 13 - "requesting access to a desired local wireless service by sending a
request to the local cellular communication network over a signal link" .................... 14

      5.   Claim 14 - "wherein the local authentication information request for
authentication information further comprises at least one of a unique subscriber
identifier, a wireless communication client identifier, a password, and a current
location of the foreign wireless communication client or the extension unit."............. 14

   B.   The Provisional Application Provides Written Description Support for at Least
One of the Claims of *Patarkazishvili* ........................................................ 15

V.   SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS................................. 18

I.   **INTRODUCTION**

1.      My name is Martin J. Feuerstein. I have been retained as a technical expert by

Morgan, Lewis & Bockius LLP on behalf of Defendants Hong Kong uCloudlink Network

Technology Limited and UCloudlink (America), Ltd. (collectively, "uCloudlink") to provide

certain opinions regarding claims 8 and 11-14 of U.S. Patent No. 9,736,689 ("the '689 patent") (the

"Asserted Claims").  I prepared an invalidity report on January 14, 2019 ("Invalidity Report"), which

I incorporate by reference along with its exhibits.  I also prepared a report in rebuttal to initial expert

report of Paul Clark and expert report of Eric Welch regarding the '689 patent ("Non-Infringement

Report"), which I incorporate by reference along with its exhibits.

2.      I have reviewed the Rebuttal Report of Dr. Paul C. Clark dated February 14, 2019 in

response to my Invalidity Report ("Clark's Rebuttal Report").  In Clark's Rebuttal Report, he raises a

number of issues not previously raised before.  I was requested to consider the newly raised issues

and provide my opinions.

3.      I reserve the right to modify or further supplement my opinions, as well as the

basis for my opinions, based on the nature and content of the documentation, data, proof and

other evidence or testimony that the Court, the Plaintiff or its experts may present or based on

any additional discovery or other information provided to me or found by me in this matter.

4.      I am being compensated for my time at the rate of $600 per hour. This

compensation is not contingent upon my performance, the outcome of this matter, or any issues

involved in or related to this matter.

II.   **RELEVANT LAW AND LEGAL STANDARDS**

A.   **Date of Invention**

5.      The '689 Patent was issued from Application Serial No. 13/372,345 ("the '345

application") filed on February 13, 2012 as continuation of Application Serial No. 12/039,646

("the '646 application"), filed on February 28, 2008.  In my Invalidity Report, I was told to assume that February 28, 2008 is the earliest purported priority date for the asserted claims.  I understand that it is presumed that the invention date is the filing date of the asserted patent, or the asserted patent's parent, until an earlier date is proved.

6.      In Clark's Rebuttal Report, he alleged that the '689 was conceived before the earliest filing date.  I understand that in order to prove an earlier filing date, SIMO must prove earlier conception and reasonable diligence in reducing to practice.  Reasonable diligence must be shown throughout the entire critical period, which begins just prior to the competing reference's effective date and ends on the date of the invention's reduction to practice.

7.      I understand that to have conceived of an invention, an inventor must have formed in his or her mind a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.  In other words, the idea must be so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.  In addition, I understand that when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that testimony.  In particular, the "definite and permanent" idea required for conception must be supported by corroborating evidence.

8.      I understand that in order to establish an actual reduction to practice, the prior inventor must have constructed an embodiment that met every element of the claimed invention and the embodiment operated for its intended purpose.  I further understand that filing of a patent application is considered a constructive reduction to practice.

**B.      Prior Art**

9.      For U.S. patents and U.S. application publications that claim priority to a

provisional application, I understand that under pre-AIA 35 U.S.C. § 102(e), the critical

reference date of the U.S. patent or U.S. application publication is the filing date of the

provisional application with certain exceptions if the provisional application properly supports

the subject matter relied upon to meet the claim elements in compliance with pre-AIA 35 U.S.C.

§ 112, first paragraph (i.e., written description and enablement).  In addition, I understand that

the reference date under pre-AIA 35 U.S.C. § 102(e) of a U.S. patent may be the filing date of a

relied upon provisional application only if at least one of the claims in the patent is supported by

the written description of the provisional application in compliance with pre-AIA 35 U.S.C. §

112, first paragraph.

