# EXHIBIT 11

SG028 ALI-ABA 387

American Law Institute - American Bar Association Continuing Legal Education
ALI-ABA Course of Study
September 20-21, 2001

Trial of a Patent Case
Sponsored with the cooperation of the Intellectual Property Law Association of Chicago

**\*387  DRAFT MODEL PATENT JURY INSTRUCTIONS FOR THE FEDERAL CIRCUIT**

Federal Circuit Bar Association Committee
Mark J. Abate
Philip S. Beck
Robert C. Morgan
Matthew D. Powers
Harry J. Roper
William C. Steffin
Submitted by
Denise L. Loring
Fish & Neave
New York, New York

Copyright (c) 2001 The American Law Institute; Mark J. Abate, Philip S. Beck, Robert C.
Morgan, Matthew D. Powers, Harry J. Roper, William C. Steffin and Denise L. Loring

**\*389  TABLE OF CONTENTS**

**PRELIMINARY INSTRUCTIONS**

1. GENERAL INSTRUCTIONS
 1.1 BURDENS OF PROOF
2. PATENT INSTRUCTIONS
 2.1 THE PARTIES AND THE NATURE OF THE CASE
 2.2 THE PATENT SYSTEM, GENERALLY
 2.3 THE PARTS OF A PATENT
 2.4 THE SIGNIFICANCE OF PATENT CLAIMS
 2.5 HOW A PATENT IS OBTAINED
3. ISSUES TO BE DECIDED
 3.1 [PLAINTIFF'S] CONTENTIONS
  3.1.1 DIRECT INFRINGEMENT
  3.1.2 INDIRECT INFRINGEMENT
  3.1.3 DAMAGES
  3.1.4 WILLFUL INFRINGEMENT
 3.2 [DEFENDANT'S] CONTENTIONS
  3.2.1 INVALIDITY
  3.2.2 ANTICIPATION
  3.2.3 OBVIOUSNESS
  3.2.4 WRITTEN DESCRIPTION/CLAIMING REQUIREMENTS
  3.2.5 INEQUITABLE CONDUCT

4. CONDUCT OF THE JURY AND THE TRIAL

**FINAL INSTRUCTIONS**

5. THE PARTIES AND THEIR CONTENTIONS
   5.1 THE PARTIES
   5.2 [PLAINTIFF'S] CONTENTIONS
   5.3 [DEFENDANT'S] CONTENTIONS
   5.4 SUMMARY OF PATENT ISSUES AND BURDENS OF PROOF
6. THE PATENT SYSTEM
7. THE CLAIMS OF THE PATENTS IN SUIT
   7.1 CONSTRUCTION OF THE CLAIMS
   7.2 INDEPENDENT AND DEPENDENT CLAIMS
   **\*390**  7.3 PRODUCT-BY-PROCESS CLAIMS
   7.4 MEANS-PLUS-FUNCTION CLAIM LIMITATIONS
   7.5 "COMPRISING" CLAIMS
   7.6 "CONSISTING ESSENTIALLY OF" CLAIMS
   7.7 "CONSISTING OF" CLAIMS
   7.8 LIMITATIONS OF THE CLAIMS AT ISSUE
8. INFRINGEMENT
   8.1 PATENT INFRINGEMENT GENERALLY -- DIRECT INFRINGEMENT
   8.2 LITERAL INFRINGEMENT
   8.3 INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS
   8.4 LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS
   8.5 INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS
   8.6 INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS
   8.7 DETERMINATION OF INFRINGEMENT
   8.8 THE EXPERIMENTAL USE EXCEPTION
   8.9 INFRINGEMENT OF PRODUCT-BY-PROCESS CLAIMS
   8.10 INFRINGEMENT OF DEPENDENT CLAIMS
   8.11 INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION
   8.12 INDIRECT INFRINGEMENT
      8.12.1 INDUCING PATENT INFRINGEMENT
      8.12.2 CONTRIBUTORY INFRINGEMENT
9. WILLFUL INFRINGEMENT
10. VALIDITY
   10.1 VALIDITY IN GENERAL
   10.2 WRITTEN DESCRIPTION
   10.3 ENABLEMENT
   10.4 BEST MODE
   10.5 DEFINITENESS
   10.6 THE PRIOR ART
      10.6.1 PRIOR ART -- DATE OF INVENTION
      10.6.2 PRIOR ART -- PRIOR KNOWLEDGE OR USE BY ANOTHER IN THE UNITED STATES
      10.6.3 PRIOR ART -- PUBLIC USE MORE THAN ONE YEAR BEFORE THE APPLICATION WAS FILED
      10.6.4 PRIOR ART -- PRIOR PUBLIC USE OR KNOWLEDGE
      10.6.5 PRIOR ART -- ON-SALE OR OFFERED FOR SALE MORE THAN ONE YEAR BEFORE THE APPLICATION WAS FILED
      10.6.6 EXPERIMENTAL USE

  **\*391**  10.6.7 PRIOR ART -- PRIOR PRINTED PUBLICATION
    10.6.8 PRIOR ART -- PRIOR INVENTION
    10.6.9 PRIOR ART -- PRIOR PATENTS AND PATENT APPLICATIONS
  10.7 DERIVATION
  10.8 ANTICIPATION/LACK OF NOVELTY
  10.9 OBVIOUSNESS
    10.9.1 THE SCOPE AND CONTENT OF THE PRIOR ART
    10.9.2 DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART
    10.9.3 LEVEL OF ORDINARY SKILL
    10.9.4 OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS
    10.9.5 DETERMINATION OF OBVIOUSNESS
11. INEQUITABLE CONDUCT
  11.1 MATERIALITY
  11.2 INTENT
  11.3 BALANCING OF MATERIALITY AND INTENT
12. DAMAGES
  12.1 COMPENSATORY PATENT DAMAGES IN GENERAL
    12.1.1 NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS
  12.2 TWO TYPES OF DAMAGES -- LOST PROFITS AND REASONABLE ROYALTY
  12.3 LOST PROFITS, TYPES AND BURDEN OF PROOF
    12.3.1 LOST SALES
    12.3.2 MANUFACTURING AND MARKETING ABILITY
    12.3.3 ABSENCE OF ACCEPTABLE NON-INFRINGING SUBSTITUTES
    12.3.4 LOST PROFITS DUE TO PRICE EROSION/COST ESCALATION
    12.3.5 AMOUNT OF LOST PROFITS
    12.3.6 REASONABLE ROYALTY
    12.3.7 WHAT IS A REASONABLE ROYALTY?
    12.3.8 TOTAL DAMAGES
 **\*392  DRAFT**

## MODEL JURY INSTRUCTIONS PRELIMINARY INSTRUCTIONS

## 1. GENERAL INSTRUCTIONS

  **[Court to provide preliminary general instructions]**

 **\*393  1.1 BURDENS OF PROOF**

In any legal action, facts must be proved by a required standard of the evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used.

The first burden of proof standard requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true.

The second burden of proof standard is a higher one. It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof beyond a reasonable doubt in criminal cases. That requirement is the highest burden of proof. It does not apply to a patent case such as this one and you should, therefore, put it out of your mind.

I will now give you some background about the nature of this case and the issues you will be deciding. For each issue, I will instruct you as to the burden of proof that will apply. At the end of the trial I will review for you the burden of proof to apply, either the more probable than not standard or the highly probably standard, to each issue in this case.

**\*394  2. PATENT INSTRUCTIONS**

**2.1 THE PARTIES AND THE NATURE OF THE CASE**

As I have told you, this is a patent case. It involves U.S. Patent No. ___. Patents are often referred to by their last three digits. The patent in this case will be referred to as the ____ patent.

The _____ patent relates to [briefly describe technology involved]. During the trial the parties will offer testimony to familiarize you with this technology.

[Plaintiff], the plaintiff in this case, contends that [defendant], the defendant in this case, is infringing the ___ patent by its [[making/using/selling/offering for sale/importing] _____ . [Plaintiff] contends that it is entitled to damages caused by that infringement.

[Defendant] [denies that it is infringing, and] contends that the ___ patent is [invalid and/or unenforceable] for a number of reasons, which I will tell you about shortly.

I will explain to you the meaning of these contentions in a moment, but first I will explain the U.S. patent system, the parts of a patent and how a person gets a patent.

**\*395  2.2 THE PATENT SYSTEM, GENERALLY**

Patents are issued by the United States Patent and Trademark Office, which is part of our government. The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protected by patents may be of products, compositions, or of methods for doing something, or for using or making a product or composition.

The owner of a patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent.

A patent is granted for a set period of time, which, in this case, is [20 years from the time the application for the ___ patent was filed/17 years from the date the ___ patent issued]. Once a patent expires, anyone is free to use the invention covered by the patent.

During the term of the patent, however, if another person makes, uses, offers to sell, sells or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent. The patent owner enforces a patent against persons believed to be infringers in a lawsuit in federal court, such as in this case.

To be entitled to patent protection an invention must be new, useful, and nonobvious. A patent cannot legally take away from people their right to use that which was known, or that which was obvious from what was known before the invention was made. Thus, a patent will not be valid if it deprives people of the right to use old or known [products or processes], or of their right to use [products or processes] that were obvious at the time the invention was made. That which was already known at the time of the invention is called the "prior art." You will hear about the prior art relating to the ___ patent during the trial, and I will give you more instructions about what constitutes prior art at the end of the case.

**\*396  2.3 THE PARTS OF A PATENT**

A patent includes two basic parts, a written description of the invention and the patent claims. The written description, which may include drawings, is often referred to as the "specification" of the patent.

You have been provided with a copy of the ___ patent. Please refer to the patent as I identify its different sections.

The cover page of the ___ patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, [the assignee] and a list of the prior art publications considered in the Patent Office when the patent was applied for.

The specification of the ___ patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

[Next, are the drawings, which appear as Figures ___ to ___ on the next ___ pages. The drawings depict various aspects or features of the invention. They are described in words later in the patent specification.] The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the

top of the page. The lines on each page are also numbered. The written description of the ___ patent begins at column 1, line 1, and continues to column, ___ line ___. [It includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.]

The specification ends with one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of [parts or steps], referred to as "claim limitations." In the ___ patent, the claims begin at column ___, line ___ and continue to the end of the patent, at column ___, line ___.

## *397  2.4 THE SIGNIFICANCE OF PATENT CLAIMS

The claims of a patent are a main focus of a patent case because it is the claims that define the patent owner's rights under the law. That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes. First, they set out the boundaries of the invention covered by the patent. Second, they provide notice to the public of those boundaries. Thus, when a [product or process] is accused of infringing a patent, it is the patent claims that must be compared to the accused [product or process] to determine whether or not there is infringement. It is the claims of the patent that are infringed when patent infringement occurs. The claims are at issue as well when the validity of a patent is challenged. In reaching your determinations with respect to infringement and invalidity, you must consider each claim separately.

In this case, we will be concerned with claims _____ of the _____ patent. [[Plaintiff] contends that claims _____ are infringed. [Defendant] contends that claims _____ are [not infringed, and that they are invalid and unenforceable].

The language of patent claims may not be clear to you, or its meaning may be disputed by the parties. I will instruct you [now/at the end of the case] about the meaning of some of the claim language. You must use these meanings I give you when you decide the issues of infringement and invalidity.

**[NOTE: The claim constructions may be included in the preliminary instructions, or may be presented to the jury by counsel in their opening statements. If the constructions are included in the preliminary instructions, Instructions 7.1-7.8 should be included, as applicable, as well.]**

## *398  2.5 HOW A PATENT IS OBTAINED

The U.S. Patent and Trademark Office is the agency of our government that examines patent applications and issues patents. When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a Patent Examiner. The Patent Examiner examines the application to determine whether or not the invention described in the patent application meets the requirements of the patent laws for patentable inventions.

The Patent Examiner advises the applicant of his or her findings in a paper called an "office action". The Examiner may "reject" the claims if he or she believes they do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, and may sometimes change, or amend, the claims or submit new claims. If the Examiner concludes that the legal requirements for a patent have all been satisfied, he or she "allows" the claims and the application issues as a patent.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution". The record of papers relating to the patent prosecution is referred to as the prosecution history, or file history. The prosecution history becomes available to the public when the patent issues.

## *399  3. ISSUES TO BE DECIDED

I will now give you some information about the issues that will be presented to you at this trial and the law that you must follow in reaching your verdict. At the close of the trial, you will be given a verdict form and questions that you must answer in reaching your verdict. I will give you more specific instructions then to follow as you deliberate to reach your verdict.

## *400  3.1 [PLAINTIFF'S] CONTENTIONS

I will first describe to you [plaintiff's] contentions.

### 3.1.1 DIRECT INFRINGEMENT

As I told you, [plaintiff] contends that [defendant] infringes claims ___ of the ___ patent by its [use, sale, or offer for sale of product/use of process]. This is called direct infringement. [Plaintiff] seeks to prove direct infringement in two ways. The first is called "literal" infringement. To prove literal infringement, [plaintiff] must prove that it is more probable than not that [defendant's] [product or process] contains each and every limitation of one or more of the ___ patent claims.

