EXHIBIT 12

**THE FEDERAL CIRCUIT BAR ASSOCIATION**

**MODEL PATENT JURY INSTRUCTIONS**

Last Edited:  May 2014

© Federal Circuit Bar Association 2010

**Acknowledgement**

The Association thanks the Patent Litigation Committee and in particular the Jury Instruction Subcommittee for their efforts in creating these Model Patent Jury Instructions.

# TABLE OF CONTENTS

A.1   Preliminary Instructions ...................................................................................................... 2

WHAT A PATENT IS AND HOW ONE IS OBTAINED ................................................... 2

A.2   Preliminary Instructions ...................................................................................................... 4

SUMMARY OF CONTENTIONS ..................................................................................... 4

A.3   Preliminary Instructions ...................................................................................................... 5

PATENT AT ISSUE ........................................................................................................... 5

A.4   Preliminary Instructions ...................................................................................................... 6

OVERVIEW OF APPLICABLE LAW ............................................................................. 6

A.5   Preliminary Instructions ...................................................................................................... 8

OUTLINE OF TRIAL ........................................................................................................ 8

B.1   Summary of Contentions .................................................................................................. 11

SUMMARY OF CONTENTIONS ................................................................................... 11

B.2   Claim Construction ........................................................................................................... 12

2.1     THE ROLE OF THE CLAIMS OF A PATENT ................................................. 12

B.2   Claim Construction ........................................................................................................... 13

2.2     HOW A CLAIM DEFINES WHAT IT COVERS ............................................. 13

B.2   Claim Construction ........................................................................................................... 14

2.2a    INDEPENDENT AND DEPENDENT CLAIMS ............................................... 14

B.2   Claim Construction ........................................................................................................... 15

2.3     CLAIM INTERPRETATION ............................................................................. 15

B.2   Claim Construction ........................................................................................................... 16

2.3a    SECTION 112, PARAGRAPH 6 ....................................................................... 16

B.3   Infringement ...................................................................................................................... 18

3.1     INFRINGEMENT GENERALLY ...................................................................... 18

i

B.3     Infringement.................................................................................................. 19

    3.1a    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" ...................... 19

B.3     Infringement.................................................................................................. 20

    3.1b    DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" OF
    SECTION 112, PARAGRAPH 6 CLAIM REQUIREMENTS........................... 20

B.3     Infringement.................................................................................................. 22

    3.1c    DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF
    EQUIVALENTS"............................................................................................ 22

B.3     Infringement.................................................................................................. 24

    3.1d    LIMITATIONS ON DIRECT INFRINGEMENT "UNDER THE
    DOCTRINE OF EQUIVALENTS"................................................................. 24

B.3     Infringement.................................................................................................. 27

    3.2     INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT............................. 27

B.3     Infringement.................................................................................................. 29

    3.3     INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT.......... 29

B.3     Infringement.................................................................................................. 30

    3.4     INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM
    UNITED STATES FOR COMBINATION ABROAD....................................... 30

B.3     Infringement.................................................................................................. 32

    3.5     INFRINGEMENT BY SALE, OFFER FOR SALE, USE, OR
    IMPORTATION OF A PRODUCT MADE OUTSIDE THE UNITED
    STATES BY PATENTED PROCESS ............................................................. 32

B.3     Infringement.................................................................................................. 33

    3.6     DIRECT INFRINGEMENT: ONE OR MORE SYSTEM COMPONENTS
    LOCATED OUTSIDE THE UNITED STATES ............................................. 33

B.3     Infringement.................................................................................................. 34

    3.7     DIRECT INFRINGEMENT: ACTS OF MULTIPLE PARTIES MUST BE
    COMBINED TO MEET ALL CLAIM LIMITATIONS.................................... 34

B.3     Infringement.................................................................................................. 35

3.8    INDIRECT INFRINGEMENT: ACCUSED INFRINGER PRACTICES SOME CLAIMED STEPS AND ANOTHER PRACTICES THE REMAINING STEPS ........................................................................ 35

B.3    Infringement .......................................................................................................... 36

3.9    INDIRECT INFRINGEMENT: ACCUSED INFRINGER ALLEGEDLY INDUCES OTHERS TO COLLECTIVELY PRACTICE ALL CLAIMED STEPS ...................................................................................... 36

B.3    Infringement .......................................................................................................... 37

3.10   WILLFUL INFRINGEMENT ................................................................... 37

B.4    Validity ................................................................................................................. 39

4.1    INVALIDITY—BURDEN OF PROOF .................................................... 39

B.4.2  Validity—Adequacy of Patent Specification ........................................................ 40

4.2a   WRITTEN DESCRIPTION REQUIREMENT ........................................ 40

B.4.2  Validity—Adequacy of Patent Specification ........................................................ 41

4.2b   ENABLEMENT .......................................................................................... 41

B.4.2  Validity—Adequacy of Patent Specification ........................................................ 43

4.2c   BEST MODE .............................................................................................. 43

B.4.3  Validity—The Claims ............................................................................................ 45

4.3a   PRIOR ART ............................................................................................... 45

B.4.3  Validity—The Claims ............................................................................................ 47

4.3b   ANTICIPATION ....................................................................................... 47

B.4.3  Validity—The Claims ............................................................................................ 50

4.3c   OBVIOUSNESS ......................................................................................... 50

B.4.3  Validity—The Claims ............................................................................................ 52

4.3c(i) LEVEL OF ORDINARY SKILL ............................................................ 52

4.3c(ii) SCOPE AND CONTENT OF THE PRIOR ART ............................... 52

B.4.3  Validity—The Claims ............................................................................................ 54

    4.3d    INVENTORSHIP ................................................................... 54

B.5    Equitable Defenses ............................................................................... 55

    5.1    INEQUITABLE CONDUCT ................................................... 55

B.5    Equitable Defenses ............................................................................... 57

    5.2    LACHES .................................................................................. 57

B.5    Equitable Defenses ............................................................................... 59

    5.3    EQUITABLE ESTOPPEL ...................................................... 59

B.5    Equitable Defenses ............................................................................... 60

    5.4    PROSECUTION LACHES ...................................................... 60

B.5.    Equitable Defenses ............................................................................... 61

    5.5    UNCLEAN HANDS ................................................................ 61

B.6    Patent Damages ................................................................................... 62

    6.1    DAMAGES—INTRODUCTION .......................................... 62

B.6    Patent Damages ................................................................................... 64

    6.2    LOST PROFITS—"BUT FOR" TEST .................................. 64

        LOST PROFITS—DEMAND ................................................ 65

        LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY . 65

        LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY .... 65

        LOST PROFITS—CAPACITY ............................................. 67

        LOST PROFITS—AMOUNT OF PROFIT ......................... 67

        LOST PROFITS—MARKET SHARE ................................. 68

B.6    Patent Damages ................................................................................... 69

    6.3    LOST PROFITS—COLLATERAL SALES ......................... 69

B.6    Patent Damages ................................................................................... 70

    6.4    LOST PROFITS—PRICE EROSION ................................. 70

B.6    Patent Damages.................................................................................................. 71

     6.5    REASONABLE ROYALTY—ENTITLEMENT ............................................. 71

B.6    Patent Damages.................................................................................................. 72

     6.6    REASONABLE ROYALTY—DEFINITION ...................................................... 72

B.6    Patent Damages.................................................................................................. 73

     6.7    REASONABLE ROYALTY—RELEVANT FACTORS ................................... 73

B.6    Patent Damages.................................................................................................. 75

     6.8    DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS...................... 75

C.    Appendix............................................................................................................. 77

     GLOSSARY .......................................................................................................... 77

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
　960 F.2d 1020 (Fed. Cir. 1992) (en banc)........................................................................56, 57

*Abbott Labs. v. Geneva Pharms., Inc.*,
　182 F.3d 1315 (Fed. Cir. 1999).....................................................................................45

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
　228 F.3d 1338 (Fed. Cir. 2000)................................................................................29, 39

*AK Steel Corp. v. Sollac & Ugine*,
　344 F.3d 1234 (Fed. Cir. 2003)................................................................................10, 39

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
　692 F.3d 1301 (Fed. Cir. 2012).....................................................................................32

*Al-Site Corp. v. VSI Int'l Inc.*,
　174 F.3d 1308 (Fed. Cir. 1999)..................................................................13, 18, 20, 23

*Alloc, Inc. v. ITC*,
　342 F.3d 1361 (Fed. Cir. 2003).....................................................................................26

*Allvoice Computing PLC v. Nuance Commc'ns, Inc.*,
　504 F.3d 1236 (Fed. Cir. 2007)................................................................................13, 18

*Am. Med. Sys. v. Med. Eng'g Corp.*,
　6 F.3d 1523 (Fed. Cir. 1993)....................................................................................73, 74

*Am. Seating Co. v. USSC Group*,
　514 F.3d 1262 (Fed. Cir. 2008).....................................................................................63

*Am. Stock Exch., LLC v. Mopex, Inc.*,
　250 F. Supp. 2d 323 (S.D.N.Y. 2003)...........................................................................45

*Apotex U.S.A., Inc. v. Merck & Co.*,
　254 F.3d 1031 (Fed. Cir. 2001).....................................................................................45

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
　448 F.3d 1324 (Fed. Cir. 2006)................................................................................13, 18

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
　269 F.3d 1369 (Fed. Cir. 2001).....................................................................................59

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..........................................................4, 37

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964) ..........................................................................................26, 62

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
  501 F.3d 1274 (Fed. Cir. 2007) ...............................................................................39

*Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*,
  499 F.3d 1293 (Fed. Cir. 2007) ...............................................................................49

*Bayer AG v. Housey Pharms., Inc.*,
  340 F.3d 1367 (Fed. Cir. 2003) ...............................................................................29

*Bayer AG v. Schein Pharms., Inc.*,
  301 F.3d 1306 (Fed. Cir. 2002) ...............................................................................41

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
  1 F.3d 1214 (Fed. Cir. 1993) ...............................................................62, 63, 66, 68

*BMC Resources Inc. v. Paymentech LP*,
  498 F.3d 1373 (Fed. Cir. 2007) ...............................................................................31

*Bruning v. Hirose*,
  161 F.3d 681 (Fed. Cir. 1998) .................................................................................41

*Buildex, Inc. v. Kason Indus., Inc.*,
  849 F.2d 1461 (Fed. Cir. 1988) ...............................................................................36

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994) .................................................................................51

*Cardiac Pacemakers, Inc. v. St. Jude Med.*,
  Appeal Nos. 07-1296, 1347 (Fed. Cir. 2009) .........................................................28

*Carella v. Starlight Archery*,
  804 F.2d 135 (Fed. Cir. 1986) .................................................................................62

*Chemcast Corp. v. Arco Indus. Corp.*,
  913 F.2d 923 (Fed. Cir. 1990) .................................................................................41

*Chiron Corp. v. Genentech, Inc.*,
  363 F.3d 1247 (Fed. Cir. 2004) ...............................................................................37

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
  145 F.3d 1303 (Fed. Cir. 1998) .........................................................................14, 18

vii

*CIAS, Inc. v. Alliance Gaming Corp.*,
   504 F.3d 1356 (Fed. Cir. 2007)............................................................................10

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*,
   542 F.3d 1363 (Fed. Cir. 2008)............................................................................49

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006)............................................................................10

*Cook Biotech Inc. v. ACell, Inc.*,
   460 F.3d 1365 (Fed. Cir. 2006)............................................................................10

*Cordis Corp. v. Medtronic Ave., Inc.*,
   511 F.3d 1157 (Fed. Cir. 2008)............................................................................48

*Cross Med. Prods. v. Medtronic Sofamor Danek*,
   424 F.3d 1293 (Fed. Cir. 2005)..............................................................16, 18, 31

*Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*,
   304 U.S. 159 (1938)..............................................................................................58

