# EXHIBIT 13



# Model Design Patent Jury Instructions

**THIS PAPER WAS CREATED BY THE AUTHORS FOR THE INTELLECTUAL PROPERTY OWNERS ASSOCIATION DESIGN RIGHTS COMMITTEE TO PROVIDE BACKGROUND TO IPO MEMBERS. IT SHOULD NOT BE CONSTRUED AS PROVIDING LEGAL ADVICE OR AS REPRESENTING THE VIEWS OF IPO.**

**August 19, 2010**

2010 Copyright. Intellectual Property Owners Association.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

PRELIMINARY INSTRUCTIONS ....................................................................... 2

1      NATURE OF THE ACTION ........................................................................ 2

     1.1    What A Design Patent Is And How One Is Obtained ............................ 2
     1.2    The Design Patent Or Patents Involved In This Case ......................... 4
     1.3    Duty Of Jury ........................................................................................ 5

2      EVIDENCE ................................................................................................... 6

     2.1    What Is Evidence .................................................................................. 6
     2.2    What Is Not Evidence ........................................................................... 7
     2.3    Evidence For Limited Purpose ............................................................. 8
     2.4    Direct And Circumstantial Evidence ................................................... 9
     2.5    No Transcript Available To Jury ........................................................ 10
     2.6    Deposition In Lieu Of Live Testimony .............................................. 11
     2.7    Credibility Of Witnesses .................................................................... 12
     2.8    Expert Opinion ................................................................................... 13
     2.9    Burden Of Proof— Preponderance Of The Evidence ........................ 14
     2.10   Burden Of Proof—Clear And Convincing Evidence ........................ 15

3      GLOSSARY OF PATENT AND TECHNICAL TERMS ........................... 16

4      CONTENTIONS OF THE PARTIES ........................................................ 18

5      CLAIM INTERPRETATION .................................................................... 19

POST TRIAL INSTRUCTIONS ......................................................................... 20

6      SUMMARY OF PATENT ISSUES ........................................................... 20

7      CLAIM CONSTRUCTION ....................................................................... 21

     7.1    Claim Construction - Generally ......................................................... 21
     7.2    Claim Construction For The Case ...................................................... 22

8      INFRINGEMENT ...................................................................................... 23

     8.1    Infringement – Generally ................................................................... 23
     8.2    Direct Infringement – Knowledge Of Patent Or Intent To Infringe Is Immaterial ........ 24
     8.3    Direct Infringement ............................................................................ 25
     8.4    Inducing Patent Infringement ............................................................ 26
     8.5    Contributory Infringement ................................................................. 27
     8.6    Willful Infringement .......................................................................... 28

**9       INVALIDITY** ......................................................................................................... **29**

9.1    Invalidity Contentions Of The Parties ...................................................... 29
9.2    Scope And Content Of Prior Art ................................................................ 30
9.3    Anticipation – A Single Reference Or A Single Product ...................... 31
9.4    Anticipation – Public Use And Public Display ...................................... 32
9.5    Anticipation – Offered For Sale ................................................................ 33
9.6    Anticipation – Prior Design By Another ................................................. 34
9.7    Obviousness – General ............................................................................... 36
9.8    Obviousness – Differences With The Prior Art ..................................... 37
9.9    Designer Of Ordinary Skill In The Art ................................................... 38
9.10   Obviousness – Secondary Factors Indicating Nonobviousness ......... 39
9.11   Invalidity – Lack Of Ornamentality ....................................................... 40
9.12   Unenforceability – Inequitable Conduct ................................................ 41
9.13   Inequitable Conduct - Generally ............................................................. 42
9.14   Materiality ..................................................................................................... 43
9.15   Intent To Deceive Or Mislead ................................................................... 44
9.16   Balancing Of Materiality And Intent ...................................................... 45
9.17   Invalidity  – Written Description ............................................................. 46
9.18   Invalidity  – Enablement ........................................................................... 47
9.19   Invalidity  – Indefiniteness ....................................................................... 48
9.20   Invalidity  – Improper Inventorship ....................................................... 49
9.21   Invalidity – Double Patenting ................................................................... 50

**10      DESIGN PATENT DAMAGES** ...................................................................... **51**

10.1   Damages – Generally .................................................................................. 51
10.2   Damages – When Damages/Profits Begin .............................................. 52
10.3   Two Types Of Damages – Lost Profits And Reasonable Royalty ....... 54
10.4   Damages – Burden Of Proof ..................................................................... 55
10.5   Damages – Lost Profits ............................................................................... 56
10.6   Damages – Amount Of Lost Profits ......................................................... 57
10.7   Reasonable Royalty ..................................................................................... 58
10.8   Additional Remedy For Design Patent Infringement –  Defendant's Profit ................... 60

**APPENDICES** ............................................................................................................. **61**

**11      MODEL VERDICT FORMS** ............................................................................. **62**

11.1   Model Verdict Form A ................................................................................ 63
11.2   Model Verdict Form B ................................................................................ 65

# INTRODUCTION

On September 22, 2008, the United States Court of Appeals for the Federal Circuit decided *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008) (*en banc*), which is hailed as the most important design patent case decided in over a hundred years since *Gorham Co. v. White*, 81 U.S. 511 (1871).  The Intellectual Property Owner's Association ("IPO") anticipated the impact of this decision on design patent litigation and saw the need for a set of model design patent jury instructions, which until now, did not exist.  Thus, the IPO asked its Design Rights Committee to form a subcommittee dedicated to this task.  The members of the subcommittee identified below drafted these Model Design Patent Jury Instructions.  During the drafting process members of the subcommittee received input, comments and assistance from members of the Design Rights Committee, the Litigation Committee and other IPO members.  It is the IPO's hope that these Model Design Patent Jury Instructions will be helpful to committee members and the courts.

The subcommittee welcomes all comments, corrections or suggested changes.

We wish to thank the members of the subcommittee and their firms/organizations for their efforts and diligent work to complete this project:

**Susan E. Farley, Esq.**, *Subcommittee Chair*
Heslin Rothenberg Farley & Mesiti P.C.

**Christopher V. Carani, Esq.**
McAndrews, Held & Malloy, Ltd.

**Alan N. Herda, Esq.**
Haynes and Boone, LLP

**Matthew W. Jupina, Esq.**
Benesch, Friedlander, Coplan & Aronoff, LLP

**Thomas T. Moga, Esq.**
Shook, Hardy & Bacon, LLP

**Damian D. Porcari, Esq.**
Ford Global Technologies LLC

**Chris J. Renk, Esq.**
Banner & Witcoff, Ltd.

## PRELIMINARY INSTRUCTIONS

## 1      NATURE OF THE ACTION

## 1.1     WHAT A DESIGN PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute over a United States design patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a design patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "Patent Office" or "PTO").  There are two basic types of patents in the United States: utility patents and design patents. In general terms, a "utility patent" protects the way an article is used and works.  It also protects a method or process of making or doing something. On the other hand a "design patent" protects the way an article looks.  A design patent is directed to the ornamental design for an article of manufacture. "Ornamental design" means the shape of the design, and/or the surface decoration on the design.  A valid United States design patent gives the patent owner the right for 14 years from the date the patent is granted to prevent others from making, using, offering to sell, or selling the patented design within the United States or from importing it into the United States without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a design patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  The first step in the process is to file an application with the Patent Office.  The Patent Office is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain one or more drawings of the design, a description of the drawings, and a single claim.  The drawings may be line drawings or photographs.  The Claim generally refers to the drawings and how they are described.  After the applicant files the application, a Patent Office examiner reviews the patent application to determine whether the claimed design is patentable.  In examining a design patent application, the examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner will also review any prior art submitted to the PTO by the applicant.  Prior art is defined by law, and at a later time I will give you specific instructions as to what constitutes prior art.  However, in general, prior art includes things that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country before the creation of the claimed design.  The examiner considers, among other things, whether the claim defines a design that is new and not obvious in view of the prior art.  A design patent lists the prior art that the examiner considered in deciding to allow the application; this list is called the "references cited."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether the claim is patentable, and thus would be "allowed."  If the examiner rejects the claim, the applicant then responds and sometimes changes the claim (by amending the existing drawings) or submits a new claim.  This process, which takes place only between the examiner and the patent applicant,

may go back and forth for some time until the examiner is satisfied that the application including the claim meets the requirements for a design patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public when the design patent issues.  When the patent is granted by the Patent Office, it gives notice to the public of what the Patent Office and the patent applicant regard as the patentable design.

Although a design patent granted by the Patent Office is presumed to be valid, the fact that the Patent Office grants a design patent does not always mean that the design claimed in the patent, in fact, deserves the protection of a design patent.  For example, the Patent Office may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that the claimed design in the patent is invalid because it does not meet the requirements for a design patent.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 1.1; 35 U.S.C. § 171 provides: "[w]hoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."

## 1.2     THE DESIGN PATENT OR PATENTS INVOLVED IN THIS CASE

There [is] [are] [a single] [QUANTITY] design [patent] [patents] asserted in this case, namely United States Patent [No.] [Nos.] [PATENT NUMBER(S)], which [claim] [claims] an ornamental design for [CLAIM LANGUAGE].  Design patents are often referred to by their last three digits.  The design [patent] [patents] in this case [is] [are] referred to as the ['LAST THREE DIGITS, REPEAT AS NECESSARY AND SEPARATE BY COMMA] design patent[s].

Let's take a closer look at [the design patent] [one of the design patents] in this case.  The cover page of the design patent identifies the date the design patent was granted and the patent number along the top, as well as the inventor's name, the filing date, and the list of references cited and considered in the PTO (this list may continue on the next page of the design patent).  The cover page of the design patent also includes the claim, which is a single sentence and incorporates the one or more drawings or photographs and their description.  At least a portion of this description is also usually set forth on the cover page.  Subsequent page(s) of the design patent include its one or more drawings or photographs.

## 1.3    DUTY OF JURY

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors. Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court staff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answers to any question. Remember that you are not to tell anyone - including me - how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## 2      EVIDENCE

## 2.1    WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits which are received into evidence; and

3.   any facts to which the lawyers have agreed.

## 2.2    WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they will say in their opening statements and closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I gave a limiting instruction, you must follow it.

4.    Anything you may see or hear when the court is not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## 2.3   EVIDENCE FOR LIMITED PURPOSE

Some evidence will be admitted for a limited purpose only.  When I instruct you that an item of evidence will be admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**2.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**2.5     NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. You may request, however, that the court read back to you selected testimony.

