# Exhibit E

**(REDACTED)**

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIMO HOLDINGS, INC., *Plaintiff,* v. HONG KONG UCLOUDLINK NETWORK TECHNOLOGY LIMITED AND UCLOUDLINK (AMERICA), LTD. *Defendants.* | Civil Action No. 18-cv-5427-(JSR) **EXPERT REPORT OF CHRISTOPHER A. MARTINEZ WITH RESPECT TO DAMAGES** |

Respectfully submitted this 14th day of January, 2019

_____
Christopher A. Martinez

**CONFIDENTIAL INFORMATION GOVERNED**

**BY PROTECTIVE ORDER**

Canada, Inc. ("LES")[2] and the Certified Patent Valuation Analyst ("CPVA")[3] designation from The Business Development Academy ("BDA"),[4] in addition to earning the designation as a Certified Public Accountant ("CPA") from the state of California.

5. A copy of my current curriculum vitae, which summarizes my qualifications and professional experience, is attached as **Schedule 1**. Attached as **Schedule 2** is a listing, to the best of my recollection, of my deposition, arbitration and trial testimony over the preceding four years. I have co-authored one article within the last ten years. The title of that article is "Calculating and Proving Damages in Franchise Termination Cases" and it was published as part of the ABA 31st Annual Forum on Franchising in 2008.

6. StoneTurn charges $595 per hour for time I spend consulting, assessing damages and time that may be spent testifying related to my damages analysis. Neither my, nor my staff's, nor StoneTurn's compensation is affected in any way by either the conclusions I have reached or the outcome of this lawsuit.

## II. ASSIGNMENT

7. I have been retained as an expert in this matter by K&L Gates LLP, counsel for Plaintiff SIMO Holdings, Inc. (hereafter "SIMO" or "Plaintiff"), to evaluate the economic damages sustained by Plaintiff as a result of Hong Kong uCloudlink Network Technology Limited ("UCL Hong Kong") and uCloudlink (America), Ltd.'s ("UCL America") (collectively, "uCloudlink" or "Defendant") alleged infringement of U.S. Patent No. 9,736,689 ("the '689 Patent" or the "Patent-in-Suit"). Solely for the purpose of performing a damages analysis in this matter, I have assumed that the Patent-in-Suit is valid, enforceable by SIMO, and infringed by Defendant.

---

involvement in patenting, marketing, valuation, IP law, negotiation, and intellectual asset management." (www.licensingcertification.org)

[2] Established in 1965, the LES is a professional society comprised of nearly 5,000 members engaged in the transfer, use, development, manufacture and marketing of intellectual property. LES is a member society of the Licensing Executives Society International, Inc., with a worldwide membership of over 9,000 members in 30 national societies, representing over 90 countries. (www.lesusacanada.org)

[3] The CPVA program curriculum "is designed to prepare financial analysts, technology transfer professionals, intellectual property managers, licensing managers, inventors, patent lawyers and other business development executives with the skill set necessary to value patents." (www.cpva.info)

[4] The BDA "is committed to providing unparalleled educational opportunities to the business community." Its mission "is to develop a curriculum and recruit the instructors that will best serve our members in developing the critical thinking skills necessary to grow their businesses." (www.bdacademy.com)

19.     Skyroam US also sells Daypass credits through an online portal, which serves as Skyroam's exclusive source for consumer sales of these services.[15] As explained in subsequent sections, these are credits to a user's account and are not associated with a tangible card like Skyroam's Daypass cards.[16]

### (2)     Skyroam GmbH

20.     Located in Berlin, Germany, Skyroam GmbH is a wholly-owned subsidiary of Skyroam US.[17] Skyroam GmbH was formed in 2017 and distributes Daypass cards and mobile hotspots in Europe.[18] This subsidiary sells Daypass cards to both distributors and end users but does not sell Daypass credits through the Skyroam online portal.[19] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[20]

### (3)     Skyroam Services, Limited

21.     Based in Hong Kong, Skyroam Services is a wholly-owned subsidiary of SIMO and a sister company of Skyroam US.[21] Skyroam Services markets, sells, and distributes Skyroam's products and services ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[22]

22.     Skyroam Services also works directly with contract manufacturers in China to produce Daypass cards and mobile hotspots and sells them for a small markup to both Skyroam US and Skyroam GmbH.[23]

### b)     *Business Model*

23.     Skyroam "aggregates data services from top carriers around the world…[and provides] a fully managed global wireless data service."[24] In more simplistic terms, the company purchases subscriber identity module ("SIM") cards from mobile network operators ("MNOs") in the

