# Exhibit F
**(REDACTED)**

SIMO Holdings Inc.

v.

Hong Kong uCloudlink Network Technology Limited, and uCloudlink America, Ltd.

Case No. 18-cv-5427 JSR

Expert Rebuttal Report of John L. Hansen

TM Financial Forensics, LLC
February 1, 2019

_John L. Hansen_

John L. Hansen

CONFIDENTIAL INFORMATION
GOVERNED BY PROTECTIVE ORDER

on the baseband processor component, which is one of the components necessary to allegedly infringe the '689 patent.[136]

76. uCloudlink also undertook significant investments and business risks which contributed to its sales and profits. uCloudlink's sales are driven by its established sales and distribution network, partnerships, customer relationships, the GlocalMe brand, and uCloudlink's 24/7 customer service, as examples.

77. I also understand uCloudlink owns more than ▮ patents worldwide covering its technology.[137] When considering a reasonable royalty rate for the '689 patent, uCloudlink would consider the contribution of its own patented technology. On August 16, 2018, uCloudlink filed a Complaint for patent infringement against SIMO and Skyroam.[138] I understand that uCloudlink alleges that Skyroam infringes U.S. Patent No. 9,432,066 and U.S. Patent No. 9,548,780 (collectively, "uCloudlink Asserted Patents").[139] Based on discussion with Dr. Martin Feuerstein, I understand the uCloudlink Asserted Patents are practiced by uCloudlink. Therefore, uCloudlink's incremental profit must be apportioned to consider uCloudlink's own contributions and patented technology. Additionally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ indicating that all of the profits would not be attributable to only the '689 patent.[140]

78. The SSPPU analysis discussed in *Georgia-Pacific* factor 8 above reflects that numerous components in the Accused Products are related to features and functionality unrelated to the '689 patent. I understand that the SSPPU components are also related to the uCloudlink Asserted Patents.[141] Therefore, the profit attributable to the SSPPU would have to be further apportioned to reflect the value of uCloudlink's patents.

---

[136] https://www.qualcomm.com/products/qualcomm-snapdragon-212-mobi le-platform; https://www.qualcomm.com/products/snapdragon-652-mobile-platform.
[137] Deposition of Hua Wei, November 6, 2018: Exhibit 25 [UCLOUDLINK0013622-656 at 634].
[138] *Hong Kong uCloudlink Network Technology Limited and uCloudlink (America), LTD., v SIMO Holdings Inc. and Skyroam, Inc.,* Complaint for Patent Infringement, August 16, 2018 ("uCloudlink Complaint").
[139] uCloudlink Complaint: p. 3.
[140] Deposition of Eric Plam, November 7, 2018: Exhibit 10 [SIMO_0041987-2008 at 989]. As discussed elsewhere in this Rebuttal Report, SIMO originally asserted the '735 patent against uCloudlink [*SIMO v. uCloudlink* Complaint for Patent Infringement, June 15, 2018 ("Original Complaint")].
[141] Discussion with Dr. Martin Feuerstein.

uCloudlink for sales to uCloudlink partners and was positioned to make the sale of a competing Skyroam device but for uCloudlink's alleged infringement in the United States.

109. Mr. Martinez has not demonstrated that "the gain for uCloudlink results in an equivalent loss for Skyroam."[166] As evidenced above, Skyroam and uCloudlink compete in a highly competitive market with a large number of market participants and alternatives. Mr. Martinez's assumption that uCloudlink is Skyroam's only competitor for the Accused Products and Data Services is unsupported. Based on the acceptable non-infringing alternatives available from third-party competitors, as well as from uCloudlink, Mr. Martinez's zero-sum game position that provides the foundation underlying his reasonable royalty conclusion is theoretically flawed and unsupported.

