# Exhibit G

## AIPLA's Model Patent Jury Instructions

© 1997, 2005, 2008, 2012, 2015–2018 American Intellectual Property Law Association

Disclaimer

The Model Patent Jury Instructions are provided as general assistance for the litigation of patent issues. While efforts have been, and will be made, to ensure that the Model Patent Jury Instructions accurately reflect existing law, this work is not intended to replace the independent research necessary for formulating jury instructions that are best suited to particular facts and legal issues. AIPLA does not represent that the information contained in the Model Patent Jury Instructions is accurate, complete, or current. The work could contain typographical errors or technical inaccuracies, and AIPLA reserves the right to add, change, or delete its contents or any part thereof without notice.

## <u>Table of Contents</u>

I.      Introduction ........................................................................................... 1

II.     Preliminary Jury Instructions ............................................................... 2

        A.      The Nature of the Action and the Parties ................................. 2

                i.      United States Patents ..................................................... 2

                ii.     Patent Litigation ............................................................ 3

        B.      Contentions of the Parties ......................................................... 4

        C.      Trial Procedure .......................................................................... 5

III.    Glossary of Patent Terms ..................................................................... 6

IV.     Glossary of Technical Terms ............................................................... 7

V.      Post-Trial Instructions ......................................................................... 8

        1.      Summary of Patent Issues ......................................................... 8

        2.      Claim Construction .................................................................... 8

                2.0     Claim Construction—Generally ....................................8

                2.1     Claim Construction for the Case ...................................8

                2.2     Construction of Means-Plus-Function Claims for the Case .......................9

        3.      Infringement .............................................................................. 9

                3.0     Infringement—Generally ...............................................9

                3.1     Direct Infringement—Knowledge of the Patent and Intent to Infringe
                        Are Immaterial .............................................................10

                3.2     Direct Infringement—Literal Infringement ................11

                3.3     Direct Infringement—Joint Infringement ....................11

                3.4     Literal Infringement of Means-Plus-Function or Step-Plus-Function
                        Claims ...........................................................................12

                3.5     Infringement of Dependent Claims ..............................13

3.6     Infringement of "Comprising of," "Consisting of," and "Consisting Essentially of" Claims...............................................................................14

3.7     Direct Infringement—Infringement under the Doctrine of Equivalents....15

        3.7.1   Limitations on the Doctrine of Equivalents—Prosecution History Estoppel........................................................................... 16

        3.7.2   Limitations on the Doctrine of Equivalents—Subject Matter Dedicated to the Public ................................................... 16

3.8     Actively Inducing Patent Infringement.......................................................17

3.9     Infringement by Supply of All or a Substantial Portion of the Components of a Patented Invention to Another Country (§ 271(f)(1)) ...18

3.10    Contributory Infringement .......................................................................18

3.11    Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention into Another Country (§ 271(f)(2))......19

3.12    Infringement by Import, Sale, Offer for Sale or Use of Product Made by Patented Process (§ 271(g)) .................................................................20

4.    Summary of Invalidity Defense ........................................................... 21

5.    Prior Art ............................................................................................ 21

5.0     Prior Art Defined ....................................................................................21

        5.0.1   Prior Art Defined (pre-AIA) ................................................ 21

        5.0.2   Prior Art Defined (AIA)........................................................ 22

5.1     Prior Art Considered or Not Considered by the USPTO...........................23

5.2     Invalidity of Independent and Dependent Claims ....................................23

5.3     Person of Ordinary Skill in the Art ..........................................................24

6.    Anticipation.......................................................................................... 24

6.1     Prior Public Knowledge............................................................................26

        6.1.1   Prior Public Knowledge (Pre-AIA) ...................................... 26

        6.1.2   Prior Public Knowledge (AIA) .............................................. 26

6.2     Prior Public Use .......................................................................................27

      6.2.1   Prior Public Use (Pre-AIA)..........................................................27

      6.2.2   Prior Public Use (AIA) ................................................................28

6.3   On-Sale Bar...............................................................................................29

6.4   Experimental Use......................................................................................30

6.5   Printed Publication....................................................................................30

6.6   Prior Invention (Pre-AIA Only)................................................................32

6.7   Prior Patent...............................................................................................33

      6.7.1   Prior Patent (Pre-AIA) ................................................................33

      6.7.2   Prior Patent (AIA) ......................................................................33

6.8   Prior U.S. Application................................................................................34

      6.8.1   Prior U.S. Application (Pre-AIA) ................................................34

      6.8.2   Prior U.S. Patent Document (AIA)..............................................34

7.   Obviousness ........................................................................................................ 35

7.0   Obviousness—Generally ..........................................................................35

7.1   The First Factor: Scope and Content of the Prior Art...............................36

7.2   The Second Factor: Differences Between the Claimed Invention and the Prior Art ..............................................................................................37

7.3   The Third Factor: Level of Ordinary Skill................................................39

7.4   The Fourth Factor: Other Considerations .................................................39

8.   Enablement ......................................................................................................... 40

9.   Written Description Requirement ........................................................................ 42

10.   Damages...............................................................................................................43

10.0   Damages—Generally ................................................................................43

10.1   Date Damages Begin.................................................................................44

      10.1.1  Alternate A—When the Date of the Start of the Damages Period Is Stipulated ...................................................................... 44

10.1.2 Alternate B—When the Date of the Start of the Damages Period Is Disputed ................................................................................. 44

10.2 Damages—Kinds of Damages That May Be Recovered ..........................45

10.2.1 Lost Profits.................................................................................. 45

10.2.2 Price Erosion .............................................................................. 49

10.2.3 Cost Escalation........................................................................... 50

10.2.4 Convoyed Sales.......................................................................... 50

10.2.5 Reasonable Royalty ................................................................... 50

10.3 Doubts Resolved Against Infringer ...............................................................56

10.4 Standard-Essential Patents .............................................................................56

11. Willful Infringement ....................................................................................... 56

11.0 Willful Infringement—Generally .................................................................56

11.1 Willful Infringement—Reliance on Legal Opinion ..................................57

VI. Acknowledgments................................................................................................ 58

# I.      Introduction

The 2018 Version

The Patent Litigation Committee of the American Intellectual Property Law Association is pleased to provide this update to the AIPLA Model Patent Jury Instructions ("Instructions"). This update accounts for changes to the law since the previous version of the Instructions was published in 2017. Certain portions of the Instructions are also clarified to improve readability, and ultimately, juror comprehension.

We published the first version of these Instructions in 1997, and previously published updated versions in 2005, 2008, 2012, and 2015–2017. As we have done in the past, we formed a Subcommittee to review recent case law, and update the Instructions in light of significant, precedential changes in patent law over the last year. The Subcommittee also continued its efforts to simplify the Instructions and to improve the formatting so that the electronic version of the Instructions is easier to navigate. The current revision includes case law through December 2017.

One of the fundamental goals of the Instructions is to provide a neutral set of jury instructions that would not be biased in favor of either the patent owner or the accused infringer. These Model Instructions are not intended to address every conceivable issue that might arise in patent litigation. Instead, Instructions are provided on those issues that typically arise in patent litigation and that have clear precedential support. The litigants must tailor these Instructions to the specific issues in their particular case and to eliminate superfluous or confusing instructions. It is also intended that these Instructions will be used in conjunction with other instructions dealing with issues that are not specific to patent law.

To further these goals and to enhance the litigants' ability to customize the Instructions to a particular case, these revised Instructions continue the use of bracketed terminology for certain consistent terms. This enables the litigants to use the find-and-replace feature of a word processing program to insert case-specific facts. Examples of the terms are:

| | | |
|---|---|---|
| [§ 102(a) (AIA) Cutoff Date] | [collateral products] | [subject matter] |
| [§ 102(a) (pre-AIA) Cutoff Date] | [effective filing date] | [the Defendant] |
| | [full patent number] | [the patentee] |
| [§ 102(b) (pre-AIA) Cutoff Date] | [invention date] | [the Plaintiff] |
| | [published application number] | [third party] |
| [abbreviated patent number] | [published patent application] | [U.S. filing date] |
| [allegedly infringing product] | [published patent document] | |
| [anticipating patent number] | [published document number] | |
| [claims in dispute] | | |

In addition to these "find and replace" terms, brackets were also used to indicate where various terminology could be used to customize these Instructions to a particular case. For example, to take into account the differences between product and method patents, there will be Instructions that include "[[product] [method]]" and the like. Users of these Instructions should make appropriate changes, for example replacing "system" with "product" or replacing "method" with "process."

To assist judges and counsel, "Practice Notes" are provided throughout these Instructions. The Practice Notes are not meant to be statements of law or included in the instructions but are there to provide guidance and insight based on the practical experience of judges and counsel.

The Subcommittee substantially completed these revisions in the fourth quarter of 2017. The AIPLA Board of Directors approved these Instructions for publication in July 2018.

July 2018
William J. Blonigan, Chair, and Eric K. Gill, Vice Chair
Model Patent Jury Instructions Subcommittee
Patent Litigation Committee
American Intellectual Property Law Association

## II.        Preliminary Jury Instructions

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

### A.        The Nature of the Action and the Parties

This is a patent case. The patents involved in this case relate to [subject matter] technology. [BRIEFLY DESCRIBE TECHNOLOGY INVOLVED].

During the trial, the parties will offer testimony to familiarize you with this technology. For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

[The Plaintiff] is the owner of a patent, which is identified by the Patent Office number: [full patent number] (which may be called "the [abbreviated patent number] patent"); [IDENTIFY ADDITIONAL PATENTS]. This patent may also be referred to as "[the Plaintiff]'s patent." [The Defendant] is the other party here.

### i.        United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO" or "USPTO"). A patent gives the owner the right to exclude others from making, using, offering to sell, or selling [[the claimed invention] [a product made by a process according to the claimed invention]] within the United States or importing it into the United States. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO by an applicant. The application includes a specification, which should have a written description of the invention, how it works, and how to make and use it so as to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims is to particularly point out what the applicant regards as the claimed invention and to define the scope of the patent owner's exclusive rights.

After an application for a patent is filed with the PTO, the application is reviewed by a trained PTO Patent Examiner. The Patent Examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the claimed invention. In examining a patent application, the Patent Examiner searches records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.

When the parties are done presenting evidence, I will give you more specific instructions as to what constitutes prior art in this case. Generally, prior art is previously existing technical information and knowledge against which the Patent Examiners determine whether or not the

claims in the application are patentable.[1] The Patent Examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. In addition, the Patent Examiner may consider whether the claims are directed to subject matter that is not eligible for patenting, such as natural phenomena, laws of nature, and abstract ideas. The Patent Examiner also may consider whether the claims are not indefinite and are adequately enabled and described by the application's specification.

Following the prior art search and examination of the application, the Patent Examiner advises the applicant in writing what the Patent Examiner has found and whether any claim is patentable (in other words, "allowed"). This writing from the Patent Examiner is called an "Office Action." More often than not, the initial Office Action by the Patent Examiner rejects the claims. The applicant then responds to the Office Action and sometimes cancels or changes the claims or submits new claims or makes arguments against a rejection. This process may go back and forth between the Patent Examiner and the applicant for several months or even years until the Patent Examiner is satisfied that the application and claims are patentable. Upon payment of an issue fee by the applicant, the PTO then "issues" or "grants" a patent with the allowed claims.

The collection of papers generated by the Patent Examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

In this case, it is ultimately for you to decide, based on my instructions to you, whether [the Defendant] has shown that the patent claims are invalid.

### ii.     Patent Litigation

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell [[the claimed invention] [a product made by a claimed process]], as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid. A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. If a party challenges the validity of the patent, you must decide, based on the instructions I will give you, whether the challenger has overcome the presumption of validity with proof that the asserted claims of the patent are invalid. The party challenging validity must prove invalidity by clear and convincing evidence. I will discuss more of this topic later.

---

[1] If the litigation involves a patent governed by the America Invent Act (AIA), prior art is art that was effectively filed or published before the filing of the application or patent.

I will now briefly explain the parties' basic contentions in more detail.

## B.     Contentions of the Parties

[The Plaintiff] contends that [the Defendant] imports, makes, uses, offers to sell, or sells a [[product] [method]] that infringes [claim(s) in dispute] of the [abbreviated patent number] patent. [The Plaintiff] must prove that [the Defendant] infringes one or more claims of the [abbreviated patent number] patent by a preponderance of the evidence. That means that [the Plaintiff] must show that it is more likely that [the Defendant]'s [allegedly infringing product] infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed.[2] First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents." To determine infringement, you must compare the accused [[product] [method]] with each claim from the [abbreviated patent number] that [the Plaintiff] asserts is infringed. It will be my job to tell you what the language of the patent claims means. You must follow my instructions as to the meaning of the patent claims. You are not to define the patent claims yourselves.

A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] in that patent claim. If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] in that claim, [the Defendant] does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

A patent claim is infringed under the doctrine of equivalents only if there is an equivalent [[component] [part] [method step]] in [the Defendant]'s [[product] [method]] for each [[element] [method step]] of the patent claim that is not literally present in [the Defendant]'s [[product] [method]]. In other words, [the Plaintiff] must prove that it is more likely than not that [the Defendant]'s [[product] [method]] contains the equivalent of each element of the claimed invention that is not literally present in the [allegedly infringing product]. An equivalent of an element is a [[component] [action]] that is only insubstantially different from the claimed element. One way of showing that an element is only insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused [[product] [method]].

