C. t. Ex-1

SIMO v. uCloudlink, 18-cv-5427

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
SIMO HOLDINGS INC.,                              :
                                                 :
                Plaintiff,                       :            18-cv-5427 (JSR)
                                                 :
        -v-                                      :
                                                 :
HONG KONG UCLOUDLINK NETWORK                     :
TECHNOLOGY LIMITED and UCLOUDLINK                :
(AMERICA), LTD.,                                 :
                                                 :
                Defendants.                      x
---------------------------------------------------------------- 

THE COURT'S INSTRUCTIONS OF LAW TO THE JURY

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _____

SIMO v. uCloudlink, 18-cv-5427

## TABLE OF CONTENTS

### I. GENERAL INSTRUCTIONS

1.    Duty of the Court

2.    Duty of the Jury

3.    Duty of Impartiality

4.    Burden of Proof; Preponderance of the Evidence; Clear and Convincing Evidence

5.    Direct and Circumstantial Evidence

6.    Witness Credibility

7.    Specialized Testimony

### II. LIABILITY

8.    Patent Infringement

9.    Patent Invalidity; Novelty

10.   Patent Invalidity; Date of Invention

11.   Appendix; Claim Construction

### III. DAMAGES

12.   Compensatory Damages; Reasonable Royalty

13.   Willful Infringement

### IV. CONCLUDING INSTRUCTIONS

14.   Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications
      with the Court

15.   Verdict; Need for Unanimity; Duty to Consult

### V. APPENDIX OF ASSERTED CLAIMS

SIMO v. uCloudlink, 18-cv-5427

## I. GENERAL INSTRUCTIONS

### INSTRUCTION NO. 1

#### Duty of the Court

We are now approaching the most important part of this case, your deliberations. You have heard all the evidence in the case, as well as the final arguments of the lawyers for the parties. Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your deliberations. These are the final and binding instructions, which entirely replace the preliminary instructions I gave you earlier.

Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you. Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them, not only so that you can follow them as I read them to you now but also so that you can have them with you for reference throughout your deliberations. In listening to them now and reviewing them later, you should not single out any particular instruction as alone stating the law, but you should instead consider my instructions as a whole.

1

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 2

### Duty of the Jury

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely upon your own recollection of the evidence. To aid your recollection, we will send you all the exhibits at the start of your deliberations, and if you need to review particular items of testimony, we can also arrange to provide them to you in transcript or read-back form.

Please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence. The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and any stipulations or admissions of the parties that were received in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted either here in court or in the depositions that were read into evidence. Please remember that questions, although they may provide the context for answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection. Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Likewise, you may not consider anything you heard

2

SIMO v. uCloudlink, 18-cv-5427

about the contents of any exhibit that was not received in evidence. More generally, be careful not to speculate about matters not in evidence, and focus instead on the evidence that was presented here in Court.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All such questions of law must be decided by me. You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

Finally, I ask you to draw no inference from my rulings or from the fact that on occasion I asked questions of certain witnesses. My rulings were no more than applications of the law and my questions were only intended for clarification or to expedite matters. You are expressly to understand that I have no opinion as to the verdict you should render in this case.

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 3

### Duty of Impartiality

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartiality. You are not to be swayed by rhetoric or emotional appeals. It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence.

4

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 4

### Burden of Proof; Preponderance of the Evidence; Clear and Convincing Evidence

As you know, this is a civil case. To prevail in a civil case, a party who is making a claim against another party has what we call the "burden of proof," which is the burden of proving each of the essential elements of that party's claim. In this case, there will be two burden-of-proof standards by which you must weight the evidence: "preponderance of the evidence" and "clear and convincing evidence."

The plaintiff here is SIMO Holdings, Inc. The defendants are Hong Kong uCloudlink Network Technology Technology Limited and uCloudlink (America), Limited. For all purposes in this case, the defendants can be treated as one entity called uCloudlink.

