**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
SIMO HOLDINGS INC.

        Plaintiff,

    v.                                    **Civil Action No.: 1:18-cv-5427 (JSR)**

HONG KONG UCLOUDLINK
NETWORK TECHNOLOGY LIMITED,
AND UCLOUDLINK (AMERICA), LTD.

        Defendants.

-------------------------------------------------------x


## PLAINTIFF SIMO HOLDING INC.'S REPLY IN SUPPORT OF ITS
## MOTION FOR PERMANENT INJUNCTION

# **TABLE OF CONTENTS**

I. DEFENDANTS' ALLEGED REDESIGN SHOULD CARRY MINIMAL WEIGHT ..... 1

II. DEFENDANTS' REPEATED "SUBSIDIARY" ARGUMENTS LACK MERIT ............ 7

III. SIMO'S HARMS ARE CAUSED BY DEFENDANTS ........................................................ 8

IV. SIMO DOES NOT LICENSE TO DIRECT COMPETITORS .......................................... 9

V. DEFENDANTS' HARDSHIP AND PUBLIC INTEREST ARGUMENTS ARE BASELESS ........................................................................................................................ 9

VI. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accentra Inc. v. Staples, Inc.*,
    851 F. Supp. 2d 1205 (C.D. Cal. 2011) ...................................................................................5

*Balallan Ltd. v. Green Oasis Envtl., Inc.*,
    2008 WL 897540 (E.D.N.Y. Mar. 31, 2008) ...........................................................................3

*Bell Helicopter Textron Inc. v. Airbus Helicopters*,
    78 F. Supp. 3d 253 (D.D.C. 2015) .......................................................................................2, 4

*Canon, Inc. v. Color Imaging, Inc.*,
    292 F. Supp. 3d 1339 (N.D. Ga. 2018) ....................................................................................9

*Dominion Res. Inc. v. Alstom Grid, Inc.*,
    2016 WL 5674713 (E.D. Pa. Oct. 3, 2016) ..............................................................................7

*Emory Univ. v. Nova Biogenetics, Inc.*,
    2008 WL 2945476 (N.D. Ga. July 25, 2008) ...........................................................................3

*Glob. Traffic Techs. LLC v. Tomar Elecs., Inc.*,
    2009 WL 10678424 (D. Minn. Jan. 22, 2009) ................................................................1, 2, 4

*GSI Grp., Inc. v. Sukup Mfg Co.*,
    2008 WL 4431718 (C.D. Ill. Sept. 25, 2008) ...........................................................................1

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
    397 F. Supp. 2d 537 (D. Del. 2005) .........................................................................................3

*Humanscale Corp. v. CompX Int'l Inc.*,
    2010 WL 1779963 (E.D. Va. Apr. 29, 2010) ...........................................................................5

*IGT v. Bally Gaming Int'l Inc.*,
    675 F. Supp. 2d 487 (D. Del. 2009) .........................................................................................3

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    2017 WL 6343537 (C.D. Cal. Dec. 8, 2017) ...........................................................................5

*KFx Med. Corp. v. Arthrex Inc.*,
    851 F. Supp. 2d 1205 (C.D. Cal. 2011) ...................................................................................5

*Novozymes A/S v. Genencor Intern., Inc.*,
    474 F. Supp. 2d 592 (D. Del. 2007) .........................................................................................7

*Rosco, Inc. v. Mirror Lite Co.*,
   2006 WL 2844400 (E.D.N.Y. Sept. 29, 2006) ..........................................................................2

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*,
   842 F.2d 1275 (Fed. Cir. 1988)................................................................................................1

*Wald v. Mudhopper Oilfield Servs., Inc.*,
   2006 WL 2128851 (W.D. Okla. July 27, 2006)...................................................................3, 4

**Other Authorities**

U.S. Const. art. 1, § 8, cl. 8 ..........................................................................................................10

**I.      DEFENDANTS' ALLEGED REDESIGN SHOULD CARRY MINIMAL WEIGHT**

Defendants' last-minute assertion that they designed around the '689 patent after trial is insufficient to avoid a permanent injunction. Defendants rely on self-serving, conclusory statements that they no longer infringe without giving this Court or SIMO enough information to fully analyze the issue. The claimed non-infringing redesign is also dubious and, as explained below, full of inconsistencies. Further, by Defendants' own admission, the redesign has not been incorporated into all infringing products. In short, this Court should not permit Defendants to avoid an injunction by simply stating "trust us, we will no longer infringe."