10.     I understand that in order to satisfy the written description requirement, the

specification of the provisional application must describe the claimed invention in sufficient

detail to convey to one skilled in the art that the inventor had possession of the claimed invention

at the time the inventor filed the patent application.  I understand that the specification does not

have to include a word-for-word description of the claimed subject matter as long as the

disclosure conveys with reasonable clarity to those skilled in the art that the inventor was in

possession of the invention.  Even if a specification does not expressly describe the claimed

subject matter, the subject matter may be inherent in the disclosure.  However, in order for a

disclosure to be inherent, the missing descriptive matter must necessarily be present in the

application's specification such that one skilled in the art would recognize such a disclosure.

11.     I understand that a patent claim is enabled if it provides sufficient teachings so

that a PHOSITA can make or use a claimed invention without undue experimentation.

Enablement is assessed as of the application date in question.  In deciding whether undue experimentation would have been needed for a PHOSITA to make or use a claimed invention, several factors may be considered.  Examples include the quantity of experimentation necessary, the amount of direction or guidance presented, the presence or absence of working examples, the nature of the invention, the state of the prior art, the relative skill of those in the art, the predictability or unpredictability of the art, and the breadth of the claims.

### C.    Objective Indicia of Non-Obviousness

12.    I understand that secondary considerations, such as long felt need, unexpected results, copying, and commercial success, if present, must be considered in determining obviousness.

13.    I understand that these secondary considerations are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention—in other words, if there is proof that the sales were a direct result of the features of the claimed invention that were not disclosed in the prior art. If the commercial success is the result of something else, such as other economic and commercial factors unrelated to the claimed features, then the commercial success does not indicate non-obviousness.

### D.    Standard of Proof

14.    I understand that the standard to prove invalidity in a district court proceeding is by clear and convincing evidence. I understand that this standard is satisfied if that to be proved is highly probable or reasonably certain. This standard has been described to me as a higher

standard than a preponderance of the evidence standard, but lower than beyond a reasonable doubt standard.

15.     I understand that while uCloudlink bears the burden of persuasion to show invalidity by clear and convincing evidence, SIMO nevertheless must meet its burden of production to demonstrate an earlier conception date.

## III.     THE '689 PATENT IS NOT ENTITLED TO AN EARLIER FILING DATE

16.     I have reviewed the technical documentation cited by Dr. Clark, including the deposition testimony of Richard Xu, one of the named inventors of the '689 patent.  In my opinion, the materials Dr. Clark relies on fail to show that all elements of the Asserted Claims were conceived by the inventors prior to the earliest filing date for at least the same reasons explained in my Non-Infringement Report as to why Skyroam's 3GMate Plus and Solis products do not practice the '689 patent, including my related opinions as to why the Asserted Products do not infringe the Asserted Claims.

17.     As an initial matter, the materials Dr. Clark relied upon are vague and do not provide much detail about how the alleged invention is supposed to operate.  Dr. Clark's description of what is disclosed in these documents appear to be hindsight reconstruction based on several unrelated MINO marketing materials in an attempt to match the '689 patent claims to the materials.  For example, the MINO marketing materials failed to disclose the "non-local calls database;" what Dr. Clark identifies as the "local authentication request" was a request (including user ID, password, and credit card information) for user verification, not a request (including RAND) for authentication of a virtual SIM, and it did not involve or come from the local cellular network, but rather the MINO client or advertisement server; the MINO marketing materials failed to disclose "establishing a local authentication information request in response to

5

a local authentication request by a local cellular communication network," and failed to disclose "the local authentication information request comprises information regarding the local authentication request for local authentication information received by the foreign wireless communication client or the extension unit from the local cellular communication network;" what Dr. Clark identifies as "the data communication link" is using a local cellular communication network; the MINO marketing materials failed to disclose "relaying the local authentication information request to the remote administration system via the data communication link and obtaining suitable local authentication information from the remote administration system via the data communication link" at least because what Dr. Clark identifies as "the remote administration system" is an advertisement server and what Dr. Clark identifies as "the local authentication information request" was a request (including user ID, password, and credit card information) for user verification, not a request (including RAND) for authentication of a virtual SIM; the MINO marketing materials also failed to disclose "sending the local authentication information obtained from the remote administration system to the local cellular communication network over signal link;" furthermore, the MINO marketing materials also failed to disclose "providing a communication service to the wireless communication client or the extension unit according to the established local wireless services" because what Dr. Clark identifies as "a communication service" is provided by a local cellular network, not by a MINO phone, and the materials provide no support for this recited limitation.  In addition, I note that the main document he relies on, Exhibit 112, he states has a "last modified date" in November 2007, which is after the date he alleges the alleged invention was fully conceived.