The second type of infringement is called infringement under the "doctrine of equivalents." To prove infringement under the doctrine of equivalents, [plaintiff] must prove that it is more probable than not that, for each claim limitation not literally found in [defendant's] [product or process], the [product or process] contains an equivalent [structure or step]. In order to be equivalent, the differences between the missing claim limitation and [defendant's] [structure or step] must be insubstantial. I will explain in more detail in my final instructions the various ways by which you may determine whether or not these differences, if they exist, are insubstantial.

**[Describe specific product/process accused of infringement and which claims are alleged to be infringed.]**

### *401  3.1.2 INDIRECT INFRINGEMENT

[Plaintiff] contends that [defendant] indirectly infringes claims ___ of the ___ patent by contributing to or encouraging others to directly infringe. There are two types of indirect infringement -- contributory infringement and inducing infringement.

To prove contributory infringement of the ___ patent claims, [plaintiff] must prove that it is more probable than not that [defendant] sold or supplied to another person a component or part that is a material part of the patented invention and is not suitable for other uses. [Plaintiff] must also prove that the other person infringed the ___ patent claims and that [defendant] knew that the component or part was especially made for use in an infringing manner.

To prove that [defendant] induced someone else to infringe the ___ patent claims, [plaintiff] must prove that it is more probable than not that [[defendant] encouraged or instructed another person to [use a product or perform a process] in a manner that infringes, and that [defendant] knew or should have known that the encouragement or instructions would likely result in the other person doing that which you have found to be an infringement.

### *402  3.1.3 DAMAGES

[Plaintiff] claims that it has suffered damages as a result of [defendant's] infringement in the form of [lost profits that [plaintiff] would have made if [[defendant] had not infringed [and/or] a reasonably royalty on each of [[defendant's] sales of infringing [product or process]]. I will explain to you at the end of the case [how lost profits are calculated [and/or] how a reasonable royalty is decided on.] Plaintiff must prove by the more probable than not standard the damages it has suffered as a result of [defendant's] infringement.

### *403  3.1.4 WILLFUL INFRINGEMENT

[Plaintiff] claims that [defendant] has knowingly and willfully infringed the ___ patent claims. To prove willful infringement, [plaintiff] must prove that [defendant] knew of the ___ patent and that [defendant] did not have a reasonable belief either that the patent was invalid [or unenforceable], or that it did not infringe the patent.

[Plaintiff's] willful infringement claim requires a higher burden of proof -- the highly probable standard -- than [plaintiff's] other claims, which require proof by the more probable than not standard. I will explain in more detail at the end of the case how you decide willful infringement.

### *404  3.2 [DEFENDANT'S] CONTENTIONS

I will now instruct you on [defendant's] contentions:

### 3.2.1 INVALIDITY

[Defendant] contends that claims ___ of the ___ patent are invalid for a number of reasons. Although the ___ patent was granted by the Patent and Trademark Office, it is your job to determine whether or not the legal requirements of patentability were met; that is, it is your job to determine whether or not the ___ patent is invalid.

I will now explain to you briefly the legal requirements for each of the grounds on which [defendant] relies to contend that the ___ patent claims are invalid. I will provide more details for each ground in my final instructions.

**\*405  3.2.2 ANTICIPATION**

[Defendant] contends that the invention covered by claims ___ of the ___ patent is not new. An invention that is not new is said to be "anticipated" by the prior art. In order to prove that a claim is anticipated by the prior art, [[defendant] must prove that it is highly probable that each and every limitation of the claim is present in a single item of prior art.

**\*406  3.2.3 OBVIOUSNESS**

[Defendant] contends that claims ___ of the ___ patent are invalid for obviousness. A patent claim will be invalid, even if it is not anticipated by the prior art, if the claimed invention would have been obvious to a person of ordinary skill in the art at the time the invention was made. The ordinary skilled person is a person of average education and training in the field and is presumed to be aware of all of the relevant prior art. You will hear evidence about the skill and experience of such a skilled person during the course of the trial.

In order to prove invalidity based on obviousness, [defendant] must prove that it is highly probable that the invention claimed in the ___ patent would have been obvious to a person of ordinary skill in the art at the time the invention was made.

**\*407  3.2.4 WRITTEN DESCRIPTION/CLAIMING REQUIREMENTS**

[Defendant] contends that claims ___ of the ___ patent are invalid because the patent does not contain [a written description of the invention/an enabling description of the invention/a description of the best mode of the invention/ definite claims].

**[Use only the paragraphs 1-4 that are at issue:]**

1. The description in the patent specification of the invention must be complete. This is called the "written description requirement". In order to prove that the ___ patent claims are invalid for lack of a written description, [defendant] must prove that it is highly probable that the ___ patent does not contain a description of each and every limitation of those patent claims.

2. The written description of the invention must contain enough detail so as to enable a skilled person reading the patent to make and use the invention. This is referred to as the "enablement requirement". In order to prove that the ___ patent claims are invalid for lack of an enabling description, [defendant] must prove that it is highly probable that the ___ patent does not contain enough information to teach a skilled person how to make and use the claimed invention without undue experimentation.

3. The written description of a patent must describe the best way, or mode, of making and using the invention known to the inventor at the time the application was filed. This is referred to as the "best mode requirement". In order to prove that the ___ patent claims are invalid for failure to disclose the best mode of the invention, [defendant] must prove that it is highly probable that, first the inventor knew of a best mode of making and using the claimed invention known to the inventor at the time the application was filed, and second, that the ___ patent does not describe that best mode.

4. [Defendant] contends that claims ___ of the ___ patent are invalid because they are "indefinite". The claims must be definite enough that a skilled person reading them knows what is covered by the claims, and what is not. [Defendant] must prove that the ___ patent claims are indefinite by the highly probable standard.

I will explain in more detail at the end of the case how you decide the issue [[s] of [written description/enablement/ best mode/definiteness].

**\*408  3.2.5 INEQUITABLE CONDUCT**

[Defendant] contends that [plaintiff] may not enforce the ___ patent against [[defendant] because [plaintiff] engaged in inequitable conduct before the Patent and Trademark Office when it obtained the ___ patent. To prove that inequitable conduct occurred, [defendant] must prove that it is highly probable that the patent applicant or the applicant's attorney or representative withheld or misrepresented material information, and did so with an intent to mislead or deceive the Patent and Trademark Office.

I will provide you with more details about inequitable conduct at the end of the case.

**\*409  4. CONDUCT OF THE JURY AND THE TRIAL**

**[Court to provide general instructions]**

**\*410  FINAL INSTRUCTIONS**

**5. THE PARTIES AND THEIR CONTENTIONS**

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.
**[Court to provide:]**
**5.1 THE PARTIES**
**5.2 [PLAINTIFF'S] CONTENTIONS**
**5.3 [DEFENDANT'S] CONTENTIONS**
**5.4 SUMMARY OF PATENT ISSUES AND BURDENS OF PROOF**

**\*411  6. THE PATENT SYSTEM**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**\*412  7. THE CLAIMS OF THE PATENTS IN SUIT**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts or steps, called "limitations". For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

**\*413  7.1 CONSTRUCTION OF THE CLAIMS**

In deciding whether or not an accused [process or product] infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed and whether or not it is invalid [and unenforceable].
**[If claim constructions are being provided to the jury for the first time in the final instructions]:**
Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.
**[If claim constructions were provided in the preliminary instructions]:**

At the start of the trial, I instructed you about the meaning of the words of the claims and the different types of claims that are at issue in this case. I will now review those instructions with you again.

It may be helpful to refer to the copy of the ___ patent that you have been given as I discuss the claims at issue here. The claims are at the end of the ___ patent, starting in column ___. [I will be giving you a list of the claims of the ___ patent at issue as part of the verdict form when I conclude my instructions.]

**AUTHORITIES**

*Markman* v. *Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *AFG Indus., Inc.* v. *Cardinal IG Co., Inc.,* 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co.* v. *Kinetic Concepts, Inc.,* 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc.* v. *Hewlett-Packard Co.,* 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assos., Inc.* v. *Zebco Corp.,* 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp.* v. *FAS Techs., Inc.,* 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp.* v. *Conceptronic, Inc.,* 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman* v. *Westview Instruments,* 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

**\*414  7.2 INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claim ____ of the ___ patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim ___ is a dependent claim. It refers to claim ___. To determine what dependent claim ___ covers, the words of that claim and the words of claim ___ must be read together.

**[NOTE: If numerous dependent claims or complicated multiple dependencies exist, consider providing the jurors with a table of the relationship of the asserted claims.]**

**AUTHORITIES**

35 U.S.C. § 112 ¶ 4 (1984); *Globetrotter Software, Inc.* v. *Elan Computer Group, Inc.,* 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co.* v. *United States,* 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc.* v. *Cadus Pharm. Corp.,* 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc.* v. *Nike, Inc.,* 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc.* v. *Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc.* v. *Montedoro-Whitney Corp.,* 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc.* v. *Frontier, Inc.,* 870 F.2d 1546, 1552-23 (Fed. Cir. 1989).

**\*415  7.3 PRODUCT-BY-PROCESS CLAIMS**

Sometimes a product may best be described by the process by which it is made, instead of by describing its structure or chemical characteristics. Such claims, which describe a product by describing the process by which it is made, are called "product-by-process" claims.

Claims ___ of the ___ patent are product-by-process claims.

**[NOTE: This instruction may be included in the claim construction or read separately.]**

**AUTHORITIES**

🚩 *Vanguard Prods. Corp.* v. *Parker Hannifin Corp.,* 234 F.3d 1370, 1372-73 (Fed. Cir. 2000); 🚩 *Exxon Chem. Patents, Inc.* v. *Lubrizol Corp.,* 64 F.3d 1553, 1557-58 (Fed. Cir. 1995); *Mentor Corp.* v. *Colopast, Inc.,* 998 F.2d 992, 997 (Fed. Cir. 1993); 🚩 *Atlantic Thermoplastics Co.* v. *Faytex Corp.,* 974 F.2d 1279 (Fed. Cir. 1992); 🚩 *Atlantic Thermoplastics Co.* v. *Faytex Corp.,* 970 F.2d 834, 837 (Fed. Cir. 1992); 🚩 *Scripps Clinic & Research Found.* v. *Genentech, Inc.,* 927 F.2d 1565, 1583 (Fed. Cir. 1991).

## *416  7.4 MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function. For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop." This second type of claim limitation is called a "means-plus-function" limitation. It describes a means for performing the function of securing the legs to the tabletop, rather than reciting the glue per se.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures. In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

Claims _____ of the ___ patent include means-plus-function limitations. In instructing you about the meaning of a means-plus-function claim limitation, I will tell you, first, the function that each of the means-plus-function claim limitations performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function limitation.

**[NOTE: Consider providing the jury with copies of the patent in which the patent specification is keyed to the specific means-plus-function claim limitations.**

**This instruction may be included in the claim construction or read separately if the Court concludes as a matter of law that the claims contain one or more means-plus-function limitations.]**

## AUTHORITIES

35 U.S.C. § 112 ¶ 6 (1984); 🚩 *IMS Tech., Inc.* v. *Haas Automation, Inc.,* 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); 🚩 *Odetics, Inc.* v. *Storage Tech. Corp.,* 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); 🚩 *WMS Gaming Inc.* v. *Int'l Game Tech.,* 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp.* v. *VSI Int'l, Inc.,* 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); 🚩 *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.,* 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); 🚩 *B. Braun Med. Inc.* v. *Abbott Labs.,* 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).

## *417  7.5 "COMPRISING" CLAIMS

The beginning, or preamble, portion of claims _____ of the ___ patent uses the word "comprising". "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to [products or processes] having only the [elements or steps] that are recited in the claim, but also covers [products or processes] that add additional [elements or steps].

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

Claims ___ of the ___ patent use the "comprising" language.

**[NOTE: This instruction may be included in the claim construction or read separately.]**

## AUTHORITIES

📙 *Vehicular Techs. Corp.* v. *Title Wheel Int'l, Inc.,* 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc.* v. *Am. Science & Eng'g, Inc.,* 200 F.3d 795,811-12 (Fed. Cir. 1999); 📙 *Georgia-Pacific Corp.* v. *United States Gypsum Co.,* 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); 📙 *Elkay Mfg. Co.* v. *Ebco Mfg. Co.,* 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc.* v. *Sterilite Corp.,* 164 F.3d 1372, 1379-80 (Fed. Cir. 1998); 📙 *Phillips Petroleum Co.* v. *Huntsman Polymers Corp.,* 157 F.3d 866, 874 (Fed. Cir. 1998); 📙 *Stiftung* v. *Renishaw PLC,* 945 F.2d 1173, 1177-79 (Fed. Cir. 1991).