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001)...................................................................... passim

*Cybor Corp. v. FAS Techs.*,
   138 F.3d 1448 (Fed. Cir. 1998)............................................................................12

*D.L. Auld Co. v. Chroma Graphics Corp.*,
   714 F.2d 1144 (Fed. Cir. 1983)............................................................................45

*Daiichi Sankyo Co. v. Apotex, Inc.*,
   501 F.3d 1254 (Fed. Cir. 2007)............................................................................49

*Dayco Prods., Inc. v. Total Containment, Inc.*,
   329 F.3d 1358 (Fed. Cir. 2003)............................................................................53

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009) ...........................................................................63

*Devices for Med., Inc. v. Boehl*,
   822 F.2d 1062 (Fed. Cir. 1987)............................................................................73

*Digital Control Inc. v. Charles Mach. Works*,
   437 F.3d 1309 (Fed. Cir. 2006)............................................................................53

*Dippin' Dots, Inc. v. Mosey*,
   476 F.3d 1337 (Fed. Cir. 2007)............................................................................49

*Dolly, Inc. v. Spalding & Enflo Cos.*,
    16 F.3d 394 (Fed. Cir. 1994)......................................................................20

*Dow Chem. Co. v. Mee Indus., Inc.*,
    341 F.3d 1370 (Fed. Cir. 2003)..................................................................60

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)..................................................24, 32, 33

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
    227 F.3d 1361 (Fed. Cir. 2000)..................................................................45

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)..................................................................51

*Ericsson, Inc. v. Harris Corp.*,
    352 F.3d 1369 (Fed. Cir. 2003)..........................................................62, 68

*Esai Co. v. Dr. Reddy's Labs. Ltd.*,
    533 F.3d 1353 (Fed. Cir. 2008)..................................................................48

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*,
    350 F.3d 1327 (Fed. Cir. 2003)..................................................24, 32, 33

*Ferring B.V. v. Barr Labs., Inc.*,
    437 F.3d 1181 (Fed. Cir. 2006)..................................................................53

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003) (en banc)................................................23

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)....................................................................................20

*Finnigan Corp. v. ITC*,
    180 F.3d 1354 (Fed. Cir. 1999)..................................................................45

*Flex-Rest, LLC v. Steelcase, Inc.*,
    455 F.3d 1351 (Fed. Cir. 2006)..................................................................45

*Fonar Corp. v. Gen. Elec. Co.*,
    107 F.3d 1543 (Fed. Cir. 1997)..................................................................65

*Fromson v. W. Litho Plate & Supply Co.*,
    853 F.2d 1568 (Fed. Cir. 1998)..................................................................69

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
    110 F.3d 1573 (Fed. Cir. 1997)..................................................................45

*Gargoyles, Inc. v. United States,*
   113 F.3d 1572 (Fed. Cir. 1997)......................................................................................62

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.,*
   60 F.3d 770 (Fed. Cir. 1995)....................................................................................56, 57

*Gen. Talking Pictures Corp. v. W. Elec. Co.,*
   304 U.S. 175 (1938)........................................................................................................58

*Gentry Gallery, Inc. v. Berkline Corp.,*
   134 F.3d 1473 (Fed. Cir. 1998)......................................................................................37

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
   318 F. Supp. 1116 (S.D.N.Y. 1970)..........................................................................70, 72

*Glaxo Inc. v. Novopharm Ltd.,*
   52 F.3d 1043 (Fed. Cir. 1995)........................................................................................41

*Global-Tech Appliances, Inc. v. SEB S. A.,*
   __ U.S. __; 131 S.Ct. 2060; 179 L.Ed. 1167 (2012)...........................................24, 32, 33

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
   355 F.3d 1327 (Fed. Cir. 2004)................................................................................70, 72

*Graham v. John Deere Co.,*
   383 U.S. 1 (1966)............................................................................................................48

*Grain Processing Corp. v. Am. Maize-Prods. Co.,*
   185 F.3d 1341 (Fed. Cir. 1999)................................................................................60, 64

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
   339 U.S. 605 (1950)........................................................................................................20

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,*
   897 F.2d 508 (Fed. Cir. 1990)........................................................................................35

*Gyromat Corp. v. Champion Spark Plug Co.,*
   735 F.2d 549 (Fed. Cir. 1984)....................................................................................62, 65

*Helifix Ltd. v. Blok-Lok, Ltd.,*
   208 F.3d 1339 (Fed. Cir. 2000)......................................................................................45

*Hess v. Advanced Cardiovascular Sys. Inc.,*
   106 F.3d 976 (Fed. Cir. 1997)........................................................................................51

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
   909 F.2d 1464 (Fed. Cir. 1990)......................................................................................26

*Honeywell Int'l v. Hamilton Sundstrand Corp.*,
   370 F.3d 1131 (Fed. Cir. 2004)........................................................................23

*Hughes Aircraft Co. v. United States*,
   140 F.3d 1470 (Fed. Cir. 1998)........................................................................20

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986)..................................................................36, 48

*In re Alton*,
   76 F.3d 1168 (Fed. Cir. 1996)........................................................................37

*In re Bartfeld*,
   925 F.2d 1450 (Fed. Cir. 1991)......................................................................45

*In re Bogese II*,
   303 F.3d 1362 (Fed. Cir. 2002)......................................................................58

*In re Hall*,
   781 F.2d 897 (Fed. Cir. 1986)........................................................................45

*In re Icon Health & Fitness, Inc.*,
   496 F.3d 1374 (Fed. Cir. 2007)......................................................................49

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004)......................................................................45

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007)......................................................................35

*In re Wands*,
   858 F.2d 731 (Fed. Cir. 1988)........................................................................39

*In re Wyer*,
   655 F.2d 221 (C.C.P.A. 1981) ......................................................................45

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
   385 F.3d 1360 (Fed. Cir. 2004)..............................................................24, 32, 33

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
   331 F.3d 860 (Fed. Cir. 2003)........................................................................60

*Interactive Pictures Corp. v. Infinite Pictures Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)..............................................................20, 23, 70

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   327 F.3d 1364 (Fed. Cir. 2003)......................................................................10

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005)..........................................................................45

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*,
    787 F.2d 1577 (Fed. Cir. 1986)..........................................................................45

*Johnson & Johnston Assocs. v. R.E. Serv. Co.*,
    285 F.3d 1046 (Fed. Cir. 2002)..........................................................................20

*Kalman v. Berlyn Corp.*,
    914 F.2d 1473 (Fed. Cir. 1990)..........................................................................68

*Kendall v. Winsor*,
    62 U.S. 322 (1859)..........................................................................58

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240 (1933)..........................................................................59

*Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006)..........................................................................16

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*,
    863 F.2d 867 (Fed. Cir. 1988)..........................................................................54

*Knorr-Bremse v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) (en banc)..........................................................................35

*KSR International Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)..........................................................................48, 49

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983)..........................................................................60, 61

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    78 F.3d 540 (Fed. Cir. 1996)..........................................................................45

*Lampi Corp. v. Am. Power Prods., Inc.*,
    228 F.3d 1365 (Fed. Cir. 2000)..........................................................................37

*Larson Mfg. Co. of S.D. v. Aluminart Prods., Ltd.*,
    559 F.3d 1317 (Fed. Cir. 2009)..........................................................................53

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006)..........................................................................28

*Lizard Tech., Inc. v. Earth Res. Mapping Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005)..........................................................................37

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)......................................................................... passim

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996).....................................................................69, 70, 72

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996)..............................................................................................12

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995).................................................................................12

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996)....................................................................... passim

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   244 F.3d 1365 (Fed. Cir. 2001).............................................................................26

*MGM Studios Inc. v. Grokster*,
   419 F.3d 1005 (Fed. Cir. 2005).................................................................24, 32, 33

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
   103 F.3d 1538 (Fed. Cir. 1997).............................................................................18

*Micro Chem., Inc. v. Lextron, Inc.*,
   318 F.3d 1119 (Fed. Cir. 2003).................................................................62, 64, 66

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007)..............................................................................................28

*Microsoft Corp. v. i4i Limited Partnerhsip*,
   131 S.Ct. 2238 (2011)...........................................................................................36

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
   429 F.3d 1344 (Fed. Cir. 2005).............................................................................16

*Minco, Inc. v. Combustion Eng'g, Inc.*,
   95 F.3d 1109 (Fed. Cir. 1996).........................................................................68, 69

*Moleculon Research Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986).............................................................................16

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
   5 F.3d 1464 (Fed. Cir. 1993).................................................................................15

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998).............................................................................20

*Muniauction Inc. v. Thomson Corp.*,
532 F.3d 1318 (Fed. Cir. 2008)............................................................24, 31, 32, 33

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
243 F.3d 1316 (Fed. Cir. 2001)......................................................................45

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*,
166 F.3d 1190 (Fed. Cir. 1999)......................................................................39

*Netword, LLC v. Centraal Corp.*,
242 F.3d 1347 (Fed. Cir. 2001)......................................................................16

*Nike Inc. v. Wal-Mart Stores*,
138 F.3d 1437 (Fed. Cir. 1998)......................................................................73

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005)................................................................28, 30

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)......................................................................12

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999)................................................................14, 18

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003)......................................................................18

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
442 F.3d 1331 (Fed. Cir. 2006)......................................................................31

*Panduit Corp. v. Stahlin Bros. Fibre Works*, *Inc.*,
575 F.2d 1152 (6th Cir. 1978) ..............................................................62, 63, 67

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998)................................................................45, 51

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
745 F.2d 11 (Fed. Cir. 1984)........................................................................65

*Pellegrini v. Analog Devices, Inc.*,
375 F.3d 1113 (Fed. Cir. 2004)......................................................................28

*Pfaff v. Wells Elecs. Inc.*,
525 U.S. 55 (1998)................................................................................45

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
518 F.3d 1353 (Fed. Cir. 2008)......................................................................41

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................ 12

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999) .............................................................................. 12

*Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*,
   803 F.2d 1170 (Fed. Cir. 1986) .............................................................................. 26

*Princeton Biochems., Inc. v. Beckman Coulter, Inc.*,
   411 F.3d 1332 (Fed. Cir. 2005) .............................................................................. 49

*Purdue Pharma L.P. v. Faulding, Inc.*,
   230 F.3d 1320 (Fed. Cir. 2000) .............................................................................. 37

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
   772 F.2d 1570 (Fed. Cir. 1985) .............................................................................. 45

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) ............................................................................... 35

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) .............................................................................. 37

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) (per curiam) ...................................................... 70, 72

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009) .................... 26

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc) ...................................................... passim

*Ruiz v. A.B. Chance Co.*,
   234 F.3d 654 (Fed. Cir. 2000) ........................................................................... 48, 49

*Schering Corp. v. Geneva Pharms., Inc.*,
   339 F.3d 1373 (Fed. Cir. 2003) .............................................................................. 45

*Schumer v. Lab. Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002) .............................................................................. 36

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
   927 F.2d 1565 (Fed. Cir. 1991) .............................................................................. 54

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,
   172 F.3d 836 (Fed. Cir. 1999) ............................................................................... 15

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
   758 F.2d 613 (Fed. Cir. 1985)................................................................................51

*Singh v. Brake*,
   222 F.3d 1362 (Fed. Cir. 2000)..............................................................................45

*Sitrick v. Dreamworks, LLC*,
   516 F.3d 993 (Fed. Cir. 2008)................................................................................38

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*,
   926 F.2d 1161 (Fed. Cir. 1991)..............................................................................63

*Spectra-Physics, Inc. v. Coherent, Inc.*,
   827 F.2d 1524 (Fed. Cir. 1987)..............................................................................41

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   953 F.2d 1360 (Fed. Cir. 1991)........................................................................60, 63

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   537 F.3d 1357 (Fed. Cir. 2008)..............................................................................53

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989)........................................................................66, 67

*Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*,
   277 F.3d 1361 (Fed. Cir. 2002)..............................................................................58

*Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*,
   301 F. Supp. 2d 1147 (D. Nev. 2004), *aff'd*, 422 F.3d 1378 (Fed. Cir. 2005) .......58

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
   492 F.3d 1350 (Fed. Cir. 2007)..............................................................................48

*Toro Co. v. Deere & Co.*,
   355 F.3d 1313 (Fed. Cir. 2004)..............................................................................45

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984)..............................................................................70

*Transco Prods. Inc. v. Performance Contracting, Inc.*,
   38 F.3d 551 (Fed. Cir. 1994)..................................................................................41

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)........................................................................70, 72

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
   425 F.3d 1366 (Fed. Cir. 2005)..............................................................................28

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001) .................................................................................... 39

*Univ. of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004) .................................................................................... 37

*Upjohn Co. v. Mova Pharm. Corp.*,
    225 F.3d 1306 (Fed. Cir. 2000) .................................................................................. 53

*Valmont Indus., Inc. v. Reinke Mfg. Co.*,
    983 F.2d 1039 (Fed. Cir. 1993) .................................................................................. 18

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
    212 F.3d 1377 (Fed. Cir. 2000) .................................................................................. 10

*Vulcan Eng'g Co. v. FATA Aluminum, Inc.*,
    278 F.3d 1366 (Fed. Cir. 2002) .................................................................................. 68

*Wahl Instruments, Inc. v. Acvious, Inc.*,
    950 F.2d 1575 (Fed. Cir. 1991) .................................................................................. 41

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ...................................................................................................... 20

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003) ...................................................................... 25, 32, 33

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005) .................................................................................. 15

*Webster Elec. Co. v. Splitdorf Elec. Co.*,
    264 U.S. 463 (1924) .................................................................................................... 58

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*,
    904 F.2d 676 (Fed. Cir. 1990) .................................................................................... 23

*WMS Gaming Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) ...................................................................... 14, 18, 35

*Woodbridge v. United States*,
    263 U.S. 50 (1923) ...................................................................................................... 58

*z4 Techs., Inc. v. Microsoft Corp.*,
    507 F.3d 1340 (Fed. Cir. 2007) .................................................................................. 49

## FEDERAL STATUTES

35 U.S.C. § 101 ................................................................................................36

35 U.S.C. § 102 .......................................................................................36, 42, 51

35 U.S.C. § 102(a)-(g) .......................................................................................45

35 U.S.C. § 103 ................................................................................................36

35 U.S.C. § 103(a) ............................................................................................48

35 U.S.C. § 112 ...........................................................................................18, 36

35 U.S.C. § 112, ¶ 1 ..................................................................................37, 38, 41

35 U.S.C. § 112, ¶ 2 ...........................................................................................37

35 U.S.C. § 112, ¶ 6 ...............................................................................13, 14, 17, 18

35 U.S.C. § 251 ................................................................................................36

35 U.S.C. § 256 ................................................................................................51

35 U.S.C. § 271(a) .........................................................................................30, 31

35 U.S.C. § 271(b) .....................................................................................24, 32, 33

35 U.S.C. § 271(c) ............................................................................................26

35 U.S.C. § 271(f) ............................................................................................28

35 U.S.C. § 271(f)(1) ..........................................................................................27

35 U.S.C. § 271(f)(2) ..........................................................................................27

35 U.S.C. § 271(g) ............................................................................................29

35 U.S.C. § 282 ..........................................................................................passim

35 U.S.C. § 284 ...................................................................................35, 60, 62, 69

35 U.S.C. § 287 ...........................................................................................73, 74

35 U.S.C. § 287(a) ............................................................................................74

35 U.S.C. § 287(c)(2)(F) ......................................................................................74

**RULES**

Fed. R. Civ. 56 ................................................................................................................53

**Preliminary Instructions**

**A.1  Preliminary Instructions**

## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to a United States patent.  Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder the right [for up to 20 years from the date the patent application was filed] [for 17 years from the date the patent issued] to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed.  In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews information that is publicly available or that is submitted by the applicant.  This information is called "prior art."  The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.  Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed.  A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed."  This writing from the Examiner is called an "Office Action."  If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims.  This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue.  Sometimes, patents

are issued after appeals within the PTO or to a court.  The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all other prior art that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.  It is your job to consider the evidence presented by the parties and determine independently whether or not [alleged infringer] has proven that the patent is invalid.

**A.2     Preliminary Instructions**

## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are [patent holder] and [alleged infringer].  The case involves United States Patent No(s). [ ], obtained by [inventor], and transferred by [inventor] to [patent holder]. For your convenience, the parties and I will often refer to this patent number [full patent number] by the last three numbers of the patent number, namely, as the "[last three numbers of the patent] patent."

[Patent holder] filed suit in this court seeking money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], [offering for sale], [supplying or causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention] [in/into/within] the United States [products] [methods] [products which are made by a process patented in the United States] that [patent holder] argues are covered by claims [ ] of the [ ] patent.  [[Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and/or] [contributed to the infringement of claims [ ] of the [ ] patent by others].]

The [products] [methods] that are alleged to infringe are [list of accused products or methods].

[Alleged infringer] denies that it has infringed claims [ ] of the [ ] patent.  [Alleged infringer] also argues that claims [ ] are invalid.  I will instruct you later as to the ways in which a patent may be invalid.  In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.  [Add other defenses, if applicable.]

Your job will be to decide whether or not claims [ ] of the [ ] patent have been infringed and whether or not those claims are invalid.  If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement.  [You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.]

**A.3     Preliminary Instructions**

**PATENT AT ISSUE**

[The Court should show the jury the patent at issue and point out the parts, which include the specification, drawings, and claims, including the claims at issue.  The Court may wish to include a joint, nonargumentative statement of the patented subject matter at this point in the instructions.

The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time.  If the claim constructions are handed out, the following instruction should be read:]

I have already determined the meaning of the claims of the [ ] patent.  You have been given a document reflecting those meanings.  For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning.  You are to apply my definitions of these terms throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**A.4    Preliminary Instructions**

## OVERVIEW OF APPLICABLE LAW

[The Court may wish to give preliminary instructions that are applicable to the specific issues in the case.  This may help focus the jury on the facts that are relevant to the issues it will have to decide.  Even if preliminary instructions are given, the Court would, nonetheless, give complete instructions at the close of evidence.]

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether [alleged infringer] has infringed the claims of the [ ] patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  There are a few different ways that a patent may be infringed.  I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.  In general, however, [alleged infringer] may infringe the [ ] patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of a claim of the [ ] patent.  [Alleged infringer] may also indirectly infringe the [ ] patent by contributing to infringement by another entity, or by inducing another person or entity to infringe.  I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the [ ] patent is invalid.  A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious.  For a claim to be invalid because it is not new, [alleged infringer] must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent.  We call these "prior art."  If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious.  Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the invention(s) claimed in the [ ] patent are obvious.  I will provide you detailed instructions on these questions at the conclusion of the case.

[Where a written description or enablement defense is presented: A patent may also be invalid if its description in the specification does not meet certain requirements.  To be valid, a patent must meet the "written description" requirement.  In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as

claimed in the claims of the issued patent.[1]  The disclosure of a patent must also meet the "enablement" requirement.  To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.]

If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement.  A damages award should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what [patent holder] would have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The damages you award are meant to compensate [patent holder] and not to punish [alleged infringer].  You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate [patent holder] for the infringement, in order to punish [alleged infringer].  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

---

[1] Under review in *Ariad v. Lilly*, Appeal No. 2008-1248 (Fed. Cir. appeal reinstated Aug. 21, 2009) (en banc).

**A.5      Preliminary Instructions**

## OUTLINE OF TRIAL

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.  On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, [patent holder] will present its evidence in support of its contention that [some of the] [the] claims of the [ ] patent have been [and continue to be] infringed by [alleged infringer] [and that the infringement has been [and continues to be] willful].  To prove infringement of any claim, [patent holder] must persuade you that it is more likely than not that [alleged infringer] has infringed that claim.  [To persuade you that any infringement was willful, [patent holder] must prove that the infringement was willful by clear and convincing evidence.]

[Alleged infringer] will then present its evidence that the claims of the [ ] patent are invalid [and/or unenforceable].  To prove invalidity [and/or unenforceability] of any claim, [alleged infringer] must persuade you by clear and convincing evidence that the claim is invalid [and/or unenforceable].  In addition to presenting its evidence of invalidity [and/or unenforceability], [alleged infringer] will put on evidence responding to [patent holder]'s proof of infringement [and willfulness].

[Patent holder] may then put on additional evidence responding to [alleged infringer]'s evidence that the claims of the [ ] patent are invalid [and/or unenforceable], and to offer any additional evidence of infringement [and willfulness].  This is referred to as "rebuttal" evidence.  [Patent holder]'s "rebuttal" evidence may respond to any evidence offered by [alleged infringer].

Finally, [alleged infringer] may have the option to put on its "rebuttal" evidence to support its contentions as to the validity [and/or enforceability] of [some of the] [the] claims of the [ ] patent by responding to any evidence offered by [patent holder] on that issue.

[During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  The attorneys' comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.]

After the evidence has been presented, [the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case] [I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments].  These closing arguments by the attorneys are not evidence.  After the closing arguments and instructions, you will then decide the case.

**Instructions at the Close of Evidence**

**B.1     Summary of Contentions**

**SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, [patent holder] seeks money damages from [alleged infringer] for allegedly infringing the [ ] patent by [making], [importing], [using], [selling], and [offering for sale] [products] [methods] that [patent holder] argues are covered by claims [ ] of the [ ] patent.  These are the asserted claims of the [ ] patent.  [Patent holder] also argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent by others] [contributed to the infringement of these claims of the [ ] patent by others].  The [products] [methods] that are alleged to infringe are [list of accused products or methods].

[Alleged infringer] denies that it has infringed the asserted claims of the [ ] patent [and argues that, in addition, claims [ ] are invalid.]  [Add other defenses if applicable.]

Your job is to decide whether [alleged infringer] has infringed the asserted claims of the [ ] patent and whether any of the asserted claims of the [ ] patent are invalid.  If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement.  [You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take willfulness into account later.]

**B.2**     **Claim Construction**

### 2.1     THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**B.2    Claim Construction**

## 2.2    HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

<u>Authorities</u>

For "comprising," *see, e.g.*, *Cook Biotech Inc. v. ACell, Inc.*, 460 F.3d 1365, 1373-78 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim . . . is open-ended and allows for additional steps."); for "consisting of," *see, e.g.*, *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-61 (Fed. Cir. 2006); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) ("In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'"); for "consisting essentially of," *see, e.g.*, *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1239 (Fed. Cir. 2003) ("consisting essentially of" is a middle ground between open-ended term "comprising" and closed-ended phrase "consisting of").

**B.2     Claim Construction**

## 2.2a     INDEPENDENT AND DEPENDENT CLAIMS

[This instruction should only be given where both dependent and independent claims are at issue.]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim(s) [ ] of the [ ] patent are each independent claims.

The remainder of the claims in the [ ] patent are "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.  A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

[Note: It may be helpful to submit to the jury a chart setting forth all dependencies for each dependent claim.]

**B.2     Claim Construction**

## 2.3     CLAIM INTERPRETATION

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

[Court gives its claim interpretation.  This instruction may be divided up into claim-by-claim sub-instructions if the Court believes it would be helpful.]

Authorities

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008) (remanding to the district court to determine the construction of "only if" when the "ordinary" meaning did not resolve the parties' dispute); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (claim construction is a question of law reviewed de novo); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (same); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (in jury cases, court has obligation to construe claim terms).

15

**B.2     Claim Construction**

## 2.3a     SECTION 112, PARAGRAPH 6

[This instruction should only be given where the asserted claims include means-plus-function or step-plus-function requirements.]