**2.6    DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

## 2.7    CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.   the opportunity and ability of the witness to see or hear or know the things testified to;

2.   the witness's memory;

3.   any statement or prior testimony made by the witness that is inconsistent with the witness's testimony;

4.   the witness's manner while testifying;

5.   the witness's interest in the outcome of the case and any bias or prejudice;

6.   whether other evidence contradicted the witness's testimony;

7.   the reasonableness of the witness's testimony in light of all the evidence; and

8.   any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**2.8     EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**2.9     BURDEN OF PROOF— PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means the evidence must persuade you that the claim or defense is more probable than not.

You should base your decision on all of the evidence, regardless of which party presented it.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instruction, 1.4.

## 2.10   BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence has persuaded you that the claim or defense is highly probable. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

Again, you should base your decision on all of the evidence, regardless of which party presented it.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 1.5; Colorado v. New Mexico, 467 U.S. 310, 316-17, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247 (1984); Pfizer Inc. v. Apotex, Inc., 480 F.3d 1348, 1360 n.5 (Fed. Cir. 2007); Intel v. Int'l. Trade Comm'n, 946 F.2d 821, 830 (Fed. Cir. 1991).

**3        GLOSSARY OF PATENT AND TECHNICAL TERMS**

To assist you in your deliberations, I have attached a Glossary of Patent and Technical Terms that identifies terms used in patent matters and gives you a definition of those terms.

**GLOSSARY OF PATENT TERMS**

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

**Claim** – The portion of the design patent that defines the design. Each design patent includes a single claim that includes a single sentence beginning with the expression "The ornamental design for . . ." and refers to the "specification," which is defined later. The claim defines the scope of the patent holder's exclusive rights during the life of the design patent.

**Drawings** – The drawings are visual representations of the claimed design contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed design. The drawings may be line drawings, photographs, or computer-generated images. The drawings are part of the specification.

**Examination** – Procedure before the U.S. Patent and Trademark Office whereby a patent examiner reviews the filed patent application to determine if the claimed design is patentable.

**File Wrapper** – Another term for the "prosecution history" defined later.

**Filing Date** – Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**License** – Permission to use or make the patented design, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder (or a prior licensee) in exchange for a fee called a "royalty" or other types of payment.

**Office Action** – Communication from the patent examiner regarding the patent application.

**Opaque** – Difficult or impossible to see through, but allowing the passage of some light.

**Patent Examiners** – Persons employed by the PTO who review (examine) patent applications, each in a specific design area, to determine whether the claim of the patent application is patentable and whether the specification adequately describes and enables the claimed design.

**Prior Art** – Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed design and might typically be a patent or a printed publication. I will give you a more specific definition of prior art later.

**Prosecution History** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history includes the Office actions mailed by the Patent Office and the amendments to the patent application and arguments filed by the applicant during the examination process.

**Specification** – The information that describes and shows the ornamental design referenced in the claim of the design patent. The specification includes a description and one or more drawings and/or photographs, all of which are incorporated into the claim. In the specification, the one or more drawings and/or photographs must include a sufficient number of views to constitute a complete disclosure of the appearance of the design claimed.

**Ordinary Skill in the Art** – The level of experience, education, and/or training that those individuals who worked in the area of the design ordinarily possessed at the time of the effective filing date of the patent application.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Jury Instructions, 1.6.

## 4        CONTENTIONS OF THE PARTIES

[The Plaintiff] contends that [the Defendant] has made, used, offered to sell, sold and/or imported a product [ALTERNTIVELY INSERT SOME INDENTIFICATION OF THE PARTICULAR ACCUSED PRODUCT] into the United States that infringes the claim of the [abbreviated patent number] design patent.  [The Plaintiff] seeks damages sufficient to compensate it for [The Defendant]'s infringement.  [If willful infringement is in the case then also include the following sentence] [The Plaintiff] also contends that [the Defendant]'s infringement was willful.  [The Defendant] denies that it is infringing the claim of the [abbreviated patent number] design patent. [If willful infringement is in the case then also include the following sentence]  [The Defendant] further denies [the Plaintiff]'s willfulness contention.  [The Defendant] also contends that the claim of the [abbreviated patent number] design patent is invalid [or unenforceable].  [INSERT BRIEF DESCRIPTION OF THE PARTICULAR INVALIDITY DEFENSES BEING ASSERTED].

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claim of the [abbreviated patent number] design patent, you, the jury, must decide whether the claim of the [abbreviated patent number] design patent is invalid.

[The Plaintiff] bears the burden of proof by a preponderance of the evidence that [the Defendant] infringes the claim of the [abbreviated patent number] design patent.

[The Plaintiff] bears the burden of proof by clear and convincing evidence that [the Defendant]'s infringement was willful.

[The Defendant] bears the burden of proof by clear and convincing evidence that the claim of the [abbreviated patent number] design patent is invalid.

Based on the instructions I will give you, it will be your job to decide whether the claim of the [abbreviated patent number] design patent has been infringed and whether the claim of the [abbreviated patent number] design patent is invalid.  If you decide that the claim of the [abbreviated patent number] design patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [the Plaintiff] as compensation for the infringement. [If willful infringement is in the case then also include the following sentence] You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

[REPEAT THE FOREGOING FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 2.1.

5        CLAIM INTERPRETATION

A design patent only protects the particular ornamental design claimed by the inventor and allowed by the Patent Office.  It protects the overall ornamental visual impression of the claimed design.  It does not protect a broad general design concept of the accused product.  So, to decide whether [Defendant] infringed the [abbreviated patent number] design patent, and whether the patent is valid, you must first understand what the claim of the [abbreviated patent number] design patent covers.

The scope of the claim is defined by the drawing(s) in the [abbreviated patent number] design patent, not just by one feature of the claimed design.  The scope of the claimed design encompasses its visual appearance as a whole and in particular the overall visual impression it creates.  You should consider all of the features of the [abbreviated patent number] design patent as a whole and not merely isolated portions of the claimed design.

Since a claimed design is better represented by its drawings rather than a description, I will not attempt to "construe" the claim of the [abbreviated patent number] design patent by providing a detailed verbal description of the claimed design.  However, any features shown in broken lines in the drawings of the [abbreviated patent number] design patent and described in the specification as disclaimed are excluded from the claimed design.  Failure to show features in broken lines signals inclusion of such features in the claimed design.  Moreover, the claimed design as shown by the drawing(s) is supplemented by the description set forth in the [abbreviated patent number] design patent.  The prosecution history of the [abbreviated patent number] design patent may also have an effect on the claimed design.

[AS NECESSARY, INSERT BRIEF DESCRIPTIONS OF ANY LIMITATIONS ON THE CLAIMED DESIGN AS A RESULT OF THE DESCRIPTION AND/OR THE PROSECUTION HISTORY].

[REPEAT THE FOREGOING FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

---

**Cited Authority:**

*See*, Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995) (holding that every solid line in drawings forms part of the claim, regardless as to whether such features are functional or ornamental); *see also*, In re Blum, 374 F.2d 904, 907 (CCPA 1967) ("[a] design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design.") (*emphasis added*); Contessa Food Prods. Inc. v. Conagra, Inc., 282 F.3d 1370, 1376-78 (Fed. Cir. 2002); Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993); Durling v. Spectrum Furniture Co., 101 F.3d 100, 104-05 (Fed. Cir. 1996); Egyptian Goddess Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*); Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1313 (Fed. Cir. 2001); Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116 (Fed. Cir. 1998).

**POST TRIAL INSTRUCTIONS**

**6      SUMMARY OF PATENT ISSUES**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following [three] main issues:

1.      Whether [the Plaintiff] has proved that [the Defendant] infringed the [abbreviated patent number] patent.

2.      Whether [the Defendant] has proved that the [abbreviated patent number] patent is invalid.

3.      What amount of damages, if any, [the Plaintiff] has proved.

[LIST ANY OTHER PATENT ISSUES]

# 7      CLAIM CONSTRUCTION

## 7.1     CLAIM CONSTRUCTION - GENERALLY

Before you decide whether [the Defendant] has infringed [the Plaintiff's] patent or whether [the Plaintiff's] patent is invalid, you will have to understand the design patent claim. The design patent claim states that it covers the design "as shown and described."  The figure drawings are intended to define the boundaries of the claimed design.

A design patent can only have one claim.  However, it is permissible to illustrate more than one embodiment of a design in a single design patent application.  Multiple embodiments may be presented only if they directed to substantially the same design and are not patentably distinct from one another

---

 **Cited Authority**

37 C.F.R. § 1.153; Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*); Phillips v. AWH Corp., 415 F.3d 1303, 1311-12 (Fed. Cir. 2005) (*en banc*); Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1285-86 (Fed. Cir. 2002); Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 374, 116 S.Ct. 1384, 1388, 134 L.Ed.2d 577 (1996).

## 7.2    CLAIM CONSTRUCTION FOR THE CASE

It is my job as judge to provide to you the meaning of the claim of the asserted design patent(s).  You must accept the meaning that I give you and use it when you decide whether the design patent has been infringed and whether the design patent is invalid.

The scope of the claim encompasses the design's visual appearance as a whole and in particular the visual impression it creates.  It does not cover any broad general design concept.  Taking into account all figures in the patent, you must consider all of the visual features of the [abbreviated patent number] design patent as a whole and not merely isolated portions or individual features of the claimed design.  All matter depicted in solid lines contributes to the overall appearance of the design.  Any features shown in broken lines in the drawings of the [abbreviated patent number] design patent and described in the specification as disclaimed are excluded from the claimed design.  Failure to show features in broken lines signals inclusion of such features in the claimed design.

The various features of the overall appearance of the design may perform a function – that is the nature of an article of manufacture for which this design patent has been granted.  If such functional features are illustrated in solid lines, they are part of the claimed design based on how they contribute to the overall visual appearance.


[AS NECESSARY, INSERT BRIEF DESCRIPTIONS OF ANY LIMITATIONS ON THE CLAIMED DESIGN AS A RESULT OF THE DESCRIPTION AND/OR THE PROSECUTION HISTORY].

---

**Cited Authority:**

37 C.F.R. § 1.152; Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 374, 116 S.Ct. 1384, 1388, 134 L.Ed.2d 577 (1996); Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679-80 (Fed. Cir. 2008) (*en banc*); Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*); Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).

# 8    INFRINGEMENT

## 8.1    INFRINGEMENT – GENERALLY

Questions _____ through _____ of the Verdict Form read as follows:  [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether [the Plaintiff] has proven that [the Defendant] infringed the [abbreviated patent number] patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling [the patented design] within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, [the Plaintiff] alleges that [the Defendant]'s [allegedly infringing product] infringes the [abbreviated patent number] patent.