---

[15] Plam Deposition at 18-19, 22-24.
[16] Plam Deposition at 22-23.
[17] Plam Deposition at 28, 74, 109-110.
[18] Plam Deposition at 14, 19.
[19] Plam Deposition at 18-19, 21, 23.
[20] Plam Deposition at 23. These revenues contrast with Daypass credits purchased by Skyroam GmbH customers directly through Skyroam's online portal. These revenues are reported on Skyroam GmbH income statements and used to pay its expenses. Revenues for these Daypasses are reported on Skyroam's income statement.
[21] Plam Deposition at 28, 103.
[22] Discussion with Eric Plam and Ray Qin.
[23] Plam Deposition at 103, 107-108.
[24] Plam Deposition Exhibit 10 (SIMO_0041987-2008 at 989).

12

countries where it provides mobile data service and resells that service for use with compatible hotspots.[25] Skyroam offers foreign mobile data service to its customers at prices that are lower than are typically offered by MNOs for roaming outside of the customers' home countries.[26] Skyroam connects and provides the data service on these local SIM cards by connecting the cards through the company's patented virtual SIM ("vSIM") servers using its vSIM technology.[27]

24. Skyroam sells mobile hotspots that are required to connect with their vSIM servers and the corresponding local SIM cards.[28] These hotspots are compatible only with Skyroam's vSIM network, and its customers connect one or more devices to these hotspots using Wi-Fi.[29] These hotspots are typically bundled with a single Daypass after which additional days of service must be purchased.[30] For example, the Solis hotspot is bundled with one free Daypass.[31]

25. Skyroam does not sell devices without a corresponding commitment to use the service ███████████████████████████████████████ For example, when Skyroam sells devices to a rental company, the sale includes some amount of data service depending upon the contract.[33] In some cases, ███████████████████████████████████████████████████████████████████████████████████████

26. Skyroam primarily promotes its products and services is through online advertising.[35] In the United States, e-commerce is ████████████████████ through which Skyroam sells its products and services.[36] Channels differ in their relative importance in other countries. For example, rental partners are ████████████████████████████████████████ In addition to

---

[25] Discussion with Eric Plam and Ray Qin.
[26] Plam Deposition at 160-161 Exhibits 10 (SIMO_0041987-2008 at 997) and 15 (SIMO_0050746-763 at 746.
[27] Discussion with Paul Clark, DSc.
[28] Discussion with Eric Plam and Ray Qin.
[29] Discussion with Paul Clark, DSc.; Plam Deposition Exhibit 10 (SIMO_0041987-2008 at 995-997).
[30] Plam Deposition at 19.
[31] Plam Deposition at 56.
[32] Plam Deposition at 60, 201).
[33] Plam Deposition at 56.
[34] Plam Deposition at 57.
[35] Plam Deposition at 112-113; SIMO_0264150. In the US, Skyroam uses ads on Facebook, Instagram and Google Adwords.
[36] Plam Deposition at 112-113.
[37] Plam Deposition Exhibit 8 (SIMO_0016809-818 at 812). Rental partners are companies that purchase hotspots and data service from Skyroam or uCloudlink and then rent them to end users.

merchant gateways, Skyroam also works with ▮▮▮▮ of online travel agencies ("OTA"), airlines, hotels, retailers and other affiliates to promote sales and rentals of the company's devices and corresponding services.[38]  For example, Skyroam has relationships with ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ among others.[39]

      c)    *Skyroam Products*

          (1)    Hotspot Devices

27.    Since 2014, Skyroam has sold four different global hot spots. The first version of their global hotspot, the 3GMate, was first sold in the U.S. in 2014.[40]  The 3GMate was sold for about nine months until Skyroam launched an improved version of the 3GMate.[41]  This improved version, internally known as the ▮▮▮▮ was rebranded in the U.S. and Europe as the Skyroam Hotspot and the 3GMate+ in Asia.[42]  Although the ▮▮▮▮ is still being sold, Skyroam is no longer having this product manufactured.[43]

28.    Skyroam launched the third-generation hotspot, the Solis, (sold as the WorldFi in Asia with a different shape), in the third quarter of 2017.[44]  The Solis is the latest data hotspot and is currently sold in the U.S., Asia, and Europe.[45]

29.    Distributed by Skyroam Services, the fourth Skyroam hotspot is known as the 4GMate and, with one exception, is only available for rent through Skyroam rental partners in Asia.[46]  The 4GMate is not available through any e-commerce sales channel or elsewhere in the United States.[47]  **Table 1** below is a summary of Skyroam's hotspot models from 2014 to date.