### E. Mr. Martinez Fails to Apportion The Value Of The Accused Products and Data Services for Elements Unrelated to the '689 Patent

110. In his overview of Reasonable Royalty Damages, Mr. Martinez acknowledges that it is "important to consider any necessary apportionment, which relates to the essential requirement that 'the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product'."[167] Mr. Martinez further acknowledges that the apportionment of damages is frequently discussed in the context of the Entire Market Value Rule ("EMVR") where "multi-component products are involved", as they are in this matter.[168] Mr. Martinez then concludes that "[t]he profits earned from the wholesale of service can, from an economic perspective, be credited to the Patent-in-Suit" and that "[t]his profit is unique to the Patent-in-Suit because it is the technology described by the '689 patent that enables the business models of both Skyroam and uCloudlink."[169] As discussed below, Skyroam's "profits earned from the wholesale of service" – the basis for Mr. Martinez's royalty rate of ▬▬▬▬ – attributes all of uCloudlink's profits to only the '689 patent.[170] This approach assigns value to the

---

[166] Martinez Report: ¶115.
[167] Martinez Report: ¶73 [citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)].
[168] Martinez Report: ¶73.
[169] Martinez Report: ¶173.
[170] ▬▬▬▬ Deposition of Eric Plam, November 7, 2018: Exhibit 10 [SIMO_0041987-2008 at 989].

'689 patent for features far beyond the functionality potentially covered by the asserted claims of the '689 patent.

111. Economically, Mr. Martinez's approach violates the fundamental principle in patent damages that the damages must be apportioned between patented and unpatented features or components (i.e., that the royalty is limited to the inventive contribution of the patent).[171] I understand that "[t]he patentee…must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" or show that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature."[172] The Federal Circuit has indicated that it is not enough to show the patented element is "viewed as valuable, important, or even essential" to the use of the accused products.[173] Rather, the courts have indicated that the Plaintiff must put forth an analysis of demand, market studies and/or consumer surveys to prove that demand for the accused product is driven by the patented technology.[174]

112. Mr. Martinez has not conducted any economic analysis that indicates that the patent-in-suit drives demand for uCloudlink's entire Accused Products and Data Services. As discussed in *Georgia-Pacific* factor 13, numerous unpatented elements contribute to uCloudlink's sales of the Accused Products and Data Services. uCloudlink's Accused Products and Data Services incorporate numerous components and practice multiple industry standards that are not covered by the patent-in-suit. uCloudlink also undertook significant investments and business risks which contributed to its sales and profits. For example, uCloudlink's established sales and distribution network, the GlocalMe brand, uCloudlink's customer service, and uCloudlink's own intellectual property contributed to its sales and profits.

---

[171] *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 67, 70 (Fed. Cir. 2012 ); *Unlioc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1318-21 (Fed Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1336-38 (Fed. Cir. 2009); *Rembrandt Social Media, LP v. Facebook, Inc*., 2013 WL 6327857, at *5 (E.D. Va Dec. 3, 2013).
[172] *Uniloc USA v. Microsoft*, United States Court of Appeals for the Federal Circuit, Case No. 03-cv-0440, Decided January 4, 2011, p. 48.
[173] *LaserDynamics, Inc. v. Quanta Computer, Inc., et al.* (Federal Circuit, August 30, 2012), p. 25.
[174] For example, see *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 288 (N.D.N.Y. 2009); *LaserDynamics, Inc. v. Quanta Computer, Inc., et al.* (Federal Circuit, August 30, 2012), p. 27.

113. Although Mr. Martinez did not identify the SSPPU, his royalty rate ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ sold in the United States. Even if Mr. Martinez had identified the SSPPU, further apportionment is required "if the smallest salable unit is still a multi-component product encompassing non-patent related features."[175] Although Mr. Martinez did not calculate damages by multiplying a royalty rate times the entire sales price of the Accused Products and Data Services, his approach effectively implements the EMVR because he assigns all of uCloudlink's profits to the '689 patent (because it allegedly "enables the business model" of uCloudlink). In other words, Mr. Martinez effectively employs the EMVR despite not demonstrating that the requirements of the EMVR have been met.

114. uCloudlink would not be willing to pay an uneconomic royalty for the '689 patent when the Accused Products and Data Services incorporate numerous components, technologies and elements unrelated to the patent-in-suit that contribute to sales and profits.

    F.  **Mr. Martinez's Use of Skyroam Proposals in *Georgia-Pacific* Factor 1 is Unreliable and Speculative**

115. Mr. Martinez has not demonstrated that the rates included in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are comparable or instructive for a license to the patent-in-suit in the hypothetical negotiation.

116. First, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Second, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[175] *Rembrandt Social Media, LP v. Facebook, Inc.*, 2013 WL 6327857, at *5 (E.D. Va Dec. 3, 2013).
[176] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SIMO_0014359-363 at 359.