[The Defendant] denies that it is infringing the claims of the [abbreviated patent number] patent and contends that the [abbreviated patent number] patent is invalid [and/or unenforceable].[3] [INSERT BRIEF DESCRIPTION OF THE PARTICULAR INVALIDITY AND UNENFORCEABILITY DEFENSES BEING ASSERTED].

---

[2] This section and below should be modified in accordance with the patent owner's infringement contentions, *e.g.*, where the doctrine of equivalents is not at issue.

[3] This section and below should be modified in accordance with the Defendant's defenses*, e.g.*, where the Defendant has opted to not allege non-infringement or invalidity.

Invalidity of the asserted patent claim(s) is a defense to infringement. Therefore, even though the Patent Examiner has allowed the claims of the [abbreviated patent number] patent, you, the jury, must decide whether each claim of the [abbreviated patent number] patent that is challenged by [Defendant] is invalid. [The Defendant] must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity. Clear and convincing evidence means that it is highly probable that the fact is true. This standard is different from the standard that applies to other issues in this case. I have instructed you that other issues, such as infringement, may be found under a lower standard, namely, by a preponderance of the evidence. You may think of this "preponderance of the evidence" as slightly greater than 50%. This is different from the criminal law standard of "beyond a reasonable doubt." You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt. The "clear and convincing" standard is between the two.

## C.    Trial Procedure

We are about to commence the opening statements in the case. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors.

We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations. You must make your decision based on the evidence and not the lawyers' statements and arguments.

In the third phase, the evidence will be presented to you. Witnesses will take the witness stand and documents will be offered and admitted into evidence. [The Plaintiff] goes first in calling witnesses to the witness stand. These witnesses will be questioned by [the Plaintiff]'s counsel in what is called direct examination. After the direct examination of a witness is completed, [the Defendant] has an opportunity to cross-examine the witness. After [the Plaintiff] has presented its witnesses, [the Defendant] will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony. All three are acceptable forms of testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all the evidence relating to an issue may not be presented all at one time but, rather, may be presented at different times during the trial. You need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

In the fourth phase, the lawyers will again have an opportunity to talk to you in what is called "closing arguments." As with the opening statements, what the lawyers say in the closing arguments is not evidence for you to consider in your deliberations.

In the fifth phase, I will read you the final jury instructions. I will instruct you on the law that you must apply in this case. I have already explained to you a little bit about the law. In the fifth phase, I will explain the law to you in more detail.

Finally, the sixth phase is the time for you to deliberate and reach a verdict. You will evaluate the evidence, discuss the evidence among yourselves, and decide in this case. We both have a job to do. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language, even if you do not agree with me. Nothing I say or do during the trial is intended to indicate what your verdict should be.

## III.     Glossary of Patent Terms

**Application**—The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "USPTO" or "PTO").

**Claims**—The numbered sentences or paragraphs appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

[[**Cutoff Date (**pre-AIA)**—**The date of invention for pre-AIA §§ 102(a), (e) and (g); the date one year before the earliest effectively claimed priority date for pre-AIA § 102(b); or the date one year before the filing of the application for pre-AIA § 102(d).]

[**Cutoff Date (**AIA)**—**The effective filing date of a claimed invention.]]

> **Practice Note:** To accommodate the changes made by the AIA, the model instructions refer to the Cutoff Date for each claimed invention. Under pre-AIA law, the Cutoff Date can vary both by claim and by which subsection of pre-AIA § 102 is being considered. For example, the Cutoff Date is the date of invention for pre-AIA § 102(a), but it is the date one year prior to the earliest effectively claimed priority date for pre-AIA § 102(b). The AIA expressly defined both "effective filing date" and "claimed invention" in AIA § 100(i) and 100(j), respectively. Under the AIA, the Cutoff Date is the effective filing date of a claimed invention. Thus, depending on whether pre-AIA or AIA law applies to each patent claim at issue, the Cutoff Date for different claims in a single patent may be different from one another. If different claims in a patent are asserted to have different Cutoff Dates, and those Cutoff Dates are disputed, the jury may need instructions on determining the Cutoff Date(s) of each patent claim. If there are different Cutoff Dates among the asserted claims of a single patent, then the jury may also need to be instructed on the differences in the pool of available prior art.

**File wrapper**—See "prosecution history" below.

**License**—Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office Action**—Communication from the Patent Examiner regarding the patent application.

[[**Ordinary skill in the art** (pre-AIA)—The level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.]

[**Ordinary skill in the art** (AIA) —The level of experience, education, or training generally possessed by those individuals who work in the area of the invention before the effective filing date of the patent.]]

**Patent Examiners**—Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims are eligible for patenting, (2) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (3) whether the specification/application describes the invention with the required specificity.

[[**Prior art** (pre-AIA)—Knowledge that is available to the interested public either prior to the invention by the applicant or more than one year prior to the filing date of the application.]

[**Prior Art** (AIA)—Knowledge that is publicly available before the effective filing date of the patent application.]]

**Prosecution History**—The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during this trial.

**References**—Any item of prior art used to determine patentability.

**Specification**—The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it.

[Others to be agreed upon between the parties; some of these definitions may not be pertinent or relevant in a given case.]

## IV.      Glossary of Technical Terms

[To be agreed upon between the parties]

# V.        Post-Trial Instructions[4]

## 1.        Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following [three] main issues:

1.        Whether [the Plaintiff] has proven that [the Defendant] infringed claim(s) [claims in dispute] of the [abbreviated patent number] patent.

2.        Whether [the Defendant] has proven that claim(s) [claims in dispute] of the [abbreviated patent number] patent are invalid.

3.        What amount of damages, if any, [the Plaintiff] has proven.

[LIST ANY OTHER PATENT ISSUES]

## 2.        Claim Construction

### 2.0        Claim Construction—Generally

Before you decide whether [the Defendant] has infringed the claims of [the Plaintiff]'s patent or whether [the Plaintiff]'s patent is invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are [claims in dispute], beginning at column ___, line ___ of the patent, which is Exhibit ___ in evidence. The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

35 U.S.C. § 112; *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1075 (Fed. Cir. 2009); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1373 (Fed. Cir. 2008); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Amazon. com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).

### 2.1        Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether

---

[4] AIPLA drafted these Model Jury Instructions assuming the litigated issues included in the Instructions will be submitted to the jury. AIPLA is not suggesting that the parties have a right to a jury trial on all issues included in the Instructions.

any claim has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

[READ STIPULATIONS AND COURT'S CLAIM CONSTRUCTIONS]

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) *(*en banc*); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996).

## 2.2    Construction of Means-Plus-Function Claims for the Case[5]

The patentee may express an element for a claim in the form of a "means" or "step" for performing a function.

The asserted claims of the [abbreviated patent number] patent include the following clause: "_____." I have determined, as a matter of law, that this is a means-plus-function element, as described in the section of the statute I read to you. This clause requires special interpretation. This element does not cover all [[means] [steps]] that perform the recited function of "_____." Rather, I have determined that the recited function is "_____." I have determined that [[structure] [step]] described in the patent specification and drawings that perform this recited function is "_____," or an equivalent of this [[structure] or [step]]. You must use this interpretation of the means-plus-function [[element] [step]] in your deliberations regarding infringement and validity, as further discussed below.

35 U.S.C. § 112; *Chicago Bd. of Options Exchange, Inc. v. Int'l Secs. Exchange, LLC*, 677 F.3d 1361, 1366-69 (Fed. Cir. 2012); *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1295-96 (Fed. Cir. 2012); *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330-32 (Fed. Cir. 2005); *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed. Cir. 1993); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

## 3.    Infringement

### 3.0    Infringement—Generally

Questions _____ through _____ of the Verdict Form read as follows: [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

---

[5] Give Instruction 2.2 only if the case involves means-plus-function claims. In Instruction 2.1, the court provides its construction of any terms for which a construction is needed. This should include its construction of any limitations governed by 35 U.S.C. § 112 ¶ 6, or § 112(f). Where the limitation uses the phrase "means for" or "step for," a jury may nonetheless incorrectly conclude that the limitation includes any component or any step that accomplishes the specified function. To avoid confusing the jury, we recommend use of Instruction 2.2. Where the limitation is governed by 35 U.S.C. § 112 ¶ 6, or § 112(f), but does not use the phrase "means for" or "step for," consideration should be given to whether Instruction 2.2 is unnecessary.

I will now instruct you as to the rules you must follow when deciding whether [the Plaintiff] has proven that [the Defendant] infringed any of the claims of the [abbreviated patent number] patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling [[the claimed invention] [a product made by a method claimed in the patent]] within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, [the Plaintiff] alleges that [the Defendant]'s [allegedly infringing product] infringes claim(s) [claims in dispute] of [the Plaintiff]'s [abbreviated patent number] patent.

You have heard evidence about both [the Plaintiff]'s commercial [[product] [method]] and [the Defendant]'s accused [[product] [method]]. However, in deciding the issue of infringement you may not compare [the Defendant]'s accused [[product] [method]] to [the Plaintiff]'s commercial [[product] [method]]. Rather, you must compare the [Defendant]'s accused [[product] [method]] to the claims of the [abbreviated patent number] patent when making your decision regarding infringement.

> **Practice Note:** To avoid jury confusion, it is important to distinguish those claims that are allegedly infringed directly from those that are allegedly infringed indirectly. In addition, it is important to distinguish those claims that are allegedly infringed literally from those allegedly infringed under the doctrine of equivalents. Finally, for indirect infringement, induced infringement should be distinguished from contributory infringement.

A claim of a patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused [[product] [method]] is covered by at least one claim of the patent. Indirect infringement results if the defendant induces another to infringe a claim of a patent or contributes to the infringement of a claim of a patent by another.

35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111 (2014); *Merial Ltd. v. CIPLA Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

### 3.1    Direct Infringement—Knowledge of the Patent and Intent to Infringe Are Immaterial

In this case, [the Plaintiff] asserts that [the Defendant] has directly infringed the patent. [The Defendant] is liable for directly infringing [the Plaintiff]'s patent if you find that [the Plaintiff] has proven that it is more likely than not that [the Defendant] made, used, imported, offered to sell, or sold the invention defined in at least one claim of [the Plaintiff]'s patent.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

35 U.S.C. § 271(a); *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920 (2015); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S. Ct. 2060, 2065 n.2 (2011); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

### 3.2    Direct Infringement—Literal Infringement

To determine literal infringement, you must compare the accused [[product] [method]] with each patent claim [the Plaintiff] asserts is infringed, using my instructions as to the meaning of the terms the patent claims use.

A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] recited in that patent claim. If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] recited in a claim, [the Defendant] does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

The accused [[product] [method]] should be compared to the invention described in each patent claim it is alleged to infringe. The same [[element] [method step]] of the accused [[product] [method]] may satisfy more than one element of a patent claim.

*Limelight Networks, Inc. v. Akamai Techs., Inc.,* ___ U.S. ___, 134 S. Ct. 2111, 2117 (2014); *Intellectual Sci. & Tech. v. Sony Elect.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc*., 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc*., 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp*., 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

### 3.3    Direct Infringement—Joint Infringement

In this case, [the Defendant] is accused of direct infringement. [The Defendant] asserts that it has not directly infringed the [abbreviated patent number] patent because it did not perform each step of a claimed method or did not perform all the steps necessary to make, sell, offer for sale, or import [allegedly infringing product], because [another party] performed one or more of the acts necessary to infringe. If you find that [the Defendant] personally performed all acts necessary to infringe, or that the steps performed by the other party are attributable to [the Defendant], then [the Defendant] directly infringed. You may find that the steps are attributable to [the Defendant] if you find that either (a) [the Defendant] exercised direction or control over [the other party] when the other party performed these acts or (b) [the Defendant] and [the other party] formed a joint enterprise. A joint enterprise requires proof of four elements:

(1)    an agreement, express or implied, among the members of the group;

(2)    a common purpose to be carried out by the group;

(3)    a community of pecuniary interest in that purpose, among the members; and

(4)      an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

If you do not find that either (a) [the Defendant] exercised direction or control over [the other party] when it performed these acts or (b) [the Defendant] and [the other party] formed a joint enterprise, then you must find that [the Defendant] did not directly infringe.

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, ___ U.S. ___, 134 S. Ct. 2111 (2014); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc); *Eli Lilly and Co. v. Teva Parenteral Meds.*, 845 F.3d 1357, 1364-65 (Fed. Cir. 2017); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).

> **Practice Note:** The concepts of direct infringement based on joint infringement and indirect infringement based on inducement to infringe (Instruction 3.10) are closely related and may be confusing to the jury. If both Instructions are being given, consideration should be given to instructing on joint infringement and inducement to infringe (Instruction 3.10) back-to-back and in a manner that readily allows the jury to appreciate the difference between the two theories, the evidence required to support each, and the specific findings they are being asked to make on each.