The Court has already determined as a matter of law that the G2, G3, U2, and S1 devices sold by uCloudlink infringe claims 8, 11, 12, 13, and 14 of SIMO's '689 Patent. But uCloudlink claims that the relevant claims of SIMO's patent are invalid because they are anticipated by prior art. Thus, your first task will be to determine whether those asserted claims of the patent are invalid. It is uCloudlink's burden to prove, by clear and convincing evidence, that each asserted claim of the patent is invalid. Clear and convincing evidence is proof that establishes in your mind that the proposition at issue is highly probable.

If you find that the asserted claims are not invalid, you must determine an amount of money that will fairly compensate SIMO for uCloudlink's infringement. This measure of money is called "damages." It is plaintiff's burden to establish the amount of its damages by a preponderance of the evidence, which means proof that the amount of damages is more likely true than not true.

5

SIMO v. uCloudlink, 18-cv-5427

Finally, if you find that the asserted claims are not invalid, and that SIMO is therefore entitled to damages for infringement of its patent, you must decide whether the infringement was willful, which, as I will further explain later, means intentional or knowing. Your willfulness determination will assist me in deciding whether any damages award should be increased. It is plaintiff's burden to prove that the infringement was willful by a preponderance of the evidence, that is, the plaintiff must prove that it is more likely than not that the infringement was willful.

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 5

### Direct and Circumstantial Evidence

In deciding whether a party meets its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside. Later, as you were sitting here, someone walked in with a dripping wet umbrella, and, soon after, somebody else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom and you cannot see whether it is raining. So you have no direct evidence of that fact. But on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

7

SIMO v. uCloudlink, 18-cv-5427

<u>INSTRUCTION NO. 6</u>

<u>Witness Credibility</u>

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision to believe or to not believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank, and forthright, or did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

8

SIMO v. uCloudlink, 18-cv-5427

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

In this case, some of the witnesses did not testify live in court, but you saw videos of their depositions. As I explained to you earlier, a deposition is sworn testimony of a witness taken before trial. You should evaluate deposition testimony in the same way you would evaluate live testimony.

9

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 7

### Specialized Testimony

The law permits parties to offer opinion testimony from witnesses who were not involved in the underlying events of the case but who by education or experience profess expertise in a specialized area of knowledge. In this case, Paul Clark, Christopher Martinez, Martin Feuerstein, and John Hansen have been offered as such witnesses. Specialized testimony is presented to you on the theory that someone who is learned in the field may be able to assist you in understanding specialized aspects of the evidence.

But your role in judging credibility and assessing weight applies just as much to these witnesses as to other witnesses. When you consider the specialized opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, a specialized witness necessarily bases his or her opinions, in part or in whole, on what that witness learned from others, and you may conclude that the weight given the witness's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of a specialized witness were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of such a witness is questionable, or if the opinions of the witness are outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of that witness, entirely or in part. On the other hand, if you find that a specialized witness is credible, and that the witness's opinions are based on sufficient data, education, and experience, and that the other evidence does not give you reason to doubt the witness's conclusions, you may, if you wish, rely on that witness's opinions and give them whatever weight you deem appropriate.

10

SIMO v. uCloudlink, 18-cv-5427

## II. LIABILITY

## INSTRUCTION NO. 8

### Patent Infringement

With these preliminary instructions in mind, we now turn to the specific issues in this case. Although, as I have explained to you, patent infringement itself is not an issue that you need to decide, as it has already been determined that certain of defendants' product's infringed plaintiff's patent, you will be asked to decide whether the infringement was "willful" (which I will define later), so it may be useful for you to know the basics of patent infringement.

In order to encourage useful inventions, the laws of the United States give an inventor a temporary monopoly over his or her invention. This is called a patent, and once it is issued, anyone who, during the period of the patent's protection, makes, uses, or sells the patented invention without the permission of the owner of the patent is said to have "infringed" the patent.

Every patent includes a series of numbered sentences, called "claims," at the end of the patent. The claims define the boundaries of the patent. The Court has already determined that uCloudlink's GlocalMe G2, G3, U2, and S1 products - collectively, "the GlocalMe Products" - infringe certain claims of plaintiff's U.S. Patent No. 9,736,689, referred to as "the '689 Patent." Specifically, the Court has determined as a matter of law that the GlocalMe Products infringe claims 8, 11, 12, 13, and 14 of the '689 Patent - referred to as "the Asserted Claims." The '689 Patent is Exhibit PX-225 in evidence, and the claims begin on column 23, line 49, after the sentence "What is claimed is."