On June 26, 2019, SIMO filed its Motion for Permanent Injunction. Dkt. 218. The next day, for the first time, Defendants notified SIMO about their alleged redesign, providing nothing more than the bare allegation that the redesigned products do not infringe the '689 patent. Dkt. 241-1. SIMO subsequently emailed Defendants' counsel, urging them to produce relevant documents and source code for inspection. *See* Ex. 1. Defendants have not presented these requested documents and source code. Now, Defendants ask the Court to moot this Motion because Defendants' own CTO says that the redesigned software does not read on certain limitations of the '689 patent.

"[T]he Federal Circuit has held that to succeed on a no-risk-of-future-infringement argument, the infringer must present '***very persuasive evidence*** that future infringement will not take place.'" *Glob. Traffic Techs. LLC v. Tomar Elecs., Inc.*, 2009 WL 10678424, at *11 (D. Minn. Jan. 22, 2009) (quoting *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281–1282 (Fed. Cir. 1988) ("The mere fact that [infringer] was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement.")); *see also GSI Grp., Inc. v. Sukup Mfg Co.*, 2008 WL 4431718, at *6 (C.D. Ill.

1

Sept. 25, 2008) ("Sukup must present evidence that makes it ***absolutely clear*** that the infringement could not reasonably be expected to recur before the matter is rendered moot.")

Here, Defendants have chosen not to provide SIMO with non-infringement contentions, claim charts, source code, or any technical documents proving the alleged changes in their design-around. Instead, "the only evidence of [defendant]'s cessation of infringement is its own statement that it has done so. *If this sufficed for the 'very persuasive' evidence that infringement had permanently ceased, few permanent injunctions would issue*." *Rosco, Inc. v. Mirror Lite Co.*, 2006 WL 2844400, at *4 (E.D.N.Y. Sept. 29, 2006). In other words, "***the Court cannot permit [Defendants] to avoid an injunction by saying 'trust us, we will no longer infringe***.'" *Glob. Traffic Techs.*, 2009 WL 10678424, at *11.

Furthermore, the declaration of Dr. Thomas (Zhihui) Gong is inherently unreliable. Dr. Gong is the very person that led Defendants' engineering team to misappropriate SIMO's technology, such as reviewing the '735 parent patent, tearing down SIMO's products, and more importantly, evaluating Wang Bin's proposed invention and patent technical disclosure, where Wang Bin undisputedly copied ***word for word*** substantial passages from a stolen Skyroam confidential design document. *See* Ex. 2 (PX-288, 375, 289 ("Thomas gzh" or "Gong Bo")); *compare* Ex. 3 (PX-156, PX-285, PX-284) *with* Ex. 4 (PX-376, PX-290, PX-291); *see also Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274 (D.D.C. 2015) ("Although Bell's representative testified that Bell does not intend to use the Original Gear in the future . . . the Court is not convinced that it can rely on this representation.").

Similarly, this Court should not credit Defendants' unilateral statement that they do not infringe, given their history of willful infringement, technology theft, and misappropriation. *See* Dkt. 244 at 1-8; *see also Glob. Traffic Techs.*, 2009 WL 10678424, at *8 ("[W]here, as here, the

defendant has engaged in misconduct and the Court cannot trust the infringer not to infringe in the future, the equities favor granting a broad or stringent injunction."); *Wald v. Mudhopper Oilfield Servs., Inc.*, 2006 WL 2128851, at *5 (W.D. Okla. July 27, 2006) ("However, given the finding of willful infringement . . . the Court is unpersuaded that there is no need for an injunction.").

Importantly, unlike the physical redesign of a distal end in *Cognex*, where changes were easily observable, here, software revisions are difficult to verify without inspecting uCloudlink's modified source code, which it has failed to present. Therefore, Defendants' claim that its redesign no longer infringes should carry minimal weight in this Court's analysis. *See IGT v. Bally Gaming Int'l Inc.*, 675 F. Supp. 2d 487, 489 (D. Del. 2009) ("Plaintiff has not had sufficient opportunity to evaluate the new products. . . . In short, the issue has not been sufficiently vetted to bear significantly on the court's analysis at this time.").