18.     Moreover, Dr. Clark has not provided any evidence that the alleged invention was reduced to practice prior to filing of the '689 patent.  Accordingly, the earliest reduction to

practice date may only be the filing date of the earliest application for the '689 patent, namely February 28, 2008. Dr. Clark has failed to show that there was any diligence at any time after the alleged conception date until February 28, 2008.

**IV.    THE PROVISIONAL APPLICATION OF *PATARKAZISHVILI* SUPPORTS HIS NON-PROVISIONAL APPLICATION PUBLICATION**

**A.    The Provisional Application Properly Supports the Subject Matter Relied Upon to Meet the Claim Elements**

19.    As explained Invalidity Report, it is in my opinion that *Patarkazishvili* discloses each and every element of claims 8 and 11-13, either expressly or inherently, and thus anticipates these claims. Or alternatively, to the extent of the preamble of independent claim 8 is limiting, *Patarkazishvili* in view of *Walton* discloses, suggests, or teaches all elements of claims 8 and 11-13, and thus renders these claims obvious. The provisional priority application of *Patarkazishvili* (Exhibit 110 to Clark's Rebuttal Report) ("Provisional Application") supports the subject matter I identified in my Invalidity Report as disclosing each and every element of claims 8 and 11-13.

**1.    Claim 8**

**a.    "A wireless communication client or extension unit comprising a plurality of memory, processors, programs, communication circuitry, authentication data stored on a subscribed identify module (SIM) card and/or in memory and non-local calls database, at least one of the plurality of programs stored in the memory comprises instructions executable by at least one of the plurality of processors for"**

20.    For example, in my Invalidity Report, I noted that *Patarkazishvili* discloses a "computerized communications terminal which communicates over the radio frequency (RF) interface of the cellular telephone network." (the "wireless communication client or extension unit" of claim 8). *Patarkazishvili* at ¶ 27. Similarly, the Provisional Application discloses, for example, that "Client installs PCI card into office PC connected to Internet. Office PC is in the

area of GSM operator whose SIM card will be used and have internet connection as well."
Provisional Application at SIMO_0264554.  The Provisional Application further describes the
method, according to an embodiment of the present invention as including: "2. SIM card data are
transmitted over Internet from PC (client abroad) to a GSM software module installed in office
PC.  [¶] 3. Software installed in office PC makes a call to desired number or detects a call using
the local GSM operator."  *Id.* at SIMO_0264555.

> **b.      "enabling an initial setting of the wireless communication
> client or the extension unit and a remote administration system"**

21.     For example, in my Invalidity Report, I noted that *Patarkazishvili* discloses
enabling an initial setting of communication terminal by providing "enrolling new users to the
system." *Patarkazishvili* at ¶ 41 ("an Internet management interface 501 which provides user
account management including: enrolling new users to the system, adding users . . .").  Similarly,
the Provisional Application discloses, for example, that "Software installed in office PC registers
to VIGSM network using Client user name and password."  Provisional Application at
SIMO_0264555.

> **c.      "establishing a data communication link to transmit
> information among the wireless communication client or the extension unit,
> and the remote administration system"**

22.     For example, in my Invalidity Report, I noted that as illustrated in FIG. 2
(reproduced below), *Patarkasizhvili* discloses establishing a wide area data network (i.e., the
"data communication link" of claim 8) to enable data transfer between the communications
device (i.e., "the wireless communication client or the extension unit" of claim 8) and the server
203/client computer (i.e., "the remote administration system" of claim 8). *Patarkasizhvili* at ¶ 17
("A server is preferably attached to the wide area data network…mediates data transfer between

the client computer and the communications module…"), ¶ 18 ("A client computer is attached to the wide area data network").



FIG. 2

23.     Similarly, the Provisional Application discloses, for example, using the internet to connect the client office, client abroad, and the VIGSM Server:

9



SIMO_0264557 (annotated).