#### *418  7.6 "CONSISTING ESSENTIALLY OF" CLAIMS

The beginning, or preamble, portion of claims ___ of the ___ patent uses the language "consisting essentially of". If a patent claim uses the words "consisting essentially of", then a [product or process] containing additional [[structures or steps] beyond those recited in the claim may be covered by the claim, but only if those additional [structures or steps] do not materially affect the basic and novel characteristics of the claimed invention.

Looking again at our table example, if the claim recited a table "consisting essentially of" a tabletop, legs and glue, the claim would cover the table with wheels on the legs only if the wheels did not change the basic and novel characteristics of the table.

Claims ___ of the ___ patent use the "consisting essentially of" language.

**[NOTE: This instruction may be included in the claim construction or read separately.]**

#### AUTHORITIES

📙 *AFG Indus., Inc.* v. *Cardinal IG Co., Inc.,* 239 F.3d 1239, 1245 (Fed. Cir. 2001); 📙 *PPG Indus.* v. *Guardian Indus. Corp.,* 156 F.3d 1351, 1354-55 (Fed. Cir. 1998); 📙 *Atlas Powder Co.* v. *E.I. DuPont De Nemours & Co.,* 750 F.2d 1569, 1573-74 (Fed. Cir. 1984).

#### *419  7.7 "CONSISTING OF" CLAIMS

Claims ____ of the ____ patent use the words "consisting of". The words "consisting of" in a patent claim limit the [structures or steps] covered by the claim. A patent claim that uses "consisting of" is limited to only those [[limitations or steps] that follow it in the claim. Thus, a "consisting of" claim will not cover a [product or process] that contains [structures or steps] beyond those recited in the claim.

Looking again at our table example, if the claim recites a table "consisting of" a tabletop, legs, and glue, the claim will only cover tables that contain these three limitations, and nothing more. In other words, the addition of an extra structure, such as the wheels on the legs, is not covered by the claim.

Claims ____ of the ____ patent use the "consisting of" language.

**[NOTE: This instruction may be included in the claim construction or read separately.]**

#### AUTHORITIES

📙 *Vehicular Techs.* v. *Title Wheel Int'l,* 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); 📙 *Georgia-Pacific Corp.* v. *United States Gypsum Co.,* 195 F.3d 1322, 1327-28 (Fed. Cir. 1999); 📙 *Mannesmann Demag Corp.* v. *Engineered Metal Prods. Co.,* 793 F.2d 1279, 1282 (Fed. Cir. 1986).

#### *420  7.8 LIMITATIONS OF THE CLAIMS AT ISSUE

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

**[Construction of the claims to be supplied by the Court.]**

### *421   8. INFRINGEMENT

### 8.1 PATENT INFRINGEMENT GENERALLY -- DIRECT INFRINGEMENT

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell [or imports] what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare each of the patent claims ____, as I have defined them, to the accused [product or process], and determine whether or not there is infringement. You should not compare [defendant's] [[product or process] with any specific example set out in the ____ patent, or with [plaintiff's] product or process. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not [defendant] knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent and even if he or she does not even know of the patent.

In this case, [plaintiff] asserts that [defendant's] [product or process] directly infringes claims ___ of the ____ patent. It is your job to determine whether or not [plaintiff] has proved by the more probable than not standard that defendant has directly infringed any of claims ____ of the ____ patent.

### AUTHORITIES

35 U.S.C. §§ 271-281 (1984 & Supp. 2000); *Warner-Jenkinson Co., Inc.* v. *Hilton Davis Chemical Co.,* 520 U.S. 17, 36 (1997); *Florida Prepaid Postsecondary Educ. Expense Bd.* v. *College Sav. Bank,* 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc.* v. *Worth, Inc.,* 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Payless Shoesource, Inc.* v. *Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atlantic Thermoplastics Co.* v. *Faytex Corp.,* 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp.* v. *United States Int'l Trade Comm'n,* 946 F.2d 821, 832 (Fed. Cir. 1991). *Loctite Corp.* v. *Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985).

### *422   8.2 LITERAL INFRINGEMENT

**[Use the following instruction when infringement under the doctrine of equivalents is not an issue in the case:]**

In order to infringe a patent claim, a [product or process] must include every limitation of the claim. If [defendant's] [product or process] omits even a single [structure or step] recited in a claim, then you must find that [[defendant] has not infringed that claim. You must consider each of the ____ patent claims separately.

A claim limitation is present in an accused [product or process] if it exists in the [product or process] just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

### *423   8.3 INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS

**[Use the following instruction instead of Instruction 8.2 when infringement under the doctrine of equivalents is an issue in the case:]**

In order to infringe a patent claim, a [product or process] must include every limitation of the claim. If [defendant's] [product or process] omits even a single [structure or step] recited in a claim, then you must find that [[defendant] has not infringed that claim. You must consider each of the ____ patent claims separately.

A claim limitation may be present in an accused [product or process] in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused [product or process] just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in an accused [product or process] under the doctrine of equivalents if the differences between them are insubstantial. One way to determine this is to look at whether or not the accused [product or process] performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the [structure or step] of the accused [product or process] and the [structure or step] recited in the patent claim limitation are interchangeable. A person of ordinary skill is a person with average education and training in the field.

Equivalents is determined at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

**[The following paragraphs should be used in addition to the above paragraphs in cases involving chemical compounds or chemical compositions:]**

As I have explained to you, claims ____ of the ____ patent are directed to a chemical compound or composition made up of certain listed ingredients. If you find that the accused product does not literally include every limitation of these claims because of changes to one or more of the ingredients of the claimed compound or composition, you may use another test to decide whether the changed ingredient is equivalent to the ingredient listed in the claim. That test is whether or not the changed ingredient has the same purpose, quality, and function as the claimed ingredient. In other words, you must consider whether the new ingredient in the accused **\*424** product and the ingredient listed in the claim serve the same purpose, have the same qualities when combined with the other ingredients of the chemical compound or composition, and perform the same function.

**NOTE**

Although at least one post-*Warner-Jenkinson* decision states that evidence of copying may be relevant to infringement under the doctrine of equivalents, *Advanced Display Systems, Inc.* v. *Kent State Univ.,* 212 F.3d 1272, 1287 (Fed. Cir. 2000), *Warner-Jenkinson* makes it plain that "intent plays no role in the application of the doctrine of equivalents." 520 U.S. 17, 36 (1997). *See also DeMarini Sports, Inc.* v. *Worth, Inc.,* 239 F.3d 1314, 1334 (Fed. Cir. 2001); *Moore U.S.A., Inc.* v. *Standard Register Co.,* 229 F.3d 1091, 1107 (Fed. Cir. 2000).

**AUTHORITIES**

*Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.,* 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co.* v. *Linde Air Prods. Co.,* 339 U.S. 605, 609 (1950); *Biovail Corp. Int'l* v. *Andrx Pharms., Inc.,* 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Bayer AG* v. *Elan Pharm, Research Corp.,* 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Pennwalt Corp.* v. *Durand-Wayland, Inc.,* 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*).

**\*425  8.4 LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS**

The patent law places certain limits on the doctrine of equivalents. It is my duty to decide whether or not any of these limitations applies in this case and to instruct you on my decision. You must use my instruction in considering both infringement and invalidity.

One limit on the doctrine of equivalents occurs as the result of changes to the patent claims or arguments that the patent owner made in order to obtain his or her patent. A patent owner may not include within the patent claims [[products or processes]] that he or she gave up in order to obtain his or her patent.

In this case, the following limitations apply to the claims of the _____ patent.

**[Court to supply any prosecution history estoppel.]**

Another limit on the doctrine of equivalents occurs when the patent specification describes a specific role or function for a claim limitation. When this occurs, any equivalent structure must fill substantially the same role as that described in the patent for that limitation. In this case, this limitation applies as follows:

**[Court to supply any such limit.]**

**NOTE**

Another limitation on the doctrine of equivalents has been recognized by some Federal Circuit decisions. In *Maxwell* v. *J. Baker, Inc.,* 86 F.3d 1098 (Fed. Cir. 1996), the Court held that subject matter that is disclosed but not claimed in a patent cannot be included within the range of equivalents to which the patent claims are entitled. The Federal Circuit took a different view, however, in *YBM Magnex, Inc.* v. *International Trade Commission,* 145 F.3d 1317 (Fed. Cir. 1998), where the Court held that disclosed but unclaimed subject matter may fall within the claims' range of equivalents.

It is expected that this apparent conflict will be resolved in *Johnson & Johnston Associates, Inc.* v. *R.E. Service Co., Inc.,* 238 F.3d 1347 (Fed. Cir. 2001), where the Federal Circuit ordered, *sua sponte,* that the case be heard en banc to determine "whether and under what circumstances a patentee can rely upon the doctrine of equivalents with respect to unclaimed subject matter disclosed in the specification."

**AUTHORITIES**

*Forest Labs.* v. *Abbott Labs.,* 239 F.3d 1305, 1314 (Fed. Cir. 2001); *Biovail Corp.* v. *Andrx Pharms., Inc.,* 239 F.3d 1297, 1301-02 (Fed. Cir. 2001); *Litton Sys., Inc.* v. *Honeywell Inc.,* 238 F.3d 1376, 1380 (Fed. Cir. 2001); **\*426** *Johnson & Johnston Associates, Inc.* v. *R.E. Service Co.,* 238 F.3d 1347 (Fed. Cir. 2001); *Pioneer Magnetics, Inc.* v. *Micro Linear Corp.,* 238 F.3d 1341, 1344 (Fed. Cir. 2001); *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558 (Fed. Cir. 2000) (*en banc*); *Moore U.S.A., Inc.* v. *Standard Register Co.,* 229 F.3d 1091, 1106 (Fed. Cir. 2000); *Vehicular Technologies Corp.* v. *Tital Wheel International, Inc.,* 212 F.3d 1377, 1381-83 (Fed. Cir. 2000); *Bayer AG* v. C *Elan Pharmaceutical Research Corp.,* 212 F.3d 1241, 1251-54 (Fed. Cir. 2000); *K-2 Corp.* v. *Salomon S.A.,* 191 F.3d 1356, 1366-68 (Fed. Cir. 1999); *Tronzo* v. *Biomet, Inc.,* 156 F.3d 1154, 1160 (Fed. Cir. 1998); *YBM Magnex, Inc.* v. *Int'l Trade Comm'n,* 145 F.3d 1317, 1320-22 (Fed. Cir. 1998); *Gentry Gallery, Inc.* v. *Berkline Corp.,* 134 F.3d 1473, 1477 (Fed. Cir. 1998); *Sage Products, Inc.* v. *Devon Industries, Inc.,* 126 F.3d 1420, 1423 (Fed. Cir. 1997); *Ekchian* v. *Home Depot, Inc.,* 104 F.3d 1299, 1303-04 (Fed. Cir. 1997); *Cole* v. *Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996); *Applied Materials, Inc.* v. *Advanced Semiconductor Materials America, Inc.,* 98 F.3d 1563, 1573-74 (Fed. Cir. 1996); *Maxwell* v. *J. Baker, Inc.,* 86 F.3d 1098, 1106-08 (Fed. Cir. 1996); *Unique Concepts, Inc.* v. *Brown,* 939 F.2d 1558, 1563-64 (Fed. Cir. 1991).

**\*427  8.5 INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS**

[Use the following instruction when infringement under the doctrine of equivalents is not an issue in the case:]

As I told you, a means-plus-function claim limitation describes a means for performing a particular function. To prove that an accused product includes a structure that is covered by a means-plus-function limitation, a patent owner must prove, first, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, the structure of the accused product that performs that function must be either identical or equivalent to the corresponding structure disclosed in the patent specification.

Whether or not the structure of the accused product is equivalent to the structure disclosed in the patent is decided from the perspective of a person of ordinary skill in the art. A person of ordinary skill is a person of average education and training in the field. A structure is equivalent if such an ordinary skilled person would consider the differences between the accused structure and the structure in the patent to be insubstantial.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the art believe that the structure disclosed in the specification and the structure of the accused product are interchangeable. Another way is to determine whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.

Let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The patent in our example discloses glue to secure the legs to the tabletop. Let's assume that the accused device uses nails. They both perform the claimed function of securing the legs to the tabletop. The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, and whether in the patent or prosecution history the two are referred to as equivalent.

## AUTHORITIES

35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc.* v. *Haas Automation, Inc.,* 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc.* v. *Deere & Co.,* 224 F.3d 1374, 1380 (Fed. Cir. 2000); **\*428** *Odetics, Inc.* v. *Storage Tech. Corp.,* 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc.* v. *Int'l Game Tech.,* 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al- Site Corp.* v. *VSI Int'l, Inc.,* 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.,* 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *B. Braun Med. Inc.* v. *Abbott Labs.,* 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).

## **\*429** 8.6 INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

[Use the following instruction instead of Instruction 8.5 when infringement under the doctrine of equivalents is an issue in this case:]

As I told you, a means-plus-function claim limitation describes a means for performing a particular function. A means-plus-function limitation may be present in an accused product literally or under the doctrine of equivalents.