Where claims include means-plus-function requirements:

Claim [ ] uses the phrase "means for [function]."  This "means for" phrase has a special meaning in patent law.  It is called a "means-plus-function" requirement.  It does not cover all of the structures that could perform the function set forth in the claim, namely, "[function]."  Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to [at least one of] the [set(s) of] structure(s) described in the [ ] patent for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another.  For purposes of this case, I have identified the [set(s) of] structure(s) described in the [ ] patent that perform(s) the function of "[function]."  [Claims [ ] also include similar means-plus-function requirements.]  When I read you my definitions for certain claim terms a few moments ago, I identified the structures described in the [ ] patent for performing the relevant functions.  You should apply my definition of the function and the structures described in the [ ] patent for performing it as you would apply my definition of any other claim term.

Where claims include step-plus-function requirements:

Claim [ ] uses the phrase "step for [function]."  It does not cover all of the acts that could perform the function set forth in the claim.  Instead, it covers acts that perform that function and are either identical or "equivalent" to [at least one of] the [set(s) of] act(s) described in the [ ] patent for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two acts or two sets of acts are "equivalent" to one another.  For purposes of this case, I have identified the [set(s) of] act(s) described in the [ ] patent that perform(s) the function of "[function]."  [Claims [ ] also include similar step-plus-function requirements.]  When I read you my definitions for certain claim terms a few moments ago, I identified the acts described in the [ ] patent for performing the relevant functions.  You should apply my definition of the function and the acts described in the [ ] patent for performing it as you would apply my definition of any other claim term.

<u>Authorities</u>

35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) (explaining that an object meeting a means-plus-function limitation with two functions must perform both claimed functions and be an equivalent structure.  Equivalence of structure can be shown here if the objects perform both identical functions in substantially the same way to achieve substantially the same result.); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999) (distinguishing between means- or step-plus-function to

16

equivalents available at time of issuance and application of doctrine of equivalents to after-arising inventions); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1351 (Fed. Cir. 1999) ("The proper test for determining whether the structure in an accused device is equivalent to the structure recited in a section 112, ¶ 6, claim is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998).

**B.3** **Infringement**

### 3.1    INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not [alleged infringer] has infringed the [ ] patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are five possible ways that a claim may be infringed.  The five types of infringement are called: (1) direct infringement; (2) active inducement; (3) contributory infringement; (4) infringement through the supply of components from the United States to another country; and (5) infringement through importation of a product made abroad by a patented process.  Active inducement and contributory infringement are referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.  To prove indirect infringement, [patent holder] must also prove that [alleged infringer]'s indirect infringement caused direct infringement.

In this case, [patent holder] has alleged that [alleged infringer] directly infringes the [ ] patent.  [[In addition,] [patent holder] has alleged that [alleged direct infringer] directly infringes the [ ] patent, and [alleged infringer] is liable for [actively inducing or contributing to] that direct infringement by [alleged direct infringer].  [Patent holder] has also alleged that [alleged infringer] is liable for [infringement through the supply of components from the United States for combination outside of the United States] [and/or] [infringement through importation into the United States of a product made by the patented process].]

In order to prove infringement, [patent holder] must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

<u>Authorities</u>

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of noninfringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements).

**B.3     Infringement**

### 3.1a     DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."  In order to prove direct infringement by literal infringement, [patent holder] must prove by a preponderance of the evidence, i.e., that it is more likely than not, that [alleged infringer] made, used, sold, offered for sale within, or imported into the United States a [product or process] that meets all of the requirements of a claim and did so without the permission of [patent holder] during the time the [ ] patent was in force.  You must compare the [product or process] with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule.  If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the [product or process] meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

<u>Authorities</u>

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005) (no direct infringement where accused product did not include each claim limitation); *Network, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353-54 (Fed. Cir. 2001) (no literal infringement where all of the elements of the claim not present in the accused system); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

**B.3     Infringement**

### 3.1b     DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" OF SECTION 112, PARAGRAPH 6 CLAIM REQUIREMENTS

[This instruction should only be given where the asserted claims include means-plus-function or step-plus-function requirements.]

Where claims include means/step-plus-function requirements:

As I have previously explained, claims [ ] include requirements that are in [means/step-plus-function] form.

A product or a process meets a means/step-plus-function requirement of a claim if: (1) it has [a structure or a set of structures/an action or a set of actions] that perform(s) the identical function recited in the claim, and (2) that [structure or set of structures/action or set of actions] is either identical or "equivalent" to [one or more of] the described [set(s) of] [structure(s)/ action(s)] that I defined earlier as performing the function of [functional limitation].  If the [product] does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the [product] does not literally infringe the claim.  Alternatively, even if the [product] has [a structure or a set of structures] that performs the function recited in the claim but the [structure or set of structures] is not either identical or "equivalent" to [one or more of] the [set(s) of] [structure(s)/action(s)] that I defined to you as being described in the [ ] patent and performing this function, the [product] does not literally infringe the asserted claim.

[A structure or a set of structures/An action or a set of actions] may be found to be "equivalent" to [one of] [the/a] [set(s) of] [structure(s)/action(s)] I have defined as being described in the [ ] patent if a person having ordinary skill in the field of technology of the [ ] patent either would have considered the differences between them to be insubstantial at the time the [ ] patent issued or if that person would have found the [structure(s)/actions(s)] performed the function in substantially the same way to accomplish substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures.  Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued.  The fact that [a structure or a set of structures/an act or a set of acts] is known now and is "equivalent" is not enough.  The [structure or set of structures/act or set of acts] must also have been available at the time the [ ] patent issued.

[In this case, the parties have agreed that the relevant field of technology is [field of technology] and that a person having an ordinary level of skill would [qualifications].]  [In this case, you will have to decide [issues regarding field of technology and level of ordinary skill in the art].  I will instruct you later how to decide this.]

In order to prove direct infringement by literal infringement of a means-plus/step-plus-function limitation, [patent holder] must prove the above requirements are met by a preponderance of the evidence.

Authorities

35 U.S.C. § 112, ¶ 6; *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240-41 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1315-17 (Fed. Cir. 2005); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-34 (Fed. Cir. 2006); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003) (holding that the structure in an accused device meets a § 112, ¶ 6, limitation if the structure performs the identical function recited in the claim and is identical or equivalent to the structure in the specification corresponding to that limitation); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (holding that an equivalent structure or act under § 112 cannot embrace technology developed after the patent issued because the literal meaning of a claim is fixed upon issuance); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-11 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

**B.3     Infringement**

**3.1c     DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

[This instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.]

If a [person] [company] makes, uses, sells, offers to sell within, or imports into the United States a [product] [process] that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that [product or process] satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a [product or process] infringes a claim if the accused [product or process] [contains elements or performs steps] corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused [product or process]. You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action]: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the [structure or action] to be considered interchangeable, the [structure or action] must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," [patent holder] must prove the equivalency of the [structure or actions] to a claim element by a preponderance of the evidence.

If claims with means-plus-function clauses are at issue:

When the claim requirement that is not met by the [product or process] is a ["means-plus-function" or "step-plus-function"] requirement, and if you determined that there is no "literal infringement" because there is no [structure or set of structures/action or set of actions] in the [product or process] that performs the specific function of the means-plus-function requirement,, you may decide that the [structure or action] nonetheless corresponds to the requirements of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" [structure or action].

On the other hand, if you find that the accused [product or process] has no corresponding [structure or set of structures/action or set of actions] to [any of] the [set(s) of] [structure(s) or action(s)] that I defined as performing that function, then you must find that there is no infringement under the doctrine of equivalents. This is the case even if you find that the accused [product or process] has some other [structure or set of structures/action or set of actions] that performs the specific function of the means-plus-function requirement. In other words, for a means-plus-function requirement, a determination that there is no "equivalent" structure for purposes of "literal infringement" precludes you from finding infringement under the "doctrine of equivalents."

Authorities

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950) (explaining what constitutes an "equivalent"); *Interactive Pictures Corp. v. Infinite Pictures Inc.*, 274 F.3d 1371, 1381-82 (Fed. Cir. 2001); *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (no infringement under the doctrine of equivalents); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) (distinguishing between the doctrine of equivalents and the statutory term "equivalents"); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

**B.3     Infringement**

## 3.1d    LIMITATIONS ON DIRECT INFRINGEMENT
## UNDER THE DOCTRINE OF EQUIVALENTS

[Although the applicability of these limitations is ultimately decided by the Court, this instruction is provided for the case in which the Court decides to submit these issues to the jury for advisory findings.]

[If there is a question as to whether the prior art limits the doctrine of equivalents:

The prior art may preclude a finding of infringement under the doctrine of equivalents. I will explain what "prior art" is, but, generally speaking, "prior art" is things that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.]

[Statement of the law not using "hypothetical claim":

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular [product or process] that is accused of infringing a particular claim, you must determine what [products or processes] are in the "prior art" as well as what [products or processes] would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

If [alleged infringer] establishes that a [product or process] that (1) meets the same claim requirements as the [product or process] that is accused of infringing and (2) has the same allegedly "equivalent" alternative feature(s) as the [product or process] that is accused of infringing is in the prior art or would have been obvious from the prior art to a person having ordinary skill in the field of technology of the invention at the time of the invention, you must find that the claim has not been infringed.

[Alleged infringer] has the burden of proving that this hypothetical, equivalent claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.]

[Alternative statement of the law using "hypothetical claim":

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents, you must first have in mind a "hypothetical claim" that would cover the accused, allegedly equivalent [product or process] literally. The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would be met by the allegedly "equivalent" hypothetical claim.

Once you have this equivalent "hypothetical claim" in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness. I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness. You should use these same rules to determine whether or not the "hypothetical claim" would be invalid for anticipation or obviousness. If you determine that the "hypothetical claim" would have been

invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.]

[If there is a question as to whether a disclosure in the patent precludes equivalence:

You may not find that a [product or process] infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature(s) of that [product or process] was/were described somewhere in the patent and (2) that [product or process] is not covered literally by any of the claims of the patent.]

[If there is a question as to argument-based prosecution history estoppel:

You may not find that a [product or process] infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished an unmet requirement from the allegedly "equivalent" alternative aspect of that [product or process].]

[If there is a question as to amendment-based prosecution history estoppel:

[Alleged infringer] has argued that [patent holder] cannot assert infringement under the doctrine of equivalents due to statements [patent holder] made to the PTO in order to get the claim allowed in the first place.  In order to find [accused product] to be equivalent, you must also make certain findings regarding the statements [patent holder] made to the PTO in order to get the [ ] patent.  Specifically, in order to find equivalents, you must first also find one or more of the following: (1) the amendment that is asserted by [alleged infringer] to limit the scope of equivalents substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making this amendment was not related to patentability; (3) a person having ordinary skill in the field of technology of the patent at the time of the amendment would not have foreseen the potential substitution of the allegedly "equivalent" alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the shortcomings of language, prevented the applicant from using claim language that included the allegedly "equivalent" alternative.  You may not find that the alternative feature of the [accused product or process] is an equivalent to an unmet requirement of a claim if that requirement was added to the claim (or to any claim of the [ ] patent) by amendment during the prosecution of the applications that led to issuance of the [ ] patent, unless you also find that at least one of these factors that I have identified to you.]

[If there is a question as to vitiation:

You may not determine that an alternative aspect of a [product or process] is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.  Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.]

<u>Authorities</u>

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 676, 684 (Fed. Cir. 1990).