You have heard evidence about both [the Plaintiff]'s commercial [product] and [the Defendant]'s accused [product].  However, unless I have instructed you otherwise, in deciding the issue of infringement you may not compare [the Defendant]'s accused [product] to [the Plaintiff]'s commercial [product].  Rather, you must compare the [Defendant]'s accused [product] to the [abbreviated patent number] patent when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused [product] "incorporates the patented design or any colorable imitation thereof."  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

---

**Cited Authority:**

Adapted from the American Intellectual Property Law Association's (AIPLA) Model Patent Jury Instructions, 3.0; 35 U.S.C. § 271; 35 U.S.C. 289; Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998); L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1124 (Fed. Cir. 1993); Seal-Flex, Inc. v. Athletic Track & Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir.1998) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 374, 116 S.Ct. 1384, 1388, 134 L.Ed.2d 577 (1996); Sun Hill Indus., Inc. v. Easter Unlimited, Inc., 48 F.3d 1193, 1196 (Fed. Cir. 1995); Payless Shoesource, Inc. v. Reebook Int'l Ltd., 998 F.2d 985, 990 (Fed. Cir. 1993); but see, L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, indeed, such comparison may facilitate application of Gorham criterion of whether an ordinary purchaser would be deceived into thinking that one were the other."); Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815, 820 n.8 (Fed. Cir. 1992); Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1189 (Fed. Cir. 1988).

## 8.2    DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL

In this case, [the Plaintiff] asserts that [the Defendant] has directly infringed the patent. [The Defendant] would be liable for directly infringing [the Plaintiff]'s patent if you find that [the Plaintiff] has proven that it is more likely than not that [the Defendant] has made, used, offered to sell, or sold the design defined [the Plaintiff]'s patent.  This standard of proof is called the "preponderance of evidence."

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

---

**Cited Authority:**

Adapted from AIPLA Model Patent Jury Instructions, 3.1; 35 U.S.C. § 271(a); BMC Resources v. Paymentech, L.P., 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("Direct infringement is a strict liability offense."); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1330 (Fed. Cir. 2001) (that alleged infringer believed that the claims should be interpreted differently and that he did not infringe because of it, this belief was not a factor in determining direct infringement); Seal-Flex, Inc. v. Athletic Track & Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988).

## 8.3   DIRECT INFRINGEMENT

To determine infringement, you must compare the overall appearances of the accused design and the claimed design (using my instructions as to the meaning of the claimed design). Before conducting your infringement analysis, you must familiarize yourself with each of the prior art designs that have been brought to your attention in this litigation.  In view of this prior art, if you find that, by a preponderance of evidence, the overall appearance of the accused design is substantially the same as the overall appearance of the claimed design, then you must find that the accused design infringes the design patent.  In conducting this analysis, keep in mind that minor differences between the patented and accused designs should not prevent a finding of infringement.   In weighing your decision, you should consider any perceived similarities or differences.

When evaluating designs, be it the claimed design, accused design, and prior art designs, you should always focus on the overall appearance of a design, and not individual features.  You should consider and weigh any perceived similarities and differences.

In conducting your analysis, you may find the following guidelines helpful:

1.     When the claimed design is visually close to the prior art designs, small differences between the accused design and the claimed design may be important to your analysis as to whether the overall appearance of the accused design is substantially the same as the overall appearance of claimed design.

2.     If the accused design includes a particular feature of the claimed design that departs conspicuously from the prior art, you may find the inclusion of that feature important to your analysis as to whether the overall appearance of the accused design is substantially the same as the overall appearance of claimed design.

3.     If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important to your analysis as to whether the overall appearance of the accused design is substantially the same as the overall appearance of claimed design.

While these guidelines may be help to your analysis, please keep in mind that the sole test for infringement is whether you believe that the overall appearance of the accused design is substantially the same as the overall appearance of the claimed design.  If you find that the accused design is substantially the same, then you must find that the accused design infringes the design patent.

---

**Cited Authority:**

Gorham Co. v. White, 81 U.S. 511, 526-28, 20 L.Ed. 731 (1871); Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670-78 (Fed. Cir. 2008)(*en banc*); Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 821 (Fed. Cir. 1992) (jury is a panel of "ordinary observers" for purposes of design patent infringement); *see also*, 35 U.S.C. § 289 (there is design patent infringement where the accused design is, the same as or a colorable imitation of, the claimed design).

## 8.4    INDUCING PATENT INFRINGEMENT

[The Plaintiff] asserts that [the Defendant] has actively induced another to infringe the patent. To show induced infringement, [the Plaintiff] must prove that it is more likely than not that someone has directly infringed the [abbreviated patent number] patent and that [the Defendant] has actively and knowingly aided and abetted that direct infringement.  [The Plaintiff] must show that [the Defendant] actually intended to cause the acts that constitute direct infringement, that [the Defendant] knew of the patent, and that [the Defendant] knew or should have known that its actions would lead to actual infringement.  Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.  It is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, there can be no induced infringement.

---

**Cited Authority:**

AIPLA Model Patent Jury Instructions, 3.3; 35 U.S.C. § 271(b); DSU Medical Corp. v. JMS Co., 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (*en banc*); Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936, 125 S.Ct. 2764, 2779-80, 162 L.Ed.2d 781 (2005); Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1365 (Fed. Cir. 2004); Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003); Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

## 8.5   CONTRIBUTORY INFRINGEMENT

[The Plaintiff] asserts that [the Defendant] has contributed to another's infringement. To show contributory infringement, [the Plaintiff] must prove that it is more likely than not that there was contributory infringement.

It is not necessary to show that [the Defendant] has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, [the Defendant] cannot have contributed to the infringement of the patent.  If you find someone has directly infringed the [abbreviated patent number] patent, then contributory infringement exists if:

(1)    [the Defendant] sold, offered for sale, or imported;

(2)    a material component of the patented design that is not a staple article of commerce capable of substantial non-infringing use;

(3)    with knowledge that the component was especially made or adapted for use in an infringing [product].

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented design and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

---

**Cited Authority:**

AIPLA Model Patent Jury Instructions, 3.4; 35 U.S.C. § 271(c); PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1379 (Fed. Cir. 2001); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990); Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., 803 F.2d 1170, 1174 (Fed. Cir. 1986).

## 8.6    WILLFUL INFRINGEMENT

[The Plaintiff] asserts that [the Defendant] has willfully infringed [the Plaintiff's] design patent.

The issue of willful infringement is relevant to the amount of damages [the Plaintiff ] is entitled to recover in this lawsuit.  However, if you decide that [the Defendant] willfully infringed the claim of [the Plaintiff]'s design patent, then it is my job to decide whether or not to award increased damages to [the Plaintiff].  You should not take this factor into account in assessing the damages, if any, to be awarded to [the Plaintiff].

To prove willful infringement, [the Plaintiff] must first persuade you, through clear and convincing evidence, that [the Defendant] was aware of [the Plaintiff's] design patent, and that it is highly probable that [the Defendant] acted recklessly, or in other words, acted despite an objectively high likelihood that its actions constituted infringement of a valid design patent.  Thus, the state of mind of [the Defendant] is not relative to this objective inquiry.  Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness.

If the threshold objective standard is satisfied, [the Plaintiff] must then persuade you that it is highly probable that this objectively-defined risk was either known or so obvious that it should have been know to [the Defendant].  To determine whether this objectively-defined risk was either known or so obvious that it should have been known to [the Defendant], you should consider all the facts surrounding the alleged infringement including, but not limited to, the following:

1.  whether [the Defendant] acted in a manner consistent with the standards of commerce for its industry;

2.  whether [the Defendant] intentionally copied without a reasonable basis a product of [the patent holder] covered by the claim of the [abbreviated patent numbers], as distinguished from trying to "design around" the patent by designing a product that [the Defendant] believed did not infringe those claims;

3.  whether [the Defendant] presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable; and

4.  [INCLUDE ONLY IF THE DEFENDANT IS RELYING ON OPINION OF COUNSEL AS A DEFENSE TO ALLEGATION OF WILLFUL INFRINGEMENT]whether [the Defendant] relied on competent legal advice.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 4.1 and AIPLA's Model Patent Jury Instructions, 13; 35 U.S.C. § 284; In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*); Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314 (Fed. Cir. 2009); Black & Decker, Inc. v. Robert BoschTool Corp., 260 Fed Appx. 284, 291 (Fed. Cir. 2008); Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1346 (Fed. Cir. 2001); WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1354 (Fed. Cir. 1999); Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992); Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 510 (Fed. Cir. 1990).

## 9       INVALIDITY

### 9.1     INVALIDITY CONTENTIONS OF THE PARTIES

[The Defendant] contends that the asserted design patent[s]-in-suit are invalid or not enforceable. [The Defendant] must prove by clear and convincing evidence that each design patent is invalid.  An issued design patent may be found to be invalid due to (a) anticipation by a single reference; (b) obvious in view of multiple references; (c) offered for sale to the public or in commercial use more than one year before the patent filing or (d) inequitable conduct by the inventor or his or her attorneys; Thus, you must determine whether each of [the Plaintiff's] design patent[s] is/are invalid.  [The Defendant] contends that [all of] the asserted design patent[s] is invalid for the following reasons:

[Insert invalidity contentions]

I will now instruct you in more detail why [the Defendant] alleges that the asserted claim[s] of the [abbreviated patent numbers] is/are invalid.

_____

**<u>Cited Authority:</u>**

35 U.S.C. §§ 102, 103 and 171.

**9.2**    **SCOPE AND CONTENT OF PRIOR ART**

Prior art includes any of the following items received into evidence during trial:

1.  Any design or product that was publicly known or used by others in the United States, or patented or described in a printed publication in the United States or a foreign country, before the patented design was made;

2.  Patents and design registrations that were published or issued more than one year before the filing date of the patent, or before the design was made;

3.  Publications having a date more than one year before the filing date of the patent, or before the design was made;

4.  Any design or product that was in public use or on sale in the United States more than one year before the patent was filed;

5.  Any design or product that was made by anyone before the named inventors created the patented design or product where the design or product was not abandoned, suppressed, or concealed.

[ADD ANY ADDITIONAL TYPES OF PRIOR ART]

In this case, [the Defendant] contends that the following items are prior art:

[identify prior art by name]

---

**Cited Authority:**

35 U.S.C. § 102.

## 9.3    ANTICIPATION – A SINGLE REFERENCE OR A SINGLE PRODUCT

A person cannot obtain a design patent if someone else already has made an identical version of the design. Simply put, the design must be new.  A design that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, a design that is "anticipated" is not entitled to patent protection. To prove anticipation, [the Defendant] must prove with clear and convincing evidence that the claimed design is not new.

In this case, [the Defendant] contends that the design patent[s] are anticipated.

[DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANT'S INVALIDITY DEFENSE]

To find that a design patent is anticipated, the jury must find that, to an ordinary observer, the prior art reference when viewed as a whole is "identical in all material respects" to the overall visual impression of the claimed design.  Minor differences between the prior art and the claimed design do not necessarily preclude a finding of anticipation.