---

[38] Plam Deposition Exhibits 8 (SIMO_0016809-818 at 811-13) and 14 (SIMO_0096975-999 at 981); SIMO_0014156-165 at 157; SIMO_0016875-894 at 885.

[39] SIMO_0014156-165 at 157.

[40] Plam Deposition at 30. The Skyroam internal code for the 3GMate was the ▮▮▮▮

[41] Plam Deposition at 30.

[42] Plam Deposition at 30. The ▮▮▮▮ form factor was the same as the ▮▮▮▮ but it included an improved chipset that allowed for faster speeds from HSPA to HSPA Plus.

[43] Plam Deposition at 31-32, 54. Skyroam still refurbishes the ▮▮▮▮ when they are returned by partners, and the ▮▮▮▮ is still available for rent by some of Skyroam's rental partners.

[44] Plam Deposition at 32.

[45] Plam Deposition at 36; Discussion with Eric Plam and Ray Qin.

[46] Plam Deposition at 54-55. A Hong Kong distributor sold some 4GMate hot spots to a retailer in Hong Kong.

[47] Plam Deposition at 54-55.

14

currently offers three different pricing models including (i) $9 per Daypass (ii) $9 per gigabyte or (iii) $99 per month.[59]

### ii. uCloudlink

33. Founded in Hong Kong in 2009, Hong Kong uCloudlink Network Technology Ltd. is the parent company of both UCL America and UCL Hong Kong.[60] For discussion purposes, I have referred to all uCloudlink entities collectively as "uCloudlink" when not describing a specific entity. uCloudlink has over ▮ employees and over 20 offices in China, Hong Kong, Europe and the U.S., including a research and development facility with approximately ▮ employees.[61] The U.S. subsidiary for uCloudlink has less than ▮ employees in New York that are responsible for the company's sales and rental businesses in the United States.[62]

#### a) *Business Model*

34. uCloudlink's business model is virtually identical to Skyroam's. Like Skyroam, uCloudlink purchases SIM cards from MNOs in the countries where it provides service and resells that service for use with compatible hotspots.[63] uCloudlink connects and provides the data service on these local SIM cards by connecting the cards through the company's "Cloud SIM" servers.[64]

35. uCloudlink also sells mobile hotspots that connect with their servers and the corresponding local SIM cards.[65] These hotspots are compatible with virtual SIM networks operated by uCloudlink's Cloud SIM network, and its customers connect one or more mobile devices to these hotspots using Wi-Fi.[66]

---

[58] Plam Deposition at 137.

[59] Plam Deposition at 137-138.

[60] Deposition of Wen Gao, November 13, 2018 ("Gao Deposition") at 51-53, 57-58, 64-67, 70; Deposition of Hua Wei, November 6, 2018 ("Wei Deposition") at 45, 48 and Exhibits 20 (UCLOUDLINK0013740-759 at 744) and 25 (UCLOUDLINK0013622-656 at 628). Mr. Gao testified that he formed the company in 2011 but Exhibits 20 and 25 state that uCloudlink was founded in 2009. uCloudlink US and HK are sister companies.

[61] Wei Deposition Exhibits 20 (UCLOUDLINK0013740-759 at 743, 746) and 25 (UCLOUDLINK0013622-656 at 627-628).

[62] Wei Deposition at 23; Gao Deposition at 32, 38.

[63] Wei Deposition Exhibit 20 (UCLOUDLINK0013740-759 at 749-750)

[64] Wei Deposition Exhibit 25 (UCLOUDLINK0013622-656 at 635-636); UCLOUDLINK0344814-826 at 817.

[65] UCLOUDLINK0344719-720 at 719); UCLOUDLINK0344812-813 at 812. The "Conditions" of these plans for customers is "purchase GlocalMe devices" and enter into a data service plan for 12 or 24 months.

[66] Discussion with Paul Clark, DSc.