### 3.4      Literal Infringement of Means-Plus-Function or Step-Plus-Function Claims

The Court has instructed you that claims _____ through _____ of the [abbreviated patent number] patent contain [[means-plus-function] [step-plus-function]] clauses. To establish infringement, [the Plaintiff] must prove that it is more likely than not that the [[part of the Defendant's product] [step in the Defendant's method]] (1) performs the recited function of "_____", and (2) is identical or equivalent to the [[structure] [step]] described in the patent specification and drawings for performing this recited function, namely, "_____."

In deciding whether [the Plaintiff] has proven that [the Defendant]'s [[product] [method]] includes structure covered by a [[means-plus-function] [step-plus-function]] requirement, you must first decide whether the [[product] [method]] has any [[structure] [step]] that performs the specific function [step] that I just described to you. If not, the claim containing that means-plus-function [or step-plus-function] requirement is not infringed.

Even if you find that [the Defendant]'s [[product] [method]] includes some [[structure] [step]] that performs this specific function, you must next decide whether the [[structure] [step ]] in [the Defendant]'s [[product] [method]] is the same as, or equivalent to, the structure recited in the specification for performing this specific function.

Whether the [[structure] [act]] of the accused product is equivalent to a [[structure] [act]] described in the patent specification is decided from the perspective of a person of ordinary skill in the art. If a person of ordinary skill in the art would consider the differences between the [[structure] [act]] found in [the Defendant]'s product and a [[structure] [act]] described in the patent specification to be insubstantial, the [[structures] [acts]] are equivalent. One way of

showing that an element is only insubstantially different is to show that it performs the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused [[structure] [act]].

Only if you find both that [the Defendant]'s [[product] [method]] has the same or equivalent claimed [[structure] [step]] for performing the specific claimed function can you find that the claim containing the [means-plus-function] or [step-plus-function] limitation is infringed. If you find that either the recited [[structure] [step]] is not performed or that the [[structure] [step]] in [the Defendant]'s product that performs this specific function is not the same and is not equivalent, you must find that the claim containing the means-plus-function limitation is not infringed.

35 U.S.C. § 112; *Williamson v. Citrix Online, LLC,* 792 F.3d 1339 (Fed. Cir. 2015) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc); *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1193 & 1195 (Fed. Cir. 1994) (en banc); *Chicago Bd. Options Exchange, Inc. v. Int'l Secs. Exchange, LLC*, 677 F.3d 1361, 1366-69 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011); *General Protecht Gp., Inc. v. Int'l Trade Comm'n.*, 619 F.3d 1303, 1312-13 (Fed. Cir. 2010); *Baran v. Med. Device Tech., Inc.*, 616 F.3d 1309, 1316-17, (Fed. Cir. 2010); *Intellectual Sci. and Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-34 (Fed. Cir. 2006); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-09 (Fed. Cir. 1998); *Kraft Foods Inc. v. Int'l Trade Comm.*, 203 F.3d 1362, 1371-73 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *A1-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1319-21 (Fed. Cir. 1999).

### 3.5    Infringement of Dependent Claims

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, [Independent Claim] is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, [Dependent Claim] is a dependent claim that refers to claim [Independent Claim]. A dependent claim includes all elements recited in the dependent claim, as well as all elements of the independent claim to which it refers.

To establish literal infringement of [Dependent Claim], [the Plaintiff] must show that it is more likely than not that [the Defendant]'s [[product] [method]] includes each and every element of [Independent Claim] and [Dependent Claim].

If you find that [Independent Claim] from which [Dependent Claim] depends is not literally infringed, then you must find that [Dependent Claim] is also not literally infringed.

*Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (citing *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 & n.10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

### 3.6    Infringement of "Comprising of," "Consisting of," and "Consisting Essentially of" Claims

(Alternative 1: "comprising") The preamble to claim ____ uses the phrase [RECITE THE PREAMBLE "_____ comprising"]. The word "comprising" means "including the following but not excluding others."

If you find that [the Defendant]'s [[product] [method]] includes all of the elements in claim ____, even if [the Defendant]'s [[product] [method]] includes additional [[components] [method steps]], you must find that [the Defendant]'s [product] [method] literally infringes claim ____.

(Alternative 2: "consisting of") The preamble to claim ____ uses the phrase [RECITE THE PREAMBLE "_____ consisting of"]. The word "consisting of" means "including the following and excluding others."

If you find that [the Defendant]'s [[product] [method]] includes all of the elements in claim ____, and that [the Defendant]'s [[product] [method]] includes additional [[components] [method steps]], you must find that [the Defendant]'s product does not literally infringe claim ____.

(Alternative 3: "consisting essentially of") The preamble to claim ____ uses the phrase [RECITE THE PREAMBLE "_____ consisting essentially of"]. The words "consisting essentially of" mean "including the following and possibly including unlisted [[components] [method steps]] that do not materially affect the invention."

If you find that [the Defendant]'s [[product] [method]] includes all of the elements in claim ____, you must find that [the Defendant]'s [[product] [method]] literally infringes claim ____, even if [the Defendant]'s [[product] [method]] includes additional [[components] [method steps]], provided the presence of these additional [[components] [method steps]] does not negate an element of claim ____ or materially affect the basic and novel properties of the invention.

*CIAS Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356 (Fed. Cir. 2007); *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004); *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

> **Practice Note:** If the claim is literally infringed, there is no need to resort to the doctrine of equivalents. Similarly, the doctrine of equivalents is available only if one or more of the claim elements is not literally met.

### 3.7    Direct Infringement—Infringement under the Doctrine of Equivalents

If you decide that [the Defendant]'s [[product] [method]] does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that [[product] [method]] infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the [[product] [method]] can infringe an asserted patent claim if it includes [[components] [method steps]] that are equivalent to those elements of the claim that are not literally present in the [[product] [method]]. If the [[product] [method]] is missing an equivalent [[component] [method step]] to even one [[component] [method step]] of the asserted patent claim, the [[product] [method]] cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the [[product] [method]] has an equivalent [[component] [method step]] to each individual claim element that is not literally present in the [[product] [method]].

An equivalent of an element is a [[component] [action]] that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused [[product] [method]].

In deciding whether any difference between a claim requirement and the [[product] [method]] is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the [[component] [method step]] with the claimed requirement. However, known interchangeability between the claim requirement and the [[component] [method step]] of the [[product] [method]] is not necessary to find infringement under the doctrine of equivalents.

[Further, the same [[component] [method step]] of the accused [[product] [method]] may satisfy more than one element of a claim.

[Further, two [[components] [method steps]] of the accused [[product] [method]] may satisfy a single claim element.

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co., v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Intendis GmbH v. Glenmark Pharmaceuticals Inc.*, 822 F.3d 1355 (Fed. Cir. May 16, 2016); *Ring & Pinion Serv., Inc. v. ARB Corp.*, 743 F.3d 831, 834 (Fed. Cir. 2014); *Johnson & Johnston Assoc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 325 (Fed. Cir. 1985); *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371-72 (Fed. Cir. 2015); *Eagle Comtronics, Inc. v. Arrow Commc'n. Labs., Inc.*, 305 F.3d 1303, 1316-17 (Fed. Cir. 2002); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1332 (Fed. Cir. 2001) (citing *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 398 (Fed. Cir. 1994)).

### 3.7.1  Limitations on the Doctrine of Equivalents—Prosecution History Estoppel

> **Practice Note**: The doctrine of prosecution history estoppel is determined by the Court. The following Instruction should be given only if the Court has determined that the doctrine of prosecution history estoppel applies as a matter of law. Specifically, this requires that the patentee made a representation or argument, or that an amendment to the claim was made for reasons related to patentability, and the presumption that the equivalent subject matter has been surrendered by the patentee has not been rebutted. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-741 (2002) (explaining the presumption, and how it can be rebutted); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc) (same).

In this case, I have determined, as a matter of law, that the doctrine of equivalents cannot be applied to <u>certain</u> elements of the asserted claims; specifically, I am instructing you that the doctrine of equivalents cannot be applied to the following elements of the asserted claims:

[LIST ELEMENTS ON A CLAIM-BY-CLAIM BASIS]

Consequently, each of the elements above must be <u>literally</u> present within [the Defendant]'s [[product] [method]] for there to be infringement of the claim. Unless you find that each of the elements of the claims is literally present in [the Defendant]'s [[product] [method]], you must find that there is no infringement.

As for the remaining elements of the asserted claims not listed above, you are permitted to find these elements with the doctrine of equivalents analysis that I instructed you on earlier.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30-34 (1997); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc).

### 3.7.2  Limitations on the Doctrine of Equivalents—Subject Matter Dedicated to the Public

In this case, I have determined, as a matter of law, that certain subject matter from the patent has been dedicated to the public, and I am instructing you that the doctrine of equivalents cannot be applied to the following elements of the asserted claims:

[LIST ELEMENTS ON A CLAIM-BY-CLAIM BASIS]

Consequently, each of the elements above must be <u>literally</u> present within [the Defendant]'s [[product] [method]] for there to be infringement of the claim. Unless you find that each of the elements of the claims is literally present in [the Defendant]'s [[product] [method]], you must find that there is no infringement.

*SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1363-64 (Fed. Cir. 2012); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378-79 (Fed. Cir. 2005); *PSC Computer Prods. v. Foxconn Int'l, Inc.*, 355 F.3d 1353 (Fed. Cir. 2004); *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326 (Fed. Cir. 2004); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002) (en banc).

### 3.8    Actively Inducing Patent Infringement

> **Practice Note:** The concepts of direct infringement based on joint infringement (Instruction 3.2) and indirect infringement based on inducement to infringe are closely related and may be confusing to the jury. If both Instructions are being given, consideration should be given to instructing on joint infringement (Instruction 3.2) and inducement to infringe back-to-back and in a manner that readily allows the jury to appreciate the difference between the two theories, the evidence required to support each, and the specific findings they are being asked to make on each.

In this case, [the Defendant] is accused of actively inducing [alleged direct infringer] to directly infringe [the Plaintiff]'s patent, either literally or under the doctrine of equivalents. To find that [the Defendant] actively induced infringement, [the Plaintiff] must prove by a preponderance of the evidence that (1) a single actor is responsible for direct infringement, namely, all of the [[components] [method steps]] of the [[product] [method]] accused of infringing the patent, and (2) [the Defendant] actively induced these acts of infringement by [alleged direct infringer].

To prove active inducement, [the Plaintiff] must establish that it is more likely than not that:

1.      [the Defendant] aided, instructed, or otherwise acted with the intent to cause acts by [alleged direct infringer] that would constitute direct infringement of the patent;

2.      [the Defendant] knew of the patent, or showed willful blindness to the existence of the patent, at that time;

3.      [the Defendant] knew, or showed willful blindness, that the actions of the [alleged direct infringer] would infringe at least one claim of the patent; and

4.      [alleged direct infringer] infringed at least one patent claim.

To find willful blindness (1) [the Defendant] must have subjectively believed that there was a high probability that a patent existed covering the accused [[product] [method]], and (2) [the Defendant] must have taken deliberate actions to avoid learning of the patent.

35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, ___ U.S. ___, 134 S. Ct. 2111 (2014); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S. Ct. 2060 (2011); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1021 (Fed. Cir. 2015) (en banc); *Takeda Pharms., USA v. West-Ward*

*Pharm. Group*, 785 F.3d 625, 630-631 (Fed. Cir. 2015); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372-1373 (Fed. Cir. 2015); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (*en banc*) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

### 3.9    Infringement by Supply of All or a Substantial Portion of the Components of a Patented Invention to Another Country (§ 271(f)(1))

[The Plaintiff] asserts that [the Defendant] infringed a claim of the [abbreviated patent number] patent by supplying [or causing to be supplied] all or a substantial portion of the components of the patented product from the United States to another country and actively inducing the assembly of those components into a product that would infringe the [abbreviated patent number] patent if they had been assembled in the United States.

To show infringement under Section 271(f)(1), [the Plaintiff] must prove that each of the following is more likely than not:

1.    the product, as it was intended to be assembled outside the United States, [[included] [would have included]] all elements of at least one of claims ____ of the [abbreviated patent number] patent;

2.    [the Defendant] supplied [or caused to be supplied] components from the United States that made up all or a substantial portion of the invention of any one of claims ____ of the [abbreviated patent number] patent; and

3.    [the Defendant] specifically intended to induce the combination of the components into a product that would infringe the [abbreviated patent number] patent if the components had been combined in the United States.

A substantial portion of components requires a quantitative, not a qualitative, assessment. The export of a single component of a multi-component invention cannot create liability under § 271(f)(1).

35 U.S.C. § 271(f)(1); *Life Techs. Corp. v. Promega Corp.*, ___ U.S. ___, 137 S. Ct. 734 (2017); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.* 576 F.3d 1348, 1359-67 (Fed. Cir. 2009); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 453-56 (2007); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

### 3.10    Contributory Infringement

[The Plaintiff] asserts that [the Defendant] has contributed to infringement by another person.

To find contributory infringement, you must find that someone other than [the Defendant] has directly infringed a claimed invention of the patent.

To establish contributory infringement, [the Plaintiff] must prove that it is more likely than not that [the Defendant] had knowledge of both the patent and direct infringement of that patent. Plaintiff must prove that each of the following is more likely than not:

1.  someone other than [the Defendant] has directly infringed a claim of the [abbreviated patent number] patent;

2.  [the Defendant] sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing method;

3.  the component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;

4.  the component or apparatus constitutes a material part of the claimed invention; and

5.  [the Defendant] knew that the component was especially made or adapted for use in an infringing [[product] [method]].