An infringer of a valid patent claim is said to be "liable," that is, legally responsible to the patent owner for the consequences of the infringement.

11

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 9

### Patent Invalidity: Novelty

However, even though the Court has determined that the GlocalMe Products infringe the Asserted Claims of the '689 Patent, uCloudlink is not liable for patent infringement if those Claims are nonetheless invalid. The fact that the '689 Patent was approved by the U.S. Patent Office makes the Asserted Claims presumptively valid, but uCloudlink may still prove that the Asserted Claims are invalid if uCloudlink can establish such invalidity by clear and convincing evidence, that is, by proving that it is highly probable that the Asserted Claims are invalid.

To qualify for a patent, an invention must be new, or "novel." uCloudlink contends that the Asserted Claims are invalid for lack of novelty because they were anticipated by prior art. "Prior art" is the term for any previously-filed patents, publicly known publication, or products offered for sale that described the claimed invention and were filed or published before the date of invention or more than one year before the effective filing date of the patent application here at issue. I will give you additional instruction on determining the date of invention in a moment.

The prior art need not use the same words as any of the Asserted Claims. However, to find that an Asserted Claim was not novel, you must find that each and every element of that Claim was expressly disclosed in a single prior invention or in a single prior art reference to a person having ordinary skill in the technology of the invention. You may not combine two or more items of prior art to make out anticipation.

In order to determine whether a prior art reference anticipates any of the Claims, you must compare the prior art reference to the elements of the Claim you are considering. This means not just looking at the preferred embodiment of that Claim but at the language of the Claim itself.

12

SIMO v. uCloudlink, 18-cv-5427

In order to anticipate a given Claim, the asserted reference must not only disclose all elements of the Claim within the four corners of the document, but must also disclose that these elements are arranged as in the Claim.

If every element of a given Claim is inherent to or expressly disclosed in a single prior art reference, then the prior art reference anticipates that Claim and the Claim is not novel. If, however, the prior art reference fails to anticipate every element of a Claim, then it does not undermine the Claim's novelty.

13

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 10

### Patent Invalidity; Date of Invention

As I told you, to qualify as prior art, the previously-filed patents, publicly known publications, or products offered for sale must have been filed, published, or sold either before the date of invention or more than one year before the effective filing date of the patent application. Here, the parties agree that the effective filing date of the patent application for what would become the '689 Patent is February 28, 2008. However, you must determine the date of invention.

The date of invention is either when the inventors first reduced their invention to practice, or when they first conceived of the invention and were reasonably diligent in reducing it to practice. Let me explain what those terms mean.

"Conception" means the inventor had a definite idea of the invention. The testimony of an inventor is not sufficient, standing alone, to prove the date of conception. Some corroborating evidence must be offered, such as drawings showing the complete form of the invention or disclosure of the invention to another person. Conception must include every feature of the claimed invention.

"Reduction to practice" means an invention is sufficiently developed to show that it would work for its intended purpose. To be "reasonably diligent" in reducing an invention to practice means that the inventor engaged in continuous activity to reduce the invention to practice. As with the conception date, there must be evidence in addition to the inventor's testimony that shows diligence.

14

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 11

### Appendix: Claim Construction

To make your job easier, I am attaching as an appendix to the written copies of this set of instructions a copy of each of the Asserted Claims. As you will see, the Asserted Claims contain both ordinary English words and specialized terms. One of my jobs is to determine, before trial, the meaning of the specialized terms. In particular, the Court has already determined the meanings of the following terms:

The term "foreign wireless communication client" means a telephone or computing device that is capable of communicating wirelessly and is not subscribed to a local cellular network for the current location of the phone or device.

The term "extension unit" means a computing device that is capable of communicating with both a foreign wireless client and a wireless communication network.

The term "local wireless communication network" means a wireless communication network associated with a particular cellular carrier operating in the current location of the phone or device.

The term "data communication link" means a communication link capable of transmitting data.