Moreover, even if Defendants' redesigned software truly no longer infringes the '689 patent, Defendants are in a position to resume infringing behavior at any time and, therefore, the likelihood of recurring infringement is substantial. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 544–45 (D. Del. 2005) ("[W]hen a defendant is in the position to resume infringing behavior, if that defendant is honestly professing its future intentions, an injunction will do no harm; however, if the defendant is inaccurate about or misrepresents its future intentions, then the court should prevent future infringement."); *Balallan Ltd. v. Green Oasis Envtl., Inc.*, 2008 WL 897540, at *5 (E.D.N.Y. Mar. 31, 2008) ("[T]he absence of proof of future injury is not necessarily fatal to a request for injunctive relief. . . . [T]here is certainly the possibility that they may take other action to defeat Balallan's rights in the patent in the future. Accordingly, the injunction sought by Balallan may properly be issued."); *Emory Univ. v. Nova Biogenetics, Inc.*, 2008 WL 2945476, at *5 (N.D. Ga. July 25, 2008) ("[D]enying the injunction could expose

the Plaintiffs to the danger that the Defendant might infringe upon the patent again. An injunction gives the Plaintiffs certainty that the Defendant will no longer infringe upon its patents. It is true that given the Defendant's current business status, it is unlikely to be selling AM 500. However, absent strong evidence that the Defendant will not infringe again, this is not a proper ground to deny a permanent injunction.").

Defendants are in a position to resume infringing behavior because, first, Defendants' late adoption of the new design indicates that the design-around would likely to be inferior and less accepted in the market. Despite a $10,000 non-infringing design-around that has been available to Defendants from the moment they were first notified of infringement, Defendants repeatedly refused to implement it until recently. *See* Trial Tr. at 456:14-458:8, 539:21-8, 540:5-8. Second, the fact that Defendants were able to change their software for the G2, G3, U2, and S1 devices in only two months means that Defendants could just as easily update its software to infringe the asserted patent at any point in the future. Further, because Defendants' software is not visible and is confidential, SIMO would not be able to determine if the software has been further modified to resume infringement. Therefore, Defendants could decide to infringe the asserted patent at any time unbeknownst to SIMO or the Court. As a result, "Plaintiff[] bear[s] the risk of future infringement." *Wald v. Mudhopper Oilfield Servs.*, Inc., 2006 WL 2128851, at *5 (W.D. Okla. July 27, 2006). Third, Defendants have made no changes in their **hardware** design and "still maintains the capacity to manufacture infringing goods." *Glob. Traffic Techs.*, 2009 WL 10678424, at *11. Fourth, uCloudlink's continued effort in enjoining SIMO from selling its products that undisputedly practice the '689 patent suggests that Defendants are interested in using the original design in the future. *Bell Helicopter Textron Inc.,* 8 F. Supp. 3d at 274 ("And indeed, Bell's initiation of the present suit suggests that Bell is interested in using the Original Gear in the

future.").

The cases cited by Defendants are readily distinguishable. For example, Defendants omitted the second half of the quoted language from *Humanscale* that completely renders the case inapplicable. *See Humanscale Corp. v. CompX Int'l Inc.*, 2010 WL 1779963, at *4 (E.D. Va. Apr. 29, 2010) ("Here, the infringing activity will necessarily end in six weeks ***when the CompX Patents expire***, which counsels against a finding of irreparable harm."). In *Kaneka Corp. v. SKC Kolon PI, Inc.*, SKC filed for declaratory judgment in a separate action that its resigned product does not infringe almost ***1.5 years*** before the Court decided on the issue of permanent injunction. 2017 WL 6343537, at *15 (C.D. Cal. Dec. 8, 2017) ("Whether Defendants continue to infringe depends upon the outcome of a case not before this Court. Consequently, issuing a permanent injunction now, while that case is pending, is premature, and risks venturing into the jurisdiction of another court."). In *KFx Med. Corp. v. Arthrex Inc.*, "***there is no product at issue***. Rather, Arthrex's liability was premised on its technique guides, videos and sales bulletins, all of which instructed surgeons on how to perform the SpeedBridge and SutureBridge procedures. . . . ***KFx acknowledges that Arthrex has made changes***." 2014 WL 11961953, at *3 (S.D. Cal. Feb. 18, 2014). In *Accentra Inc. v. Staples, Inc.*, in addition to the fact that "Staples has presented ***substantial evidence***," "[the] new technology [] ***undisputedly*** does not infringe Accentra's patents." 851 F. Supp. 2d 1205, 1238-39 (C.D. Cal. 2011).

As for the merits of Defendants' alleged redesign, multiple inconsistencies call into question the genuineness of the alleged "design-around." First, Dr. Gong's allegation that Mode A now uses a "physical Cloud SIM" is confusing and indeed contradictory to the term "Cloud SIM," which means ***virtualized*** or ***mirror image*** of a physical SIM. *See* Ex. 5 Zeng Dep. at 114:9-14, 124:16-17 ("The CloudSIM is a mirror image document of the physical card."); Ex. 6, He Dep.