> d.     **"establishing a local authentication information request in response to a local authentication request by a local cellular communication network, wherein the local authentication information request comprises information regarding the local authentication request for local authentication information received by the foreign wireless communication client or the extension unit from the local cellular communication network, and wherein the data communication link is distinct from the local cellular communication network;**
> **relaying the local authentication information request to the remote administration system via the data communication link and obtaining suitable local authentication information from the remote administration system via the data communication link"**

24.     For example, in my Invalidity Report, I noted that FIG. 6 of *Patarkazishvili*

discloses these elements of claim 8.  FIG. 6 of *Patarakazishvili* follows the 3GPP standard used

for authenticating a device in a GSM network.  Although the details of FIG. 6 are not disclosed

in the Provisional Application, a POSITA would be able to implement these details without

undue experimentation.  Indeed, Dr. Clark agreed that "performing the well-known algorithm for

calculating SRES_2 at a centralized SIM server would not require undue experimentation.  Clark

Rebuttal at ¶211.  Moreover, a POSITA would understand that Patarkazishvili was in possession

of the invention.  For example, the Provisional Application discloses using a physical SIM at one

location to make a call at a different location.  Provisional Application at SIMO_026454 ("The

present invention gives an opportunity for people to use their SIM card to make and receive calls

while not being in the area of his home GSM operator with the help of personal computer (PC)

connected to a wide area network, e.g., Internet… Client installs PCI card into office PC

connected to Internet.  Office PC is in the area of GSM operator whose SIM card will be used

and have internet connection as well.  [¶] While in any place in the world, client places SIM

Reader with his SIM into another PC (e.g., laptop) with Internet connection.  Using software and

VIGSM server, client and make and receive GSM calls."); SIMO_0264555 ("Software installed

in office PC makes a call to desired number or detects a call using the local GSM operator.").

POSITA would understand, for example, that in order to do so in Patarkazishvili's system there

would be a local authentication information request from the local cellular communication

network that is relayed to the remote administration system via the data communication link.

     25.     With respect to the requirement that "the data communication link is distinct from

the local cellular communication network," in my Invalidity Report, I noted, for example, that

*Patarkazishvili* discloses a system including two distinct communication networks, namely, "a

wide area data network" (i.e., "the data communication link" of claim 8) and "a wireless cellular

mobile telephone network" (i.e., the local cellular communication network). *See Patarkazishvili*

at ¶ 17.  Similarly, the Provisional Application discloses, for example, a system including two

distinct communication networks, namely "a wide area network, e.g., Internet" and "GSM

Provider A".  Provisional Application at SIMO_0264554, SIMO_0264557.

> **e.**     **"establishing local wireless services provided by the local cellular communication network to the wireless communication client or the extension unit by sending the local authentication information obtained from the remote administration system to the local cellular communication network over signal link; and"**

26.     For example, in my Invalidity Report, I noted that, in *Patarkazishvili*, upon

"successful registration," the communication terminal is provided with mobile service, such as

making call, SMS, etc. (i.e., the "local wireless services" of claim 8). *Id.* at ¶ 29 ("Once login is

completed the roaming user can receive and place telephone calls…*All mobile services are

preferably available including voice mail access, SMS* send and receive and feature control.")

(emphasis added).  Similarly, the Provisional Application discloses, for example, that "Using

software and VIGSM server, client can make and receive GSM calls."  Provisional Application

at SIMO_0264554.

> **f.**     **"providing a communication service to the wireless communication client or the extension unit according to the established local wireless services"**

27.     For example, in my Invalidity Report, I noted that, in *Patarkazishvili,* the

communication terminal receives a communication service of "route[ing] incoming and outgoing

calls… to/from the cellular telephone network between terminal 201 and client computer 205"

(*Patarkazishvili* at ¶ 41) to avoid high roaming billing rate while traveling away from home. *See*

¶ 29 ("embodiments of the present invention are intended to provide a system and method for

making and receiving telephone calls while traveling or roaming away from home. The system

and method avoid high roaming rates of cellular telephone networks.").  Similarly, the

Provisional Application discloses, for example, that "The present invention gives an opportunity

for people to use their SIM card to make and receive calls while not being in the area of his home GSM operator with the help of personal computer (PC) connected a wide area network, e.g., Internet."  Provisional Application at SIMO_0264554.