To prove that an accused product includes a structure that is literally covered by a means-plus-function limitation, a patent owner must prove, first, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product that performs that function must be either identical or equivalent to the corresponding structure disclosed in the patent specification.

If the function performed by the structure is not identical to the function recited in the means-plus-function limitation, the patent owner may prove that the accused product is covered by the means-plus-function limitation under the doctrine of equivalents. To prove equivalents, the patent owner must prove, first, that the accused product contains a structure that performs an equivalent function to the one recited in the claim limitation, and second, that the structure that performs that function is identical or equivalent to the structure described in the patent specification.

Whether or not the structure or function of the accused product is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the field of the invention. A person of ordinary skill is a person of average education and training in the field. A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the art believe that the structure disclosed in the specification and the structure of the accused product are interchangeable. Another way is to determine whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.

Let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The patent in our example discloses glue to secure the legs to the tabletop. Let's assume that the accused device uses nails. They both perform the claimed function of securing the legs to the tabletop. The fact that nails and glue are different **\*430** does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, and whether in the patent or prosecution history the two are referred to as equivalent.

[NOTE: Recently, the Federal Circuit has applied a temporal approach to the infringement analysis of means-plus-function claims. The Court explained that:

> a structural equivalent under section 112 must have been available at the time of the issuance of the claim. An equivalent structure or act under section 112 cannot embrace technology developed after the issuance of the patent because the literal meaning of a claim is fixed upon issuance. An "after-arising equivalent" infringes, if at all, under the doctrine of equivalents.

*Al-Site Corp.* v. *VSI International, Inc.,* 174 F.3d 1308, 1311 (Fed. Cir. 1999) (internal citations omitted); *see also* *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Industries, Inc.,* 145 F.3d 1303, 1310 (Fed. Cir. 1998).

Under those cases, include the following additional instruction:]

Equivalents is determined as of the issuance of the patent, in this case ____. In deciding whether or not a structure in [defendant's] product is included in the means-plus-function limitation of claims ____ of the ____ patent, you must first decide whether or not the technology used in the structure of [defendant's] product that relates to the means-plus-function limitation was known on the date the ____ patent issued. Under the patent laws, a structure that incorporates technology that was developed after the issuance of the patent cannot be literally included in the means-plus-function limitations of that patent.

Thus, if you find that the technology incorporated in the structure of [[defendant's] product was developed after the ____ patent issued, then you can only consider whether or not the means-plus-function limitations of the ____ patent claims are included in [defendant's] product under the doctrine of equivalents.

## AUTHORITIES

35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc.* v. *Haas Automation, Inc.,* 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc.* v. *Deere & Co.,* 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc.* v. *Storage Tech. Corp.,* 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc.* v. *Int'l Game Tech.,* 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp.* v. *VSI Int'l, Inc.,* 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); **\*431** *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.,* 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *B. Braun Med. Inc.* v. *Abbott Labs.,* 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).

**\*432  8.7 DETERMINATION OF INFRINGEMENT**

Taking each claim of the _____ patent separately, if you find that [[plaintiff has proved that it is more probable than not that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in [defendant's] accused [product or process] then you must find that [defendant's] [product or process] infringes that claim.

**\*433  8.8 THE EXPERIMENTAL USE EXCEPTION**

The patent law regards the use of a [product or process] for an experimental purpose differently from use for a commercial purpose. Thus, the law provides an exception to infringement when the accused [product or process] was used strictly for experimental purposes. This is known as the "experimental use exception."

The experimental use exception permits someone to use a [product or process] covered by a patent without the patent owner's permission, as long as the use is merely for philosophical experiments, or to determine whether a [product or process] will work for its intended purpose. Such uses are not an infringement of a patent. Where, however, a use is in connection with a commercial purpose, the experimental use exception does not apply, and the use will be an infringement.

[Defendant] asserts that its use of the accused [product or process] falls within the experimental use exception and, therefore, does not infringe claims _____ of the _____ patent. If you find that [defendant's] use of the accused [product or process] was merely for philosophical purposes, or to determine whether the accused [product or process] will work for its intended purpose, then you should find [defendant's] use to be experimental, and thus not an infringement of the _____ patent. If, however, you find that [[defendant's] use of the accused [product or process] was in connection with a commercial purpose of [defendant], then you should find that use not to have been experimental. In that case, the experimental use exception to infringement will not apply.

**AUTHORITIES**

35 U.S.C. § 271(e)(1) (Supp. 2000); *Embrex, Inc.* v. *Serv. Eng'g Corp.,* 216 F.3d 1343, 1349 (Fed. Cir. 2000); *Roche Prods., Inc.* v. *Bolar Pharm. Co.,* 733 F.2d 858 (Fed. Cir. 1984).

**\*434  8.9 INFRINGEMENT OF PRODUCT-BY-PROCESS CLAIMS**

**[There is a split in authority in the Court of Appeals for the Federal Circuit regarding infringement of product-by-process claims. Under** *Scripps Clinic & Research Foundation* **v.** *Genentech Inc.,* **927 F.2d 1565 (Fed. Cir. 1991), the following jury instruction should be used:]**

As I told you, a product-by-process claim describes a product in terms of the process by which it is made. In order for a product to infringe a product-by-process claim, the accused product must be the same as or equivalent to the product described in the claim. It is not necessary, however, that the product actually be produced using the method described in the claim.

Claims _____ of the _____ patent are product-by-process claims. If you find that [plaintiff] has proved that it is more probable than not that [[defendant's] [product] is the same as or equivalent to the product described in the claims, then you must find that [defendant's] product infringes the claims.

**[Under** *Atlantic Thermoplastics Co., Inc.* **v.** *Faytex Corp.,* **970 F.2d 834 (Fed. Cir. 1992), the following jury instruction should be used:]**

As I told you, a product-by-process claim describes a product by the process by which it is made. In order for a product to infringe a product-by-process claim, it must be made by the same or an equivalent process to the one recited in the claim.

Claims _____ of the _____ patent are product-by-process claims. If you find that [[plaintiff] has proved that it is more probable than not that [defendant's] product is the same as or equivalent to the product described in the claims, and was made by the same process as the process recited in the claims, then you must find that [defendant's] product infringe those claims.

## AUTHORITIES

*Vanguard Prods. Corp.* v. *Parker Hannifin Corp.,* 234 F.3d 1370, 1372-73 (Fed. Cir. 2000); *Exxon Chem. Patents, Inc.* v. *Lubrizol Corp.,* 64 F.3d 1553, 1557-58 (Fed. Cir. 1995); *Atlantic Thermoplastics Co.* v. *Faytex Corp.,* 974 F.2d 1279 (Fed. Cir. 1992); *Scripps Clinic & Research Found.* v. *Genentech, Inc.,* 927 F.2d 1565, 1583 (Fed. Cir. 1991); *Atlantic Thermoplastics Co.* v. *Faytex Corp.,* 970 F.2d 834, 837 (Fed. Cir. 1992); *Mentor Corp.* v. *Colopast, Inc.,* 998 F.2d 992, 997 (Fed. Cir. 1993); *Scripps Clinic & Research Found.* v. *Genentech, Inc.,* 927 F.2d 1565 (Fed. Cir. 1991).

**\*435  8.10 INFRINGEMENT OF DEPENDENT CLAIMS**

My instructions on infringement so far have related to independent claims. As I told you, the ____ patent also contains dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that independent claim ____ of the ____ patent has been infringed, you must separately determine whether dependent claim ____ has been infringed. [If you find that the independent claims are not infringed, then you must also find that the dependent claims are not infringed.] [FNa1]

## AUTHORITIES

*Jeneric/Pentron, Inc.* v. *Dillon Co.,* 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp.* v. *United States Int'l Trade Comm'n,* 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co.* v. *David Geoffrey & Assocs.,* 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co.* v. *Frontier, Inc.,* 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

[FNa1]. **Note: The bracketed sentence describes the general rule that dependent claims cannot be infringed if the claims from which they depend are not infringed.** *Wahpeton Canvas Co.* **v.** *Frontier, Inc.,* **870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989). An exception to this rule may exist in the context of infringement under the doctrine of equivalents. If a finding of no infringement under the doctrine of equivalents of an independent claim is based upon limits to the range of equivalents imposed by the prior art, the dependent claims may nevertheless be infringed because "it does not automatically follow that the ranges of equivalents of these narrower [dependent] claims would encompass the prior art."** *Wilson Sporting Goods Co.* **v.** *David Geoffrey & Assocs.,* **904 F.2d 677, 685-86 (Fed. Cir. 1990).**

**\*436  8.11 INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION**

[Defendant] has presented evidence that its [product or process] accused of infringement represents an improvement of the invention described in the ____ patent claims. Proof of this fact does not necessarily mean that the accused [product or process] does not infringe [plaintiff's] patent claims. The tests for infringement remain as I have instructed you. As long as you find [[defendant's accused [product or process] includes all of the limitations of at least one of the ____ patent claims, either literally or under the doctrine of equivalents, then you must find that the ____ patent claims are infringed by [defendant's] accused [product or process], despite defendant's improvements.

## AUTHORITIES

*National Presto Indus., Inc.* v. *West Bend Co.,* 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *Zygo Corp.* v. *Wyko Corp.,* 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Hoechst Celanese Corp.* v. *BP Chems. Ltd.,* 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung* v. *Renishaw, PLC,* 945 F.2d 1173, 1179 (Fed. Cir. 1991); *Marsh-McBirney, Inc.* v. *Montedoro-Whitney*

*Corp.,* 882 F.2d 498, 504 (Fed. Cir. 1989), *Atlas Powder Co.* v. *E. I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1580-81 (Fed. Cir. 1984).

### *437 8.12 INDIRECT INFRINGEMENT

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. There are two types of indirect infringement -- inducing infringement and contributory infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement". The act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention is called contributory infringement.

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that [defendant] is inducing another person to infringe or contributing to the infringement of another, [plaintiff] must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent.

In this case, [plaintiff] accuses [defendant] of [inducing or contributing to the] infringement of claims ____ of the ____ patent. [Plaintiff] must prove that it is more probable than not that [defendant] has [induced or contributed to the] infringement of any of these claims.

### AUTHORITIES

*Aro Mfg. Co.* v. *Convertible Top Replacement Co.,* 365 U.S. 336, 340-41 (1961); *Arthur A. Collins, Inc.* v. *N. Telcom Ltd.,* 216 F.3d 1042, 1049 (Fed. Cir. 2000); *Porter* v. *Farmers Supply Serv., Inc.,* 790 F.2d 882, 884-86 (Fed. Cir. 1986).

### *438 8.12.1 INDUCING PATENT INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've just told you, can occur unintentionally. In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of a patent and encouraged or instructed another person to [use a product or perform a process] in a manner that infringes the patent. The patent owner must also prove that it is more probable than not that the other person infringed the patent. A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

[Plaintiff] asserts that [defendant] induced patent infringement. [Plaintiff] must prove four things by the more probable than not standard:

First, [defendant] encouraged or instructed another person how to [use a product or perform a process] in a manner that you, the jury, find infringes the ____ patent claims.

Second, [defendant] knew of the ____ patent.

Third, [defendant] knew or should have known that his or her encouragement or instructions would likely result in the other person doing that which you find to be an infringement of the ____ patent.

Fourth, the other person infringed the ____ patent.

If, and only if, you are persuaded of each of these four things may you find that [defendant] induced patent infringement.

### NOTE

Long-standing Federal Circuit case law held that inducement to infringe requires a showing of "actual intent to cause the acts which constitute the infringement." *E.g., Hewlett-Packard Co.* v. *Bausch & Lomb Inc.,* 909 F.2d 1464 (Fed. Cir. 1990). *But see Manville Sales Corp.* v. *Paramount Systems, Inc.,* 917 F.2d 544 (Fed. Cir. 1990), in which the Federal Circuit reversed a district court's holding of inducement to infringe in light of evidence that defendant had relied

in good faith on an opinion of counsel and, therefore, lacked the specific intent required to induce infringement. *See also Micro Chemical, Inc.* v. *Great Plains Chemical Co.,* 194 F.3d 1250 (Fed. Cir. 1999) (finding that defendant had taken "reasonable steps to avoid [inducing] infringement," including obtaining an opinion of counsel.)