**B.3      Infringement**

## 3.2      INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT

[Patent holder] alleges that [alleged infringer] is liable for infringement by actively inducing [someone else] [some other company] to directly infringe the [ ] patent literally or under the doctrine of equivalents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[Alleged infringer] is liable for active inducement of a claim only if [patent holder] proves by a preponderance of the evidence:

(1)      that the acts are actually carried out by [insert name or other description of alleged direct infringer] and directly infringe that claim;

(2)       that [alleged infringer] took action during the time the [ ] patent was in force intending to cause the infringing acts by [insert name or other description of alleged direct infringer]; and

(3)      that [alleged infringer] was aware of the [ ] patent and knew that the acts, if taken, would constitute infringement of that patent.

> [addition to the end of (3) above when willful blindness concerning the [ ] patent's existence is at issue:]
>
>> or that [alleged infringer] believed there was a high probability that the acts by [insert name or other description of alleged direct infringer] would infringe a patent [by patent holder] and [alleged infringer] took deliberate steps to avoid learning of that infringement.
>
> [alternative addition  to the end of (3) above when knowledge of the patent is undisputed but willful blindness concerning infringement of that patent is at issue:]
>
>> or that [alleged infringer] believed there was a high probability that the acts by [insert name or other description of alleged direct infringer] infringed the [ ] patent and took deliberate steps to avoid learning of that infringement.

If you find that [alleged infringer] was aware of the patent, but believed that the acts it encouraged did not infringe that patent[, or that the patent was invalid,][2] [alleged infringer] cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that [insert name or other description of alleged direct infringer] itself directly infringes the claim.  Nor is it sufficient

---

[2]  In *Commil USA, LLC v. Cisco Sys.*, 720 F.3d 1361 (Fed. Cir. 2013), a divided panel of the Federal Circuit held that an accused infringer's "evidence of a good-faith belief of invalidity may negate the requisite intent for induced infringement." A petition for certiorari has been filed in that case.

27

that [alleged infringer] was aware of the act(s) by [insert name or other description of alleged direct infringer] that allegedly constitute the direct infringement.  Rather, in order to find active inducement of infringement, you must find either that [accused infringer] specifically intended [insert name or other description of alleged direct infringer] to infringe the [ ] patent <u>or that [accused infringer] believed there was a high probability that [insert name or other description of alleged direct infringer] would infringe the [ ] patent, but deliberately avoided learning the infringing nature of [insert name or other description of alleged direct infringer]'s acts.  The mere fact, if true, that [alleged infringer] knew or should have known that there was a substantial risk that [insert name or description of alleged direct infringer]'s acts would infringe the [] patent would not be sufficient for active inducement of infringement.</u>


<u>Authorities</u>

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v. SEB S. A.*, __ U.S. __, __; 131 S.Ct. 2060, 2068-2071; 179 L.Ed. 1167, 1177-1180 (2012); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).


<u>Committee Comments</u>:  The underlined language in the instruction incorporates the "willful blindness" standard addressed by the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S. A.*, __ U.S. __, __; 131 S.Ct. 2060, 2068-2071; 179 L.Ed. 1167, 1177-1180 (2012). The Committee is of the opinion that in cases where willful blindness is not an issue, the underlined language should be omitted to reduce the possibility of juror confusion.

**B.3    Infringement**

### 3.3    INDIRECT INFRINGEMENT—CONTRIBUTORY INFRINGEMENT

[Patent holder] argues that [alleged infringer] is liable for contributory infringement by contributing to the direct infringement of the [ ] patent by [insert name or other description of direct infringer].  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

[Alleged infringer] is liable for contributory infringement of a claim if [patent holder] proves by a preponderance of the evidence:

(1)    [alleged infringer] sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process, during the time the [ ] patent is in force;

(2)    the component or apparatus has no substantial, noninfringing use;

(3)    the component or apparatus constitutes a material part of the invention;

(4)    [alleged infringer] is aware of the [ ] patent and knows that the [products or processes] for which the [component or apparatus] has no other substantial use may be covered by a claim of the [ ] patent or may satisfy a claim of the [ ] patent under the doctrine of equivalents; and

(5)    that use directly infringes the claim.

In order to prove contributory infringement, [patent holder] must prove that each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

<u>Authorities</u>

35 U.S.C. § 271(c) ("not a staple article"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) (knowledge of plaintiff's patent and that the part supplied is significant); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1327 (Fed. Cir. 2008), *cert denied*, 129 S. Ct. 2864 (2009); *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (affirming determination of no contributory infringement); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001) (reversing district court's finding of no contributory infringement and inducement); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (differentiating contributory infringement from inducement); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (direct infringement findings supported contributory infringement findings).

**B.3   Infringement**

### 3.4   INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM UNITED STATES FOR COMBINATION ABROAD

[This instruction should be given if patentee asserts infringement under 35 U.S.C. § 271(f)(1) or § 271(f)(2).]

[If § 271(f)(1)—active inducement—is at issue:

[Alleged infringer] is liable for § 271(f)(1) infringement of a claim (active inducement of foreign combination of components supplied from the United States) if patentee proves by a preponderance of the evidence that:

(1)      [alleged infringer] supplies [or causes to be supplied] components from the United States to a place outside the United States, which make up all or a substantial portion of the invention of any one of the claims of the [ ] patent;

(2)      [alleged infringer] takes action intentionally to cause another to act by [insert name or other description of alleged direct infringer] outside of the United States to assemble the components;

(3)      [alleged infringer] knows of the [ ] patent, and knows that the encouraged acts constitute infringement of that patent; and

(4)      the encouraged acts would constitute direct infringement of the claim if they had been carried out in the United States.

If you find that [alleged infringer] was aware of the patent, but believed that the acts it encouraged would not constitute infringement of the patent if carried out in the United States[, or that the patent was invalid,][3] [alleged infringer] cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that [insert name or other description of alleged direct infringer] itself allegedly directly infringes the claim.  Nor is it sufficient that [alleged infringer] was aware of the act(s) that allegedly constitute the direct infringement.  Rather, you must find that [alleged infringer] specifically intended for [insert name or other description of alleged direct infringer] to infringe the [ ] patent, in order to find inducement of infringement.  If you do not find that [alleged infringer] specifically intended to infringe, then you must find that [alleged infringer] has not actively induced the alleged infringement under § 271(f)(1).]

[If § 271(f)(2)—contributory foreign infringement—is at issue:

---

[3]  In *Commil USA, LLC v. Cisco Sys.*, 720 F.3d 1361 (Fed. Cir. 2013), a divided panel of the Federal Circuit held that an accused infringer's "evidence of a good-faith belief of invalidity may negate the requisite intent for induced infringement." A petition for certiorari has been filed in that case.

[Alleged infringer] is [also] liable for § 271(f)(2) infringement of a claim if [patent holder] proves by a preponderance of the evidence that:

(1)      [alleged infringer] supplies a component, or causes a component to be supplied, from the United States to a place outside of the United States;

(2)      the only substantial use for the component is in a product that [product or process] would infringe if the combination had occurred in the United States;

(3)      [alleged infringer] is aware of the [ ] patent and knows that the [component or apparatus] has no other substantial use and may be covered by a claim of the patent [literally or under the doctrine of equivalents]; and

(4)      intends for the component to be used in a product that would directly infringe the claim if it had been used in the United States.


Authorities

35 U.S.C. § 271(f); *Cardiac Pacemakers, Inc. v. St. Jude Med.*, Appeal Nos. 07-1296, -1347 (Fed. Cir. 2009) (§ 271(f) does not cover method claims); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1222-23 (Fed. Cir. 2006); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117-18 (Fed. Cir. 2004); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1366 (Fed. Cir. 2005); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys., Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("[T]he statutory language in this section [271(f)(2)] does not require an actual combination of the components, but only a showing that the infringer shipped them with the intent that they be combined.").


Committee Comments:  For simplicity's sake, this instruction does not incorporate the "willful blindness" standard for induced infringement addressed by the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S. A.*, __ U.S. __, __ ; 131 S.Ct. 2060, 2068-2071; 179 L.Ed. 1167, 1177-1180 (2012). If the patentee is proceeding on a theory of willful blindness, however, that standard should be addressed in this instruction. *See* Instruction 3.2.

**B.3    Infringement**

**3.5    INFRINGEMENT BY SALE, OFFER FOR SALE, USE, OR IMPORTATION OF A PRODUCT MADE OUTSIDE THE UNITED STATES BY PATENTED PROCESS**

[Alleged infringer] is liable for direct infringement of a claim if [patent holder] proves by a preponderance of the evidence that [alleged infringer], without [patent holder]'s authorization, imports, offers to sell, sells, or uses within the United States a product which was made outside of the United States during the time the [ ] patent is in force by a process that, if performed in the United States, would infringe the claim literally or under the doctrine of equivalents.  However, if the product has been materially changed by an additional process or the product has become a trivial and nonessential component of another product, you must find [alleged infringer] did not infringe the [ ] patent.

<u>Authorities</u>

35 U.S.C. § 271(g); *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367 (Fed. Cir. 2003) (finding infringement under this section); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1347 (Fed. Cir. 2000) (same).

**B.3     Infringement**

### 3.6     DIRECT INFRINGEMENT: ONE OR MORE SYSTEM COMPONENTS LOCATED OUTSIDE THE UNITED STATES

[This instruction should only be given where one or more components of an accused system are located outside of the United States.]

Direct infringement requires that the accused system include every element recited in the claim.

[Patent holder] claims that infringement occurred within the United States even though some (but not all) of the elements of the claim were located outside of the United States.  For infringement to occur within the United States, [patent holder] must prove by a preponderance of the evidence that the control of the system was exercised and the benefit of the system was enjoyed in the United States.

Authorities

35 U.S.C. § 271(a); *NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1313-21 (Fed. Cir. 2005); *id.* 1317 ("The use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained.").

**B.3     Infringement**

### 3.7     DIRECT INFRINGEMENT: ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL CLAIM LIMITATIONS

[This instruction should only be given where the patentee alleges direct infringement by the combined acts of multiple persons or companies.]

Where no single party performs all of the steps of a claimed process but more than one party performs every step of the process, the claim is directly infringed if one party has control over the entire accused process so that all the steps are attributable to the controlling or directing party.  Mere arms-length cooperation between parties is insufficient to prove direct infringement. Rather, the accused infringer must control or direct the actions of the other party or parties if those actions are to be attributed to the accused infringer.

[Patent holder] alleges that [alleged infringer A] and [alleged infringer B, etc.] collectively infringe claim(s) [ ] of the [ ] patent.

For infringement to be proved, [patent holder] must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that [alleged infringer A] has control over or directs [the other alleged infringer(s)] so that all the steps are attributable to [alleged infringer A].

<u>Authorities</u>

35 U.S.C. § 271(a); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *BMC Resources Inc. v. Paymentech LP*, 498 F.3d 1373, 1378-81 (Fed. Cir. 2007); *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006) (infringement by multiple alleged infringers); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005).

<u>Committee Comments</u>: On June 2, 2014, the Supreme Court remanded the case of *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, __ U.S. __ (2014), No. 12-786, 2014 U.S. LEXIS 3817, 2014 WL 2440535 (U.S. June 2, 2014), to the Federal Circuit. In its decision (which addressed induced-infringement liability under §271(b)), the Supreme Court noted that "on remand, the Federal Circuit will have the opportunity to revisit the §271(a) question" that is addressed by this instruction.

**B.3    Infringement**

**3.8    INDIRECT INFRINGEMENT: ACCUSED INFRINGER PRACTICES SOME
CLAIMED STEPS AND ANOTHER PRACTICES THE REMAINING STEPS**

This instruction has been removed. *See Limelight Networks, Inc. v. Akamai Technologies,
Inc.*, __ U.S. __ (2014), No. 12-786, 2014 U.S. LEXIS 3817, 2014 WL 2440535 (U.S. June 2,
2014) (finding there can be no induced-infringement liability where no single entity is liable
for direct infringement of the patent under §271(a) because "where there has been no
direct infringement, there can be no inducement of infringement under §271(b)").