You must keep this requirement in mind and apply it to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that [the Defendant] contends apply in this case.  I will now instruct you about those.

---

**Cited Authority:**

Adapted from AIPLA Model Patent Jury Instructions, 6.0; 35 U.S.C. §§ 102 and 171; Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1313 (Fed. Cir. 2001) (the Court indicated that it compares the claim to the allegedly anticipating article and that for anticipation to be found the "two designs must be substantially the same"); Gorham Co. v. White, 81 U.S. 511, 526-28, 20 L.Ed. 731 (1871) ("We are now prepared to inquire what is the true test of identity of design. Plainly, it must be sameness of appearance, and mere difference of lines in the drawing or sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity."); OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997); Amni Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1371 (Fed. Cir. 2006); Hupp v. Siroflex of America, Inc., 122 F.3d 1456, 1461 (Fed. Cir. 1997) (finding that a newspaper advertisement for a ceramic floor tile did not invalidate the design patent for a concrete walkway).

In Hupp, the Court stated,

[i]n determining whether a design patent is invalid based on a description in a printed publication, 35 U.S.C. §102(a), the factual inquiry is the same as that which determines anticipation by prior publication of the subject matter of a utility patent; see 35 U.S.C. § 171.  The publication must show the same subject matter as that of the patent, and must be identical in all material respects. The ceramic floor tile advertised in the Houston newspaper is not identical to Hupp's mold for a concrete walkway, and the record shows no other publication on which the jury might have relied. Thus the jury answer to this interrogatory cannot be supported on the ground that Hupp's patented subject matter is anticipated by the ceramic floor tile or its advertisement.

In International Seaway Trading Corporation v. Walgreens Corporation and Touchsport Footwear USA, Inc., 589 F.3d 1233 (Fed. Circ. 2009), the court stated, "The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another.  Just as 'minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement,' Litton, 728 F.2d at 1444, so too minor differences cannot prevent a finding of anticipation."

## 9.4   ANTICIPATION – PUBLIC USE AND PUBLIC DISPLAY

An inventor may not obtain a patent if the design was in public use in this country more than one year prior to the date of the application for patent in the United States.  In determining whether a design was in public use, a jury must consider the totality of the circumstances, including the nature of the activities that occurred in public, the public access and knowledge of the public use and whether there was any confidentiality obligation imposed on persons who observed the use.

[Describe the disputed facts here]

A claimed design is considered to be in public use when, to an ordinary observer, the claimed design and the prior public use design is "identical in all material respects."

A public display of a design that is the subject of a design patent at, for example, a trade show, is a generally considered a public use. Normally, experimental use does not negate public use in the design patent setting, however, public display to gauge consumer opinion regarding the <u>functional features</u> of a design may still qualify as an experimental use when: (1) the length of the test period and number of tests as compared with a similar type of test on a similar type of design; (2) whether a user made any payment for the device; (3) whether a user agreed to use secretly; (4) whether records were kept of the progress of the test; and (5) whether persons other than the designer conducted the asserted experiments.

---

**Cited Authority:**

35 U.S.C. §102(b) ("[T]he invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."); <u>Bernhardt, L.L.C. v. Collezione Europa USA, Inc.</u>, 386 F.3d 1371, 1379 (Fed. Cir. 2004) (infringement analysis abrogated by <u>Egyptian Goddess</u>); <u>Continental Plastic Containers v. Owens Brockway Plastic Products, Inc.</u>, 141 F.3d 1073, 1078 (Fed. Cir. 1998) ("Thus, experimental use can not occur after a reduction to practice… Since design inventions are reduced to practice as soon as an embodiment is constructed,… the experimental use negation is virtually inapplicable in the design patent context… Applying experimental use negation in the design patent context would allow entities to increase the life of their design patents merely by tarrying over the production of the article of manufacture."), *citing*, <u>Atlantic Thermoplastics Co. v. Faytex Corp.</u>, 5 F.3d 1477, 1480 (Fed. Cir.1993); <u>Fitzgerald v. Arbib</u>, 268 F.2d 763 (C.C.P.A. 1959) ("[T]his court and its predecessors in patent jurisdiction have held that reduction to practice of a three-dimensional design invention requires the production of an article embodying that design."); <u>In re Mann</u>, 861 F.2d 1581, 1581 (Fed. Cir. 1988); *see also*, <u>Baxter Int'l, Inc. v. Cobe Labs., Inc.</u>, 88 F.3d 1054, 1058-59 (Fed. Cir. 1996) (centrifuge covered by patent deemed to be in public use because its location was publicly accessible and those who saw it in operation were under no duty of confidentiality); <u>TP Labs., Inc. v. Professional Positioners, Inc.</u>, 724 F.2d 965, 971-72 (Fed. Cir. 1984).

## 9.5     ANTICIPATION – OFFERED FOR SALE

An inventor may not obtain a patent if he offered his design for sale more than one year before he filed his patent application.  An "offer to sell" is an invitation to a buyer to conclude a binding agreement.  An "offer to sell" need not include a purchase price.  The minimum that an "offer to sell" requires is a description of the goods offered and quantity terms.  A claimed design is considered to be "on-sale," when an embodiment of the design was sold or offered for sale in this country more than one year before a filing date to which the claim is entitled (the critical date) and the sale or offer to sell was primarily for profit rather than for experimental purposes.

[Describe the disputed facts here]

To find that a design patent is anticipated, the jury must find that to an ordinary observer, the claimed design and the "on sale" design are "identical in all material respects."

---

**Cited Authority:**

35 U.S.C. §102(b) ("[T]he invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."); Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1257 (Fed. Cir. 2000), *citing*, Restatement 2d of Contracts § 24 (1979) "[T]he meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority... Thus, the defendant must 'communicate[] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."'); Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1052 (Fed. Cir. 2001) (holding that an offer to sell existed under 35 U.S.C. § 271(a) because defendant's "purchase orders contained sufficiently definite terms to create an enforceable contract upon acceptance under the UCC; they included quantity terms and clearly identified the requested product.… True, they did not specify a price, but the UCC does not require price terms to create a binding contract."), *citing*, U.C.C. § 2-305); Continental Plastic Containers v. Owens Brockway Plastic Products, Inc., 141 F.3d 1073, 1077 (Fed. Cir. 1998); Hupp v. Siroflex of America, Inc., 122 F.3d 1456, 1461 (Fed. Cir. 1997).

## 9.6    ANTICIPATION – PRIOR DESIGN BY ANOTHER

An inventor may not obtain a patent if he is not the first inventor.  If someone other than the named inventor created the patented design, then patent is "anticipated" by the other design.  To invalidate a design patent, [the Defendant] must prove that it is highly probable that the design was anticipated.

To find that a design patent is anticipated by another, the jury must find that to an ordinary observer, the claimed design and the other's design are "identical in all material respects."

Here is a list of ways that [a Defendant] can show that a patent claim was not new because the design shown by the drawings making up the claim was first designed by someone else [use those that apply to this case]:

- [if the claimed design was already made by someone else in the United States before [insert date of design unless in issue], if that other person had not abandoned the design or kept it secret;]

- [if [the named inventor] did not invent the design but instead learned of it from someone else;]

- [if [the patent holder] and [the alleged infringer] dispute who is a first inventor, the person who first conceived of the design and first reduced it to practice by a drawing or photograph is the first inventor;

Since inventorship is in dispute in this case, you must determine a date of conception, reduction to practice and/or diligence for the [claimed design] [and/or] [prior design]. Conception is the mental part of an inventive act and is proven when the design is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

[Reduction to practice of a three-dimensional design occurs either as of the filing of the patent application or with the production of an article embodying that design. Reasonable diligence means that the inventor worked continuously on reducing the

design to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.]

---

### Cited Authority:

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 5.6; Hupp v. Siroflex of America, Inc., 122 F.3d 1456, 1461 (Fed. Cir. 1997); Continental Plastic Containers v. Owens Brockway Plastic Products, Inc., 141 F.3d 1073, 1077-79 (Fed. Cir. 1998) ("[D]esign inventions are reduced to practice as soon as an embodiment is constructed."); Mas v. Root, 54 F.2d 435 (C.C.P.A. 1932) (ornamental design reduced to practice upon filing unless prior construction shown).

35 U.S.C. § 102(a), (e), (f) and (g):

(a) [T]he invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(e) the invention was described in - (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language; or

(f) he did not himself invent the subject matter sought to be patented, or

(g)(1) during the course of an interference conducted under section 135 or section 291, another inventor involved therein establishes, to the extent permitted in section 104, that before such person's invention thereof the invention was made by such other inventor and not abandoned, suppressed, or concealed, or (2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

## 9.7    OBVIOUSNESS – GENERAL

[The Defendant] contends that the claimed design of the [abbreviated patent number] patent is invalid because the claimed design is "obvious."

A claimed design is invalid as "obvious" if it would have been obvious to a designer of ordinary skill who designs articles of the type involved.  You must determine if the combination of [a primary reference] with [a closely related secondary reference] would suggest the claimed design to a designer of ordinary skill.  More specifically, you must determine if a designer of ordinary skill in these designs would have combined these references to create the same overall visual appearance as the claimed design.  If the combined references suggest only components of the claimed design, but not its overall appearance, the design is non-obvious.  In order to be a proper primary reference, it must teach a specific design (not a design concept) which looks basically the same as the claimed design.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.  However, in order to combine two prior art references, they must be so related that the appearance of certain ornamental features in one would suggest the application of those features to the other.

The following factors must be evaluated to determine whether [the Defendant] has established that the claimed design is obvious:

1. the scope and content of the prior art relied upon by [the Defendant];

2. the difference or differences, if any, between the design of the [abbreviated patent number(s)] patent that [the Defendant] contends is obvious and the prior art;

3. the level of ordinary skill in the art at the time the design of the [abbreviated patent number(s)] patent was made;

4. if the ordinary observer would find the two designs are substantially the same; and

5. additional considerations, if any, that indicate that the design was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order.

[The Defendant] must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

---

**Cited Authority:**

35 USC § 103; In re Rosen, 673 F.2d 388, 390 (C.C.P.A. 1982); Durling v. Spectrum Furniture Co., Inc., 101 F.3d 100, 103 (Fed. Cir. 1996) ("More specifically, the inquiry is whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design."); In re Cho, 813 F.2d 378, 382 (Fed. Cir. 1987) ("Thus, if the combined teachings suggest only components of the claimed design but not its overall appearance, a rejection under Section 103 is inappropriate."); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 1742, 167 L.Ed.2d 705 (2007) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning."), *accord*, Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1384-85 (Fed. Cir. 2009) ("Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. §103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR); Jore Corp. v. Kouvato, Inc., 117 Fed. Appx. 761, 763, 2005 WL 27553, *2 (Fed. Cir. 2005) ("For secondary references to be considered, however, there must be some suggestion in the prior art to modify the basic design with features from the secondary references."); John Charles Designs, Inc. v. Queen Int'l Design, Inc. 940 F.Supp. 1516, 1520 (C.D. Cal. 1996) ("In addition, secondary considerations such as commercial success, licensing to third parties, and unpermitted copying can provide evidence that a design was not obvious.").  In International Seaway 589 F.3d 1233, 1240, the court found that invalidity under Section 103 obviousness requires a finding that first it would be obvious to a designer skilled in the art to combine the two references to arrive at a single piece of art or to modify a single prior art reference to arrive at a single reference, and thereafter, the combined or modified reference must be viewed from the perspective of the ordinary observer to determine if it is substantially the same as the patented design.