36. Data services are typically provided in increments of one day of unlimited service, and like Skyroam, uCloudlink refers to each of these units as a "DayPass" or "Day Pass" (hereafter "Daypass").[67] uCloudlink also offers subscriptions that include unlimited data over a certain timeframe (e.g., monthly).[68] Also like Skyroam, uCloudlink sets limits for the volume of high speed data it will provide per DayPass, and then throttles the data speeds once the daily threshold is exceeded.[69]

37. uCloudlink also offers some data packages that are dissimilar from Skyroam's Daypass model. Specifically, uCloudlink offers some data packages that include a set volume of data that may be used at any time over a set number of days (e.g., 1GB over 5 days).[70] In addition, I understand that uCloudlink sells service in dollar increments and deducts from the balance in amounts per megabyte (e.g., $0.06/MB).[71]

38. Also, like Skyroam, uCloudlink offers subscription plans for enterprises and business travelers.[72] These subscriptions are packaged as daily or monthly plans or as "flexible data packages."[73]

   b)   *GlocalMe Products and Services*

39. uCloudlink sells three models of global hotspot and one mobile telephone under the brand name GlocalMe.[74] GlocalMe is the brand name that uCloudlink uses for all products sold directly to individual users.[75] All four devices are capable of providing the same uCloudlink Data Services and are branded as the GlocalMe G2, G3, U2 (hotspots) and S1 (mobile phone).[76] These devices are also capable of working with multiple MNOs including ▮▮▮▮▮▮

---

[67] UCLOUDLINK0344719-720 at 719); UCLOUDLINK0344812-813 at 812. For discussion purposes, I have used the term "Daypass" for both Skyroam and uCloudlink to describe a one-day credit for unlimited foreign data service.
[68] https://www.glocalme.com/service/enterprise?lang=en-US&giso=US .
[69] UCLOUDLINK0344719-720 at 719); UCLOUDLINK0344812-813 at 812; SIMO_0016577-592 at 584-585; SIMO_0016821-836 at 828. The daily plans vary "by daily threshold" of, for example, 500 MB or 1 GB/day. Data speeds may be throttled down to 128Kbps to 256Kbps.
[70] Gao 11/28/18 Deposition at 179-180 and Exhibit 88 (UCLOUDLINK00383428); https://www.glocalme.com/data_package?lang=en-US&giso=US
[71] https://www.glocalme.com/.
[72] UCLOUDLINK0344719-720 at 719.
[73] UCLOUDLINK0344719-720 at 719.
[74] Wei Deposition at 54 and Exhibit 27 (UCLOUDLINK0012769); Gao Deposition at 89-90.
[75] Wei Deposition at 112-113 and Exhibit 20 (UCLOUDLINK0013740-759 at 743).
[76] Wei Deposition at 28-29, 54-55 and Exhibit 25 (UCLOUDLINK0013622-656 at 641-42, 644).

### C. Reasonable Royalty Damages

72. A reasonable royalty is generally determined by evaluating economic conditions and various factors that would have been considered by the parties if they had willingly negotiated a license agreement at the time of first infringement. In *Georgia-Pacific v. United States Plywood Corp.*, the court identified fifteen factors to consider in determining a reasonable royalty in the context of a hypothetical license negotiation.[168] It should be noted that the fifteen *Georgia-Pacific* factors are not exclusive of other factors, not equally weighted, and to the extent considered, need to be grounded in the context of each situation.[169]

73. As part of this hypothetical negotiation, it is also important to consider any necessary apportionment, which relates to the essential requirement that "the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product"[170] and "where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product."[171] Apportionment of reasonable royalty damages is also frequently discussed in relation to the Entire Market Value Rule ("EMVR"), which in *LaserDynamics v. Quanta Computer* the Federal Circuit addressed stating:[172]

> The entire market value rule is derived from Supreme Court precedent requiring that "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative."…In effect, the entire market value rule acts as a check to ensure that the royalty damages being sought under 35 U.S.C. § 284 are in fact "reasonable" in light of the technology at issue.

---

[168] *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D. N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S. 870 (1971) ("*Georgia-Pacific*").

[169] I also understand that the court "do[es] not require that witnesses use any or all of the *Georgia-Pacific* factors when testifying about damages in patent cases. If they choose to use them, however, reciting each factor and making a conclusory remark about its impact on the damages calculation before moving on does no more than tell the jury what factors a damages analysis could take into consideration. Expert witnesses should concentrate on fully analyzing the applicable factors, not cursorily reciting all fifteen. And, while mathematical precision is not required, some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed." (*Whitserve, LLC v. Computer Packages, Inc.* 694 F.3d 10, 27 (Fed. Cir. 2012).)

[170] *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1226 (Fed. Cir. 2014).

[171] *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1226 (Fed. Cir. 2014).

[172] *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 2011-1440, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012).