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses [[other than as a part or component of the patented product] [other than in the patented method]], and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

[The Defendant]'s knowledge that the component was especially made or adapted for use in an infringing [[product] [method]] may be shown with evidence of willful blindness where [the Defendant] consciously ignored the existence of both the patent and direct infringement of that patent. To find willful blindness (1) [the Defendant] must have subjectively believed that there was a high probability that a patent existed covering the accused [[product] [method]], and (2) [the Defendant] must have taken deliberate actions to avoid learning of the patent.

35 U.S.C. § 271(c); *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S. Ct. 1920, 1926-28 (2015); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S. Ct. 2060, 2068-70 (2011); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964); *Akamai Techs. Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1021 (Fed. Cir. 2015) (en banc); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012); *R+L Carriers, Inc. v. DriverTech LLC*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1353 (Fed. Cir. 2010); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

### 3.11    Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention into Another Country (§ 271(f)(2))

[The Plaintiff] asserts that [the Defendant] infringed a claim of the [abbreviated patent number] patent by supplying [or causing to be supplied] [[a component][components]] of a claimed invention of the [abbreviated patent number] patent from the United States into a foreign country, where the exported component[s] [[was][were]] especially made or especially adapted for use in an invention covered by the [abbreviated patent number] patent and [[has] [have]] no substantial non-infringing use[s], and where [the Defendant] knew the component[s] [[was]

[were]] especially made or adapted for use in the claimed invention and intended for the
component[s] to be combined in a way that would have infringed the [abbreviated patent
number] patent if the combination had occurred in the United States.

To show infringement under Section 271(f)(2), [the Plaintiff] must prove that each of the
following is more likely than not:

1.   [the Defendant] actually supplied the components from the United States into a
     foreign country or caused them to be supplied from the United States to a foreign
     country;

2.   [the Defendant] knew or should have known that the components were especially
     made or adapted for use in a product that infringes a claim of the [abbreviated
     patent number] patent;

3.   those components have no substantial non-infringing use; and

4.   [the Defendant] intended for the components to be combined into that product. It
     is not necessary for you to find that the components actually were combined into
     an infringing product, as long as you find that [Defendant] intended the
     components to be combined into a product that would have infringed a claim of
     the [abbreviated patent number] patent if they had been combined in the United
     States.

35 U.S.C. § 271(f)(2); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc*., 576 F.3d 1348, 1359-
67 (Fed. Cir. 2009); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 453-56 (2007); *Waymark
Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1367-69 (Fed. Cir. 2001); *Rotec Indus., Inc. v.
Mitsubishi Corp.*, 215 F.3d 1246, 1257-58 (Fed. Cir. 2000).

### 3.12   Infringement by Import, Sale, Offer for Sale or Use of Product Made by Patented Process (§ 271(g))

[Plaintiff] asserts that [Defendant] infringed a claim of the [abbreviated patent number]
patent by [[importing] [selling] [offering for sale] [using]] a product that was made by a process
covered by one or more claims of the [abbreviated patent number] patent.

To show infringement under Section 271(g), [the Plaintiff] must prove that each of the
following is more likely than not:

1.   [the Defendant] [[imported] [sold] [offered for sale] [used]] a product that was
     made by a process that includes all steps of at least one claim of the [abbreviated
     patent number] patent;

2.   the product was made between [issue date of patent] and [[expiration date of
     patent] [date of trial]]; and

3.   [the Defendant] [[imported] [sold] [offered for sale] [used]] the product between
     [issue date of patent] and [[expiration date of patent] [date of trial]].

You must decide whether the evidence presented at trial establishes that the product [[imported] [sold] [offered for sale] [used]] by the Defendant was "made by" the claimed process. However, if you find that either: (a) the product [[imported] [sold] [offered for sale] [used]] was materially changed by later processes, or (b) the product is only a trivial or non-essential part of another product, you must find that the product [[imported] [sold] [offered for sale] [used]] by the Defendant was not "made by" the claimed process.[6]

35 U.S.C. § 271(g); *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340 (Fed. Cir. 2009); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306 (Fed. Cir. 2001) (judgment vacated on other grounds); *Biotec Biologische Naturvenpackungen GmbH v. BioCorp., Inc.*, 249 F.3d 1341 (Fed. Cir. 2001); *Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568 (Fed. Cir. 1996); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996).

### 4.    Summary of Invalidity Defense

[The Defendant] contends that the asserted claim(s) of the patent[s]-in-suit are invalid. [The Defendant] must prove that it is highly probable that each asserted claim is invalid.

Claims of an issued patent may be found to be invalid. Thus, you must determine whether each of [the Plaintiff]'s claims is invalid.

[The Defendant] contends that patent claims [insert claim numbers] are invalid for the following reasons:

[Insert invalidity contentions]

I will now instruct you in more detail why [the Defendant] alleges that the asserted claim(s) of the [abbreviated patent number[s]] patent[s] [[is] [are]] invalid.

### 5.    Prior Art

#### 5.0    Prior Art Defined

##### 5.0.1    Prior Art Defined (pre-AIA)

Prior art includes any of the following items received into evidence during trial:

1.    any [[product] [method]] that was publicly known or used by others in the United States before the claimed invention was invented;

2.    any [[product] [method]] that was in public use or on sale in the United States before [Cutoff Date];

---

[6] In cases where the patentee is unable to determine the process by which the product at issue is made, and the prerequisites of 35 U.S.C. § 295 are satisfied, the presumption of Section 295 may also need to be included in this Instruction, requiring the accused infringer to rebut a presumption that the product was made by the patented process.

3.      any patents that issued before [Cutoff Date];

4.      any publications having dates of public accessibility before [Cutoff Date]; and

5.      any [[product] [method]] that was made by anyone in the United States before the date of invention where the claimed invention was not later abandoned, suppressed, or concealed.

In this case, [the Defendant] contends that the following items are prior art:

[Identify the prior art admitted into evidence by name]

35 U.S.C. § 102 (pre-AIA).

## 5.0.2   Prior Art Defined (AIA)

Prior art includes any of the following items received into evidence during trial:

1.      anything that was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public anywhere in the world before the effective filing date of claim(s) ___ of the [abbreviated patent number] patent; and

2.      anything that was described in a patent, or in an application for patent published or deemed published, in which the patent or application names another inventor and was filed before the effective filing date of claim(s) ___ of the [abbreviated patent number] patent.

Exceptions to Prior Art:

1.      A disclosure made one year or less before the effective filing date of the current claim(s) shall not be prior art to claim(s) ___ of the [abbreviated patent number] patent if:

   A.      the disclosure was made by the inventor or joint inventor named in the current patent or by another person who obtained the subject matter disclosed directly or indirectly from such inventor; or

   B.      the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or another person who obtained the subject matter disclosed directly or indirectly from such inventor.

2.      A disclosure shall not be prior art to claim(s) ___ of the [abbreviated patent number] patent if:

A.     the subject matter disclosed was obtained directly or indirectly from the inventor or joint inventor named in the [abbreviated patent number] patent;

B.     the subject matter disclosed had, before the effective filing date of claim(s) ___ of the [abbreviated patent number] patent, been publicly disclosed by the inventor or joint inventor named in the [abbreviated patent number] patent or another person who obtained the subject matter disclosed directly or indirectly from such inventor; or

C.     the subject matter disclosed and the claimed invention, not later than the effective filing date of claim(s) ___ of the [abbreviated patent number] patent, were owned by the same person or subject to an obligation of assignment to the same person.

In this case, [the Defendant] contends that the following items are prior art: [identify prior art by name].

35 U.S.C. § 102 as amended by the Leahy-Smith America Invents Act of 2011; 35 U.S.C. § 100(i) (defining effective filing date).

> **Practice Note:** The issues on which the jury is being asked to make factual findings should be identified. For example, if the parties dispute the status of a reference as prior art due to its date, public availability, or other factors, these issues should be identified to the jury in the Instructions.

## 5.1     Prior Art Considered or Not Considered by the USPTO

Regardless of whether a particular prior art reference[s] [[was] [were]] considered by the Patent Examiner during the prosecution of the application which matured into the [abbreviated patent number] patent, [the Defendant] must prove that it is highly probable that the challenged claim(s) [[is] [are]] invalid. This burden of proof on [the Defendant] never changes regardless of whether the Patent Examiner considered the reference.

*Microsoft Corp. v. i4i Ltd. P'ship.*, 131 S. Ct. 2238, 2251 (2011); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005).

## 5.2     Invalidity of Independent and Dependent Claims

There are two different types of claims in the patent. One type is called an "independent claim." The other is called a "dependent claim."

An independent claim does not refer to any other claim of the patent. For example, [Independent Claim] is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, [Dependent Claim] is a dependent claim that refers to claim [Independent Claim]. A dependent claim includes all of the elements recited in the dependent claim, as well as all of the elements of [Independent Claim] the claim to which it refers.

[IDENTIFY THE DIFFERENCES BETWEEN [Independent Claim] AND [Dependent Claim]. [Dependent Claim] requires each of the elements of [Dependent Claim], as well as all of the additional elements of [Independent Claim].

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. The dependent claim includes all of the elements of the independent claim from which it depends.

*Comaper Corp. v. Antec. Inc.*, 596 F.3d 1343, 1350 (Fed. Cir. 2010); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007).

### 5.3    Person of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the [time of the invention/effective filing date]. Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the [time of the invention / effective filing date].

35 U.S.C. § 103; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007); *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

### 6.    Anticipation

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. To prove anticipation, [the Defendant] must prove that it is highly probable that the claimed invention is not new.

In this case, [the Defendant] contends that [[some] [all of]] the claims of the [abbreviated patent number] patent are anticipated. [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANT'S INVALIDITY DEFENSE, FOR EXAMPLE: "First, [the Defendant] contends that the invention of claims 1, 2, and 3 of the ___ patent was described in the July 1983 article published by Jones in THE JOURNAL OF ENDOCRINOLOGY."]

In deciding whether the claims are new or anticipated by prior art, you are to consider the following items received into evidence during the trial which the parties agree are prior art and

the [the Defendant] contends anticipates the claimed invention: [LIST PRIOR ART STIPULATED TO BY THE PARTIES AND ALLEGED TO ANTICIPATE].

[IF PARTIES DISPUTE WHETHER AN ITEM IS PRIOR ART, USE THE FOLLOWING:] You must determine what is the prior art that may be considered in determining whether the [abbreviated patent number] patent is new or anticipated. There are different types of prior art and I will instruct you on each of the relevant types of prior art that you will need to consider.

To anticipate a claim, each element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior [[publication] [patent] [etc.]], you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular [[publication] [patent] [etc.]].

> **Practice Note:** If one or more elements of the claim are alleged by the Defendant to be inherent in a single prior art reference, the jury will need to be instructed on inherency.

**Inherency:** In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior art reference [[publication] [invention] [etc.]] but also what is inherently present or disclosed in that prior art or inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element or feature would necessarily result from what the single item of prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove that it is highly probable that the allegedly inherent element or feature necessarily is present. Evidence outside of the prior art reference itself [including experimental testing] may be used to show that elements that are not expressly disclosed in the reference are inherent in it. To be inherent, the feature that is alleged to have been inherent must necessarily have existed in the prior art reference. The fact that the feature is likely to have existed is not sufficient. It is not required, however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the prior art was first known or used. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent feature was necessarily present in the reference.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the categories of anticipation that [the Defendant] contends apply in this case. I will now instruct you about these.

*Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-78 (Fed. Cir. 2003); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347-48 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992);

*Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-69 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

## 6.1    Prior Public Knowledge

### 6.1.1    Prior Public Knowledge (Pre-AIA)

[The Defendant] contends that claim ____ of the [abbreviated patent number] patent is invalid because the invention defined in that claim was publicly known by others in the United States before [§ 102(a) (pre-AIA) Cutoff Date].

> **Practice Note:** If there is a factual issue to be resolved by the jury as to the date of invention or the priority date of the claim, the jury should be instructed here as to how they should determine the Cutoff Date.

That patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by [the patentee].

The invention defined by claim ____ of the [abbreviated patent number] patent was invented on [§ 102(a) (pre-AIA) Cutoff Date].

35 U.S.C. § 102(a) (pre-AIA); *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301, 1306 (Fed. Cir. 2002); *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1369 (Fed. Cir. 2000); *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

### 6.1.2    Prior Public Knowledge (AIA)

[The Defendant] contends that claim ____ of the [abbreviated patent number] patent is invalid because the claimed invention was available to the public before [§ 102(a) (AIA) Cutoff Date].

> **Practice Note:** If there is a factual issue to be resolved by the jury as to whether the public availability is the result of a disclosure made within one year or less of the effective filing date by the inventor or a joint inventor, or by another who obtained the subject matter disclosed directly from the inventor or a joint inventor, or is subject matter previously disclosed by the inventor or a joint inventor, or as to whether the subject matter and the claimed invention were owned by the same person or someone obligated to assign the subject matter and claimed invention to the same person, then the jury should be instructed here as to exceptions under § 102(b) and (c) as needed.