The term "the data communication link is distinct from the local cellular communication network" means the data communication link is not using the local cellular communication network.

The terms "authentication information" and "local authentication information" both mean information for confirming whether a device is verified to receive a cellular communication

15

SIMO v. uCloudlink, 18-cv-5427

service.

The term "signal link" means a communication link over which a wireless communication device requests service from a service provider of a cellular network, and over which authentication information and requests for authentication information are exchanged.

The term "and" as underlined in the following portion of Claim 8 means "and/or": "A wireless communication client or extension unit comprising a plurality of memory, processors, programs, communication circuitry, authentication data stored on a subscribed identity module (SIM) card and/or in memory and non-local calls database, at least one of the plurality of programs stored in the memory comprises instructions executable by at least one of the plurality of processors for: . . ."

The term "and" as underlined in the following portion of Claim 14 means "and/or": "at least one of a unique subscriber identifier, a wireless communication client identifier, a password, and a current location of the foreign wireless communication client or the extension unit."

As you look at the Claims themselves, these definitions will become clearer. You must apply the meaning I have given for each of the terms I just defined. For any words in the claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those words.

16

SIMO v. uCloudlink, 18-cv-5427

### III. DAMAGES

### INSTRUCTION NO. 12

#### Compensatory Damages; Reasonable Royalty

If you find that uCloudlink has failed to show, by clear and convincing evidence, that

each of the Asserted Claims are invalid, then the infringement determination stands. You must

then determine how much money defendants should pay SIMO in order to reasonably

compensate SIMO for its losses attributable to such infringement. These are called

"compensatory damages," and SIMO bears the burden of proving the amount of such damages by

a preponderance of the evidence.

Specifically, compensatory damages are the amount of money that uCloudlink

hypothetically would have paid SIMO as a fee, or "royalty," for using SIMO's patented invention

in the GlocalMe Products. A reasonable royalty is the royalty that would have resulted from a

hypothetical license negotiation between SIMO and uCloudlink. For the purposes of this

determination only, you should imagine that both parties to this hypothetical understood the

patent to be valid and infringed, and that both were willing to enter into a license just before the

infringement began.

The parties agree that the proper measure of damages in this case is based on the

megabytes of data sold to users of the GlocalMe Products, rather than on the number of hardware

units sold. Thus, the first step in calculating the fee is to determine what rate (as a percentage or

fixed amount per megabyte of data sold) the parties would have reasonably agreed to in a

hypothetical negotiation taking place in August 2017. In determining the reasonable royalty, you

should consider such factors as:

17

SIMO v. uCloudlink, 18-cv-5427

1.      Whether the patent holder had an established royalty for the particular invention;

2.      The rates paid by defendants for the use of other patents comparable to SIMO's patent;

3.      The nature, scope, and term of the license;

4.      SIMO's established policy, if any, to maintain its patent monopoly by not licensing others;

5.      The commercial relationship between plaintiff and defendants, if any;

6.      The effect of selling the patented device on the sales of other products of the defendants;

7.      The duration of the patent;

8.      The established profitability of the product made under the patent, its commercial success, and its current popularity;

9.      The utility and advantages of the patented features over prior methods and devices;

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.     The extent to which defendants used the invention, and any evidence probative of the value of that use; and

12.     The portion of the realized profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

SIMO v. uCloudlink, 18-cv-5427

You may recall the lawyers referring to these factors as "Georgia-Pacific" factors. No one factor is dispositive. However, you may also consider any other factor that in your mind would have increased or decreased the royalty the parties would have agreed to, acting as normally prudent businesses.

Although you are imagining a hypothetical negotiation taking place in August 2017, you are not limited to evidence prior to that date. Evidence of what actually happened since that date may guide you in determining what the parties might reasonably have anticipated or expected at the time of the hypothetical negotiation.

Once you have considered these factors and arrived at a royalty rate, you then multiply that royalty rate by the corresponding figure in evidence for the number of megabytes of data sold for use with the GlocalMe Products during the relevant period. The result is the reasonable royalty, or the amount of compensatory damages SIMO is entitled to.