5

at 188:1-2 ("The CloudSIM is a read from the physical card, which is the v-SIM file."), 187:5-6 ("[T]he definition for virtual SIM and the CloudSIM card is the same."). Second, Dr. Gong alleges that "[i]n Modes A and B, the carrier that provides the data communication link is the same carrier that provides the physical Cloud SIM." This contradicts his declaration that Mode B uses *software* Cloud SIM, instead of *physical*. Moreover, Defendants' devices undisputedly use the seed SIM to provide a data communication link and obtain a Cloud SIM through the data communication link from the remote server. *See* Dkt. 125 (Defs.' Reply ISO MSJ) ("Here, the Accused Products' seed SIMs (i.e., the alleged 'data communication link') use the local cellular communication network."). But there is no business or logical reason to use a seed SIM of a certain carrier to obtain a Cloud SIM of the same carrier.

Third, Dr. Gong alleges that "[i]n Modes B and C, the redesigned Stipulated Devices generate, for themselves, local authentication information using the software Cloud SIM" and therefore do not read on the "relaying to/from remote administration system" limitation. Defendants have provided no evidence about how a large number of SIM profiles (including KI that is required to perform authentication calculation) are obtained and sent to the users. According to Jing Liu, from the technical standpoint, it is almost impossible to copy the complete SIM profile from a physical SIM card, including the KI embedded in a physical SIM card, let alone the legal implications of such conduct. Liu Decl. at ¶5. To the extent that the new design now requires purchasing virtual SIM profiles (including KI) directly from carriers, the new design is not feasible in the United States because the major U.S. carriers currently do not sell KI information to any third parties. Liu Decl. at ¶6.

Most importantly, Defendants have not disabled *any* infringing feature. Instead, Defendants simply put the infringing features into three "Modes," where each Mode when

6

operating alone allegedly does not infringe. But Defendants have chosen not to disclose anything about how and under what circumstances those Modes operate, or whether a user can make use of the Modes in a manner that would infringe the patent. The "specter" of future infringement still exists.

## II.     DEFENDANTS' REPEATED "SUBSIDIARY" ARGUMENTS LACK MERIT

Defendants repeatedly rehash previously rejected arguments that Skyroam's harm is not SIMO's harm. This contradicts black letter law. "A patent owner may suffer irreparable harm from the loss of its right to exclude under *eBay*. A parent company holding a patent can be irreparably harmed through the harm suffered by a subsidiary selling the patent." *Dominion Res. Inc. v. Alstom Grid, Inc.*, 2016 WL 5674713, at *11 (E.D. Pa. Oct. 3, 2016) (*vacated on other grounds*) (referencing *Novozymes A/S v. Genencor Intern., Inc.*, 474 F. Supp. 2d 592, 612 (D. Del. 2007)). Like *Dominion* and *Novozymes*, SIMO's '689 patent gives SIMO a right to exclude Defendants from its vSIM solution. SIMO is harmed because SIMO expects Skyroam to successfully commercialize the patent, market the vSIM products, and return profits and market share. As SIMO's wholly owned subsidiary, Skyroam's profits and increase in market share inherently benefit SIMO. Although Skyroam and SIMO do not have a signed written licensing agreement, SIMO created Skyroam as a wholly owned subsidiary and agent with the implied license to manufacture and sell the vSIM products. SIMO expects to be able to use its validly issued '689 patent to exclude Defendants from making and selling infringing products. Therefore, even though SIMO does not make or market the vSIM products, "it has suffered irreparable harm beyond the reasonable royalty." *Id*. It is undisputed that Skyroam and SIMO consider themselves to operate together within the same corporate family. *See* Trial Tr. 135:9-15("[W]e're all part of the same group, same company. We all work very closely together, so we're just an operating group. And

what we do is, we create and market and sell and support hotspots and associated service.").

### III.  SIMO'S HARM IS CAUSED BY DEFENDANTS

Defendants argue that SIMO's harm was self-inflicted through bad business decisions or caused by non-infringing services. But Defendants' cherry-picked trial citations cannot refute the overwhelming evidence of technology copying and business misappropriation. *See*, *e.g.*, Dkt. 244. The record undisputedly shows, among others, that (1) Defendants stole and copied SIMO's core technology. *Id*. at 1-8; (2) Defendants investigated SIMO's finance, sales channels, and consumer service. *See* Dkt. 183-1 at 205:12-207:9; Dkt. 221 at 5; (3) Defendants sell their daypasses to consumers for $3.50, only a small fraction of the $9 that SIMO charges. Trial Tr. at 166:9-12; (4) the market rate for the same amount of data is around $10——similar to SIMO's price. *Id*. at 283:23-284:9; and (5) SIMO's sales have been slowing down as a result of Defendants' predatory pricing strategy. *Id*. at 165:17-22, 166:5-7.