> **2.     Claim 11 - "relaying verification information to the remote administration system, wherein the verification information identifies the wireless communication client or extension unit as being associated with a user account of the remote administration system"**

28.     For example, in my Invalidity Report, I noted that *Patarkazishvili* discloses that "[a] server is preferably attached to the wide area data network preferably including a SIM server and a session initiation protocol (SIP) server mediates data transfer between the client computer and the communications module *for authentication of the SIM identification data and registration of the SIM card*." *Id.* at ¶ 17 (emphasis added); *see also id*. at 41 ("Management is preferably provided over an Internet management interface 501 which provides *user account management* including: enrolling new users to the system, adding users, deleting users, changing user account information, changing user account status, disallowing outgoing calls, or disallowing both incoming and outgoing calls requiring user action.") (emphasis added). Similarly, the Provisional Application discloses, for example, that "Software installed in office PC registers to VIGSM network using Client user name and password."  Provisional Application at SIMO_0264555.

> **3.     Claim 12 - "the wireless communication client or the extension unit comprises a foreign wireless communication device not subscribed to the local network"**

29.     For example, in my Invalidity Report, I noted that *Patarkazishvili* discloses that without the SIM identification information/authentication of the SIM card 211 issued by the local cellular mobile telephone operator, communication terminal 201 (i.e., "the wireless communication client or the extension unit" of claim 12) cannot emulate SIM card 211 in the

home or local region and thus cannot communicate with the cell of the home or local region (i.e.,

"not subscribed to the local network" of claim 13). *See id*. at ¶ 38. Therefore, *Patarkazishvili*

discloses a wireless communication client or extension unit that comprises a foreign

communication device not subscribed to the local network.  Similarly, the Provisional

Application discloses, for example, that "SIM card data are transmitted over Internet from PC

(client abroad) to a GSM software module installed in office PC."  Provisional Application at

SIMO_0264555.

        **4.**    **Claim 13 - "requesting access to a desired local wireless service by sending a request to the local cellular communication network over a signal link"**

        30.    For example, in my Invalidity Report, I noted that *Patarkazishvili* discloses

requesting registration with cellular telephone service in his/her home region (i.e., "a desired

local wireless service" of claim 13) by sending an ATTACH request to the local base transceiver

station (BTS) in a cell of a home or local region (i.e., "the local cellular communication

network" of claim 13) over the cellular RF interface (i.e., "a signal link" of claim 13). *See*

*Patarkazishvili* at ¶ 37 ("The user of client computer 205 typically owns a SIM card 211 issued

by a cellular telephone service provider in his/her home region. A terminal 201 includes a radio

interface 207 to *a local base transceiver station (BTS) in a cell 21 of a home or local region*.")

(emphasis added).  Similarly, the Provisional Application discloses, for example, that "The

present invention gives an opportunity for people to use this SIM card to make and receive calls

while not being in the area of his home GSM operator with the help of personal computer (PC)

connected to a wide area network, e.g., Internet" and "Software installed in office PC makes a

call to desired number or detects a call using the local GSM operator."  Provisional Application

at SIMO_0264554, SIMO_0264555.

        **5.**    **Claim 14 - "wherein the local authentication information request for authentication information further comprises at least one of a unique subscriber identifier, a**

14

**wireless communication client identifier, a password, and a current location of the foreign wireless communication client or the extension unit."**

31.     For example, in my Invalidity Report, I noted that *Patarkazishvili* discloses the local authentication information request comprises at least a unique subscriber identifier (e.g., SIM identification information).  *See Patarkazishvili* at ¶ 18, 38, 42.  As noted above in Section IV.A.1.d, the Provisional Application does not include the details of the authentication, those were well known at the time of the provisional application.  Accordingly, in my opinion the Provisional Application supports the aforementioned disclosure, for example, by its disclosure of: "The present invention gives an opportunity for people to use their SIM card to make and receive calls while not being in the area of his home GSM operator with the help of personal computer (PC) connected a wide area network, e.g., Internet… Using software and VIGSM sever, client can make and receive GSM calls."  Provisional Application at SIMO_0264554.  In addition, I note that the Provisional Application discloses "Software installed in Office PC registers to VIGSM network using Client user name and password."  *Id.* at SIMO_0264555.