**\*439  AUTHORITIES**

35 U.S.C. § 271(b) (1984); *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.,* 145 F.3d 1303, 1311-12 (Fed. Cir. 1998); *Insituform Techs., Inc.* v. *Cat Contracting, Inc.,* 161 F.3d 688, 695 (Fed. Cir. 1998); *Carborundum Co.* v. *Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *Joy Techs., Inc.* v. *Flakt, Inc.,* 6 F.3d 770, 774-76 (Fed. Cir. 1993); *Manville Sales Corp.* v. *Paramount Sys., Inc.,* 917 F.2d 544, 553-54 (Fed. Cir. 1990); *Hewlett-Packard Co.* v. *Bausch & Lomb Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

**\*440  8.12.2 CONTRIBUTORY INFRINGEMENT**

Contributory infringement can occur when a supplier provides a part, or component, to another for use in a patented product or machine, or in a patented process. In order for there to be contributory infringement, the person who received the component must infringe the patent. The component must also have certain characteristics. First, the component must be a material part of the invention. Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not have a substantial use that does not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple, or commodity, article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

In this case, [plaintiff] asserts that [defendant's] selling or supplying _____ is a contributing infringement of claims _____ of the _____ patent. In order to establish that [defendant] has contributorily infringed claims _____ of the _____ patent, [plaintiff] must prove five things by the more probable than not standard. These five things are:

First, [defendant] knew of the _____ patent.

Second, _____ is a material component of the claimed invention and [[defendant] sold or supplied that component. Third, [defendant] knew that the component was especially made for use in a manner that infringes the patent claims. Fourth, the component is not a staple or commodity article.

Fifth, the component was actually used in a manner that you find infringes the _____ patent.

**AUTHORITIES**

35 U.S.C. § 271(c) (Supp. 2000); *Aro Mfg. Co.* v. *Convertible Top Replacement Co.,* 377 U.S. 476 (1964); *Serrano* v. *Telular Corp.,* 111 F.3d 1578, 1583-84 (Fed. Cir. 1997); *Sage Prods., Inc.* v. *Devon Indus., Inc.,* 45 F.3d 1575, 1577 (Fed. Cir. 1995); *Carborundum Co.* v. *Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *FMC Corp.* v. *Up-Right, Inc.,* 21 F.3d 1073, 1076 (Fed. Cir. 1994); *Joy Techs., Inc.* v. *Flakt, Inc.,* 6 F.3d 770, 774-76 (Fed. Cir. 1993); *Trell* v. *Marlee Elecs. Corp.,* 912 F.2d 1443, 1448 (Fed. Cir. 1990); *C.R. Bard, Inc.* v. *Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 673 (Fed. Cir. 1990); *Hewlett-Packard Co.* v. *Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Hodosh* v. *Block Drug Co.,* 833 F.2d 1575, 1578-79 (Fed. Cir. 1987); *Preemption Devices, Inc.* v. *Minnesota Mining & Mfr. Co.,* 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**\*441  9. WILLFUL INFRINGEMENT**

[Plaintiff] also contends that [defendant] has willfully infringed the ____ patent claims. If you find on the basis of the evidence and the law as I have explained it, that [defendant] directly or indirectly infringes at least one claim of the ____ patent, you must then decide whether or not [defendant's] infringement was willful.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person did not do this and is found to have infringed the patent claims, then the infringement was willful.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which [plaintiff] is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that [defendant] willfully infringed the ____ patent claims, then it is my job to decide whether or not to award increased damages to [plaintiff].

Although, as I explained before, [plaintiff] must prove infringement by the more probable than not standard, the burden of proving that the infringement was willful is by the highly probable standard.

To establish willful infringement, [plaintiff] must prove two things by the highly probable standard. First, [plaintiff] must prove that [defendant] was aware of the ____ patent. Second, [plaintiff] must prove that [defendant] proceeded with the activities that are accused of infringement without a good faith belief that the patent was either invalid, or not infringed, or both.

In determining whether on not [defendant] acted in good faith, you should consider all of the circumstances, including whether or not [defendant] obtained and followed the advice of a competent lawyer. Although the absence of a lawyer's opinion does not require you to find willfulness, the obtaining and following of a lawyer's advice may be evidence that infringement was not willful.

[In evaluating [defendant's] reliance on the advice of a lawyer, you should consider when [defendant] obtained the advice, the quality of the information [[defendant] provided to the lawyer, the competence of the lawyer's opinion, and whether or not [defendant] relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.]

Another factor you should consider in determining willfulness is whether or not, in designing the [product or process] accused of infringement, [defendant] copied the disclosures of **\*442** the ____ patent, or whether or not [[defendant] instead tried to "design around" the patent by designing a [product or process] that [defendant] believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that [defendant] attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful.

The fact that you may have determined that [defendant] was wrong and that the ____ patent is infringed does not mean that [defendant's] infringement was willful. All that is required to avoid a finding of willful infringement is that [defendant] had a good faith belief that it did not infringe or that the patent was invalid, and that [defendant's] belief was reasonable under all of the circumstances.

## AUTHORITIES

35 U.S.C. § 284 (2000); *WMS Gaming Inc.* v. *Int'l Game Tech.,* 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp.* v. *United States Gypsum Co.,* 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University* v. *Cellpro,* 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm., Inc.* v. *Harris Corp.,* 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc.* v. *Advanced Tech. Labs.,* 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat'l Presto Indus.* v. *West Bend Co.,* 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp.* v. *Intermedics Orthopedics Inc.,* 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Amsted Indus. Inc.* v. *Buckeye Steel Castings Co.,* 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp.* v. *Int'l Paper Co.,* 991 F.2d 735, 745 (Fed. Cir. 1993); *Ortho Pharmaceutical Corp.* v. *Smith,* 959 F.2d 936, 944 (Fed. Cir. 1992);

*Read Corp.* v. *Portec, Inc.,* 970 F.2d 816, 826 (Fed. Cir. 1992); *Studiengesellschaft Kohle* v. *Dart Indus., Inc.,* 862 F.2d 1564, 1579 (Fed. Cir. 1988).

**\*443  10. VALIDITY**

**10.1 VALIDITY IN GENERAL**

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new", "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss defendants' grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

[Defendant] has challenged the validity of the ____ patent claims on a number of grounds. [Defendant] must prove a patent claim is invalid by the highly probable standard.

I will now explain to you each of [defendant's] grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

**NOTE**

Patents are entitled to a presumption of validity. The presumption of validity, like all legal presumptions, is a procedural device. It "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption...." F. R. Evid. 301; *DMI, Inc.* v. *Deere & Co.,* 802 F.2d 421, 427 (Fed. Cir. 1986). As the Court of Appeals for the Federal Circuit has recognized, "[t]he presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence...." *Avia Group Int'l, Inc.* v. *L.A. Gear California,* 853 F.2d 1557, 1562 (Fed. Cir. 1988).

In light of the procedural role of the presumption of validity, instructing the jury on the presumption in addition to informing it of the clear and convincing burden of proof may cause jury confusion as to its role in deciding invalidity. This instruction, therefore, omits any reference to the presumption of validity.

**\*444  10.2 WRITTEN DESCRIPTION**

A patent must contain a written description of the [product or process] claimed in the patent. In order to satisfy the written description requirement the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.

[Defendant] contends that claims ____ of the ____ patent are invalid for lack of an adequate written description of the claimed invention. If you find that [[defendant] has proved that it is highly probable that the ____ patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

**AUTHORITIES**

*Purdue Pharma L.P.* v. *Faulding, Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp.* v. *Am. Power Prods., Inc.,* 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Reiffin* v. *Microsoft Corp.,* 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Ca.* v. *Atl. Richfield Co.,* 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Sun Tiger Inc.* v. *Scientific Research Funding Group,* 189 F.3d 1327, 1334 (Fed. Cir. 1999); *Tronzo* v. *Biomet Inc.,* 156 F.3d 1154, 1158-60 (Fed. Cir. 1998); *Gentry Gallery, Inc.* v. *Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed. Cir. 1997).

**\*445 10.3 ENABLEMENT**

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the invention. This is referred to as the enablement requirement. If the patent does not enable a skilled person to practice the [[product or process] of a patent claim then the claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. A written description is enabling so long as undue experimentation is not needed. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

[Defendant] contends that claims _____ of the _____ patent are invalid for lack of enablement. If you find that [defendant] has proved that it is highly probable that the written description in the _____ patent does not enable a skilled person to make and use a [product or process] covered by any of these claims without undue experimentation, then you must find that the claim is invalid.

**AUTHORITIES**

*Union Pac. Resources Co.* v. *Chesapeake Energy Corp.,* 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co.* v. *Archer-Daniels-Midland Co.,* 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Enzo Biochem, Inc.* v. *Calgene, Inc.,* 188 F.3d 1362, 1369-78 (Fed. Cir. 1999); *Nat'l Recovery Techs., Inc.* v. *Magnetic Separation Sys., Inc.,* 166 F.3d 1190, 1195-98 (Fed. Cir. 1999).

**\*446 10.4 BEST MODE**

The patent laws require that if the inventor knew of a best way, or "mode" of making and using the claimed invention at the time the application for the patent was filed, then the patent specification must contain a description of that mode. This is called the "best mode" requirement.

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure of how to carry out the invention claimed in the patent. It prevents an inventor from obtaining a patent, while at the same time not disclosing to the public his or her preferred way of making or using the claimed invention. The inventor must disclose the best mode he or she knew of for carrying out the invention as it is described in the patent claims.

Determining whether or not an inventor disclosed his best mode involves answering two questions. The first question relates to what the inventor knew at the time the application for the patent was filed. In this case, that date is _____. The first question is: At the time the application was filed, did the inventor know of a way, or mode, of making or using the invention claimed in the patent that the inventor considered to be better than any other way? This first question is subjective; that is, it involves what the inventor thought or believed.

If you find that the answer to the first question is no, that is, the inventor did not know of a best mode of making or using his or her invention at the time the application was filed, you should stop there. The patent cannot be invalid for failure to disclose the best mode if the inventor did not know of a best mode when the application was filed.

If you find that the inventor did have a best mode at the time the application was filed, then you must consider the second question, which is: Does the patent contain a description of the inventor's best mode that is sufficient to enable a person skilled in the art to carry out the best mode? This question is objective. It depends, not on what the inventor thought or understood, but rather what a person skilled in the field of the invention reading the patent would understand.

A patent describes the best mode if it contains enough information that a skilled person reading the patent would be able to carry out the best mode without undue experimentation. That means that a skilled person reading the patent would be able to make and use the best mode of the invention using only an amount of experimentation that

is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

[Defendant] contends that claims _____ of the _____ patent are invalid for failure to disclose the best mode. If you find that the [defendant] has proved that it is highly probable that (1) the inventor on the _____ patent had a best mode of practicing the invention claimed in claims _____ of the _____ patent at the time the application was filed, and (2) the _____ patent does not contain a written description that would enable a skilled person to make and use that best mode without undue experimentation, then you must find that these claims are invalid.

**\*447  AUTHORITIES**

*Mentor H/S, Inc.* v. *Med. Device Alliance, Inc.,* No. 99-1532, 00-1165, 2001 U.S. App. Lexis 6033 (Fed. Cir. 2001); *Eli Lilly & Co.* v. *Barr Labs., Inc.,* 222 F.3d 973, 980-84 (Fed. Cir. 2000); *N.* *Telecom Ltd.* v. *Samsung Elects. Co.,* 215 F.3d 1281, 1285-89 (Fed. Cir. 2000); *United States Gypsum Co.* v. *Nat'l Gypsum Co.,* 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Glaxo Inc.* v. *Novopharm Ltd.,* 52 F.3d 1043, 1049-52 (Fed. Cir. 1995).

**\*448  10.5 DEFINITENESS**

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

Defendant contends that claims _____ of the _____ patent are invalid because the language of the claims is indefinite. [[Defendant] contends that claims _____ of the _____ patent are indefinite because they use the word "about" to modify the claim term _____. The use of the word "about," or similar language, does not by itself cause the claim to be indefinite. In order to decide whether or not the use of the word "about" in claims _____ renders those claims indefinite, you must consider whether or not the _____ patent provides some guidance about what is included within the claim term "about _____." You must also consider whether or not a person of ordinary skill in the field reading the patent would understand what is included within the claim term.]

If you find that [defendant] has proved that it is highly probable that claims _____ of the _____ patent are indefinite because a person of ordinary skill in the art would not understand what is and what is not covered by the claims, then you must find that those claims are invalid.

**AUTHORITIES**

*Union Pac. Resources Co.* v. *Chesapeake Energy Corp.,* 236 F.3d 684, 692 (Fed. Cir. 2001); *Solomon* v. *Kimberly-Clark Corp.,* 216 F.3d 1372, 1378-80 (Fed. Cir. 2000); *Atmel Corp.* v. *Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378-82 (Fed. Cir. 1999); *Personalized Media Communications, L.L.C.* v. *Int'l Trade Comm'n,* 161 F.3d 696, 700 (n.5), 705 (Fed. Cir. 1998); *In re Dossel,* 115 F.3d 942 (Fed. Cir. 1997); *In re Donaldson Co.,* 16 F.3d 1189 (Fed. Cir. 1994); *N.* *Am. Vaccine, Inc.* v. *Am. Cynamid Co.,* 7 F.3d 1571, 1579-80 (Fed. Cir. 1993).