**B.3     Infringement**

**3.9     INDIRECT INFRINGEMENT: ACCUSED INFRINGER ALLEGEDLY INDUCES OTHERS TO COLLECTIVELY PRACTICE ALL CLAIMED STEPS**

**This instruction has been removed. *See Limelight Networks, Inc. v. Akamai Technologies, Inc.*, __ U.S. __ (2014), No. 12-786, 2014 U.S. LEXIS 3817, 2014 WL 2440535 (U.S. June 2, 2014) (finding there can be no induced-infringement liability where no single entity is liable for direct infringement of the patent under §271(a) because "where there has been no direct infringement, there can be no inducement of infringement under §271(b)").**

**B.3     Infringement**

### 3.10     WILLFUL INFRINGEMENT

[This instruction should be given only if willfulness is in issue.]

In this case, [patent holder] argues both that [alleged infringer] infringed and, further, that [alleged infringer] infringed willfully.  If you have decided that [alleged infringer] has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that [alleged infringer] acted recklessly.

To prove that [alleged infringer] acted recklessly, [patent holder] must prove two things by clear and convincing evidence:

The first part of the test is objective: the patent holder must persuade you that [alleged infringer] acted despite a high likelihood that [alleged infringer]'s actions infringed a valid and enforceable patent.  In making this determination, you may not consider [alleged infringer]'s state of mind.  Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.[4]

Only if you conclude that the [alleged infringer]'s conduct was reckless do you need to consider the second part of the test.  The second part of the test does depend on the state of mind of the [alleged infringer].  The patent holder must persuade you that [alleged infringer] actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  To determine whether [alleged infringer] had this state of mind, consider all facts which may include, but are not limited, to:

(1)     Whether or not [alleged infringer] acted in accordance with the standards of commerce for its industry;

(2)     Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the [ ] patent;

(3)     Whether or not there is a reasonable basis to believe that [alleged infringer] did not infringe or had a reasonable defense to infringement;

---

[4] In determining whether to present this instruction to the jury, the parties and the Court should recognize that "the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). *See also id.* ("When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury.").

(4)      Whether or not [alleged infringer] made a good-faith effort to avoid infringing the [ ] patent, for example, whether [alleged infringer] attempted to design around the [ ] patent; [and]

(5)      Whether or not [alleged infringer] tried to cover up its infringement[./; and]

(6)      [Give this instruction only if [alleged infringer] relies upon an opinion of counsel as a defense to an allegation of willful infringement:

[Alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid [or unenforceable].  You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

<u>Authorities</u>

35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc) (opinion of counsel defense); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Federal Circuit decisions on willfulness).

<u>Committee Comments</u>:  The National Patent Jury Instructions include whether the alleged infringer acted in a manner consistent with the standards of commerce for its industry in the subjective part of the test.  (www.nationaljuryinstructions.org.)  Some other pattern jury instructions decline to provide a list of nonexhaustive considerations, *see, e.g.*, Seventh Circuit, 2008 Patent Jury Instructions, at 11.2.14, on the theory that the factors are better left to attorney argument or may mislead a jury to believe other factors should not be considered.  (www.ca7.uscourts.gov/Pattern-Jury-Instr.)  Appropriate factors for the jury's consideration may be tailored to each case, or may be omitted.

**B.4     Validity**

## 4.1     INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not [alleged infringer] has proven that claims [ ] of the [ ] patent are invalid.  To prove that any claim of a patent is invalid, [alleged infringer] must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

<u>Authorities</u>

35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp. v. i4i Limited Partnerhsip,* 131 S.Ct. 2238 (2011).  Invalidity may be asserted for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a defense to alleged infringement.  *Schumer v. Lab. Computer Sys., Inc*., 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

**B.4.2   Validity—Adequacy of Patent Specification**

## 4.2a   WRITTEN DESCRIPTION REQUIREMENT

The patent law contains certain requirements for the part of the patent called the specification. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification of the [ ] patent does not contain an adequate written description of the invention.  To succeed, [alleged infringer] must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.  In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

Authorities

35 U.S.C. § 112, ¶¶ 1, 2; *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.,* 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an adequate written description; however, it need not include the exact words of the claim); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

**B.4.2   Validity—Adequacy of Patent Specification**

## 4.2b   ENABLEMENT

The patent law contains certain requirements for the part of the patent called the specification. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.  To succeed, [alleged infringer] must show by clear and convincing evidence that the [ ] patent does not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the [original] patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of [original] filing without having to conduct undue experimentation.  However, some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)    the time and cost of any necessary experimentation;

(2)    how routine any necessary experimentation is in the field of [identify field];

(3)    whether the patent discloses specific working examples of the claimed invention;

(4)    the amount of guidance presented in the patent;

(5)    the nature and predictability of the field of [identify field];

(6)    the level of ordinary skill in the field of [identify field]; and

(7)    the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the [original] application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

Authorities

35 U.S.C. § 112, ¶ 1; *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[ ] that

the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.'") (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999)); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007) (full scope of claimed invention must be enabled); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (enabling the full scope of each claim is "part of the *quid pro quo* of the patent bargain"); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (factors for determining undue experimentation).

### B.4.2   Validity—Adequacy of Patent Specification

## 4.2c   BEST MODE[5]

The patent law contains certain requirements for the part of the patent called the specification. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification does not describe the best way to [make/use/carry out] the claimed invention.  To succeed, [alleged infringer] must show by clear and convincing evidence that the [ ] patent does not disclose what [the inventor/any of the inventors] believed to be the best way to [make/use/carry out] the claimed invention at the time the patent application was filed.  This is known as the "best mode" requirement.  It ensures that the public obtains a full disclosure of the best way to [make/use/carry out] the claimed invention that was known to [the inventor/inventors] at the time the [original] patent application was first filed.  The best mode requirement is designed to prohibit [the inventor/any of the inventors] from concealing a better mode of practicing the invention than the mode [he/she/they] disclosed in the patent application. The best mode requirement must be determined on a claim-by-claim basis.

The best mode requirement focuses on what [the inventor/the inventors] believed at the time the [original] patent application was filed.  It does not matter whether the best mode contemplated by [the inventor/any of the inventors] was considered by others to have been the best way to carry out the claimed invention.  Nor does it matter that the [inventor/inventors] failed to disclose a better way to carry out the claimed invention if the [inventor/inventors] did not believe it to be better at the time they filed the original application.

If [the inventor/any of the inventors] believed there was a best way to carry out any claim of the invention and the [ ] patent does not adequately disclose it, the claim is invalid.  In deciding whether or not the best mode has been included in the [ ] patent, you must consider two questions.

First, you must decide whether or not [the inventor/any of the inventors] believed there to be a best way to practice the claimed invention at the time that application was filed.  If [the inventor did not believe/none of the inventors believed] there to be a best way to carry out the claimed invention, there is no requirement that the [ ] patent describe a best mode.

Second, you must decide whether or not the [ ] patent describes what [the inventor/any of the inventors] believed to be the best mode at the time the [original] patent application was filed for [each claim at issue].  The disclosure of the best mode must be detailed enough to enable a person having ordinary skill in the field of technology of the patent to [make/use/carry out] that best mode without undue experimentation.  The patent specification need not disclose routine details concerning the quality and nature of the best mode if such details would be readily apparent to a person of ordinary skill in the field.  Although a patent specification must disclose at least the best mode for each claim, it may also disclose other modes as well, and it need not state which of the modes disclosed is considered by the [inventor/inventors] to be the best.

---

[5] Under section 15 of the America Invents Act, enacted on September 16, 2011, failure to disclose the best mode is no longer a basis for invalidity or unenforeability.

<u>Authorities</u>

35 U.S.C. § 112, ¶ 1; *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1364-65 (Fed. Cir. 2008); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1320 (Fed. Cir. 2002); *Bruning v. Hirose*, 161 F.3d 681, 686-87 (Fed. Cir. 1998) (if inventor does not have a subjective awareness of a best mode for practicing the claimed invention at the time of filing of the patent application, no best mode violation can occur); *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1049-52 (Fed. Cir. 1995); *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 557-62 (Fed. Cir. 1994); *Wahl Instruments, Inc. v. Acvious*, *Inc.*, 950 F.2d 1575, 1579-84 (Fed. Cir. 1991); *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 926-28 (Fed. Cir. 1990); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535-37 (Fed. Cir. 1987).

### B.4.3   Validity—The Claims

**4.3a-1   PRIOR ART**
**(For Patents Having an Effective Filing Date Before March 16, 2013)**

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or [insert date if undisputed] or more than one year before the filing date of the patent application.  However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.  [Where appropriate, add limitation that subject matter developed by another which qualifies as prior art only under one or more of subsections (e), (f), and (g) of 35 U.S.C. § 102 where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by the same person, or subject to an obligation of assignment to the same person.]

[For anticipation:

For the claim to be invalid because it is not new, [alleged infringer] must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.]

[If invention date is disputed: In this case, you must determine the date of invention [or conception] [and/or] [reduction to practice] for the [claimed invention or alleged prior art].

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice.  Diligence means working continuously, though not necessarily every day.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person.  But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application.  An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.]

**B.4.3   Validity—The Claims**

## 4.3b-1 ANTICIPATION
### (For Patents Having an Effective Filing Date Before March 16, 2013)

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention.  In general, inventions are new when the identical [product or process] has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

[Alleged infringer] contends that claim(s) [ ] of the [ ] patent is/are invalid because the claimed invention(s) is/are anticipated or because [patent holder] lost the right to obtain a patent.  [Alleged infringer] must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid.

Here is a list of ways that [alleged infringer] can show that a patent claim was not new or that the patentee lost the right to patent the claim(s) [choose those that apply based on alleged infringer's contentions]:

(1)     An invention is not new if it was known to or used by others in the United States before the [insert date of invention].  An invention is known when the information about it was reasonably accessible to the public on that date.

(2)     An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the [insert date of invention].  [A description is a "printed publication" only if it was publicly accessible.]

(3)     [Patent holder] has lost her or his rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by [patent holder] or anyone else, more than a year before [insert date], which is the effective filing date of the application for the [ ] patent.  An invention was patented by another if the other patent describes the same invention claimed by [patent holder] to a person having ordinary skill in the technology.

(4)     [Patent holder] has lost her or his rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before [insert date], which is the effective filing date of the application for the [ ] patent.  An invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

(5)     [Patent holder] has lost his or her rights if he or she abandoned the invention.

(6)     [Patent holder] has lost her or his rights if she or he had already obtained a patent for the invention in a foreign country before the filing date of the application in the United States or the patent application was filed in a foreign country more than a year before the filing date of the application for the patent in the United States.

(7)     An invention is not new if it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].

(8)     An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction to practice or the filing date of the application for the [ ] patent].

(9)     [Patent holder] is not entitled to the [ ] patent if [named inventor] did not himself invent the invention.

(10)    An invention is not new if the invention was made by someone else in the United States before the invention was made by [patent holder] and the other person did not abandon, suppress, or conceal the invention.


If an interference proceeding has been declared, additional instructions should be given on this issue.

Authorities

35 U.S.C. § 102(a)-(g); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd*., 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

### 4.3a-2  PRIOR ART
### (For Patents Having an Effective Filing Date on or After March 16, 2013)

Prior art to a patent may include:

(1) items that were publicly known or that have been used, on sale, or otherwise made available to the public before the filing date of the patent,

(2) publications that were published or otherwise made available to the public before the filing date of the patent, and

(3) patents and published patent applications naming another inventor that were filed before the filing date of the patent.


However, prior art does not include:

an item or publication that (a) is the inventor's own work or (b) describes the inventor's own work or (c) was directly or indirectly obtained from the inventor, unless it was made public more than one year before the filing date of the patent's application, or

a patent or patent application that (a) discloses the inventor's own work or (b) was directly or indirectly obtained from the inventor or (c) was owned by the same person or subject to an obligation of assignment to the same person.