## 9.8    OBVIOUSNESS – DIFFERENCES WITH THE PRIOR ART

You should analyze whether there are any relevant differences between the prior art and the claimed design from the view of a designer of ordinary skill in the art at the time the design was created.  Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the design as a whole, and not merely some portion of it.

The scope of the relevant prior art for purposes of evaluating obviousness extends to all "analogous arts."  The field of analogous art depends on the type of design.  If the design relates to the surface appearance of an article, then any prior art that discloses a similar surface appearance would be analogous art.  However, if the design relates to the form of the article, then the field of analogous art is limited to similar types of articles.

In analyzing the relevance of the differences between the claimed design and the prior art, you do not need to look for precise appearance in the prior art directed to the nature or subject matter of the claimed design.  You may take into account the inferences and creative steps that a designer of ordinary skill in the art would have employed in reviewing the prior art at the time of the creation of the design.  For example, combining known elements in a known fashion is generally not patentable.  On the other hand, a new material element may be combined with an existing element and if that overall combination creates a new and new and integral design, then the patent is non-obvious.

Importantly, a design is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, designs rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason or motivation existed at the time of the creation of the design that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed design does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.  If the prior art discouraged a designer of ordinary skill from following the path set out in the reference or would be led in a different direction, then the design is non-obvious. If you find that a reason existed at the time of the creation of the design to combine the elements of the prior art to arrive at the claimed design, this evidence would make it more likely that the claimed design was obvious.

_____

### Cited Authority:

Adapted from AIPLA Model Patent Jury Instructions, 7.2; KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 421-22, 127 S.Ct. 1727, 1742-43, 167 L.Ed.2d 705 (2007); Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); Medtronic, Inc. v. Cardiac Pacemakers, Inc., 721 F.2d 1563, 1567-68 (Fed. Cir. 1983); Smith v. Whitman Saddle Co., 148 U.S. 674, 681-82, 13 S.Ct. 768, 770-71, 37 L.Ed. 606 (1893) ("The presence or the absence of the central open slot was not material, and we do not think that the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common, in itself involved genius or invention, or produced a patentable design… The shape of the front end being old, the sharp drop of the pommel at the rear seems to constitute what was new and to be material. . . . If, therefore, this drop were material to the design, and rendered it patentable as a complete and integral whole, there was no infringement."); Jore Corp. v. Kouvato, Inc., 117 Fed. Appx. 761, 764-65, 2005 WL 27553, *3 (Fed. Cir. 2005) ("A reference teaches away only when a person of ordinary skill, upon examining the reference, would be discouraged

## 9.9    DESIGNER OF ORDINARY SKILL IN THE ART

The determination of whether a claimed design is obvious is based on the perspective of the ordinary designer skilled in the art.  The ordinary designer skilled in the art is presumed to be familiar with all of the prior art designs that you have determined to be reasonably relevant.

[IF THE PARTIES HAVE AGREED TO THE IDENTITY OF THE ORDINARY DESIGNER SKILLED IN THE ART IN THE CASE, THEN THE INSTRUCTION SHOULD INCLUDE: "[The Plaintiff] and [the Defendant] contend that the ordinary designer of skill in the art is [insert proposal]."

[IF THE PARTIES HAVE NOT AGREED TO THE IDENTITY OF THE ORDINARY DESIGNER SKILLED IN THE ART IN THE CASE, THEN THE INSTRUCTION SHOULD CONTINUE AS FOLLOWS].

When determining the identity of the designer of ordinary skill in the art, you should keep in mind that the designer of ordinary skill is not any designer, but one who designs articles of the type involved.

---

from following the path set out in the reference, or would be led in a direction different from the path that was taken by the applicant."); In re Glavas, 230 F.2d 447, 449-51 (CCPA 1956); In re Borden, 90 F.3d 1570, 1574-75 (Fed. Cir. 1996).  International Seaway, 589 F.3d at 1241, footnote 5:  "That combination or modification would not necessarily yield a single piece of prior art identical to a patented design since there may be no motivation to change the prior art to achieve such identity."

 **Cited Authority:**

Titan Tire Corp v. Case New Holland, Inc., 566 F.3d 1372, 1380-81 (Fed. Cir. 2009); Durling v. Spectrum Furniture Co., Inc., 101 F.3d 100, 103 (Fed. Cir. 1996); Swede Indus., Inc. v. Zebco Corp., 26 F.3d 138, 1994 WL 124024, *2 (Fed. Cir. 1994) (unpublished opinion); In re Carter, 673 F.2d 1378, 1380, 213 USPQ 625, 626 (C.C.P.A. 1982).

## 9.10    OBVIOUSNESS – SECONDARY FACTORS INDICATING NONOBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the design would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the design as a whole.

[USE ONLY THOSE INSTRUCTIONS THAT ARE APPROPRIATE.]

1.    Were products covered by the claimed design commercially successful due to the appearance of the claimed design rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claimed design?

2.    Was there a long felt need for a new look or design of the subject product?

3.    Did others try, but fail to create the claimed design?

4.    Did others copy the claimed design?

5.    Did the claimed design achieve an unexpectedly superior appearance over the closest prior art?

6.    Did others in the field, or [the Defendant] praise the claimed design or express admiration for the claimed design?

7.    Did others accept licenses under [abbreviated patent number] patent because of the appearance of the claimed design?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

---

**Cited Authority:**

Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966); Sash Controls, Inc. v. Talon L.L.C., 185 F.3d 883 (Fed. Cir. 1999) (unreported) (reversible error if objective indicia (Graham factors) not considered in design patent cases); Avia Group Intern., Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1563 (Fed. Cir. 1988) (infringement analysis abrogated by Egyptian Goddess) ("Design patents must meet a nonobvious requirement identical to that applicable to utility patents."); see also, Jore Corp. v. Kouvato, Inc., 117 Fed. Appx. 761, 765, 2005 WL 27553 (Fed. Cir. 2005); Kwik-Site Corp. v. Clear View Mfg. Co., Inc., 758 F.2d 167, 173 (Fed. Cir. 1985).

## 9.11   INVALIDITY – LACK OF ORNAMENTALITY

Design patents protect the ornamental appearance of an article of manufacture.  If the overall appearance of the patented design is dictated <u>solely</u> by how it works, the patent is invalid because the design is not "ornamental."   In other words, the inventor did not "design" anything because in order to achieve the function of the design it had to be designed that way. It should be kept in mind that all design patents must be for articles of manufacture, which by definition are things that have inherent functional characteristics.  It is normal and expected therefore that claimed designs perform some sort of function – that does not disqualify the design for design patent protection.  The question is whether those general functional characteristics can only be embodied by the claimed design, or whether they can be embodied by other designs such that the claimed design is not the only way to perform those general functions.  Thus, the existence of alternate designs that perform substantially the same function may be strong evidence that the design at issue is not dictated solely by function.

Additionally, it should also be kept in mind that the claimed design need not be aesthetically pleasing to be valid. In other words, an absence of artistic merit does not mean that the design is not patentable.

---

**Cited Authority**

35 U.S.C. §171 (a design patent may be granted for any "new, original and ornamental design for an article of manufacture."); <u>Best Lock Corp. v. Ilco Unican Corp.</u>, 94 F.3d 1563, 1566 (Fed. Cir. 1996); <u>Seiko Epson Corp. v. Nu-Kote Int'l, Inc.</u>, 190 F.3d 1360, 1368 (Fed. Cir. 1999); <u>Hupp v. Siroflex of America, Inc.</u>, 122 F.3d 1456, 1460 (Fed. Cir. 1997).

**9.12    UNENFORCEABILITY – INEQUITABLE CONDUCT**

[INTRODUCTORY NOTE: "Inequitable conduct is an equitable issue committed to the discretion of the trial court and reviewed by [the Federal Circuit] under an abuse of discretion standard." <u>Flex-Rest, LLC v. Steelcase, Inc.</u>, 455 F.3d 1351, 1357 (Fed. Cir. 2006).  That discretion includes the determination to seek an advisory determination on the factual predicates underlying inequitable conduct or on the issue as a whole. The court should consider whether to charge the jury in detail, to charge the jury solely on materiality, or to retain the issue solely for itself, and should consider using a verdict form that breaks out materiality, intent, and/or balancing.]

---

**Citing Authority:**

AIPLA Model Patent Jury Instructions, Inequitable Conduct – Introductory Note.

## 9.13   INEQUITABLE CONDUCT - GENERALLY

[The Defendant] contends that [the Plaintiff] may not enforce the [abbreviated patent number] patent against [the Defendant] because [the Plaintiff] engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the [abbreviated patent number] patent.  An applicant for a patent has a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith, and honesty.  This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application.  An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

[In this case, [the Defendant] asserts that [DESCRIBE BRIEFLY EACH BASIS FOR [THE DEFENDANT]'S UNENFORCEABILITY DEFENSE].]

[The Defendant] must prove inequitable conduct by clear and convincing evidence. To determine whether the [abbreviated patent number] patent was obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

---

**Cited Authority:**

AIPLA Model Patent Jury Instructions, 11.1; Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363-64 (Fed. Cir. 2007); eSpeed, Inc. v. BrokerTec USA, L.L.C., 480 F.3d 1129, 1135 (Fed. Cir. 2007); Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006); Purdue Pharma L.P. v. Endo Pharm., Inc., 438 F.3d 1123, 1128 (Fed. Cir. 2006); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1233 (Fed. Cir. 2003); GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed. Cir. 2001); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256 (Fed. Cir. 1997).

## 9.14    MATERIALITY

[Defendant] contends that _____ was information known to a person with this duty of good faith and candor that was [withheld from] [or] [misrepresented to]] [or] [falsely submitted to] the Patent and Trademark Office during the prosecution of the [abbreviated patent number] design patent.  If you find that a person with this duty of good faith and candor [[withheld] [or] [misrepresented]] [or] [submitted false] information when applying for the [abbreviated patent number] design patent, you must determine whether that information was material information.  Material information is not limited to prior art, but includes any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent.  In particular, information is material to patentability when it is not cumulative to information already of record in the application and

(1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant [has taken] in:

      (i)      Opposing an argument of unpatentability relied on by the [PTO], or

      (ii)     Asserting an argument of patentability.

Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

---

**Cited Authority:**

The standard for determining materiality as articulated by the PTO rules changed on January 17, 1992 (effective March 16, 1992). Under the pre-1992 standard, information is material if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether or not to allow the application to issue as a patent. The Federal Circuit has held that information may be considered "material" under both the 1992 version of 37 CFR 1.56 as well as the pre-1992 standard. *See, e.g.*, Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1314-16 (Fed. Cir. 2006); 37 C.F.R. § 1.56(b); Cargill Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1364 (Fed. Cir. 2007); Purdue Pharma L.P. v. Endo Pharmaceuticals Inc., 438 F.3d 1123, 1129 n. 6 (Fed. Cir. 2006); Digital Control Inc. v. Charles Machine Works, 437 F.3d 1309, 1314 (Fed. Cir. 2006); Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1364 n.2 (Fed. Cir. 2003); Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1327 n.3 (Fed. Cir. 1998); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed. Cir. 1997); Plymouth Industries, LLC v. Sioux Steel Co., 464 F.Supp.2d 911, 922 (D.Neb. 2006).

## 9.15    INTENT TO DECEIVE OR MISLEAD

If you determine that material information was [withheld from] [or] [misrepresented to] [or] [falsely submitted to] the Patent and Trademark Office, you must next determine whether this was done with an intent to deceive or mislead the Patent and Trademark Office.  Intent to deceive the Patent and Trademark Office may be found from direct evidence.  Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances.

[When a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be that to deceive the Patent and Trademark Office, an inference that the patentee intended to deceive may be appropriate.]  [Simple negligence is insufficient for a holding of inequitable conduct.]

In determining whether or not there was intent to deceive or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

---

**Cited Authority:**

AIPLA Model Patent Jury Instructions, 11.2; Cargill, Inc. v. Canbra Foods, Ltd., 476 F. 3d 1359, 1364 (Fed. Cir. 2007); eSpeed, Inc. BrokerTec USA, L.L.C., 480 F.3d 1129, 1137-38 (Fed. Cir. 2007); Purdue Pharma L.P. Endo Pharm. Inc., 438 F. 3d 1123, 1133-34 (Fed. Cir. 2006); Bristol-Myers Squibb Co. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1239-40 (Fed. Cir. 2003); GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1319-20 (Fed. Cir. 2000); Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd., 204 F.3d 1368, 1373 (Fed. Cir. 2000); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256-57 (Fed. Cir. 1997); Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180-82 (Fed. Cir. 1995); LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n, 958 F.2d 1066, 1076 (Fed. Cir. 1992).

## 9.16    BALANCING OF MATERIALITY AND INTENT

If [the Defendant] has proven by clear and convincing evidence that information was [withheld] [or] [misrepresented] [or] [falsely submitted] by a person with the duty of good faith and candor, you must then balance the degree of materiality and the degree of intent to deceive or mislead the Patent and Trademark Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the [abbreviated patent number] patent. Where the information [withheld] [or] [misrepresented] [or] [false] is highly material, the showing of intent to deceive needed to establish inequitable conduct is proportionally less.  Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

---

 **Cited Authority**:

Adapted from AIPLA Model Patent Jury Instructions, 11.3; eSpeed, Inc. v. BrokerTec USA, L.L.C., 480 F.3d 1129, 1135 (Fed. Cir. 2007); Cargill Inc. v. Canbra Foods, Ltd., 476 F. 3d 1359, 1364 (Fed. Cir. 2007); Purdue Pharma L.P. Endo Pharm. Inc., 438 F. 3d 1123, 1133-35 (Fed. Cir. 2006); Bristol-Myers Squibb Co. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1239-41 (Fed. Cir. 2003); GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1319 (Fed. Cir. 2000); Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1330 (Fed. Cir. 1998); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed. Cir. 1997); Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

## 9.17   INVALIDITY  – WRITTEN DESCRIPTION

A design patent must contain a written description and drawing of the design claimed.  If you find that [the Defendant] has proven by clear and convincing evidence that the description and drawing are insufficient to enable a designer of ordinary skill to understand what the claimed design looks like then the design patent is invalid.  [The Defendant] must show by clear and convincing evidence that any errors, variations or inconsistencies between the drawings or written description are consequential.

**Cited Authority:**

35 U.S.C. §112; Australia Vision Services Pty. Ltd. v. Dioptics Medical Products, Inc., 29 F.Supp.2d 1152, 1159 (C.D. Cal. 1998) ("Dioptics did not include any evidence or declarations by experts in the field to attest to the indefiniteness of the '083 patent design."); Hadco Products, Inc. v. Lighting Corp. of America, 312 F.Supp. 1173, 1181-82 (D.C. Pa. 1970) ("The Court has carefully reviewed the evidence and has studied each alleged defect cited to it. It thereupon concludes that the errors and inconsistencies in the drawings as issued are inconsequential and do not, either singularly or in toto, constitute a violation of either the statutory or regulatory provisions.").

## 9.18   INVALIDITY – ENABLEMENT

The written description of the design claimed in a patent must contain enough detail to teach, or enable, persons skilled in the art to understand how the design looks.   This is referred to as the "enablement" requirement.  If the patent does not enable a designer of ordinary skill in these articles to understand how the design looks, then the design patent is invalid.

In considering whether or not the written description of a design patent meets the enablement requirement, you must keep in mind that design patents are written for designers of ordinary skill in the field of the design.  Thus, a design patent need not expressly show information about the design that ordinary designer skilled in the art would be likely to know or could obtain.

A written description is enabling so long as undue experimentation is not needed.  A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the design and for the level of expertise and knowledge of persons skilled in that field.

---

**Cited Authority:**

35 U.S.C. §112; Seed Lighting Design Co., Ltd. v. Home Depot, 2005 WL 1868152, 9 (N.D. Cal. 2005) ("The bare, unsupported belief of Seed Lighting's counsel that the vagaries are 'insubstantial,' however, is not sufficient to overcome summary judgment…. Without any evidence, facts, or expert testimony, the Court finds that Seed Lighting has utterly failed to demonstrate the existence of genuine factual issues sufficient to preclude summary judgment on its patent claim.").

## 9.19    INVALIDITY  – INDEFINITENESS

The patent laws have requirements for the way in which patent claims are written.  The design patent claim which is found in the drawings and any written description thereof, must be sufficiently clear that a designer of ordinary skill in the art reading them is able to determine what the design looks like.  If a design patent's drawings do not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular design, the prior art, and the description of the drawings contained in the patent.  Design patent drawings, when read along with the rest of the description of the drawings must reasonably inform an designer of ordinary skill in the art of what the design looks like.  Simply because the drawings may not be precise does not automatically mean the claim is indefinite. There is a presumption of validity and the fact that the examiner issued the patent implies that the examiner did not consider the drawings unclear.

---

**Cited Authority:**

35 U.S.C. § 112, ¶2 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."); In re Zahn, 617 F.2d 261, 266-67 (CCPA 1980); DCNL Inc. v. Almar Sales Co. 1997 WL 913941, *2 (N.D.Cal. 1997) ("The fact that the examiner issued the patent implies that the examiner did not consider the drawings unclear. Based on the statutory presumption of patent validity and deference to the patent examiner's decision to issue the patent, the Court finds that plaintiff has sufficiently shown a likelihood that the ′685 patent is valid.").

## 9.20   INVALIDITY  – IMPROPER INVENTORSHIP

In this case, [the Defendant] contends that the [abbreviated patent number] design patent is invalid because of improper inventorship.  To prove invalidity because of improper inventorship, [the Defendant] must show that it is highly probable that the patent fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement.  In determining whether the inventorship requirement has been satisfied here, you should be guided by the following principles.

To be an inventor, one must make a significant contribution to the claimed design. Whether the contribution is significant is measured against the scope of the claimed design.

Persons may be inventors even if they do not physically work together or make the same type or amount of contribution.  While persons may be joint or co-inventors even though they do not physically work together, they must have some open line of communication during or at approximately the time of their inventive effort.

Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.  Suggesting ideas or design concepts to the actual inventors also does not make someone an inventor.  Likewise, merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor.

---

**Cited Authority:**

35 U.S.C. §§116 and 256; Eli Lilly & Co. v. Aradigm, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); Slip Track Sys., Inc. v. Metal-Lite, Inc., 304 F.3d 1256, 1262-63 (Fed. Cir. 2002); Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997); Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624 (Fed. Cir. 1985).

## 9.21   INVALIDITY – DOUBLE PATENTING

A design patent may also be invalid on the basis of what is called "double patenting" over a utility patent or application.  "Double patenting" exists where "the features producing the novel aesthetic effect of a design patent or application are the same as those recited in the claims of a utility patent or application as producing a novel structure."  In order to determine whether a design patent is invalid on the basis of "double patenting" over a utility patent or application, you should consider the following:

a.   whether the subject matter of the claim of the design patent would have been obvious from the subject matter of the claims of the utility patent or application; and

b.   whether the subject matter of the claims of the utility patent or application would have been obvious from the claims of the design patent.

If you find that this "two-way test" is satisfied, then the design patent is invalid as obvious over the utility patent or application.

---

**Cited Authority:**

In re Dembiczak, 175 F.3d 994, 1002 (Fed. Cir. 1999); Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 628 (Fed. Cir. 1984); Carman Industries, Inc. v. Wahl, 724 F.2d 932, 941 (Fed. Cir. 1983) ("The question then becomes whether one patent claims an obvious variation of that which the other patent claims, and vice versa."); In re Thorington, 418 F.2d 528, 536-37 (CCPA 1969) (Double patenting between a design and utility patent is possible "if the features producing the novel aesthetic effect of a design patent or application are the same as those recited in the claims of a utility patent or application as producing a novel structure.")

## 10      DESIGN PATENT DAMAGES

### 10.1     DAMAGES – GENERALLY

I will now instruct you on damages.  If you find that [the Defendant]'s product infringes the [abbreviated patent number] design patent, and you do not find the [abbreviated patent number] design patent invalid, then you must determine the amount of damages to be awarded [the Plaintiff] for the alleged infringement.

By instructing you on damages, I am not suggesting which party should win on any issue.  These instructions are provided to guide you on the calculation of damages in the event you find infringement and do not find the [abbreviated patent number] design patent invalid, and thus must address the damages issue.

A plaintiff in a design patent case can elect to prove either actual damages, known as compensatory damages, or they may elect to prove the defendant's profits as its measure of potential recovery.

In this case, [the Plaintiff] seeks to prove [its compensatory damages/[the Defendant]'s profits].