That patent claim is invalid if the claimed invention was available to the public before the effective filing date of the claimed invention.

Claim(s) ____ of the [abbreviated patent number] patent have an effective filing date of [§ 102(a) (AIA) Cutoff Date].

35 U.S.C. § 102(a)(1) (AIA).

### 6.2    Prior Public Use

#### 6.2.1   Prior Public Use (Pre-AIA)

[The Defendant] contends that claim ____ of the [abbreviated patent number] patent is invalid because the invention defined in that claim [was publicly used by others in the United States before [§ 102(a) (pre-AIA) Cutoff Date]] [was publicly used in the United States before [§ 102(b) (pre-AIA) Cutoff Date]].

The patent claim is invalid if the invention defined in that claim [was publicly used by others in the United States before it was invented by [the patentee]] [was publicly used in the United States more than one year before [the patentee] filed his patent application on [U.S. filing date]].

> **Practice Note:** If there is a factual issue to be resolved by the jury as to the date of invention of the patent claims in suit or the priority date of the claim, the jury should be instructed here as to how they should determine the Cutoff Date.

[The invention defined by claim ____ of the [abbreviated patent number] patent was invented on [invention date]. [The patentee] filed his patent application on [U.S. filing date].]

That invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. The invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

35 U.S.C. § 102(a), (b) (pre-AIA); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325-27 (Fed. Cir. 2009); *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1319, (Fed. Cir. 1999); *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342,

1347 (Fed. Cir. 1999); *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 390-91 (Fed. Cir. 1984); *TP Lab., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965, 970-72 (Fed. Cir. 1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

### 6.2.2   Prior Public Use (AIA)

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the claimed invention was in public use anywhere in the world before [§ 102(a) (AIA) Cutoff Date].

> **Practice Note:** If there is a factual issue to be resolved by the jury as to whether the prior public use is the result of a disclosure made within one year or less of the effective filing date by the inventor or a joint inventor, or by another who obtained the subject matter disclosed directly from the inventor or a joint inventor, or is subject matter previously disclosed by the inventor or a joint inventor, or as to whether the subject matter and the claimed invention were owned by the same person or someone obligated to assign the subject matter and claimed invention to the same person, then the jury should be instructed here as to exceptions under § 102(b) and (c) as needed.

The patent claim is invalid if the claimed invention was in public use anywhere in the world before the effective filing date of the claimed invention.

Claim ___ of the [abbreviated patent number] patent has an effective filing date of [effective filing date].

An invention was in public use if the claimed invention was accessible to the public or commercially exploited anywhere in the world. Factors relevant to determining whether a use was public include the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. The invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting when it is (1) reduced to practice, or (2) when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

35 U.S.C. § 102(a)(1) (AIA).

### 6.3 On-Sale Bar

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the invention defined in that claim was on sale [[if pre-AIA:] in the United States] before [[§ 102(a) (AIA) Cutoff Date] [§ 102(b) (pre-AIA) Cutoff Date]].

> **Practice Note:** Under AIA law, if there is a factual issue to be resolved by the jury as to whether the sale is the result of a disclosure made within one year or less of the effective filing date by the inventor or a joint inventor, or by another who obtained the subject matter disclosed directly from the inventor or a joint inventor, or is subject matter previously disclosed by the inventor or a joint inventor, or as to whether the subject matter and the claimed invention were owned by the same person or someone obligated to assign the subject matter and claimed invention to the same person, then the jury should be instructed here as to exceptions under § 102(b) and (c) as needed.

That patent claim is invalid if before [[§ 102(a) (AIA) Cutoff Date] [§ 102(b) (pre-AIA) Cutoff Date]] an embodiment of the claimed invention was both (1) the subject of a commercial sale or offer for sale [[if pre-AIA only:] in the United States], and (2) ready for patenting.

A commercial offer for sale was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an offer for sale if the claimed invention was embodied in an actual product and that product was commercially sold or offered for sale. It is not required that a sale was made. The essential question is whether a product embodying the invention was commercially marketed.

The invention also must have been ready for patenting at the time of the sale or offer for sale. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person of ordinary skill in the art to practice the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

35 U.S.C. § 102(b) (pre-AIA); 35 U.S.C. § 102(a)(1) (AIA); *Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998); *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1373, 1377, 1378, 1380 (Fed. Cir. 2016) (en banc); *August Tech v. Camtek*, 655 F.3d 1278, 1288-89 (Fed. Cir. 2011); *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008); *Board of Educ. ex rel Bd. of Trustees of Fla. State Univ. v. Am. Bioscience, Inc.*, 333 F.3d 1330, 1338 (Fed. Cir. 2003) (as to conception); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352-55 (Fed. Cir. 2002); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047-54 (Fed. Cir. 2001); *Robotic Vision Sys., Inc., v. View Eng'g, Inc.*, 249 F.3d 1307, 1312 (Fed. Cir. 2001); *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045-49 (Fed. Cir. 2001; *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1319, (Fed. Cir. 1999); *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1549-50 (Fed. Cir. 1983).

### 6.4    Experimental Use

[The Plaintiff] contends that _____ should not be considered [[a prior public use of the invention] [placing the invention on sale]] because that [[use] [sale]] was experimental. The law recognizes that the inventor must be given the opportunity to develop the invention through experimentation. Certain activities are experimental if they are a legitimate effort to test claimed features of the invention or to determine if the invention will work for its intended purpose. So long as the primary purpose is experimentation, it does not matter that the public used the invention or that the inventor incidentally derived profit from it.

Only experimentation by or under the control of the inventor of the patent [or his assignee] qualifies for this exception. Experimentation by [third party], for its own purposes, does not. The experimentation must relate to the features of the claimed invention, and it must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not an experimental use.

If you find that [the Defendant] has shown that it is highly probable that there was a [[prior public use] [prior sale]], then the burden is on [the Plaintiff] to come forward with evidence showing that the purpose of the [[prior public use] [prior sale]] was experimental. If the evidence of the experimental use produced by [the Plaintiff] is strong enough that you find that [the Defendant] has not met its burden of establishing that a [[prior public use] [prior sale]] is highly probable, you may find that_____ does not constitute [[a prior public use of the invention] [placing the invention on sale]].

*City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 134-35 (1877); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1327 (Fed. Cir. 2009); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353-55 (Fed. Cir. 2002); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1071-72 (Fed. Cir. 1992); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549-51 (Fed. Cir. 1990); *U.S. Envtl. Prods. Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990); *In re Hamilton*, 882 F.2d 1576, 1580-83 (Fed. Cir. 1989); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 906 (Fed. Cir. 1988); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535-37 (Fed. Cir. 1984); *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580-81 (Fed. Cir. 1984); *In re Smith*, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

### 6.5    Printed Publication

 [The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the invention defined in that claim was described in a printed publication before [[§ 102(a) (AIA) Cutoff Date] [§ 102(a) (pre-AIA) Cutoff Date] [§ 102(b) (pre-AIA) Cutoff Date]].

That patent claim is invalid if a publication printed [[before the effective filing date] [before the date of invention by the applicant] [more than one year before the date of application in the United States]] was maintained in some tangible form, such as [[printed pages] [electronic

file] [microfilm] [photographs] [Internet publication] [photocopies]], and must have been sufficiently accessible to persons interested in the subject matter of its contents.

The claimed invention of claim ___ of the [abbreviated patent number] patent has an effective filing date of [effective filing date].

> **Practice Note:** Under pre-AIA law, if there is a factual issue to be resolved by the jury as to the date of invention of the patent claims in suit or the priority date of a claim, the jury should be instructed here as to how they should determine the Cutoff Date.

[The invention defined by claim ___ of the [abbreviated patent number] patent was invented on [invention date].]

> **Practice Note:** In the event accessibility is disputed, it is appropriate to give the following additional Instruction.

Information is publicly accessible if it was distributed or otherwise made available such that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it. It is not necessary for the printed publication to have been available to every member of the public. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should consider what would have been within the knowledge of a person of ordinary skill in the art as of [Cutoff Date], and you may consider evidence that sheds light on the knowledge such a person would have had.

35 U.S.C. § 102(a), (b) (both pre-AIA); 35 U.S.C. §§ 102(a)(1) & 102(a)(2) (both AIA); *In re NTP, Inc.*, 654 F.3d 1279, 1296-97 (Fed. Cir. 2011); *Orion IP v. Hyundai Motor Am.*, 605 F.3d 967 (Fed. Cir. 2010); *In re Lister*, 583 F.3d 1307, 1311-12 (Fed. Cir. 2009); *Kyocera Wireless Corp. v. Int'l Trade Comm.*, 545 F.3d 1340, 1350 (Fed. Cir. 2008); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir. 2008); *In re Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554-55 (Fed. Cir. 1995); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471, 1479 (Fed. Cir. 1986); *In re Hall,* 781 F.2d 897, 898-899 (Fed. Cir. 1986); *In re Donohue,* 766 F.2d 531, 533-34 (Fed. Cir. 1985); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.,* 726 F.2d 724, 727 (Fed. Cir. 1984).

### 6.6    Prior Invention (Pre-AIA Only)[7]

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the invention defined in that claim was invented by another person in the United States, [third party], before [§ 102(a) (pre-AIA) Cutoff Date].

That patent claim is invalid if the invention defined in that claim was invented by [third party] before [the patentee] invented his invention, [and that other person did not abandon, suppress, or conceal the invention].

[The Defendant] must show it is highly probable that (1) before [the patentee] invented his invention, [third party] reduced to practice a [[product] [method]] that included all of the features of claim ___ of the [abbreviated patent number] patent, or (2) [third party] was first to conceive the invention and exercised reasonable diligence in later reducing the invention to practice. In addition, [the Defendant] must show that [third party]'s [[product] [method]] was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

> **Practice Note:** This defense may be negated if the invention was abandoned, suppressed, or concealed. In the event this issue is properly asserted and there is sufficient evidentiary support to submit this issue to the jury the following additional Instructions should be given.

If the prior invention was abandoned, suppressed, or concealed, it does not anticipate the [abbreviated patent number] patent.[8]

You may find that a prior invention was abandoned, suppressed, or concealed if you find it is highly probable that (1) the prior inventor actively concealed the invention from the public, or (2) the prior inventor unreasonably delayed in making the invention publicly known. Generally, a prior invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale, or otherwise used for a commercial purpose. A period of delay does not constitute abandonment, suppression, or concealment, provided the prior inventor was engaged in reasonable efforts to bring the prior invention to market during this period.

---

[7] In cases where priority of invention is an issue to be submitted to the jury, further Instructions will be required. For example, the jury will need to consider not only the dates when the respective inventions were conceived, but also when the inventions were reduced to practice. An inventor who claims to be the first to conceive of a prior invention but was the last to reduce to practice, must show reasonable diligence from a time just before the other party entered the field until his own reduction to practice in order for the "prior invention" to anticipate the claimed invention in suit.

[8] If abandonment, suppression or concealment is at issue in the case, these terms should be defined for the jury. *See Dow Chem. Co. v. Astro-Valcour Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001); *Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761-62 (Fed. Cir. 1995).

35 U.S.C. § 102(a), (g) (pre-AIA); *Teva Pharm. Indus. v. AstraZeneca Pharms.*, 661 F.3d 1378 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Int'l Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002); *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1343 (Fed. Cir. 2001); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1361-63 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035-40 (Fed. Cir. 2001); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1436-37 (Fed. Cir. 1988); *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1444-46 (Fed. Cir. 1984).

### 6.7    Prior Patent

#### 6.7.1    Prior Patent (Pre-AIA)

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the invention defined in that claim was patented by [third party] before [§ 102(a) (pre-AIA) Cutoff Date] [§ 102(b) (pre-AIA) Cutoff Date]].

That patent claim is invalid if the invention defined in that claim was patented in the United States or a foreign country by [third party] [[before it was invented by [the patentee]] [more than one year before [the patentee] filed his U.S. patent application on [U.S. filing date]].

> **Practice Note:** If there is a factual issue to be resolved by the jury as to the date of invention of the patent claims in suit or the priority date of the claim, the jury should be instructed here as to how they should determine that date of invention. Otherwise, the Court should instruct the jury as to the Cutoff Date.

[The invention defined by claim ___ of the [abbreviated patent number] patent was invented on [invention date].]

35 U.S.C. § 102(a), (b) (both pre-AIA); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287-83 (Fed. Cir. 2000); *In re Carlson*, 983 F.2d 1032, 1035-36 (Fed. Cir. 1992).

#### 6.7.2    Prior Patent (AIA)

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the claimed invention was patented in the United States or a foreign country before [§ 102(a) (AIA) Cutoff Date].

That patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country before the effective filing date of the claimed invention.

> **Practice Note:** If there is a factual issue to be resolved by the jury as to whether disclosure appearing in a patent is the result of a disclosure made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor, or whether the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or

> indirectly from the inventor or a joint inventor, then the jury should be instructed
> here as to exceptions under § 102(b)(1), as needed.

The claimed invention of claim ___ of the [abbreviated patent number] patent has an effective filing date of [effective filing date].