For the GlocalMe G2, G3, and U2 devices, the relevant date for the start of any damages calculation is August 13, 2018. For the S1 device, the relevant date for the start of any damages calculation is August 20, 2018.

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 13

### Willful Infringement

There is one last thing you need to determine bearing on damages, which is whether the infringement by the defendants was "willful." The determination of whether the infringement was willful will not affect the specific amount of compensatory damages that you will assess, which are not intended to punish defendants but simply to compensate plaintiff. Your calculation of the compensatory damages should be guided solely by the factors listed in Instruction No. 12. However, your determination of willfulness will aid the Court in determining whether any additional damages must be assessed by the Court.

To prove willful infringement, plaintiff must prove, by a preponderance of the evidence, that uCloudlink actually knew it was infringing at least one Asserted Claim of SIMO's '689 Patent, that is, that uCloudlink actually knew of SIMO's Patent and intentionally chose to infringe it.

SIMO v. uCloudlink, 18-cv-5427

## IV. CONCLUDING INSTRUCTIONS

### INSTRUCTION NO. 14

#### Selection of Foreperson; Right to See Exhibits and Hear Testimony;

#### Communications with the Court

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law and a verdict form on which to record your verdict. In addition, we will send into the jury room all the exhibits that were admitted into evidence. If you want any of the testimony, that can also be provided, in either transcript or read-back form. But please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony.

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

SIMO v. uCloudlink, 18-cv-5427

## INSTRUCTION NO. 15

### Verdict; Need for Unanimity; Duty to Consult

You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case, and your verdict must be unanimous. In deliberating, bear in mind that while each juror is entitled to his or her opinion, you should exchange views with your fellow jurors. That is the very purpose of jury deliberation — to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others', you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier opinion that, after discussion with your fellow jurors, now appears to you erroneous.

In short, your verdict must reflect your individual views and it must also be unanimous.

This completes my instructions of law.

22

SIMO v. uCloudlink, 18-cv-5427

## V. APPENDIX OF ASSERTED CLAIMS

8.     A wireless communication client or extension unit comprising a plurality of memory,

processors, programs, communication circuitry, authentication data stored on a subscribed

identity module (SIM) card and/or in memory and non-local calls database, at least one of the

plurality of programs stored in the memory comprises instructions executable by at least one of

the plurality of processors for:

enabling an initial setting of the wireless communication client or the extension unit and a

remote administration system;

establishing a data communication link to transmit information among the wireless

communication client or the extension unit, and the remote administration system;

establishing a local authentication information request in response to a local

authentication request by a local cellular communication network, wherein the local

authentication information request comprises information regarding the local authentication

request for local authentication information received by the foreign wireless communication

client or the extension unit from the local cellular communication network, and wherein the data

communication link is distinct from the local cellular communication network;

relaying the local authentication information request to the remote administration system

via the data communication link and obtaining suitable local authentication information from the

remote administration system via the data communication link;

establishing local wireless services provided by the local cellular communication network

to the wireless communication client or the extension unit by sending the local authentication

information obtained from the remote administration system to the local cellular communication

23

SIMO v. uCloudlink, 18-cv-5427

network over signal link; and

      providing a communication service to the wireless communication client or the extension unit according to the established local wireless services.


11.      The wireless communication client or extension unit of claim 8, the memory comprising instructions executable by at least one of the one or more processors for:

      relaying verification information to the remote administration system, wherein the verification information identifies the wireless communication client or extension unit as being associated with a user account of the remote administration system.


12.      The wireless communication client or extension unit of claim 8, wherein the wireless communication client or the extension unit comprises a foreign wireless communication device not subscribed to the local network.


13.      The wireless communication client or extension unit of claim 8, wherein the memory comprising instructions executable by at least one of the one or more processors for:

      requesting access to a desired local wireless service by sending a request to the local cellular communication network over a signal link.


14.      The wireless communication client or extension unit of claim 8, wherein the local authentication information request for authentication information further comprises at least one of a unique subscriber identified, a wireless communication client identifier, a password, and a

SIMO v. uCloudlink, 18-cv-5427

current location of the foreign wireless communication client or the extension unit.