Regarding the causal nexus, Defendants suggest that "[a]ny of the features [shown on the Amazon.com printout] could have plausibly driven consumer demand," such as "up to 13 hours of continuous use," "No contract," "user friendly App for easy and effective data management," "1 Year Warranty," etc. But this attorney argument pales in light of common sense. As fully established during trial, consumers clearly buy the products for their feature of "Global Wi-Fi" and "Over 100 counties Featuring Free Roaming."

Moreover, Defendants confuse the product feature of "international data use" with "overseas usage" for damages purposes. The "international date use" feature is the virtual SIM technology that enables the products to function as a global roaming devices, allowing users to borrow local SIM cards in every country they visit. This has nothing to do with "foreign sales in [the] damages calculation."

8

## IV. SIMO DOES NOT LICENSE TO DIRECT COMPETITORS

Contrary to Defendants' suggestion, SIMO does not license its patent to direct competitors. Admittedly, SIMO has prepared partnership proposals for companies such as Novatel. But unlike with Defendants, "the SIMO Novatel relationship would be one of partners." *Id*. at 299:17-19. It is "more than just a license. It's a partnering arrangement that would include a license to the '689 patent for Novatel to actually build devices and sell devices that were compatible with Skyroam's ecosystem." *Id*. at 298:23-299:1. And "the terms of it were designed to enhance the SIMO ecosystem, meaning [SIMO] didn't want to license to a competitor. [SIMO] wanted to license to a partner who is going to help build and distribute more hotspots that would then facilitate SIMO selling more Skyroam Daypasses. Basically, a win-win." *Id*. at 299:9-14. *See Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1339, 1351 (N.D. Ga. 2018) ("And although Plaintiff has licensed the patent to some entities, such as Xerox and IBM, the circumstances of these licenses are distinguishable from this case, where Defendants are directly competing with Plaintiff for Canon-copier toner bottle sales. Thus, this first factor weighs in favor of Plaintiff.").

## V. DEFENDANTS' HARDSHIP AND PUBLIC INTEREST ARGUMENTS ARE BASELESS

Defendants' hardship and public interest arguments are all based on their alleged redesign and therefore should be rejected for the same reason discussed above.

Defendants further argue that the likely uncertainty for their customers as a result of an injunction constitutes hardship. In other words, customers would avoid purchasing Defendants' products all together for fear of infringement. But this self-inflicted deterioration of reputation, if it qualifies as hardship at all, would not be the result of any injunction but the penalty Defendants would have to pay for willfully infringing SIMO's products.

As for the "public interest" factor, Defendants have failed to provide any case law

supporting that public interest favors designing around more than enforcing patent rights, which is expressly written in the U.S. Constitution. U.S. Const. art. 1, § 8, cl. 8. Also, the "public interest" factor protects the public at large, not just the small section of the public that have "bought uCloudlink devices and relied on those devices to communicate around the world." Allowing Defendants to continue selling and servicing the same hardware devices, not knowing whether the redesigned software truly avoids the '689 patent, and even if so, whether and when future infringement would occur (due to the difficulty in detecting hardware revisions) would greatly discourage innovation, which would eventually harm the public interest.

## VI. CONCLUSION

For the foregoing reasons, SIMO respectfully requests that the Court grant SIMO's Motion for Permanent Injunction.

Date: July 31, 2019

*/s/ Matthew J. Weldon*

Matthew J. Weldon
**K&L Gates LLP**
599 Lexington Avenue
New York, NY 10022
Tel (212) 536-4042
Fax (212) 536-3901
Matthew.weldon@klgates.com

Howard Chen (Admitted *Pro Hac Vice*)
Harold H. Davis, Jr. (Admitted *Pro Hac Vice*)
Peter E. Soskin (Admitted *Pro Hac Vice*)
Rachel E. Burnim (Admitted *Pro Hac Vice*)
**K&L Gates LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Howard.chen@klgates.com

harold.davis@klgates.com
peter.soskin@klgates.com
rachel.burnim@klgates.com
Tel: 415.882.8200
Fax: 415.882.8220

Yang Liu (Admitted *Pro Hac Vice*)
**K&L Gates LLP**
620 Hansen Way
Palo Alto, CA 94304
yang.liu@klgates.com
Tel: 650.798.6700
Fax: 650.798.6701

Gina A. Jenero (Admitted *Pro Hac Vice*)
**K&L Gates LLP**
70 W. Madison Street
Suite 3300
Chicago, IL 60602
gina.jenero@klgates.com
Tel: 312.372.1121
Fax: 312.827.8000

**ATTORNEYS FOR PLAINTIFF
SIMO HOLDINGS INC.**