**B.     The Provisional Application Provides Written Description Support for at Least One of the Claims of *Patarkazishvili***

32.     Claim 1 of Patarkazishvili recites:

[1pre] In a system including a wide area data network and a wireless cellular mobile telephone network, wherein a local cellular mobile telephone operator serves the wireless cellular mobile telephone network within a local region, wherein the local cellular mobile telephone operator issues a subscriber identity module (SIM) to a user of the wireless cellular mobile telephone network, the system comprising:

[1a] (a) a communications terminal which interfaces to the wide area data network using a radio interface to a base transceiver station of the wireless

cellular mobile telephone network within the local region, wherein said terminal includes a communications module for handling a telephone communication through the wide area data network and the wireless cellular mobile telephone network, and wherein said communications terminal includes a subscriber identity module (SIM) emulator, wherein said communications terminal operationally connects to the wireless cellular mobile telephone network solely through said base transceiver station via said radio interface without direct connection to the wireless cellular mobile telephone network; and

[1b] (b) a client computer operatively attached to the wide area data network at a remote site, wherein said client computer includes a subscriber identity module (SIM) reader; wherein the remote site is outside the local region; [1c] wherein a user of said client computer inserts said SIM card into said SIM reader, wherein SIM authentication data of said SIM card is transferred to said communications terminal over the wide area data network, and wherein said SIM emulator provides said SIM authentication data to the wireless cellular mobile telephone network within the local region.

33.    The Provisional Application describes the preamble of claim 1.  For example, the Provisional Application states that "The present invention gives an opportunity for people to use their SIM card to make and receive calls while not being in the area of his home GSM operator with the help of personal computer (PC) connected to a wide area network, e.g., Internet" and describes that "While in any place in the world, client places SIM Reader with his SIM into another PC (e.g., laptop) with Internet connection."  Provisional Application at SIMO_0264554.

34.     The Provisional Application describes element 1[a] of claim 1.  For example, the figure in the Provisional Application reproduced below shows the claimed "communications terminal" interfaces to the "wide area data network".



SIMO_0264557 (annotated).

35.     In addition, the Provisional Application describes that the client equipment includes a "GSM module" and describes that "Office PC is in the area of GSM operator whose SIM card will be used and have internet connection as well" and "Using software and VIGSM server, client can make and receive GSM calls."  Provisional Application at SIMO_0264554. The "SIM card data are transmitted over Internet from PC (client abroad) to a GSM software module installed in office PC."  *Id.* at SIMO_0264555.

36.     The Provisional Application describes element 1[b] of claim 1.  The figured above from the Provisional Application shows the claimed "client computer."  In addition, the

Provisional Application states that "While in any place in the world, the client places SIM Reader with his SIM into another PC (e.g., laptop) with Internet connection." Provisional Application at SIMO_0264554.

37.     The Provisional Application describes element 1[c] of claim 1. For example, the Provisional Application states that "While in any place in the world, the client places SIM Reader with his SIM into another PC (e.g., laptop) with Internet connection." Provisional Application at SIMO_0264554. "The method, according to an embodiment of the present invention is as follows:… 2. SIM card data transmitted over Internet from PC (client abroad) to a GSM software module installed in office PC. [¶] 3. Software installed in office PC makes a call to desired number or detects a call using the local GSM operator." *Id.* at SIMO_0264555.

## V.     SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS

38.     In Dr. Clark's Rebuttal Report, he alleges that there are a number of objective indicia of non-obviousness, including long felt need, commercial success, praise of the invention, and deliberate copying of the invention. Clark Rebuttal Report at pp. 72-81. I disagree that any of things he identified are any indication of non-obviousness.

39.     I understand that objective evidence of nonobviousness must be attributable to the claimed invention. In my opinion, Dr. Clark has not shown that any of things he describes is specific to the claimed invention. For example, what he describes as a long felt need and praise of the invention relate to reducing roaming fees generally – it is not specific to the particular products covered by the Asserted Claims. Indeed, the Asserted Claims are not the only way to reduce roaming costs, as shown by the varied types of devices utilizing virtual SIM technology that invalidate the Asserted Claims. With respect to commercial success, as I note in my Non-Infringement Report, Skyroam's products do not practice the '689 patent. Moreover, Dr. Clark

has made no attempt to show any success of Skyroam's products are because of the patented features, rather than other features of its products (e.g., power bank in the Solis).  With respect to copying, Dr. Clark has not identified anything embodying the patented invention that was copied.  Moreover, I understand that evidence that a competitor has copied a product embodying a patented invention does not demonstrate nonobviousness of the claimed invention when there is a substantial question of validity.  As I explain in my Invalidity Report, there are numerous prior art references that invalidate the Asserted Claims.

## CERTIFICATE OF SERVICE

I certify that counsel of record for Plaintiff were served with a copy of the foregoing

Supplemental Expert Report of Martin J. Feuerstein via email on this 24th day of February,

2019.

/s/ Bradford A. Cangro
Bradford A. Cangro