**\*449  10.6 THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

[Defendant] is relying on various items of prior art. [Defendant] and [[plaintiff] agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the _____ patent:

**[List uncontested prior art]**

[Defendant] is also relying on items that [plaintiff] does not agree are prior art. [Defendant] must prove by the highly probable standard that these items are prior art. In order to do so, [defendant] must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include **[list only categories that apply to the items of contested prior art]:**

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed.

Third, anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

Fourth, anything that was invented by another person **in this country** [FNa2] before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

Fifth, anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.

## *450  10.6.1 PRIOR ART -- DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

**[If the date of invention is not in dispute:]**

In this case the date of invention is _____.

**[If the date of invention is in dispute:]**

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

**[Include the following only to the extent it is relevant to issues in the case:]**

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice." In this case, that date is _____. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to **\*451** practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by [defendant] in this case.

## AUTHORITIES

*Mycogen Plant Sci., Inc.* v. *Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh* v. *Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Genentech Inc.* v. *Chiron Corp.,* 220 F.3d 1345, 1351 (Fed. Cir. 2000); *Bruning* v. *Hirose,* 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Cooper* v. *Goldfarb,* 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt* v. *Boone,* 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc.* v. *L'Oreal, S.A.,* 129 F.3d 588, 592-93 (Fed. Cir. 1997); *Mahurkar* v. *C.R. Bard, Inc.,* 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Griffith* v. *Kanamaru,* 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey* v. *Kollonitsch,* 806 F.2d 1024, 1026 (Fed. Cir. 1986).

[FNa2]. **NOTE: Newly amended § 102(g)(1) provides for reliance on activities in NAFTA or WTA countries if those activities were successfully relied on to prove priority of invention in an interference. If this applies to your case, omit the words "in this country," otherwise include them.**

### *452  10.6.2 PRIOR ART -- PRIOR KNOWLEDGE OR USE BY ANOTHER IN THE UNITED STATES

Knowledge or use in the United States of a patented invention can be prior art to the patent claims. The knowledge or use will be prior art if it meets the following requirements:

First, the knowledge or use must be by someone other than the inventor.

Second, the knowledge or use must be before the inventor's date of invention.

Third, the knowledge or use must be in the United States. Prior knowledge or use outside the United States cannot be relied upon to invalidate a patent claim.

Fourth, the knowledge or use must have been public. Private or secret knowledge or use by someone other than the inventor is not prior art.

In this case, [defendant] relies on _____ as a prior public knowledge or use before the date of invention of the ____ patent.

**[NOTE: Use this instruction only when prior public use more than one year before the application filing date under 35 U.S.C. § 102(b) is not at issue in the case.]**

## AUTHORITIES

*Woodland Trust* v. *Flowertree Nursery, Inc.,* 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.,* 107 F.3d 1565, 1570 (Fed. Cir. 1997); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.,* 78 F.3d 540, 544 (Fed. Cir. 1996).

### *453 10.6.3 PRIOR ART -- PUBLIC USE MORE THAN ONE YEAR BEFORE THE APPLICATION WAS FILED

The use of a product or process of a patent claim more than one year before the filing date of the application for the patent may be prior art to the patent claim.

First, the use must occur more than one year before the patent application was filed. In this case, that date is ____. The date of invention for the patent claims is irrelevant to this category of prior art. If the public use is more than one year before the patent application was filed, then that public use may be prior art, regardless of the date of invention.

Second, the use may be by anyone, whether the inventor, the patent owner, or anyone else.

Third, if the use was by someone other than the inventor, the use must have been public.

Fourth, a use more than one year before the application filing date by the inventor or the patent owner will be prior art if it was for commercial purposes, even if done in secret.

In this case, [defendant] relies on ____ as a public use more than one year before the filing date of the application for the ____ patent.

**[NOTE: Use this instruction only when prior knowledge or use under 35 U.S.C. § 102(a) is not at issue in the case.]**

## AUTHORITIES

*Mitsubishi Electric Corp.* v. *Ampex Corp.,* 190 F. 3d 1300, 1303-05 (Fed. Cir. 1999); *Woodland Trust* v. *Flowertree Nursery, Inc.,* 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Evans Cooling Sys., Inc.* v. *Gen. Motors Corp.,* 125 F.3d 1448, 1452-54 (Fed. Cir. 1997); *Lough* v. *Brunswick Corp.,* 103 F.3d 1517 (Fed. Cir. 1997); *Lough* v. *Brunswick Corp.,* 86 F.3d 1113, 1119 (Fed. Cir. 1996); *Baxter Int'l, Inc.* v. *Cobe Labs., Inc.,* 88 F.3d 1054, 1058-60 (Fed. Cir. 1996).

**\*454  10.6.4 PRIOR ART -- PRIOR PUBLIC USE OR KNOWLEDGE**

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances. The first is where the invention was known to or used by someone other than the inventor before the date of invention of the inventor on the patent. The second is where the invention was publicly used by the inventor, the patent owner, or anyone else more than one year before the application for the patent was filed.

In both circumstances, the public use must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention of the inventor on the patent or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant. A public use more than one year before the patent application was filed may be prior art regardless of the date of invention.

A prior use more than one year before the application filing date by the inventor or the patent owner will be prior art if it was for commercial purposes, even if it was done in secret.

In this case [defendant] relies on _____ as a prior public use or knowledge before the inventor's date of invention, and [defendant] relies on _____ as a prior public use more than one year before the filing date of the application for the _____ patent.

**[NOTE: Use this instruction instead of instructions 10.6.2. and 10.6.3 when both prior knowledge or use under 35 U.S.C. § 102(a) and § 102(b) are at issue in the case.]**

## AUTHORITIES

*Woodland Trust* v. *Flowertree Nursery, Inc.,* 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.,* 107 F.3d 1565, 1570 (Fed. Cir. 1997).

**\*455  10.6.5 PRIOR ART -- ON-SALE OR OFFERED FOR SALE MORE THAN ONE YEAR BEFORE THE APPLICATION WAS FILED**

The sale or offer for sale in the United States of a product may be prior art to a patent claim covering the product or a method of making the product if the product was sold or offered for sale more than one year before the application for the patent was filed. In this case, that date is _____. The date of invention for the patent claims is irrelevant to this category of prior art. If the sale or offer for sale of a product is more than one year before the patent application was filed, then the product or method of making it may be prior art, regardless of the date of invention.

If the sale or offer for sale was of a patented product, then it may be prior art regardless of who made the offer.

If the sale or offer for sale was of a product made by a patented process and if the sale or offer for sale is by the inventor, the patent owner, or a representative of the inventor or patent owner, then the process may be prior art to the patent claims, even if it was done in secret. This is because the law considers it unfair for a patent owner to get a commercial benefit from the invention while waiting more than one year before filing a patent application.

If the sale or offer for sale of a product made by a patented process was by someone other than the inventor, the patent owner, or a representative of the inventor or patent owner, then the sale or offer for sale of the product may make the process prior art only if the process was public. Secret use of a process by another person is not prior art, even if the product made by the process is sold.

In order for there to be an offer for sale, two requirements must be met. First, the product must have been the subject of a commercial offer for sale. Second, the product must be "ready for patenting."

Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.

An invention is ready for patenting if the product offered for sale has been developed to the point where there was reason to expect that it would work for its intended purpose. The product may be ready for patenting even if it is not ready for commercial production, or has not been technically perfected.

In this case, [defendant] relies on _____ as a [sale/offer for sale] more than one year before the filing date of the application for the ____ patent.

## *456 AUTHORITIES

*Pfaff* v. *Wells Elecs., Inc.,* 525 U.S. 55 (1998); *Monon Corp.* v. *Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257-61 (Fed. Cir. 2001); *Vanmoor* v. *Wal-Mart Stores, Inc.,* 201 F.3d 1363, 1366 (Fed. Cir. 2000); *STX, LLC* v. *Brine, Inc.,* 211 F.3d 588, 590 (Fed. Cir. 2000); *Zacharin* v. *United States,* 213 F.3d 1366, 1370 (Fed. Cir. 2000); *Brasseler, U.S.A.I. L.P.* v. *Stryker Sales Corp.,* 182 F.3d 888, 889 (Fed. Cir. 1999); *Con'l Plastic Containers* v. *Owens Brockway Plastic Prods., Inc.,* 141 F.3d 1073, 1077 (Fed. Cir. 1998); *D.L. Auld Co.* v. *Chroma Graphics Corp.,* 714 F.2d 1144, 1147 (Fed. Cir. 1983); *W.L. Gore & Assocs., Inc.* v. *Garlock, Inc.,* 721 F.2d 1540, 1548-50 (Fed. Cir. 1983).

## *457 10.6.6 EXPERIMENTAL USE

Under certain circumstances, the public use, sale or offer for sale by the inventor or patent owner of the claimed invention more than one year before filing the patent application is not prior art. This occurs when the public use was for experimental rather than commercial purposes.

In order to qualify as experimentation, the public use, sale or offer for sale must be by or for the benefit of the patent owner or inventor and must relate to the claimed features of the invention. It must also be for the purposes of technological development, not commercial gain. Any commercial gain that does occur must be merely incidental to the primary purpose of experimentation.

In this case, [plaintiff] asserts that its [use/sale/offer for sale] of ____ was an experimental use and, therefore, not prior art to the ____ patent claims.

## AUTHORITIES

*Monon Corp.* v. *Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257-61 (Fed. Cir. 2001); *Cont'l Plastic Containers* v. *Owens Brockway Plastic Prods., Inc.,* 141 F.3d 1073, 1079-80 (Fed. Cir. 1998); *Lough* v. *Brunswick Corp.,* 103 F.3d 1517 (Fed. Cir. 1997); *Baxter Int'l Inc.* v. *Cobe Labs., Inc.,* 88 F.3d 1054, 1059-60 (Fed. Cir. 1996); *Lough* v. *Brunswick Corp.,* 86 F.3d 1113, 1119 (Fed. Cir. 1996); *W. Marine Elecs., Inc.* v. *Furuno Elec. Co.,* 764 F.2d 840, 846-47 (Fed. Cir. 1985).

## *458 10.6.7 PRIOR ART -- PRIOR PRINTED PUBLICATION

Printed publications from anywhere in the world are prior art if the printed publications were published either before the inventor made the claimed invention, or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public. Thus, publications may include

not only such things as books, periodicals, or newspapers, they may also include publications that are not as widely available to the public, such as trade catalogues, journal articles, or scholarly papers that are distributed or available to those skilled in the art.

The date that a printed publication becomes prior art is the date that it becomes available to the public. Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims. The date of invention is irrelevant to this category of prior art.

In this case, [defendant] relies on _____ as a prior art printed publication to the _____ patent claims.

## AUTHORITIES

*Mahurkar* v. *C.R. Bard, Inc.,* 79 F.3d 1572, 1576 (Fed. Cir. 1996); *N. Telecom, Inc.* v. *Datapoint Corp.,* 908 F.2d 931, 936-37 (Fed. Cir. 1990); *In re Cronyn,* 890 F.2d 1158, 1159-61 (Fed. Cir. 1989); *Constant* v. *Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *In re Hall,* 781 F.2d 897, 899 (Fed. Cir. 1986); *Mass. Inst. of Tech.* v. *AB Fortia,* 774 F.2d 1104, 1108-09 (Fed. Cir. 1985); *In re Wyer,* 655 F.2d 221, 225 (C.C.P.A. 1981).

**\*459  10.6.8 PRIOR ART -- PRIOR INVENTION**

An invention made by another person before the inventor on the patent made the invention is prior art to the patent claim, unless that other person abandoned, suppressed, or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table on March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

**[Include the following only if it is an issue in the case:]**

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercised "reasonable diligence" in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

Let's change our example slightly. Mr. Smith conceived of his table on February 1 and reduced it to practice on April 1. Ms. Jones conceived of the table on January 1, one month before Mr. Smith's conception, and built it on May 1, one month after Mr. Smith's reduction to practice. If Ms. Jones was reasonably diligent in building the table between the time just before Mr. Smith's February 1 conception up to the time that she built the table on May 1, she is the first inventor of the table and her invention is prior art to Mr. Smith's patent claims.

The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

**\*460**  In this case, [defendant] contends that _____ was a prior invention to the _____ patent claims.

## AUTHORITIES

*Mycogen Plant Science, Inc.* v. *Monsanto Co.,* 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh* v. *Brake,* 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Genentech Inc.* v. *Chiron Corp.,* 220 F.3d 1345, 1351 (Fed. Cir. 2000); *Bruning* v. *Hirose,* 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Cooper* v. *Goldfarb,* 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt* v. *Boone,* 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc.* v. *L'Oreal, S.A.,* 129 F.3d 588, 593 (Fed. Cir. 1997); *Mahurkar* v. *C.R. Bard, Inc.,* 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Checkpoint Sys.* v. *The United States Int'l Trade Comm'n,* 54 F.3d 756, 761-63 (Fed. Cir. 1995); *Innovative Scuba Concepts, Inc.* v. *Feder Indus., Inc.,* 26 F.3d 1112, 1115-16 (Fed. Cir. 1994); *Griffith* v. *Kanamaru,* 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey* v. *Kollonitsch,* 806 F.2d 1024, 1026 (Fed. Cir. 1986); *Dunlop Holdings Ltd.* v. *Ram Golf Corp.,* 524 F.2d 33, 34 (7th Cir. 1975); *Palmer* v. *Dudzik,* 481 F.2d 1377, 1385-87 (C.C.P.A. 1973).