[For anticipation:

For the claim to be invalid because it is not new, [alleged infringer] must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.]

Authorities

35 U.S.C. § 102(a)(1)-(2); 35 U.S.C. § 102(b)(1)-(2).

49

### B.4.3   Validity—The Claims

### 4.3c   OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent [at the time the invention was made] or [before the filing date of the patent].[6]

[Alleged infringer] may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the [invention was made] or [patent was filed] in the field of [insert the field of the invention].

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field [of the invention] that someone would have had at the time the [invention was made] or [patent was filed], the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention [or the patent's filing date] there was a reason that would have prompted a person having ordinary skill in the field of [the invention] to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.  To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.  Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight, i.e., consider only what was known at the time of the invention [or the patent's filing date].

---

[6] The "at the time invention was made" standard is used for patents that were filed before March 16, 2013. For patents filed on or after March 16, 2013, the appropriate standard is "before the effective filing date of the claimed invention."

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

a.  Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.  Whether the invention satisfied a long-felt need;

c.  Whether others had tried and failed to make the invention;

d.  Whether others invented the invention at roughly the same time;

e.  Whether others copied the invention;

f.  Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.  Whether the invention achieved unexpected results;

h.  Whether others in the field praised the invention;

i.  Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.  Whether others sought or obtained rights to the patent from the patent holder; and

k.  Whether the inventor proceeded contrary to accepted wisdom in the field.

### B.4.3   Validity—The Claims

## 4.3c(i)  LEVEL OF ORDINARY SKILL

In deciding what the level of ordinary skill in the field of [invention] is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

## 4.3c(ii) SCOPE AND CONTENT OF THE PRIOR ART

[Option 1: parties stipulate to prior art.]

In considering whether the claimed invention was obvious at the time it was made, you should consider the scope and content of the following prior art:  [Insert art as stipulated].

[Option 2: parties dispute the prior art.]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle.  When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

Authorities

35 U.S.C. § 103.  The four-factor test, including articulation of the objective factors, is found in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000).  The test was reaffirmed in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007) ("While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls.").  *See also Cordis Corp. v. Medtronic Ave., Inc.*, 511 F.3d 1157, 1172 (Fed. Cir. 2008).

In cases where the invalidity defense is based on a combination of prior art, the proper inquiry is a flexible analysis considering whether, among other factors, the prior art teaches, suggests, or motivates the claimed invention.  *KSR*, 550 U.S. at 419-20; *Esai Co. v. Dr. Reddy's Labs. Ltd.*, 533 F.3d 1353, 1356-57 (Fed. Cir. 2008); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380-81 (Fed. Cir. 1986).

For patents having filing dates before March 16, 2013, obviousness should be assessed at the time of the invention. For patents having filing dates on or after March 16, 2013, obviousness should be assessed at the time just before the patent's effective filing date. In either case, fact-finders should be made aware "of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."  *KSR*, 550 U.S. at 421.

For recent authority that invalidity must be shown by clear and convincing evidence, *see Microsoft Corp. v. i4i Limited Partnerhsip*, 131 S.Ct. 2238 (2011).  Obviousness should be evaluated on a claim-by-claim basis.  *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1303 (Fed. Cir. 2007).

For factors to consider in determining the level of ordinary skill, *see, e.g.*, *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007); *Ruiz*, 234 F.3d at 666-67.  For authority on the standards for determining the scope and content of prior art, *see, e.g.*, *KSR*, 550 U.S. at 420; *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007); *Princeton Biochems., Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005).

**B.4.3   Validity—The Claims**

## 4.3d   INVENTORSHIP

[This instruction should only be given in the event the alleged infringer has contended that the patent suffers from improper inventorship.]

In this case, [alleged infringer] contends that the [ ] patent is invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent [even if that claim has not been alleged to be infringed].  Whether the contribution is significant is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

<u>Authorities</u>

35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid."); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to named inventors was not an inventor); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

**B.5     Equitable Defenses**

[Although these equitable defenses are ultimately decided by the Court, these instructions are provided for the case in which the Court decides to submit these issues to the jury for advisory findings.]

## 5.1     INEQUITABLE CONDUCT

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office.  This is important because the PTO has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness.  This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. [Alleged infringer] must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the [ ] patent withheld material information or submitted materially false information or statements to the PTO during the examination of the [ ] patent(s), and that the person did so with an intent to deceive the Examiner into issuing the [ ] patent(s).

I will now explain to you what "material" and "intent to deceive" mean.

**Material**

Information that was withheld from the PTO is material if the PTO would not have allowed the claim had it been aware of the withheld information. A false or misleading statement is material when it convinces the PTO to allow a claim that it would not have allowed if the statement had not been made. You may also find that affirmative, egregious misconduct is material. An example of affirmative, egregious misconduct is the filing of an unmistakably false affidavit.

You may only find information, statements, or misconduct to be material if there is clear and convincing evidence that they are material.

**Intent to Deceive**

In order for inequitable conduct to have occurred, [alleged infringer] must establish that any [failure to disclose material information/false or misleading statements/misconduct] [was/were] done with an intent to deceive the Examiner.  If the [failure to disclose material information/false or misleading statements/misconduct] occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

55

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.  Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct.  However, an intent to deceive may be inferred only where it is the single most reasonable inference that can be drawn from the evidence. In other words, if it could be reasonable to conclude that the [failure to disclose material information/false or misleading statements/misconduct] was an honest mistake, intent to deceive cannot be found.

**Conclusion of Inequitable Conduct**

Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality.  There must be clear and convincing evidence that establishes materiality and there must be clear and convincing evidence that establishes an intent to deceive.  If clear and convincing evidence of either, or both, is missing, there can be no inequitable conduct.

If you find, however, that [alleged infringer] has proved by clear and convincing evidence that [material information was withheld/materially misleading statements were made or false information provided/affirmative, egregious misconduct occurred] and, further, that these acts or omissions were done with an intent to deceive the Examiner, you must then determine whether the evidence clearly and convincingly establishes that [patent holder or other relevant person(s)] committed inequitable conduct and the patent(s) should in fairness be declared unenforceable.

Authorities

35 U.S.C. § 282;  *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

**B.5     Equitable Defenses**

## 5.2     LACHES

[Alleged infringer] contends that [patent holder] is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) [patent holder] delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) [alleged infringer] has been or will be prejudiced in a significant way due to [patent holder]'s delay in filing the lawsuit.  This is referred to as laches.  [Alleged infringer] must prove delay and prejudice by a preponderance of the evidence.

Whether [patent holder]'s delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches.  If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.  This presumption shifts the burden of proof to [patent holder] to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if [patent holder] presents such evidence, the burden of proving laches remains with [alleged infringer].  Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to [alleged infringer].  Facts and circumstances that can justify a long delay can include:

(1)     being involved in other litigation during the period of delay;

(2)     being involved in negotiations with [alleged infringer] during the period of delay;

(3)     poverty or illness during the period of delay;

(4)     wartime conditions during the period of delay;

(5)     being involved in a dispute about ownership of the patent during the period of delay; or

(6)     minimal amounts of allegedly infringing activity by [alleged infringer] during the period of delay.

    If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if [alleged infringer] suffered material prejudice as a result of the delay.  Prejudice to [alleged infringer] can be evidentiary or economic.  Whether [alleged infringer] suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in [alleged infringer] not being able to present a full and fair defense on the merits to [patent holder]'s infringement claim.  Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Economic prejudice is determined by whether or not [alleged infringer] changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such

57

as if [alleged infringer] could have switched to a noninfringing product if sued earlier), and also whether [alleged infringer]'s losses as a result of that change in economic position likely would have been avoided if [patent holder] had filed this lawsuit sooner.  In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances.  Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice).  You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

Authorities

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (en banc).

**B.5**   **Equitable Defenses**

## 5.3   EQUITABLE ESTOPPEL

The owner of a patent may forfeit its right to any relief from an infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the patent holder, and (3) the infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.  This is referred to as an "equitable estoppel" and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit.  [Alleged infringer] must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

[Alleged infringer] contends that [patent holder] made a misleading communication about [ ] before [patent holder] filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  Whether in fact [patent holder] communicated with [alleged infringer] about [ ] prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to [alleged infringer] can be evidentiary or economic in form.  Whether [alleged infringer] suffered evidentiary harm is a question that must be answered by evaluating whether [alleged infringer] will be unable to present a full and fair defense on the merits of [patent holder]'s claim(s).  Not being able to present a full and fair defense on the merits of [patent holder]'s claim(s) can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Whether [alleged infringer] suffered economic prejudice is a question that must be answered by evaluating whether [alleged infringer] changed its economic position as a result of its reliance on any misleading communication from [patent holder] about [ ], resulting in losses beyond merely paying for infringement (such as if [alleged infringer] could have switched to a noninfringing product if sued earlier) and whether losses as a result of any change in economic position could have been avoided.

<u>Authorities</u>

35 U.S.C. § 282;  *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

**B.5     Equitable Defenses**

## 5.4     PROSECUTION LACHES

The owner of a patent may be barred from enforcing claims of a patent against an infringer where: (1) there was an unreasonably long delay in filing the claims of the patent, and (2) the infringer, another private party, or the public will be prejudiced if the patent holder is entitled to enforce the patent despite the unreasonable delay in securing the claims of the patent.  This is referred to as prosecution laches, and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit.

The delay that must be considered is the period of time beginning when [patent holder or its predecessor(s) in interest] filed the original application for a patent and ending when [patent holder or its predecessor(s) in interest] filed the application for the patent asserted in this lawsuit. [Patent holder] filed the original application for a patent on [ ], and filed the application for the patent asserted in this lawsuit on [ ].

Whether [patent holder]'s delay in securing the patent asserted in this lawsuit was unreasonably long is a question that must be answered, and you should consider the facts and circumstances as they existed during the period of delay.  In determining whether [alleged infringer], another private party, or the public will be prejudiced as a result of any unreasonably long delay in filing the claims of the patent(s) asserted in this case, consider whether [alleged infringer] or others invested time, money, and effort in developing, manufacturing, or selling products now covered by the patent(s) asserted in this case during the period of unreasonably long delay, whether other private parties have done so and may be potentially subject to infringement, and whether the time when the public will be able to freely practice the invention(s) now covered by the patent(s) asserted in this case was unduly and unfairly postponed as a result of delay.

You may also consider whether [patent holder] intentionally or deliberately delayed the time when it filed the claim(s) of the patent(s) and whether [alleged infringer] or the public was aware that patent applications were pending that did or potentially could have covered the invention.

<u>Authorities</u>

35 U.S.C. § 282; *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*, 304 U.S. 159 (1938); *Gen. Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175 (1938); *Webster Elec. Co. v. Splitdorf Elec. Co.*, 264 U.S. 463 (1924); *Woodbridge v. United States*, 263 U.S. 50 (1923); *Kendall v. Winsor*, 62 U.S. 322 (1859); *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*, 277 F.3d 1361, 1363 (Fed. Cir. 2002) ("[T]he equitable doctrine of laches may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution even though the applicant complied with pertinent statutes and rules."); *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*, 301 F. Supp. 2d 1147 (D. Nev. 2004) (patent claims unenforceable because eighteen- to thirty-nine-year delay in prosecuting patents was unreasonable and unjustified), *aff'd*, 422 F.3d 1378 (Fed. Cir. 2005); *see also In re Bogese II*, 303 F.3d 1362 (Fed. Cir. 2002) (affirming patent board's order of forfeiture of patent rights after twelve continuation applications over eight-year period and failure to advance prosecution of application).