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 6.1 and 7th Circuit Pattern Jury Instructions, 4.1; 35 U.S.C. §§284 and 289; <u>Catalina Lighting, Inc. v. Lamps Plus, Inc.</u>, 295 F.3d 1277, 1290-92 (Fed. Cir. 2002).

## 10.2   DAMAGES – WHEN DAMAGES/PROFITS BEGIN

**_Note_:**   _This instruction should be given in the event the parties agree on the date for commencement of damages/the right to recover defendant's profits._

In this case, you should assess damages/the right to recover [the Defendant]'s profits beginning on [insert date]. [The Plaintiff] and [the Defendant] have agreed upon this date.

**_Note_:**   _This instruction should be given in the event the parties agree that the marking requirement was satisfied or does not apply._

In this case, if you find that the [abbreviated patent number] design patent was granted before the infringing activity began, you should calculate damages/[the Defendant]'s profits as of the date you determine that the infringement began.  If you find that the [abbreviated patent number] design patent was granted after the infringing activity began, damages/[the Defendant]'s profits should be calculated as of [date patent issued].

**_Note_:**   _This instruction should be given if marking is at issue._

The amount of damages/[the Defendant]'s profits [the Plaintiff] can recover is limited to those acts of infringement by [the Defendant] that occurred after [the Plaintiff] gave the [the Defendant] notice that it infringed the [abbreviated patent number] design patent.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that [the Plaintiff] communicated to defendant a specific charge of infringement of the [abbreviated patent number] design patent by [the accused product or device].  This notice is effective as of the date given.  [The Plaintiff] has the burden of establishing that it is more probable than not that [the Defendant] received notice of infringement on [date].

**_Note_:**   _Service of a complaint alleging patent infringement normally effects notice, and as the facts of the case warrant, the court can note that in the instructions._

Constructive notice means that the plaintiff complied with the marking requirement of the patent law.  "Marking" means that substantially all of the products made, offered for sale, or sold under the [abbreviated patent number] design patent are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  [The Plaintiff] has the burden of establishing substantial compliance with the marking requirement.  To do so, [the Plaintiff] must show it is more probable than not that substantially all of the products it made, offered for sale, or sold under the [abbreviated patent number] design patent were marked, and that [the Plaintiff] made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the [abbreviated patent number] design patent marked substantially all of their products.

Your job is to calculate damages from the date [the Defendant] received either actual or constructive notice, whichever was first.  You should not award damages for any infringement by [the Defendant] occurring before it first received notice of the [abbreviated patent number] design patent.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 6.3; 35 U.S.C. §287; Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1316-17 (Fed. Cir. 2009); State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1073 (Fed. Cir. 2003); Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1353 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1345 (Fed. Cir. 2001); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996); Amsted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 188-87 (Fed. Cir. 1994).

**10.3    TWO TYPES OF DAMAGES – LOST PROFITS AND REASONABLE ROYALTY**

<u>**Note**</u>:  *If compensatory damages are sought under 35 USC §284, then read the following:*

There are two types of damages that [the Plaintiff] may be entitled to recover: lost profits or a reasonable royalty.

Lost profits consist of any actual reduction in business profits plaintiff suffered as a result of [the Defendant]'s alleged infringement of the [abbreviated patent number] design patent.

A reasonable royalty is defined as the amount a patent owner and someone wanting to use the patented design would agree upon as a fee for use of the design. I will describe shortly what [the Plaintiff] must prove to recover both types of damages.

[The Plaintiff] is entitled to recover no less than a reasonable royalty for each infringing [sale; *fill in other infringing act*], even if [the Plaintiff] cannot prove that it suffered lost profits in connection with that [sale; *fill in other infringing* act].

At the same time, your damages determination must not include additional sums to punish defendant or to set an example.  You may award compensatory damages only for the loss that [the Plaintiff] proves was more likely than not caused by [the Defendant]'s infringement.

---

**Cited Authority:**

Adapted from 7th Circuit Pattern Jury Instructions, 4.2; 35 U.S.C. §§284 and 289; <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

## 10.4    DAMAGES – BURDEN OF PROOF

[The Plaintiff] must prove each element of its damages by a preponderance of the evidence.

Where the parties dispute a matter concerning damages, it is [the Plaintiff]'s burden to prove that it is more probable than not that [the Plaintiff]'s version is correct.  [The Plaintiff] must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, [the Plaintiff] is not entitled to damages that are remote or speculative.

---

### Cited Authority:

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 6.2; Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293-94 (Fed. Cir. 2007); Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366, 1372-73 (Fed. Cir. 2005); State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1072 (Fed. Cir. 2003); Grain Processing Corp. v. Am-Maize Products Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999) (plaintiff must prove the amount of its lost profits by a reasonable probability); Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*) (same); Oiness v. Walgreen Co., 88 F.3d 1025, 1030-31 (Fed. Cir. 1996) (the amount of lost profits cannot be based on mere speculation); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1164 n.2 (Fed. Cir. 1991) (same); Lam, Inc. v. Johns-Mansville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983) (doubts resulting from defendant's failure to retain appropriate records are to be resolved in the plaintiff's favor); Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1428 (Fed. Cir. 1988) (same); Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1327 (Fed. Cir. 1987) (mathematical certainty is not required).

## 10.5    DAMAGES – LOST PROFITS

**Note**:  *This instruction should be given only in the event the patent holder is seeking lost profits damages under 35 U.S.C.§ 284.*

In this case, [the Plaintiff] seeks to recover lost profits resulting from [the Defendant]'s infringement.  One way [the Plaintiff] may establish lost profits is by proving it is more probable than not that:

1.  there was demand for the patented design;

2.  there were no acceptable non-infringing alternatives, or, if there were, that [the Plaintiff]  lost some sales as a result of the infringing activity;

3.  [the Plaintiff] had the manufacturing and marketing capacity to make any infringing sales actually made by [the Defendant]; and

4.  the amount of profit [the Plaintiff] would have made if [the Defendant] had not infringed.

**Note**:  *If price erosion damages are sought under 35 USC §284, then read the following. Otherwise, skip to the next paragraph*

In this case, [the Plaintiff] contends that if [the Defendant] had not infringed the [abbreviated patent number] design patent, [the Plaintiff] would have been able to charge higher prices for the patented design and seeks as damages the profits it lost as a result of selling the patented design at lower prices. This type of damages is referred to as price erosion.

For those infringing sales where [the Plaintiff] does not seek, or does not prove, lost profits damages, the law requires that you award [the Plaintiff] a reasonable royalty.  In a moment, I will instruct you on how to calculate reasonable royalty damages.

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 6.4 and 7th Circuit Model Jury Instructions, 4.3.1; 35 U.S.C. §284; Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293-94 (Fed. Cir. 2007); Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1357-61 (Fed. Cir. 2001); Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc), State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1576-80 (Fed. Cir. 1989); Central Soya Co. v. George A. Hormel & Co., 723 F.2d 1573, 1578-80 (Fed. Cir. 1983); Lam, Inc. v. Johns-Mansville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983); Panduit Corp. v Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978); Aro Mfg. Co. v. Convertible Top Replacement Co., Inc., 377 U.S. 476, 507-10, 84 S.Ct. 1526, 1543-44 12 L.Ed.2d 457 (1964).

**10.6    DAMAGES – AMOUNT OF LOST PROFITS**

If you conclude that [the Plaintiff] has proved that it lost profits because of [the Defendant]'s infringement, the lost profits that you award should be the amount that [the Plaintiff] would have made on any sales that [the Plaintiff] lost because of the infringement, minus the additional costs that [the Plaintiff] would have incurred in making those sales [, plus the amount by which [the Plaintiff]'s profits on its own sales were decreased as a result of reduced prices or increased costs caused by [the Defendant]'s infringement].

---

**Cited Authority:**

Paper Converting Machine Co. v. Magna-Graphics Corp., 745 F.2d 11, 22 (Fed. Cir. 1984) (the proper measure of recovery is any net profits lost by plaintiff as a result of defendant's infringing acts, while the plaintiff's fixed costs are generally ignored in determining those incremental profits).

## 10.7    REASONABLE ROYALTY

**_Note_**: _If this is a lost profits and reasonable royalty case, then read:_

If [the Plaintiff] has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then [the Plaintiff] should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

**_Note_**: _If this is a reasonable royalty case, then read:_

Plaintiff seeks to recover a reasonable royalty.

**_Note_**: _Read the following in every reasonable royalty case:_

A royalty is a payment made to the owner of a patent by someone else so that he can [make; use; sell; import] the patented design.  A "reasonable royalty" is the amount [the Plaintiff] and [the Defendant] would have agreed upon as a royalty at the time [the Defendant]'s infringing sales first began.

In determining a reasonable royalty, you should assume that [the Plaintiff] would have been willing to allow [the Defendant] to [make; use; sell; import] the patented design and that [the Defendant] would have been willing to pay plaintiff to do so.  You should take into account what [the Plaintiff]'s and [the Defendant]'s expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both [the Plaintiff] and [the Defendant] would have believed that [the Plaintiff]'s design patent was valid and infringed and that they would have known the level of sales and profits that [the Defendant] would make from the design.  You should also assume that [the Defendant] would have been willing to pay, and [the Plaintiff] would have been willing to accept, the reasonable royalty they negotiated. Your role is to determine what [the Plaintiff] and [the Defendant] would have agreed upon if they had negotiated in this manner, not just what either [the Plaintiff] or [the Defendant] would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

–   Royalties that others paid to [the Plaintiff] for the patented design;

–   Royalties that [the Defendant] paid to others for comparable design patents;

–   Whether [the Plaintiff] had a policy of licensing or not licensing the design patents;

–   Whether [the Plaintiff] and [the Defendant] are competitors;

–   Whether use of the patented design helps to make sales of other products or services

–   Whether the product made using the patent is commercially successful, as well as its profitability;

– The advantages of using the patented design over products not covered by the patent;

– The extent of [the Defendant]'s use of the patented design and the value of that use to [the Defendant];

– Any royalty amounts that are customary for similar or comparable patented designs;

– The portion of the profit on sales that is due to the patented design, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by defendant;

– Expert opinions regarding what would be a reasonable royalty.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions, 6.5 and 7th Circuit Pattern Jury Instructions, 4.4; 35 U.S.C. § 284; Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); Crystal Semiconductor Corp. v. TriTech Microetlectronics Int'l, Inc., 246 F.3d 1336, 1354-61 (Fed. Cir. 2001); Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1574-76 (Fed. Cir. 1988) (*overruled on other grounds*); Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).  The factors to be considered originated in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

## 10.8    ADDITIONAL REMEDY FOR DESIGN PATENT INFRINGEMENT – DEFENDANT'S PROFIT

*Note*: *If [the Plaintiff] elects to recover [the Defendant]'s profits under 35 USC §289, then read the following paragraph.*

In this case, [the Plaintiff] has elected to seek [the Defendant]'s profit.  If you find infringement, and do not find the [abbreviated patent number] design patent is invalid, you are to award [the Plaintiff] [the Defendant]'s total profit attributable to the infringement.