35 U.S.C. §§ 102(a)(1) and (b)(1) (AIA).

## 6.8    Prior U.S. Application

### 6.8.1    Prior U.S. Application (Pre-AIA)

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the invention defined in that claim was described in U.S. [[published patent application] [patent]] [[published application number] [anticipating patent number]], and because [[the published patent application [published application number]] [application for the [anticipating patent number] patent] was filed before [§ 102(a) (AIA) Cutoff Date].

That patent claim is invalid if the invention defined by that claim was described in a [[published U.S. patent application or an international PCT patent application that was published in English] [U.S. patent]] filed by another person before that invention was invented by [the patentee].

> **Practice Note:** If there is a factual issue to be resolved by the jury as to the date of invention of the patent claims in suit, the jury should be instructed here as to how they should determine that date of invention. Otherwise, the Court should instruct the jury as the date of invention.

[The invention defined by claim ___ of the [abbreviated patent number] patent was invented on [invention date].]

35 U.S.C. §§ 102(e)(1) and (2) (pre-AIA); *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 983-84 (Fed. Cir. 1989) (*overruled on other grounds*); *In re Wertheim*, 646 F.2d 527, 536-37 (C.C.P.A. 1981).

### 6.8.2    Prior U.S. Patent Document (AIA)

[The Defendant] contends that claim ___ of the [abbreviated patent number] patent is invalid because the claimed invention was described in [published patent document] [published document number] by another inventor or different inventors that was effectively filed before [§ 102(a) (AIA) Cutoff Date] and deemed published in the United States.

That patent claim is invalid if the invention defined by that claim was described in a published U.S. patent application [or in a published international PCT patent application that designates the U.S.] before the effective filing date of the claimed invention.

> **Practice Note:** If there is a factual issue to be resolved by the jury as to whether
> disclosure appearing in a patent application was subject matter obtained directly

or indirectly from the inventor or a joint inventor, publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor before such subject matter was effectively filed, or was owned by the same person or subject to an obligation of assignment to the same person as the subject matter disclosed at least by the effective filing date of the claimed invention, then the jury should be instructed here as to exceptions under §§ 102(b)(2) and (c), as needed.

The claimed invention of claim ___ of the [abbreviated patent number] patent has an effective filing date of [effective filing date].

The published patent application [published application number] was effectively filed on [insert date as determined according to 35 U.S.C. § 102(d) (AIA)].

35 U.S.C. §§ 102(a)(2), (b)(2), (c), & (d) (AIA); 35 U.S.C. § 374.

### 7.    Obviousness

**Practice Note:** Obviousness is a mixed question of fact and law. Failing to move for judgment as a matter of law may waive the issue of obviousness on an appeal. Careful consideration should be given to the Court's and the jury's respective roles in determining this issue and the jury should be instructed accordingly.

### 7.0    Obviousness—Generally

[The Defendant] contends that claim(s) [number(s)] of the [abbreviated patent number] patent [[is] [are]] invalid because the claimed invention [[is] [are]] "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of the cutoff date. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of the Cutoff Date.

The following factors must be evaluated to determine whether [the Defendant] has established that the claimed invention is obvious:

1.    the scope and content of the prior art relied upon by [the Defendant];

2.    the differences, if any, between each claimed invention of the [abbreviated patent number] patent that [the Defendant] contends is obvious and the prior art;

3.    the level of ordinary skill in the art as of the Cutoff Date; and

4.      additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

[The Defendant] must prove by clear and convincing evidence that the invention would have been obvious. Again, you must undertake this analysis separately for each claim that [the Defendant] contends is obvious.

I will now explain each of the four factors in more detail.

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251-52 (2011); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764-784 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co*., 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

### 7.1      The First Factor: Scope and Content of the Prior Art

In deciding obviousness, the prior art includes the following items received into evidence during the trial:

[LIST PRIOR ART STIPULATED TO BY THE PARTIES TO BE APPLIED TO AN OBVIOUSNESS DEFENSE].

[IF PARTIES DISPUTE WHETHER PRIOR ART MAY BE USED IN AN OBVIOUSNESS ANALYSIS, USE THE FOLLOWING]. A prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent. A prior art reference may also be considered if it discloses information that has obvious uses beyond its main purpose and if a person of ordinary skill in the art would reasonably examine that reference when trying to solve any problem or need addressed by the patent.

> **Practice Note:** "If the PTO did not have all material facts before it, . . . the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain." *Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2251 (2011). It may also be appropriate to instruct the jury here "to evaluate whether the evidence before it is materially new [as opposed to previously considered during examination by the PTO], and if so, to consider that fact when determining whether an invalidity defense has been proven by clear and convincing evidence." *Id.* On this point, the Supreme Court has stated that "a jury instruction on the effect of new evidence can, and when requested, most often should be given." *Id.* Alternatively, this Instruction may be inserted in a separate Instruction on the consideration of "prior art." *See* Sec. 5.1.

*Cir. Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251-52 (2011); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979).

### 7.2    The Second Factor: Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art as of the Cutoff Date. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the claimed invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the teachings in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this

evidence would make it more likely that the claimed invention was obvious. Similarly, you may consider the possibility that a reference teaches away from the claimed invention. A reference teaches away from the invention when it would have discouraged a person of ordinary skill in the art as of the Cutoff Date from practicing the claimed invention, or when such a person would be led in a different direction than practicing the claimed invention.

You must undertake this analysis separately for each claim that [the Defendant] contends is obvious.

> **Practice Note:** If the Defendant alleges one or more elements of the claim are inherent in a single prior art reference, the jury will need to be instructed on inherency. Care should be taken to tailor this Instruction to the evidence admitted in the case. It should be given only if the issue is properly raised by Defendant and adequately supported by the evidence.

[In comparing the scope and content of each prior art reference to a patent claim, you may find that inherency may supply a claim element that is otherwise missing from the explicit disclosure of a prior art reference. The inherent presence of an element so found by you may be used in your evaluation of whether the claimed invention would have been obvious in view of the prior art. But, to rely on inherency to establish the existence of a claim element in the prior art in an obviousness analysis, that element necessarily must be present in, or the natural result of, the combination of elements explicitly disclosed by the prior art. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from an explicit disclosure is not sufficient to find inherency. However, if the disclosure is sufficient to show that the natural result flowing from the explicit disclosure *would* result in the claim element in question, inherency may be found. Something inherent from the explicit disclosure of the prior art must be limited when applied in an obviousness analysis and used only when the inherent element is the natural result of the combination of prior art elements explicitly disclosed. An important consideration when determining whether a reference inherently discloses a previously unknown property of something is whether that property is unexpected. Although all properties of something are inherently part of that thing, if a property is found to be unexpectedly present, then the property may be nonobvious.]

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-22 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *PAR Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir. 2014); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068-69 (Fed. Cir. 2012); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007); *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983). Inherency: *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194-1196 (Fed. Cir. 2014); *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d, 1362 (Fed. Cir. 2012); *In re Kubin*, 561 F.3d 1351, 1357 (Fed. Cir. 2009.

### 7.3    The Third Factor: Level of Ordinary Skill

To determine the obviousness of the invention, you must determine the level of ordinary skill in the field of the invention [at the time of the Cutoff Date]. Regardless of whether you decide to articulate in your verdict what you believe was the level of ordinary skill in the field of the invention, you must consider and assess this factor before reaching your conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

[IF THE PARTIES HAVE AGREED TO THE LEVEL OF ORDINARY SKILL IN THE ART, THEN THE INSTRUCTION SHOULD INCLUDE: "[Plaintiff] and [the Defendant] contend that the level of ordinary skill in the art is [insert proposal]]."

[IF THE PARTIES HAVE NOT AGREED TO THE LEVEL OF ORDINARY SKILL IN THE ART, THEN THE INSTRUCTION SHOULD CONTINUE AS FOLLOWS:]

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.    the level of education and experience of persons actively working in the field as of the [Cutoff Date], including the inventor(s);

2.    the types of problems encountered in the art as of the [Cutoff Date]; and

3.    the sophistication of the technology in the art as of the [Cutoff Date], including the rapidity with which innovations were made in the art as of the Cutoff Date.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420-22 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

### 7.4    The Fourth Factor: Other Considerations

Before deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. Certain of these factors include:

> **Practice Note**: Careful consideration should be given to the Court's role in determining the admissibility of evidence of secondary considerations. In addition, the materiality of the evidence depends on the existence of a nexus between the consideration and the invention as opposed to other factors. Only if the Court determines that there is a sufficient nexus that a consideration is admissible should the jury be instructed on it.

[PROVIDE ONLY THOSE INSTRUCTIONS THAT ARE APPROPRIATE.]

1.      Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.      Was there long-felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.      Did others try, but fail, to solve the problem solved by the claimed invention?

4.      Did others copy the claimed invention?

5.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.      Did others in the field, or [the Defendant] praise the claimed invention or express surprise at the making of the claimed invention?

7.      Did others accept licenses under [abbreviated patent number] patent because of the merits of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether [the Defendant] has proven that the claimed invention would have been obvious.

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 U.S. 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

**8.      Enablement**

> **Practice Note**: Enablement is a question of law for the Court. The jury should be instructed on subsidiary fact issues only if, and only to the extent that, there is a specific issue of fact that the jury must decide that bears on the issue of enablement. If not, this Instruction should not be given.

[The Defendant] contends that claim(s) ____ of the [abbreviated patent number] patent [[is] [are]] invalid for lack of enablement. [The Defendant] bears the burden of establishing that it is highly probable that the specification lacks enablement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention, as of the effective filing date of the claimed invention, to make and

use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill to practice the claimed invention does not mean that a patent does not meet the enablement requirement. Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.   the quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques. The question of undue experimentation is a matter of degree. Even extensive experimentation does not necessarily make the experiments unduly extensive where the experiments are routine, such as repetition of known or commonly used techniques. But permissible experimentation is not without bounds.[9]

2.   the amount of direction or guidance disclosed in the patent;

3.   the presence or absence of working examples in the patent;

4.   the nature of the invention;

5.   the state of the prior art;

6.   the relative skill of those in the art;

7.   the predictability of the art; and

8.   the breadth of the claims.

35 U.S.C. § 112; *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015); *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1346-49 (Fed. Cir. 2014); *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014); *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368-69 (Fed. Cir. 2014); *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1288-89 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305-07 (Fed. Cir. 2010); *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 939-43 (Fed. Cir. 2010); *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1377-79 (Fed. Cir. 2009); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999-1002 (Fed. Cir. 2008); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Durel*

---

[9] *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1338 (Fed. Cir. 2013); *see also Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360-61 (Fed. Cir. 1998).

*Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-98 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991).

### 9.     Written Description Requirement

> **Practice Note:** Written description is a question of fact. The jury should be instructed on this issue only if, and only to the extent that, specific claims are challenged for lack of written description support and there is sufficient evidentiary support for these arguments.

[The Defendant] contends that claim(s) ____ of the [abbreviated patent number] patent [[is] [are]] invalid for failure to satisfy the written description requirement. [The Defendant] bears the burden of establishing lack of written description by clear and convincing evidence.

A patent must contain a written description of the [[product] [method]] claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims themselves may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1.     the nature and scope of the patent claims;

2.     the complexity, predictability, and maturity of the technology at issue;

3.     the existing knowledge in the relevant field; and

4.     the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you find that [the Defendant] has proven by clear and convincing evidence that the [abbreviated patent number] patent does not contain a written description for the invention[s] of claims _____, then you must find that the claim(s) [[is] [are]] invalid.

35 U.S.C. § 112; *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298-1301 (Fed. Cir. 2014); *Tobinick v. Olmarker*, 753 F.3d 1220, 1225 (Fed. Cir. 2014); *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190-92 (Fed. Cir. 2014); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 670 F.3d 1171, 1188-89 (Fed. Cir. 2012), *aff'd on reh'g*, 682 F.3d 1003, 1005 (Fed. Cir. 2012); *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1284-87 (Fed. Cir. 2012); *Atl. Research Mktg. Sys. v. Troy*, 659 F.3d 1345, 1353-55 (Fed. Cir. 2011); *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361-63 (Fed. Cir. 2011); *Crown Packaging Tech. Inc. v. Ball Metal Bev. Container Corp.*, 635 F.3d 1373, 1379-80 (Fed. Cir. 2011); *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347-48 (Fed. Cir. 2011); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010) (*en banc*); *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010); *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1373-74 (Fed. Cir. 2010); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1366 (Fed. Cir. 2009); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008); *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365-67 (Fed. Cir. 2006); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed. Cir. 2006); *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922-28 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 963-64 (Fed. Cir. 2002).

### 10.    Damages

#### 10.0    Damages—Generally

If you find that the accused [[device] [method]] infringes any of the claims of the [abbreviated patent number] patent, and that those claims are not invalid, you must determine the amount of damages to be awarded [the Plaintiff] for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you should not consider damages in your deliberations.

[The Plaintiff] must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by [the Plaintiff], damages must be in an amount adequate to compensate [the Plaintiff] for the infringement. The purpose of a damage award is to put [the Plaintiff] in about the same financial position it would have been in if the infringement had not happened. But the damage award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My Instructions about damages are for your guidance only in the event you find in favor of [the Plaintiff]. You will need to address damages only if you find that one or more of the asserted claims are both not invalid and infringed.

*Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir 2004); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987).