**\*461  10.6.9 PRIOR ART -- PRIOR PATENTS AND PATENT APPLICATIONS**

An issued patent may be prior art to a patent claim under a number of different circumstances. First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued either before the inventor made the claimed invention, or more than one year before the application for the patent was filed.

If a patent issued anywhere in the world more than one year before the application for the patent was filed, then that publication may be prior art, regardless of the date of invention for the claimed invention. The date of invention is irrelevant to this category of prior art.

A U.S. patent or published U.S. patent application may be prior art to a patent claim even if the patent issued or the patent application was published after the date of invention of a claimed invention. This occurs when the patent application for the U.S. patent was filed by another person before the inventor made the claimed invention.

In this case, [defendant] relies on _____ as a prior art [patent/patent application] to the ____ patent claims.

## AUTHORITIES

35 U.S.C. § 102(a), (b), and (e) (1984); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.,* 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu,* 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson,* 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc.* v. *Cobe Labs., Inc.,* 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld,* 925 F.2d 1450, 1452 (Fed. Cir. 1991).

**\*462  10.7 DERIVATION**

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else. An invention is said to be "derived" from another person if that other person conceived of the patented invention and communicated that conception to the inventor named in the patent. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort. Derivation may be of the invention itself or of an obvious variation of the invention.

If an inventor derived the patented invention from someone else, then the patent claims covering the invention are invalid.

In this case, [defendant] contends that claims ____ of the _____ patent are invalid because the inventor on the ____ patent derived the invention of those claims from _____. If you find that [defendant] has proved that it is highly probable that the inventor on the ____ patent derived the invention covered by claims ____, then you must find that the claims are invalid.

## AUTHORITIES

*Pannu* v. *Iolab Corp.,* 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB* v. *Baxter Healthcare Corp.,* 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Oddzon Prods., Inc.* v. *Just Toys, Inc.,* 122 F.3d 1396, 1401 (Fed. Cir. 1997); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.,* 78 F.3d 540, 544 (Fed. Cir. 1996); *Price* v. *Symsek,* 988 F.2d 1187, 1190 (Fed. Cir. 1993).

### *463  10.8 ANTICIPATION/LACK OF NOVELTY

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If it is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the highly probable standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed that it teaches a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a skilled person would understand that to be the case.

A prior public use by another may anticipate a patent claim even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

In this case, defendant contends that claims _____ of the _____ patent are invalid because they are anticipated by _____. If you find that [defendant] has proved that it is highly probable that claims _____ are anticipated, then you must find that the claims are invalid.

## AUTHORITIES

*Ecolochem, Inc.* v. *S. Cal. Edison Co.,* 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co.* v. *IRECO Inc.,* 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs.* v. *Geneva Pharms., Inc.,* 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp.* v. *Int'l Trade Comm'n,* 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc.* v. *M3 Sys., Inc.,* 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc.* v. *Garlock, Inc.,* 721 F.2d 1540, 1548 (Fed. Cir. 1983).

### *464  10.9 OBVIOUSNESS

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the art at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. [Defendant] has the burden of proving by the highly probable standard that claims _____ of the _____ patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field to which the patent relates. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the ____ patent claims would have been obvious.

I will now describe these specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

## *465 AUTHORITIES

*Graham* v. *John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d 654, 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co.* v. *Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.,* 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc.* v. *S. Cal. Edison Co.,* 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab,* 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak,* 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *In re Rouffet,* 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *In re Deuel,* 51 F.3d 1552, 1557-60 (Fed. Cir. 1995); *Orthokinetics, Inc.* v. *Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

## *466 10.9.1 THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by [defendant]. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

## AUTHORITIES

*Graham* v. *John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab,* 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.,* 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak,* 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet,* 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp.* v. *Sulzer Morat GmbH,* 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab.* v. *Toshiba Corp.,* 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co.* v. *Nu-Star, Inc.,* 950 F.2d 714, 716-17 (Fed. Cir. 1991).

**\*467  10.9.2 DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole, and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

**AUTHORITIES**

*Graham* v. *John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co.* v. *Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc.* v. *S. Cal. Edison Co.,* 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab,* 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Winner Int'l Royalty Corp.* v. *Wang,* 202 F.3d 1340, 1349 (Fed. Cir. 2000); *In re Dembiczak,* 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *Monarch Knitting Mach. Corp.* v. *Sulzer Morat GmbH,* 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Nyko Manufacturing Co.* v. *Nu-Star,* 950 F.2d 714, 717 (Fed. Cir. 1991).

**\*468  10.9.3 LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help in solving the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**AUTHORITIES**

*Graham* v. *John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.,* 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.,* 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak,* 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp.* v. *VSI Int'l, Inc.,* 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance,* 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co.* v. *Nu-Star, Inc.,* 950 F.2d 714, 718-19 (Fed. Cir. 1991).

**\*469  10.9.4 OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS**

You also must consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1. Commercial success of products covered by the patent claims or made by a process covered by the patent claims.
2. A long-felt need for the invention.
3. Failed attempts by others to make the invention.
4. Copying of the invention by others in the field.
5. Unexpected results achieved by the invention.
6. Praise of the invention by the infringer or others in the field.

7. The taking of licenses under the patent by others.

8. Expressions of surprise by experts and those skilled in the art at the making of the invention.

9. The patentee proceeded contrary to accepted wisdom of prior art.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

**AUTHORITIES**

*Graham* v. *John Deere Co.,* 383 U.S. 1, 27-28 (1966); *Ruiz* v. *A.B. Chance Co.,* 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp.* v. *Philip Morris Inc.,* 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.,* 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance,* 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co.* v. *Nu-Star, Inc.,* 950 F.2d 714, 718-19 (Fed. Cir. 1991).

**\*470  10.9.5 DETERMINATION OF OBVIOUSNESS**

[Defendant] contends that the invention claimed in claims _____ of the _____ patent would have been obvious to a person of ordinary skill in the art at the time the invention was made in light of the _____ item of prior art combined with _____. If you find that [defendant] has proved obviousness by the highly probable standard, then you must find that the claims are invalid for obviousness.

**\*471  11. INEQUITABLE CONDUCT**

After a patent application is filed, it is assigned to an Examiner, who examines the application, and attempts to determine whether or not the application and the claims meet all of the requirements of the patent laws.

In conducting this examination, the Examiner must consider the description of the invention in the application, which may involve highly technical subject matter, and search for and consider the prior art. The Examiner has only a limited amount of time and resources available and, therefore, must rely on information provided by the applicant with respect to the technical field of the invention and the prior art.

Because the Patent and Trademark Office must rely on the patent applicant for information, applicants for patents have a duty of honesty and good faith in their dealings with the Patent and Trademark Office. Persons who have this duty include the inventor named on the patent application, persons who represent the inventor before the Patent and Trademark Office, and other persons involved in a substantial way with the application.

This duty of honesty and good faith exists from the time the application is filed and continues for the entire time that an application is pending before the Patent and Trademark Office. It requires that the applicant, the applicant's representatives and others involved in a substantial way with the application fully disclose to the Patent and Trademark Office all information of which they are aware that is material to examination of the application, including all material prior art. I will explain to you in a moment how you may determine whether on not information is material.

Intentional failure to fulfill this duty of honesty and good faith is called inequitable conduct. When inequitable conduct occurs during the course of obtaining a patent, the patent is unenforceable. This means that the patent owner may not prevent others from using the invention covered by the claims of the patent and may not collect damages for patent infringement.

[Defendant] has the burden of proving inequitable conduct by the highly probable standard. [Defendant] must prove that the inventor, the inventor's representative or someone involved in a substantial way with the application withheld or misrepresented information that was material to the examination of the _____ patent application, and that this person or persons acted with an intent to deceive or mislead the Patent Examiner.

I will now explain to you the requirements of materiality and intent. I will then explain how you should balance any materiality and intent that you find in order for you to determine whether or not there was inequitable conduct.

**\*472  AUTHORITIES**

37 C.F.R. § 1.56 (2000); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256-57 (Fed. Cir. 1997); *N. Telecom, Inc.* v. *Datapoint Corp.,* 908 F.2d 931, 938-39 (Fed. Cir. 1990); *Kingsdown Med. Consultants, Ltd.* v. *Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) *(en banc);* *KangaROOS U.S.A., Inc.* v. *Caldor, Inc.,* 778 F.2d 1571, 1576-77 (Fed. Cir. 1985).

**\*473  11.1 MATERIALITY**

In considering the issue of materiality, you must first determine whether or not information was withheld from or misrepresented to the Patent and Trademark Office. If you find that the inventor, the inventor's representative or others involved in a substantial way with the application withheld or misrepresented information when applying for the ____ patent, you must then determine whether or not that information was material.

[Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application more likely than not does not meet one of the requirements for a patent, such as the requirements that a patented invention be new, useful and non-obvious. Information is also material if it refutes or is inconsistent with information provided or arguments made to persuade the Examiner that the invention is entitled to patent protection. Information that is cumulative of, that is, that adds little to, other information the Examiner already had, is not material.]

[Information is material if there is a substantial likelihood that a reasonable Patent Examiner would consider it important in deciding whether or not to allow the application to issue as a patent.]

You must next consider whether or not there was an intent to mislead or deceive the Patent and Trademark Office.

**NOTE**

The standard articulated in the Patent Office rules for determining materiality (37 C.F.R. § 1.56) changed in January 1992. The new standard is set forth in the second full paragraph above, and the pre-1992 standard is set forth in the third full paragraph.

The Federal Circuit has applied the pre-1992 standard to cases in which the application for the patent-in-suit was prosecuted before the rule change. *Perseptive Bio Systems, Inc.* v. *Pharmacia Biotech, Inc.,* 225 F.3d 1315 (Fed. Cir. 2000); *Baxter International, Inc.* v. *Baxter Healthcare Corp.,* 149 F.3d 1321 (Fed. Cir. 1998). Although the Court has applied the new standard in cases involving patents prosecuted after the rule change, *Union Oil Company of Ca.* v. *Atlantic Richfield Co.,* 208 F.3d 989 (Fed. Cir. 2000), we are aware of no case in which a litigant has contested application of the new standard in those circumstances.

**AUTHORITIES**

37 C.F.R. § 1.56 (2000); *Li Second Family Ltd. P'ship* v. *Toshiba Corp.,* 231 F.3d 1373, 1379-80 (Fed. Cir. 2000); *Pers. Biosys., Inc.* v. *Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321-22 (Fed. Cir. 2000); *Life Tech., Inc.* v. *Clontech Labs., Inc.,* 224 F.3d 1320, 1324-26 (Fed. Cir. 2000); *Union Oil Co. of Cal.* v. *Atlantic Richfield Co.,* 208 F.3d 989 (Fed. Cir. 2000);  **\*474**  *Semiconductor Energy Lab. Co.* v. *Samsung Elecs. Co.,* 204 F.3d 1368, 1374 (Fed. Cir. 2000); *Elk Corp. of Dallas* v. *GAF Bldg. Materials Corp.,* 168 F.3d 28, 31 (Fed. Cir. 1999); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1257-59 (Fed. Cir. 1997); *Litton Sys., Inc.* v. *Honeywell, Inc.,* 87 F.3d 1559, 1570-71 (Fed. Cir. 1996); *Molins PLC* v. *Textron, Inc.,* 48 F.3d 1172, 1178-79 (Fed. Cir. 1995).

**\*475  11.2 INTENT**

Evidence relevant to the question of intent to deceive or mislead the Patent and Trademark Office includes any direct evidence of intent, as well as evidence from which intent may be inferred. The patent law recognizes that direct evidence of an actual intent to deceive or mislead is rarely available. You may, however, infer intent from conduct. That means you may conclude that a person intended the foreseeable results of his or her actions. You should decide whether or not to infer an intent to deceive or mislead based on the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

**AUTHORITIES**

*Li Second Family Ltd. P'ship* v. *Toshiba Corp.,* 231 F.3d 1373, 1379-80 (Fed. Cir. 2000); *Pers Biosystems, Inc.* v. *Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321-22 (Fed. Cir. 2000); *Semiconductor Energy Lab. Co.* v. *Samsung Elecs. Co.,* 204 F.3d 1368, 1374 (Fed. Cir. 2000); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1257-59 (Fed. Cir. 1997); *Kingsdown Med. Consultants, Ltd.* v. *Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) (*en banc*).

### *476  11.3 BALANCING OF MATERIALITY AND INTENT

If you find that [defendant] has proved by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the Patent Examiner, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct.