**B.5.    Equitable Defenses**

## 5.5    UNCLEAN HANDS

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit.  This is referred to as "unclean hands," and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, [patent holder] acted in such an unfair way towards [alleged infringer] or the Court in the matters relating to the controversy between [patent holder] and [alleged infringer] that, in fairness, [patent holder] should be denied the relief it seeks in this lawsuit.  [Alleged infringer] must prove unclean hands by a preponderance of the evidence.

<u>Authorities</u>

35 U.S.C. § 282; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) (affirming dismissal of patent holder's complaints for unclean hands from suppressing evidence of prior use in another litigation); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001) (affirming district court's finding of unclean hands when inventor added new material to signed and dated pages, but vacating judgment of unenforceability because unclean hands do not nullify grant of personal property).

### B.6    Patent Damages

## 6.1    DAMAGES—INTRODUCTION

If you find that [alleged infringer] infringed any valid claim of the [ ] patent, you must then consider what amount of damages to award to [patent holder].  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate [patent holder] for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred.

[Patent holder] has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that [patent holder] establishes that it more likely than not suffered.

There are different types of damages that [patent holder] may be entitled to recover.  In this case, [patent holder] seeks [insert as appropriate, e.g., lost profits, price erosion, lost convoyed sales, or a reasonable royalty].  Lost profits consist of any actual reduction in business profits [patent holder] suffered as a result of [alleged infringer]'s infringement.  A reasonable royalty is defined as the money amount [patent holder] and [alleged infringer] would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

I will give more detailed instructions regarding damages shortly.  Note, however, that [patent holder] is entitled to recover no less than a reasonable royalty for each infringing [sale; fill in other infringing act].

Committee Comments and Authorities

*See* 35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

A patent holder is not entitled to damages that are remote or speculative.  *See*, *e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Lam*, 718 F.2d at 1067 (holding that lost profits, as well as the harm to the goodwill of the entire market stemming from the infringer's inferior product, were not remote or speculative, and thus recoverable).  The Federal Circuit has opined, in *dicta*, that "remote consequences, such as a heart attack of the inventor or loss in value of shares of common stock of a patentee corporation caused indirectly by infringement are not compensable."  *Rite-Hite*, 56 F.3d at 1546.  While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (Fed. Cir. 1991).

When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the alleged infringer.  *Lam*, 718 F.2d at 1064.  Any such adverse consequences must rest on the alleged infringer when the inability to ascertain lost profits is due to the infringer's own failure to keep accurate records.  *Id*.

**B.6     Patent Damages**

## 6.2     LOST PROFITS—"BUT FOR" TEST

[This instruction should only be given in the event the patent holder is seeking lost profits damages, in whole or in part.]

In this case, [patent holder] seeks to recover lost profits for some of [alleged infringer]'s sales of [infringing product], and a reasonable royalty on the rest of [alleged infringer]'s sales.

To recover lost profits (as opposed to reasonable royalties), [patent holder] must show a causal relationship between the infringement and [patent holder]'s loss of profit.  In other words, [patent holder] must show that, but for the infringement, there is a reasonable probability that [patent holder] would have earned higher profits.  To show this, [patent holder] must prove that, if there had been no infringement, [it would have made some portion of the sales that [alleged infringer] made of the infringing product,] [it would have sold more products that are functionally related to those products,] [it would have sold its products at higher prices,] [or it would have had lower costs].

[Patent holder] is entitled to lost profits if it establishes each of the following:

(1)     That there was a demand for the patented [product] [method] [product produced by the method].

(2)     That there were no available, acceptable, noninfringing substitute products, or, if there were, its market share of the number of the sales made by [alleged infringer] that [patent holder] would have made, despite the availability of other acceptable noninfringing substitutes.

(3)     That [patent holder] had the manufacturing and marketing capacity to make any infringing sales actually made by [alleged infringer] and for which [patent holder] seeks an award of lost profits—in other words, that [patent holder] was capable of satisfying the demand.

(4)     The amount of profit that [patent holder] would have made if [alleged infringer] had not infringed.


Committee Comments and Authorities

35 U.S.C. § 284; *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

The four-factor "but for" test was first articulated in *Panduit*, 575 F.2d at 1156, and has since been adopted by the Federal Circuit.  *See, e.g.*, *Rite-Hite*, 56 F.3d at 1545.  It is not, however, the only available method for proving lost profits.  *Id.*; *see also BIC*, 1 F.3d at 1218-19.
Once a patent holder has shown the four elements of the *Panduit* test, the burden then shifts to alleged infringer to show that patent holder's "but for" causation analysis is unreasonable under the specific circumstances.  *Rite-Hite*, 56 F.3d at 1545.

### LOST PROFITS—DEMAND

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

Authorities

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).

### LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY

To be an "acceptable, [noninfringing] substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of features available only from that product and a patent holder's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products.  On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

Authorities

*Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

### LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period.  Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available at the time of infringement.  Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

Authorities

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (holding that an unused, but available, noninfringing process was an acceptable substitute); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("The record shows that Lextron did not have the necessary equipment, know-how, and experience to make the [alternative] machine at the time of infringement.").

## LOST PROFITS—CAPACITY

A patent holder is only entitled to lost profits for sales it could have actually made.  In other words, [patent holder] must show that it had the manufacturing and marketing capability to make the sales it said it lost.  This means [patent holder] must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

Authorities

*Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (finding that the patent holder, a young company, would have expanded to meet the increased demand created by the success of the patented product); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

## LOST PROFITS—AMOUNT OF PROFIT

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.  Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

Authorities

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

## LOST PROFITS—MARKET SHARE

If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products.  A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available.  In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market.  Products are considered in the same market if they are considered "sufficiently similar" to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

Authorities

*State Indus., Inc. v. Mor-Flo Indus., Inc*., 883 F.2d 1573, 1557 (Fed. Cir. 1989); *BIC Leisure Prods.*, *Inc. v. Windsurfing Int'l*, *Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Micro Chem.*, *Inc. v. Lextron*, *Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, *Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001).

**B.6     Patent Damages**

## 6.3     LOST PROFITS—COLLATERAL SALES

[This instruction should only be given in the event that patent holder is seeking lost profits from collateral sales.]

In this case, [patent holder] is seeking lost profits from sales of [ ], which [patent holder] contends it would have sold along with the product it sells that competes with the infringing products [ ].  These products sold along with the competitive product are called collateral products.

To recover lost profits on sales of such collateral products, [patent holder] must establish two things.  First, [patent holder] must establish it is more likely than not that [patent holder] would have sold the collateral products but for the infringement.  Second, a collateral product and the competitive product together must be analogous to components of a single assembly or parts of a complete machine, or, in other words, they must constitute a single functional unit.

Recovery for lost profits on sales of collateral products must not include items that essentially have no functional relationship to the competitive product and that have been sold with the competitive product only as a matter of convenience or business advantage.

Committee Comments and Authorities

The relationship required to recover lost profits on collateral sales is outlined in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc) (denying recovery for lost profits on collateral sales where nonpatented product lacked a functional relationship to the patented product); *see also State Indus.*, *Inc. v. Mar-Flo Indus.*, *Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works*, *Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

**B.6     Patent Damages**

## 6.4     LOST PROFITS—PRICE EROSION

[This instruction should only be given in the event that patent holder contends it should be compensated for price erosion.]

[Patent holder] can recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, [patent holder] would have been able to charge higher prices for some of its products.  If this fact is established, you may award as additional damages the difference between:

(A) the amount of profits [patent holder] would have made by selling its product at the higher

price, and

(B) the amount of profits [patent holder] actually made by selling its product at the lower

price [patent holder] actually charged for its product.

This type of damage is referred to as price-erosion damage.

If you find that [patent holder] suffered price erosion, you may also use the higher price in determining [patent holder]'s lost profits from sales that were lost because of the infringement. In calculating [patent holder]'s total losses from price erosion, you must take into account any drop in sales that would have resulted from charging a higher price.

You may also award as damages the amount of any increase in [patent holder]'s costs, such as additional marketing costs, caused by competition from the infringing product.

Authorities

*Compare Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-58 (Fed. Cir. 2001) (upholding denial of price-erosion damages where patentee failed to show how higher prices would have affected demand for the patented product), *with Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003) (upholding award of price-erosion damages where patentee offered sufficient proof of an inelastic market that would support price increases without a drop in sales of the patented product); *see also Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1485 (Fed. Cir. 1990).

**B.6     Patent Damages**

## 6.5     REASONABLE ROYALTY—ENTITLEMENT

If you find that [patent holder] has established infringement, [patent holder] is entitled to at least a reasonable royalty to compensate it for that infringement.  If you find that [patent holder] has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award [patent holder] a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

<u>Authorities</u>

35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

B.6     **Patent Damages**

## 6.6     REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

Authorities

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

**B.6    Patent Damages**

## 6.7    REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)    The duration of the patent and the term of the license.

(8)    The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

<u>Committee Comments and Authorities</u>

These are the so-called "*Georgia-Pacific*" factors, which can be considered in evaluating the hypothetical negotiations.  Although lengthy, the Committee believes it is necessary for all factors to be shared with the jury, so as to not unfairly emphasize any one factor.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009), cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury Instructions, Instructions 9.8 (2006), www.1b5.uscourts.gov/juryinstructions.

**B.6     Patent Damages**

## 6.8     DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS

In determining the amount of damages, you must determine when the damages began.  Damages commence on the date that [alleged infringer] has both infringed and been notified of the alleged infringement of the [ ] patent [choose those that apply]:

Alternative A:
[Patent holder] and [alleged infringer] agree that date was [insert date].

Alternative B:
If you find that [patent holder] sells a product that includes the claimed invention, you must determine whether [patent holder] has "marked" that product with the patent number.  "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.  [Patent holder] has the burden of establishing that it substantially complied with the marking requirement.  This means [patent holder] must show that it marked substantially all of the products it made, offered for sale, or sold under the [ ] patent, [and that [patent holder] made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the [ ] patent marked the products].

[If [patent holder] has not marked that product with the patent number, you must determine the date that [alleged infringer] received actual notice of the [ ] patent and the specific product alleged to infringe.] [Actual notice means that [patent holder] communicated to [alleged infringer] a specific charge of infringement of the [ ] patent by a specific accused product or device.  The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.]  [However, [patent holder] claims to have provided actual notice prior to filing of the complaint, on [date], when it [sent a letter to [alleged infringer]].  [Patent holder] has the burden of establishing that it is more probable than not [alleged infringer] received notice of infringement on [date].]

[If you find that [patent holder] *[choise A]* does not sell a product covered by the [ ] patent *[or choise B]* sells such a product but marks the product with the patent number, damages begin without the requirement for actual notice.  If you find that the [ ] patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began.  If you find that the [ ] patent was granted after the infringing activity began, damages should be calculated as of [date patent issued].]

Committee Comments and Authorities

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).
Notice through marking is constructive notice.  *See Maxwell*, 86 F.3d at 1111-12 (holding that when 95% of patented product offered for sale was marked by licensee retailer with "patent

pending," even after the patent had been granted and remaining 5% of product remained unmarked, constructive notice had been made under 35 U.S.C. § 287(a) where patentee demonstrated efforts to correct licensee's mistakes).

In determining when damages begin with regard to method claims, there is no notice requirement.  35 U.S.C. § 287(c)(2)(F); *see Am. Med. Sys.*, 6 F.3d at 1538 ("The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method.").  Accordingly, the calculation of damages for infringement of method claims should begin as of the date the patent issued or the date the infringement began, whichever was first. *Crystal Semiconductor*, 246 F.3d at 1353.

C.      **Appendix**

## GLOSSARY

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.

[Add any technical terms from the art involved that may be used during trial and have agreed upon definitions.  Delete any of the following terms which may not be applicable in a particular case.]

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Best Mode**: The best way the inventor actually knew to make or use the invention at the time of the patent application.  If the applicant had a best mode as of the time the application was first filed, it must be set forth in the patent specification.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using, or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation**: A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued).  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement**: A required part or step of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.