[The Defendant]'s "total profit" means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent.  "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.  A design patent owner can recover the profit not only of the manufacturer or producer of an infringing article, but also of other sellers in the chain of distribution.

[The Plaintiff] is entitled to all profit earned by [the Defendant] that is attributable to the infringement.  Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of [the Defendant]'s receipts from using the design in the sale of the infringing products.  [The Plaintiff] has the burden of proving [the Defendant]'s gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are directly attributable to the sales of the infringing products resulting in a nexus between the infringing products and the expense.  [The Defendant] has the burden of proving the deductible expenses and the portion of the profit attributable to factors other than use of the infringed design by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the infringing product is attributable to factors other than use of the infringed design, you shall find that the total profit is attributable to the infringement.

---

**Cited Authority:**

35 U.S.C. § 289; <u>Catalina Lighting, Inc. v. Lamps Plus, Inc.</u>, 295 F.3d 1277, 1291-1292, (Fed. Cir. 2002); <u>Nike, Inc. v. Wal-Mart Stores, Inc.</u>, 138 F.3d 1437, 1447-48 (Fed. Cir. 1998); <u>Braun, Inc. v. Dynamics Corp. of Am.</u>, 975 F.2d 815, 824 (Fed. Cir. 1992); <u>Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.</u>, 750 F.2d 1552, 1566-68 (Fed. Cir. 1984); <u>Bergstrom v. Sears, Roebuck & Co.</u>, 496 F. Supp. 476, 495 (D. Minn. 1980).

# APPENDICES

## 11      MODEL VERDICT FORMS

The Model Verdict Forms are offered for the convenience of the court and parties.  They can be a starting point for preparing a form in a particular case.  Form A serves as a simple form.  Form B serves as a form in a case where there are a greater number of issues.

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions.

## 11.1   MODEL VERDICT FORM A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF _____

PATENT HOLDER,

                Plaintiff,

vs.                                      Civil Action No.

ALLEGED INFRINGER,

                Defendant.

### VERDICT FORM

Based on the evidence admitted at trial and in accordance with the instructions as given by the Court, we, the jury, unanimously agree to the answers to the following questions:

**I.**    **Infringement**

Has [the patent holder] proven that it is more probable than not that [the alleged infringer] infringed the following claim(s)?

a.  The claim of the [**ABBREVIATED PATENT NUMBER**] design patent   **Yes**    **No**

b.  [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

**II.**    **Willful Infringement**

a.  If [the patent holder] has proven that it is more probable than not that [the alleged infringer] infringed the claim of the [**ABBREVIATED PATENT NUMBER**] design patent, has [the patent holder] proven that it is highly probable that the infringement of the claim of the [**ABBREVIATED PATENT NUMBER**] design patent was willful?  **Yes**    **No**

b.  [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

**III.**    **Invalidity**

Has [the alleged infringer] proven that it is highly probable that the following claim(s) is or are invalid?

a.  The claim of the [**ABBREVIATED PATENT NUMBER**] design patent   **Yes**    **No**

b.  [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

IV.   **Damages**

    a.   If you have found that the claim of the [**ABBREVIATED PATENT NUMBER**] design patent is infringed and is not invalid, what damages do you find [the patent holder] has proven that it is more probable than not it has suffered as a result of that infringement?

        i.     Lost Profits of [the patent holder]:_____

        ii.    Reasonable Royalty
             rate:_____

             total royalty damages:_____

        iii. Total Profits of [the alleged infringer]:_____

Total Damages:_____

    b.   [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

For the Jury:

    By:   _____
           Foreperson

    Date:_____

---

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions.

## 11.2   MODEL VERDICT FORM B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF _____

PATENT HOLDER,

                Plaintiff,

vs.                                                  Civil Action No.

ALLEGED INFRINGER,

                Defendant.

VERDICT FORM


**I.**   **Direct Infringement – Literal Infringement**

Has [the patent holder] proven that it is more probable than not that [the alleged infringer] literally infringed the following claim(s)?

a.   The claim of the [**ABBREVIATED PATENT NUMBER**] design patent      **Yes**      **No**

b.   [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].


**II.**   **Indirect Infringement—Contributory Infringement**

a.   Has [the patent holder] proven that it is more probable than not that:

    (i)      [the alleged infringer] supplied a part, or a component, to another for use in a product that infringes the claim of the [**ABBREVIATED PATENT NUMBER**] design patent;

    (ii)     the component was a material part of the infringing product;

    (iii)    [the alleged infringer] supplied the component with knowledge of the design patent and knowledge that the component was especially made or adapted for use in an infringing manner; and

    (iv)     the component did not have a substantial non-infringing use?   **Yes**      **No**

b.   [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## III.   Indirect Infringement—Inducing Infringement

a. Has [the patent holder] proven that it is more probable than not that: (a) [the alleged infringer] actively encouraged or instructed another person on how to use a product in a way that infringes the claim of the [**ABBREVIATED PATENT NUMBER**] design patent; (b) [the alleged infringer] knew of the design patent at that time; (c) [the alleged infringer] knew, or should have known, that the encouragement or instructions would result in infringement; and (d) the other person infringed the claim of the [**ABBREVIATED PATENT NUMBER**] design patent?          **Yes      No**

b. [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## IV.   Willful Infringement

a. If [the patent holder] has proven that it is more probable than not that [the alleged infringer] infringed the claim of the [**ABBREVIATED PATENT NUMBER**] design patent either directly or indirectly, has [the patent holder] proven that it is highly probable that the infringement of the claim of the [**ABBREVIATED PATENT NUMBER**] design patent was willful?          **Yes      No**

b. [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## V.   Invalidity—Written Description, Enablement and Indefiniteness

a. Has [the alleged infringer] proven that it is highly probable that the [**ABBREVIATED PATENT NUMBER**] design patent is invalid because the [**ABBREVIATED PATENT NUMBER**] design patent does not enable a designer of ordinary skill to understand what the claimed design looks like?          **Yes      No**

b. [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## VI.   Invalidity—Improper Inventorship

a. Has [the alleged infringer] proven that the [**ABBREVIATED PATENT NUMBER**] design patent is invalid because it is highly probable that the patent does not list all of the actual inventors and only the actual inventors?          **Yes      No**

b. [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## VII.   Invalidity—Double Patenting

a. Has [the alleged infringer] proven that the [**ABBREVIATED PATENT NUMBER**] design patent is invalid because the features producing the novel aesthetic effect are the same as the novel structure recited in the claims of a utility patent or application?          **Yes      No**

b. [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## VIII.  Invalidity—Anticipation

Has [the alleged infringer] proven that it is highly probable the [**ABBREVIATED PATENT NUMBER**] design patent is invalid as "anticipated" or, in other words, to an ordinary observer, the prior art reference is identical in all material respects to the [**ABBREVIATED PATENT NUMBER**] design patent?

a.  The claim of the [**ABBREVIATED PATENT NUMBER**] design patent      **Yes      No**

If the answer is "yes," check any reason below that is applicable:

The claimed design was already publicly known or publicly used by others in the United States before the date of conception of the claimed design.]

The claimed design was already patented or described in a printed publication somewhere in the world before the date of conception.]

The claimed design was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the date of conception.]

The claimed design was already made by someone else in the United States before the date of conception and that other person had not abandoned the design or kept it secret.]

The named inventor did not invent the claimed design but instead learned of the claimed design from someone else.]

The claimed design was already patented or described in a printed publication somewhere in the world more than one year before the effective filing date of the patent application from which the [**ABBREVIATED PATENT NUMBER**] design patent issued.]

The claimed design was already being publicly or commercially used in the United States more than one year before the effective filing date of the patent application from which the [**ABBREVIATED PATENT NUMBER**] design patent issued.]

A device using the claimed design was sold or offered for sale in the United States and the claimed design was ready for patenting more than one year before the filing date of the patent application from which the [**ABBREVIATED PATENT NUMBER**] design patent issued.]

the [patent holder] had already obtained a patent on the claimed design in a foreign country before the original U.S. application, and the foreign application was filed more than one year before the effective filing date of the U.S. patent application from which the [**ABBREVIATED PATENT NUMBER**] design patent issued.]

b.  [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

## IX.   Invalidity—Obviousness

Has [the alleged infringer] proven that it is highly probable that the following claim(s) is or are invalid as being obvious to the ordinary observer at the time the patent application from which the [**ABBREVIATED PATENT NUMBER**] design patent issued was filed?

a.   The claim of the [**ABBREVIATED PATENT NUMBER**] design patent      **Yes**      **No**

If the answer is "yes," answer the following questions by checking the applicable answers:

(i)   What was the level of ordinary skill in the field that someone would have had at the time the claimed design was made?  Check the applicable answer:

[the patent holder's contention]

[the alleged infringer's contention]

(ii)   Was [disputed reference] within the scope and content of the prior art at the time of the claimed design? Check the reference only if was within the scope and content of the prior art)

[Reference a]

[Reference b]

(iii)   What difference, if any, existed between the claimed design and the prior art at the time of the claimed design? Check only the answer that correctly identifies the difference, if any

[the patent holder's contention]

[the alleged infringer's contention or no difference]

(iv)   Which of the following factors that tend to indicate nonobviousness, if any, has been established by the evidence with respect to the claimed design—check any that apply:

commercial success of a product due to the merits of the claimed design

copying of the claimed design by others

acceptance by others of the claimed design as shown by praise from others in the field or from the licensing of the claimed design

[other factor(s) indicating nonobviousness]

(v)   Which of the following factors that tend to indicate obviousness, if any, has been established by the evidence with respect to the claimed design—check those that apply:

independent design of the claimed design by others before or at about the same time as the named inventor thought of it

[other factor(s) indicating nonobviousness]

b.   [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

**X.   Damages**

a.   If you have found that the claim of the [**ABBREVIATED PATENT NUMBER**] design patent is infringed and is not invalid, what damages do you find [the patent holder] has proven that it is more probable than not it has suffered as a result of that infringement?

i.    Lost Profits of [the patent holder]:_____

ii.   Reasonable Royalty rate:_____
       total royalty damages:_____

iii.  Total Profits of [the alleged infringer]:_____

Total Damages:_____

b.   [REPEAT FOR EACH DESIGN PATENT INVOLVED IN THIS CASE].

For the Jury:

By:   _____
       Foreperson

Date:_____

_____

**Cited Authority:**

Adapted from National Jury Instruction Project's Model Patent Jury Instructions.