### 10.1    Date Damages Begin

#### 10.1.1    Alternate A—When the Date of the Start of the Damages Period Is Stipulated

[The Plaintiff] and [the Defendant] agree that the date for the start of any damages calculation is [insert date].

#### 10.1.2    Alternate B—When the Date of the Start of the Damages Period Is Disputed

The date that [the Plaintiff] first notified [the Defendant] of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. [The Plaintiff] must prove that it is more likely than not that the [Defendant] was put on notice of the claim for patent infringement as of the date alleged by [the Plaintiff].

[The Plaintiff] can give notice in either of two ways. The first way is to give notice to the public in general. [The Plaintiff] can do this by marking substantially all products it sold which included the patented invention, or by including on the labeling of substantially all products the word "patent" or the abbreviation "PAT" with the number of the patent. [The Plaintiff] also may give notice by marking substantially all products with "Patent" or "Pat" and a free internet address where there is a posting that connects the product with the patent number. [Licensees of the [abbreviated patent number] patent who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.] This type of notice to the public in general starts from the date [the Plaintiff] [and its licensees] began to mark substantially all of its products that use the invention with the patent number. If [the Plaintiff] [and its licensees] did not mark substantially all of those products with the patent number, then [the Plaintiff] did not provide notice in this way.

A second way [the Plaintiff] can give notice of its patent[s] is to directly notify [the Defendant] with a specific claim that the [allegedly infringing product] infringed the [abbreviated patent number] patent. This type of notice starts from the date [the Defendant] received the notice.

If you find that [the Plaintiff], before filing this lawsuit, did not provide an effective public notice by properly marking its products to, and did not properly provide direct notice to [the Defendant] with a specific charge that the [allegedly infringing product] infringed, then [the Plaintiff] can only recover damages for infringement that occurred after it sued [the Defendant] on [lawsuit filing date].

35 U.S.C. § 287(a); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373-74 (Fed. Cir. 2010); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

### 10.2    Damages—Kinds of Damages That May Be Recovered

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "what profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can include not only the profits the patentee would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related products with those lost sales or from being forced to reduce its price for its product or other related products to compete.

Another kind of patent damages is an established royalty, namely an amount that the patentee has agreed to accept for licensing the patented invention to either the accused infringer or to other parties through a consistent licensing practice outside of litigation.

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

35 U.S.C. § 284; *Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Seymour v. McCormick*, 57 U.S. 480, 490-91 (1854); *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1333 (Fed. Cir. 2009); *Monsanto Co. v. McFarling*, 488 F.3d 973, 978 (Fed. Cir. 2007); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

### 10.2.1  Lost Profits

#### 10.2.1.1        Lost Profits—"But-For" Test

[The Plaintiff] is seeking lost profits damages in this case. To prove lost profits, [the Plaintiff] must show that, but for [the Defendant]'s infringement, [the Plaintiff] would have made additional profits through the sale of all or a portion of the sales of [the allegedly infringing products] made by [the Defendant]. Plaintiff must prove this by a preponderance of the evidence, more likely than not. Part of your job is to determine what the parties who [[purchased]/[practiced]] the allegedly infringing [[product]/[method]] from [the Defendant]

would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by [the Plaintiff], not the profits, if any, made by [the Defendant] on the allegedly infringing sales.

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1289 (Fed. Cir. 2011); *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262 (Fed. Cir. 2008); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Micro Chem. v. Lextron, Inc.*, 318 F.3d 1119, 1122-25 (Fed. Cir. 2003); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1365 (Fed. Cir. 1984); *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983).

### 10.2.1.2      Lost Profits—Panduit Factors

[The Plaintiff] has proven its lost profits if you find that [the Plaintiff] has proven each of the following factors by the more likely than not standard:

1.     the demand for the patented [[product]/[method]];

2.     absence of acceptable non-infringing substitutes;

3.     that [the Plaintiff] had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by [the Defendant]; and

4.     the amount of profit that [the Plaintiff] would have made if it were not for [the Defendant]'s infringement.

I will now explain each of these factors.

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

### 10.2.1.3        Lost Profits—Panduit Factors—Demand

The first factor asks whether there was demand for the patented [product]/[method] in the relevant market. [The Plaintiff] can prove demand for the patented [product]/[method] by showing significant sales of [the Plaintiff]'s own patented [[product]/[method]]. [The Plaintiff] also can prove demand for the patented [product]/[method] by showing significant sales of [the Defendant]'s [[product]/[method]] that are covered by one or more of the asserted claims of the patent-in-suit. To use sales of [the Defendant]'s [[product]/[method]] as proof of this demand, however, [the Plaintiff]'s and [the Defendant]'s [[product]/[method]] must be sufficiently similar to compete against each other in the same market or market segment.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

### 10.2.1.4        Lost Profits—Panduit Factors—Acceptable Non-Infringing Substitutes

The second factor asks whether there were non-infringing, acceptable substitutes for [the Plaintiff's [[product]/[method]] that competed with [the Defendant's] infringing [product]/[method] in the marketplace and the impact of such substitutes on the marketplace absent the sale of [the Defendant]'s [[product]/[method]]. If the realities of the marketplace are that competitors other than [the Plaintiff] would likely have captured some or all of the sales made by [the Defendant], even despite a difference in the [[products]/[methods]], then [the Plaintiff] is not entitled to lost profits on those sales.

To be an acceptable substitute, the [[product]/[method]] must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they did not include all the features required by the patent. A non-infringing substitute may be one that involved the modification of the infringing [[product]/[method]] to avoid infringement or the removal of at least one feature of the invention from the [[product]/[method]]. The acceptable substitutes, in addition to being either licensed or non-infringing, must have been available during the damages period. The acceptable substitute need not have actually been sold at that time. But, if the acceptable substitute was not sold during the damages period, then [the Defendant] must show by a preponderance of the evidence that, during the damages period, a competitor or [the Defendant] had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. If you determine that some of [the Defendant]'s customers would just as likely have purchased an acceptable non-infringing substitute, then [the Plaintiff] has not shown it lost those sales but for [the Defendant]'s sales.

Even if you find that [the Plaintiff]'s and [the Defendant]'s [[products]/[methods]] were the only ones with the advantages of the patented invention, [the Plaintiff] is nonetheless required to prove to you that it, in fact, would have made [the Defendant]'s infringing sales.

*SynQor, Inc. v. Aresyn Techs., Inc.*, 709 F.3d 1365, 1383 (Fed. Cir. 2013); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, (Fed. Cir. 2008); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901-02 (Fed. Cir. 1986).

### 10.2.1.5        Lost Profits—Market Share

If you find that there were other acceptable non-infringing substitutes in the market, then [the Plaintiff] may be entitled to lost profits on a portion of [the Defendant]'s infringing sales. The burden is on [the Plaintiff] to prove that it is more likely than not that its [[product]/[method]] competed in the same market as [the Defendant]'s infringing [[product]/[method]], and that [the Plaintiff] would have made a portion of the infringing sales equal to at least [the Plaintiff]'s share of that market but for [the Defendant]'s infringement. It is not necessary for [the Plaintiff] to prove that [the Plaintiff] and [the Defendant] were the only two suppliers in the market for [the Plaintiff] to demonstrate entitlement to lost profits. The burden is on [the Plaintiff], however, to show that it is more likely than not that it would have sold that portion had [the Defendant]'s [[product]/[method]] never existed.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-78 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353-57 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

### 10.2.1.6        Lost Profits—Panduit Factors—Capacity

The third factor asks whether [the Plaintiff] had the manufacturing and marketing ability to actually make the sales it allegedly lost due to [the Defendant]'s infringement. [The Plaintiff] must prove that it could have supplied the additional [[products]/[methods]] needed to make the sales [the Plaintiff] said it lost, or that someone working with [the Plaintiff] could have supplied the additional [[products]/[methods]]. [The Plaintiff] also must prove that it more likely than not had the ability to market and sell these additional [[products]/[methods]].

*Wechsler v. Macke Int'l Trade, Inc.,* 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

### 10.2.1.7    Lost Profits—Panduit Factors—Amount of Profit—Incremental Income Approach

[The Plaintiff] may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that [the Plaintiff] would have had to pay to make the lost sales. This might include additional costs for making the products, additional sales costs, additional packaging costs, additional shipping costs, etc. Any costs that do not change when more products are made, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from the lost sales amount. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482-83 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-80 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King Instrument Corp. v. Otari*, 767 F.2d 853, 863-64 (Fed. Cir. 1985); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-55 (Fed. Cir. 1984); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 10.2.2  Price Erosion

[The Plaintiff] is entitled to recover additional damages if it can show that it is more likely than not that, but for [the Defendant]'s infringement, [the Plaintiff] [[would have been able to charge higher prices] [would not have had to lower its prices]] for its [[products]/[methods]]. If you find that [the Plaintiff] has met its burden of proof, then you may award as additional damages an amount equal to the difference between the profits that [the Plaintiff] would have made at the higher price and the profits [the Plaintiff] actually made selling its [[products]/[methods]] at the lower price that [the Plaintiff] charged. This type of damage is referred to as "price erosion damages."

If you find that [the Plaintiff] suffered price erosion damages, then you also may use the higher price that [the Plaintiff] would have charged in determining [the Plaintiff]'s lost sales and lost profits due to [the Defendant]'s infringement. However, if you calculate price erosion damages using the higher price for the patented [[product]/[method]], then you also must take into account any decrease in [the Plaintiff]'s sales that might have occurred due to the higher price for the [[products]/[methods]]. In order to award damages based on price erosion, it is not required that [the Plaintiff] knew that [the Defendant]'s competing [[product]/[method]] infringed the patent, if [the Plaintiff] reduced its price to meet [the Defendant]'s prices.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1377-80 (Fed. Cir. 2013); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378-79 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc) (applying test articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978));

*BIC Leisure, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578-79 (Fed. Cir. 1992); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 10.2.3  Cost Escalation

[The Plaintiff] can recover additional damages if it can show that it also lost profits because its costs—such as additional marketing costs—went up as a result of [the Defendant]'s infringement of [the Plaintiff]'s patent. [The Plaintiff] must prove that it was more likely than not that its costs went up because of [the Defendant]'s actions, and not for some other reason.

*Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1064-65 (Fed. Cir. 1983).

### 10.2.4  Convoyed Sales

In this case, [the Plaintiff] contends that its product is ordinarily sold along with other products, namely [collateral products]. These other products are called "collateral products." It is part of your job to determine whether [the Plaintiff] has proven that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, [the Plaintiff] must prove two things. First, [the Plaintiff] must prove that it is more likely than not that it would have sold the collateral products but for the infringement. Second, the collateral products and the [[product]/[method]] must be so closely related that they effectively act or are used together for a common purpose. Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the [[product]/[method]].

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984).

### 10.2.5  Reasonable Royalty

#### 10.2.5.1        Reasonable Royalty—Generally

If you find that [the Plaintiff] has not proven its claim for lost profits, or if you find that [the Plaintiff] has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.

The amount of damages that [the Defendant] pays [the Plaintiff] for infringing [the Plaintiff]'s patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of [the Plaintiff]'s invention.

You must award [the Plaintiff] a reasonable royalty in the amount that [the Plaintiff] has proven it could have earned on any infringing sales for which you have not already awarded lost profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to [make, use, sell, or import] a patented product.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing [[products]/[methods]] have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the [[product]/method]], and no more.

35 U.S.C. § 284; *Exmark Mfg. Co., v. Briggs & Stratton Power Group*, ___ F.3d ___, ___ (Fed. Cir. 2018); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) overruled on other grounds; Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

### 10.2.5.2        Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between [the Plaintiff] and [the Defendant]. Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

*Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

### 10.2.5.3      Reasonable Royalty—Relevant Factors If Using the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

[LIST ONLY THOSE FACTORS RELEVANT IN THE CASE AND PROPERLY SUPPORTED BY ADMITTED EVIDENCE.]

1.      Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.      The rates paid by [the Defendant] to license other patents comparable to the [abbreviated patent number] patent.

3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.      The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented [[product]/[method]] in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.      The duration of the [abbreviated patent number] patent and the term of the license.

8.      The established profitability of the product made under the [abbreviated patent number] patent; its commercial success; and its popularity.

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.      The extent to which [the Defendant] has made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such as [the Defendant]) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230-32 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

### 10.2.5.4     Reasonable Royalty— Attribution/Apportionment

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or [the Defendant]'s size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

*Exmark Mfg. Co., v. Briggs & Stratton Power Group,* ___ F.3d ___, ___ (Fed. Cir. 2018): *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1319 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013); *LaserDynamics, Inc. v. Quanta Computer, Inc. et al*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009); *Imonex Svcs. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir. 2005).

### 10.2.5.5        Reasonable Royalty—Entire Market Value Rule

A multi-component product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has close relation to the claimed invention. Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold.

The entire market value rule is a narrow exception to this general rule. In order to recover damages as a percentage of revenues or profits attributable to the entire product, [the Patentee] must establish that it is more likely than not that the patented feature drives the demand for an entire multi-component product such that it creates the basis for customer demand or 'substantially creates the value of the product.

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-29 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-37 (Fed. Cir. 2009); *Imonex Svcs. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir. 2005); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1549-51 (Fed. Cir. 1995) (en banc).