The higher the materiality of the withheld or misrepresented information is, the lower the intent needed to establish inequitable conduct.

**AUTHORITIES**

*Li Second Family Ltd. P'ship* v. *Toshiba Corp.,* 231 F.3d 1373, 1378 (Fed. Cir. 2000); *Baxter Int'l, Inc.* v. *McGraw, Inc.,* 149 F.3d 1321, 1327 (Fed. Cir. 1998); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed. Cir. 1997); *Molins PLC* v. *Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995); *FMC Corp.* v. *Manitowoc Co., Inc.,* 835 F.2d 1411, 1416 (Fed. Cir. 1987); *American Hoist & Derrick Co* v. *Sowa & Sons, Inc.,* 725 F.2d 1350, 1363-64 (Fed. Cir. 1984).

### *477  12. DAMAGES

I have now instructed you as to the law governing [plaintiff's] claims of patent infringement and [defendant's] claims of invalidity [and inequitable conduct]. If you find that [defendant] has infringed a valid claim of the ____ patent, then you must determine what damages [defendant] must pay to [[plaintiff] for that infringement. If, on the other hand, you find that [[defendant] has not infringed a valid, enforceable claim of the ____ patent, then [plaintiff] is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that [[plaintiff] is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that [defendant] infringed a valid, enforceable claim of the ____ patent.

### *478  12.1 COMPENSATORY PATENT DAMAGES IN GENERAL

If you find that any claim of the ____ patent is both valid and infringed, then the patent owner is entitled to damages adequate to compensate for the infringement. These damages may not be less than what a reasonable royalty would be for the use made of the invention by the infringer. In determining damages, you must decide how much financial harm

the patent owner has suffered by reason of the infringement. You must decide the amount of money that the patent owner would have made had the infringer not infringed.

Damages are only to compensate [plaintiff], to put [plaintiff] into the position it would have been in if [defendant] had not infringed. You may not add anything to the amount of damages to punish [defendant], or to set an example.

**AUTHORITIES**

35 U.S.C. § 284 (2001); *Grain Processing Corp.* v. *American Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell* v. *J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

**\*479  12.1.1 NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS**

[Plaintiff] can recover damages for infringement that occurred only after [[plaintiff] gave notice of its patent rights. It is [plaintiff's] burden to prove by the more probable than not standard that it gave notice.

[Plaintiff] can give notice in two ways. The first way is to give notice to the public in general. [Plaintiff] can do this by placing the word "patent" or the abbreviation "PAT" with the number of the _____ patent on substantially all the products it sold that included the patented invention. [The [plaintiff's] licensees who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.] This type of notice is effective, from the date [plaintiff] [and its licensees] began to mark substantially all of [its/their] products that use the patented invention with the patent number. If [plaintiff] [and its licensees] did not mark substantially all of [its/their] products that use the patented invention with the patent number, then [plaintiff] did not provide notice in this way.

A second way [plaintiff] can provide notice of its patent is to tell [[defendant] that [defendant] was infringing the _____ patent and to identify [[defendant's] product that was infringing. This type of notice is effective from the time it is given.

As I said, [plaintiff] may recover damages only from the time it gave notice of its patent, either by the marking of products or by telling [defendant] of its infringement. If you find that [plaintiff] did not do either of these before beginning this lawsuit, then [plaintiff] can only recover damages for infringement that occurred after it sued [defendant] on [date].

**[NOTE: Use this instruction when the patent owner or its licensee is asserting product claims and sells a product that is covered by the asserted product claims.]**

**AUTHORITIES**

35 U.S.C. § 287 (2001); *Crystal Semiconductor Corp.* v. *Tritech Microelectronics Int'l, Inc.,* No. 99-1158, 2001 WL 220241 \*11 (Fed. Cir. 2001); *Nike Inc.* v. *Wal-Mart Stores,* 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell* v. *Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *American Med. Sys.* v. *Medical Eng'g Corp.,* 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc.* v. *Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987).

**\*480  12.2 TWO TYPES OF DAMAGES -- LOST PROFITS AND REASONABLE ROYALTY**

There are two types of damages for patent infringement.

The first type of damages is lost profits. Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

The second type of patent damages is called a reasonable royalty. I will also discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

**\*481  12.3 LOST PROFITS, TYPES AND BURDEN OF PROOF**

I will first instruct you about lost profit damages. Simply stated, lost profit damages are the profits [plaintiff] lost because of the infringement. They are not the profits [defendant] made.

[Plaintiff] says that it lost profits because [defendant's] infringement took away sales that [plaintiff] would have made. This is called lost profits due to lost sales.

[Plaintiff] also says that it lost profits because it had to [lower its prices or was unable to raise its prices] in order to compete with [[defendant's] infringement. [Plaintiff] says that because it had to [lower its prices or was unable to raise its prices], it made less profits on the sales it made than it would have made had it not had to compete with [defendant]. This is called lost profits due to price erosion.

Finally, [plaintiff] says that its expenses increased because of [[defendant's] infringement, and this lowered its profits.

[Plaintiff] has the burden to show that it was more probable than not that it would have made additional profits if [defendant] had not infringed.

Remember, if you find [plaintiff] did not prove infringement of a valid patent claim, there can be no damages of any kind.

**[NOTE: Include only those elements of lost profits asserted by plaintiff.]**

**AUTHORITIES**

*Grain Processing Corp.* v. *American Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp.* v. *Gen. Elec. Co.,* 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Zygo Corp.* v. *Wyko Corp.,* 79 F.3d 1563, 1571 (Fed. Cir. 1996) *SmithKline Diagnostics, Inc.* v. *Helena Labs., Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc.* v. *Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Panduit Corp.* v. *Stahlin Bros. Fibre Re. Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

### *482  12.3.1 LOST SALES

Lost sales are those sales the patent owner lost because of the infringement.

To prove that it lost sales, [plaintiff] must prove that it was more probable than not that it would have made additional sales if [defendant] had not [made the sales/ carried out the activities] you find to be an infringement.

[Plaintiff] may receive damages for lost sales only on those [products or processes] that compete with [defendant's] [products or processes] that you find to infringe, and that are functionally part of the competing product. [[Plaintiff] may not receive lost profit damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

**AUTHORITIES**

*Grain Processing Corp.* v. *American Maize-Prods. Comp.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Tec Air, Inc.* v. *Denso Mfg. Mich., Inc.,* 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Oiness* v. *Walgreen Co.,* 88 F.3d 1025, 1029 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1550 (Fed. Cir. 1995) *(en banc); State Indus., Inc.* v. *Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1578 (Fed. Cir. 1989); *Panduit Corp.* v. *Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1157-58 (6th Cir. 1978).

### *483  12.3.2 MANUFACTURING AND MARKETING ABILITY

In deciding whether [plaintiff] lost sales, you should consider whether or not [plaintiff] has proved that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.

[Plaintiff] must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement.

[Plaintiff] also must prove that it had the capability to market and sell the additional products.

## AUTHORITIES

*Gargoyles, Inc.* v. *United States,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Stryker Corp.* v. *Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Minco, Inc.* v. *Combustion Eng'g, Inc.,* 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

### *484 12.3.3 ABSENCE OF ACCEPTABLE NON-INFRINGING SUBSTITUTES

In determining whether [plaintiff] lost sales due to infringement, you must consider whether or not, if [defendant's] infringing [product or process] were not available, some or all of the people who bought from [defendant] would have bought a different, non-infringing product from [defendant] or from somebody else, rather than buy from [plaintiff]. [In that regard, you should consider a product sold by one of [plaintiff's] licensees to be a non-infringing product.]

In deciding whether or not people who bought from [defendant] would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product.

## AUTHORITIES

*Crystal Semiconductor Corp.* v. *Tritech Microelectronics Int'l, Inc.,* No. 99-1158, 2001 WL 220241 *11 (Fed. Cir. 2001); *Tate Access Floors, Inc.* v. *Maxcess Techs., Inc.,* 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp.* v. *American-Maize Prod.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc.* v. *United States,* 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Stryker Corp.* v. *Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp.* v. *Wyko Corp.,* 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc);* *Slimfold Mfg. Co.* v. *Kinkead Indus., Inc.,* 932 F.2d 1453 (Fed. Cir. 1991); *Kaufman Co.* v. *Lantech, Inc.,* 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc.* v. *Helena Labs., Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc.* v. *Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1576-77 (Fed. Cir. 1989).

### *485 12.3.4 LOST PROFITS DUE TO PRICE EROSION/COST ESCALATION

[Plaintiff] says that it also lost profits because it had to lower its prices, or was unable to raise its prices, because of [defendant's] infringement. [Plaintiff] must prove that it lowered its prices, or did not raise them, because of the infringement, and not for some other reason.

[Plaintiff] says that it also lost profits because its costs went up as a result of [defendant's] actions it charges with infringement. [Plaintiff] must prove that it was more probable than not that its costs went up because of [[defendant's] actions it charges with infringement, and not for some other reason.

## AUTHORITIES

*Crystal Semiconductor Corp.* v. *Tritech Microelectronics Int'l, Inc.,* No. 99-1158, 2001 WL 220241 *11 (Fed. Cir. 2001); *Minco, Inc.* v. *Combustion Eng'g, Inc.,* 95 F.3d 1109, 1120 (Fed. Cir. 1996).

### *486 12.3.5 AMOUNT OF LOST PROFITS

If [plaintiff] has proved that it lost profits due to infringement by [[defendant], then you are to find the amount of profits that [plaintiff] lost. [[Plaintiff] must prove the amount of its lost profits to a reasonable probability.

The amount of lost profits damages should not include amounts that are merely speculation. However, if the reason that [plaintiff] has difficulty proving the amount of its lost profits is because [defendant] did not keep records or destroyed records, such as records of its sales, then you should resolve doubts as to the amount against [defendant].

**AUTHORITIES**

*Tate Access Floors, Inc.* v. *Maxcess Techs., Inc.,* 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp.* v. *American Maize-Prods. Co.,* 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc.* v. *United States,* 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Oiness* v. *Walgreen Co.,* 88 F.3d 1025, 1029-32 (Fed. Cir. 1996).

**\*487  12.3.6 REASONABLE ROYALTY**

[Plaintiff] is [also] asking for damages in the amount of a reasonable royalty [as alternative to lost profits]. If you find that [plaintiff] has proved lost profits for all of [defendant's] infringing [sales or activities], then the damages award to [plaintiff] should be those lost profits.

If you find that [plaintiff] has not proved that it should recover lost profits, or that it has only proved lost profits for some of [defendant's] infringing [sales] [activities], then for those infringing [sales or activities] for which you do not award lost profits you should determine the amount [plaintiff] has proved to be a reasonable royalty.

**AUTHORITIES**

*Crystal Semiconductor Corp.* v. *Tritech Microelectronics Int'l, Inc.,* No. 99-1158, 2001 WL 220241 *11 (Fed. Cir. 2001); *Mahurkar* v. *C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Minco, Inc.* v. *Combustion Eng'g, Inc.,* 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).

**\*488  12.3.7 WHAT IS A REASONABLE ROYALTY?**

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that it would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before [defendant] began [selling or using] the patented invention. You should assume that [defendant] and [plaintiff] knew at that time such things as the level of sales and profits that [defendant] would make using the invention. You should also assume that [plaintiff] was willing to grant [[defendant] a license to [sell or use] the patented invention and that [[defendant] was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that [plaintiff] and [defendant] would consider in setting the amount [[defendant] should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Whether the patent owner had established a royalty for the patented invention, for example by granting other licenses at that royalty. You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both the patent owner and the party wanting to use the patent know it is valid.

2. Royalties paid by [defendant] or by others for patents comparable to the _____ patent.

3. Whether or not [plaintiff] had a policy of licensing or not licensing the patent.

4. Whether or not [plaintiff] and [defendant] are competitors.

5. Whether being able to use the patented invention helps in making sales of other products or services.

6. The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7. The advantages and benefits of using the patented invention over [products or processes] not claimed in the _____ patent.

**\*489**  8. The extent of [defendant's] use of the patented invention and the value of that use to [defendant].

9. Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in [identify field] for use of patented inventions comparable to the inventions claimed in the _____ patent.

10. The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by [defendant].

11. Expert opinions as to what would be a reasonable royalty.

## AUTHORITIES

*Tec Air, Inc.* v. *Denso Mfg. Mich., Inc.,* 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp.* v. *Gen. Elec. Co.,* 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar* v. *C.R. Bard, Inc.,* 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell* v. *J. Baker, Inc.,* 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) *(en banc);* *Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**\*490  12.3.8 TOTAL DAMAGES**

After making your findings concerning lost profits damages and reasonable royalty damages, you should arrive at a total damages amount to award to [[plaintiff]. This amount should include the amount of lost profits damages [[plaintiff] has proved. It also should include the reasonable royalty damages for that portion of the infringement for which [plaintiff] did not prove lost profits damages.

**[NOTE: Use this instruction when a mixed measure of damages is sought.]**

SG028 ALI-ABA 387

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.