### 10.2.5.6        Reasonable Royalty—Multiple Patents

If you find that [the Defendant] infringed multiple patents, even by a single infringing act, and if you award a reasonable royalty for the infringement, then you may award separate royalties to [the Plaintiff] for each patent that was infringed. You also may consider evidence of the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1234 (Fed. Cir. 2014); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

### 10.2.5.7      Reasonable Royalty—Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

35 U.S.C. § 284; *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933); *Aqua Shield v. Inter Pool Cover Team, et al.*, 774 F.3d 766, 770-773 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25, 1333 (Fed. Cir. 2009); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002); *Interactive Pictures Corp. v. Infinite Pictures Corp.*, 274 F.3d 1371, 1384-85 (2001); Studiengesellschaft Kohle, mBH v. Dart Indus., Inc., 862 F.2d 1564, 1571 (Fed. Cir. 1988); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986).

### 10.2.5.8      Reasonable Royalty—Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a [[product]/[method]] that is licensed under the patent or that does not infringe the patent.

*Prism Techs. LLC v. Sprint Spectrum L.P.,* 849 F.3d 1360, 1376-1377 (Fed. Cir. 2017); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1313 (Fed. Cir. 2011); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996).

### 10.2.5.9      Reasonable Royalty—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent[s] in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between [the Plaintiff] and [the Defendant] in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between [the Plaintiff] and [the Defendant], in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227-28 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330-31 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.,* 757 F.3d 1286, 1325-26 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-

81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).

### 10.3   Doubts Resolved Against Infringer

Any doubts that you may have on the issue of damages due to [the Defendant]'s failure to keep proper records should be decided in favor of [the Plaintiff]. Any confusion or difficulties caused by [the Defendant]'s records also should be held against [the Defendant], not [the Plaintiff].

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 10.4   Standard-Essential Patents

> **Practice Note:** Regarding Standards-Essential Patents (SEPs), the Federal Circuit has held that although the *Georgia-Pacific* factors may provide a useful and relevant analytical framework, the jury must be instructed on the particulars of the FRAND commitment made by the patentee, on established principles of patent law, and on only those *Georgia-Pacific* factors that are relevant in the case at hand. The jury must not be instructed on any irrelevant *Georgia-Pacific* factors. The jury must also be instructed on apportionment of the value of the portion of the standard as a whole to which the patented technology relates. Finally, the jury must be instructed on apportionment of the value of the claimed invention, as opposed to the value added by standardization. *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014).

## 11.   Willful Infringement

### 11.0   Willful Infringement—Generally

If you find that it is more likely than not that [the Defendant] infringed a valid claim of [the Plaintiff]'s patent, either literally or under the doctrine of equivalents, then you must also determine whether or not [the Defendant]'s infringement was willful.

To show that [the Defendant]'s infringement was willful, [the Plaintiff] must prove by a preponderance of the evidence that [the Defendant] knew of [the Plaintiff]'s patent and intentionally infringed at least one asserted claim of the patent. For example, you may consider whether [the Defendant]'s behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith. However, you may not find that [the Defendant]'s infringement was willful merely because [the Defendant] knew about the patent, without more. In determining whether [the Plaintiff] has proven that [the Defendant]'s infringement was willful, you must consider all of the circumstances and assess [the Defendant]'s knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, No. 2013-1527 (Fed. Cir. Sept. 21, 2016); *WBIP, LLC v. Kohler Co.*, No. 2015-1038, 2016 WL 3902668, at \*15 (Fed. Cir. July 19, 2016).

### 11.1    Willful Infringement—Reliance on Legal Opinion

> **Practice Note:** The following Instruction should be modified based on whether or not the Defendant claims reliance on a legal opinion to rebut willfulness.
>
> The AIA eliminated failure to obtain an opinion of counsel as a factor in determining the existence of willful infringement. *See* 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."). Although § 298 originally applied only to AIA patents, a subsequent technical correction made § 298 applicable in all patent cases filed after January 14, 2013. *See* Pub. L. No. 112-274, § 1(a), 126 Stat. 2456 (2013).

[If the Defendant relies on a legal opinion]

The Defendant] contends that its conduct was not willful because it relied on a lawyer's opinion that [[[the Defendant]'s [[product] [method]] [did not infringe the asserted claims of the [abbreviated patent number] patent] [the asserted claims of the [abbreviated patent number] patent were [invalid] [unenforceable]]]. In considering the totality of the circumstances as to whether [the Defendant] acted willfully, you may consider as one factor whether [the Defendant] reasonably relied on a competent legal opinion.

[If the Defendant does not rely on a legal opinion]

You may not assume that merely because [the Defendant] did not obtain a lawyer's opinion, that the opinion would have been unfavorable. The absence of a lawyer's opinion is not sufficient for you to find that [the Defendant] acted willfully. Rather, the issue is whether, considering all the circumstances, [the Plaintiff] has established that [the Defendant]'s conduct was willful.

35 U.S.C. § 298; *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347-48 (Fed. Cir. 2011); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1313 (Fed. Cir. 2010); *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc).

\*        \*        \*

# VI.     Acknowledgments

The contributions of the following attorneys to the drafting and commenting on of these Model Jury Instructions are gratefully acknowledged.

The 1997 version

| | | |
|---|---|---|
| Mark Abate | Eileen M. Herlihy | Frederick G. Michaud, Jr. |
| Ken R. Adamo | Roy E. Hofer | Jeffrey D. Mills |
| Joseph Z. Allen | Michael K. Kirschner | John B. Pegram |
| Robert L. Baechtold | Steven S. Korniczky | Michael F. Petock |
| Russell J. Barron | William E. Lahey | Peter H. Priest |
| Christopher R. Benson | Bradley G. Lane | Jerrold B. Reilly |
| David J. Brezner | Robert C. Laurenson | Daniel M. Riess |
| Henry L. Brinks | Gary H. Levin | William C. Rooklidge |
| Jeffrey N. Costakos | Jeffrey I.D. Lewis | Alan J. Ross |
| John F. Delaney | Brent P. Lorimer | John M. Skenyon |
| Bradford J. Duft | Don W. Martens | Allan Sternstein |
| Donald R. Dunner | Alice O. Martin | Lawrence M. Sung |
| Richard D. Fladung | Clifton E. McCann | Jennifer A. Tegfeldt |
| Floyd A. Gibson | Gaynell C. Methvin | David C. Wright |

The 2005 version

| | | |
|---|---|---|
| Kley Achterhof | Andrew Lagatta | Mark Schuman |
| Stephanie Barbosa | Christy Lea | Steve Sheldon |
| Kelli Deasy | Kalun Lee | Sean Seymour |
| Denise DeFranco | Rashida MacMurray | John Skenyon |
| Barbara Fiacco | Steven Maslowski | Stephen Timmins |
| Katherine Fick | William McGeveran | Hema Viswanathan |
| Mareesa Frederick | George Medlock | Aaron Weiss |
| Stephanie Harris | Mary Beth Noonan | Elizabeth Wright |
| Wendell Harris | Matthew Pearson | Jeremy Younkin |

The 2007 version

| | | |
|---|---|---|
| Aaron Barlow | Kirby Lee | Mirriam Quinn |
| Dave Bennett | Gregory Lyons | Amber Rovner |
| Elaine Hermann Blais | Joshua Masur | Michael Sacksteder |
| Walter Bookhardt | Clifton McCann | John Scheibeler |
| Scott Breedlove | Tim Meece | **John Schneider (Co-Chair)** |
| Patrick Coyne | Heather Mewes | Mark Schuman |
| John Crossan | Joe Miller | Jeff Sheldon |
| Elizabeth Day | Kenneth Mitchell | John Skenyon |
| Conor Farley | John Moran | Steve Swinton |
| John Hintz | Jeff Nichols | Tim Teter |
| Scott Howard | **Scott Pivnick (Co-Chair)** | Kurt Van Thomme |

David Todd
Michael Valek

Alastair Warr
Adam Wichman

Daniel Winston
Steven Zeller

<u>The 2012 version</u>

Matthew Blackburn
Elaine Blais
Carrie Beyer
Gray Buccigross
Brian Butler
Justin Cohen
Danielle Coleman
Craig Countryman
Thomas W. Davison
David DeBruin
Evan Finkel
Glenn Forbis
Nicolas Gikkas

Aleksander Goranin
Angie Hankins
Ben Hanrahan
Ben Hodges
Lisa Kattan
William Lenz
Greg Lewis
Robert Matthews
John Moy
Paul Overhauser
Ajeet Pai
John Pinkerton
**Scott J. Pivnick (Chair)**

William Poynter
Woody Pollack
Joe Richetti
Spencer Ririe
John Skenyon
Laura Smalley
Andrew Stein
Steve Swinton
Lynn Tyler
Jennifer Vein, Smr. Assoc.
Jose Villareal
Steven Zeller

<u>The 2014 version</u>

Ken Adamo
Aden Allen
Alan Anderson
Matt Bernstein
**Felicia Boyd (Chair)**
Joshua Brady
Cheryl Burgess
Kristin L. Cleveland
Patrick J. Coyne
David De Bruin
Denise DeFranco
Larry DeMeo
Alper Ertas
Peter Forrest
Aaron Frankel
Gary Frischling
Mel Garner
Derek Gilliland
James Goggin
David Harth
Anthony Hartmann

Rudy Hofmann
Daniel Holmander
Travis Jensen
Neil Jones
James Kamp
Karen Keller
Nicholas Kim
Suzanne Konrad
Samuel Lewis
David Moore
Jeffrey Mote
Don Niles
Eric Osterberg
Paul Overhauser
Ajeet Pai
Henrik Parker
Ken Parker
Roger Parkhurst
John Pegram
Rafael A. Perez-Pineiro
Scott J. Pivnick

Connie Ramos
Russell Rigby
Spencer Ririe
Victor Rodriguez Reyes
David Ruschke
Jeffrey Sadowski
Javier Sobrado
Kim Schenk
Michael Strapp
Mark Supko
Stephen Swinton
Jamaica Szeliga
Peter Toren
Christopher Tokarczyk
Steven Trybus
Colette Verkuil
Mark Whitaker
A. Robert Weaver
Steven McMahon Zeller
RJ Zayed

<u>The 2015 version</u>

Kenneth Adamo
Jesse Adland

Aden Allen
Alan M. Anderson

Peter Ayers
William J. Blonigan

Felicia Boyd
Eric R. Chad
Kristen L. Cleveland
Tonya L. Combs
Robert Counihan
Thomas W. Davison
Aaron M. Frankel
Gary Frischling
Darlene Ghavimi
Derek Gilliland
James Goggin
Chris Granaghan
Alexander Hadjis
Monplaisir Hamilton
Jeffrey T. Han

Anthony Hartmann
Gordon K. Hill
James Kamp
Jim Lennon
Noah Lerman
Lily Lim
John Lu
Robert D. Mason
Colette Reiner Mayer
Daniel Melman
John P. Moran
Bailey Morgan, law student
Jeffrey G. Mote
**Jennifer Nall (Co-Chair)**

Don Niles
Paul Overhauser
**Ajeet Pai (Co-Chair)**
Peter Peckarsky
Mark Privratsky
Mark H. Remus
Joe Richetti
Victor Rodriguez Reyes
Jeffrey A. Sadowski
Kim Schenk
John E. Schneider
Mark M. Supko
Steven R. Trybus
Terry E. Welch

The 2016/2017 version

**Aden Allen (Co-Chair)**
Gregory F. Ahrens
Alan M. Anderson
Peter Ayers
William J. Blonigan
Felicia Boyd
Eric R. Chad
Kristen L. Cleveland
Robert Counihan
Thomas W. Davison
Aaron M. Frankel
Gary Frischling
Darlene Ghavimi
Derek Gilliland
James Goggin
Chris Granaghan

Alexander Hadjis
Monplaisir Hamilton
Jeffrey T. Han
Anthony Hartmann
Gordon K. Hill
James Kamp
Jim Lennon
Noah Lerman
Lily Lim
John Lu
Robert D. Mason
Colette Reiner Mayer
Daniel Melman
John P. Moran
Bailey Morgan, law student
Jeffrey G. Mote

Don Niles
Paul Overhauser
**Ajeet Pai (Co-Chair)**
Henrik Parker
Peter Peckarsky
Mark Privratsky
Mark H. Remus
Joe Richetti
Victor Rodriguez Reyes
Jeffrey A. Sadowski
Kim Schenk
John E. Schneider
Craig Summers
Mark M. Supko
Steven R. Trybus
Terry E. Welch

The 2018 version

**William J. Blonigan (Chair)**
Kristin L. Cleveland
Thomas W. Davison
Aaron M. Frankel
**Eric K. Gill (Vice Chair)**
Steven P. Hollman
John D. Kinton
Daniel C. Kloke
Mark G. Matuschak

Jennifer Nall (Litigation Committee Chair)
Paul Overhauser
Brad Pedersen (Member, Board of Directors)
Donika Pentcheva
Trevor J. Quist
Joseph R. Re (Officer, Board of Directors)
Jonathan M. Rotter

Jeffrey A. Sadowski
Jesse A. Salen
Kim Schenk
Ericka J. Schulz
Allen M. Sokal
William R. Trueba, Jr.
Alastair Warr
Mark L.Whitaker (Officer, Board of Directors)
Elizabeth Cowan Wright