**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIMO HOLDINGS INC.,

    Plaintiff,

v.

HONG KONG UCLOUDLINK NETWORK
TECHNOLOGY LIMITED and
UCLOUDLINK (AMERICA), LTD.,

    Defendants.

Civil Action No. 1:18-cv-05427 (JSR)

**DEFENDANTS' RESPONSIVE BRIEF EXPLAINING WHY UCLOUDLINK'S
REDESIGN PRODUCTS DO NOT PRACTICE ANY CLAIM OF THE '689 PATENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 3

    A. SIMO Still Fails to Show a Single Instance Where the Redesign Products Practice Any Asserted Claim of the '689 Patent ...................................... 3

    B. SIMO's Contrived Data Communication Link Argument is Flawed and Does Not Satisfy Every Limitation of an Asserted Claim ............................... 4

    C. The Redesign Products Are More Than Colorably Different ................................. 9

    D. SIMO's Remaining Arguments Are Sideshows ..................................................... 10

        1. Dr. Gong's Second Declaration Is Clear: There Is Not a Single Data Communication Link Using Multiple Carriers ..................... 10

        2. SIMO's Mischaracterizes the Changes to uCloudlink's Source Code ................................................................................................ 12

III. CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbek Mfg., Inc. v. Moazzam*,
  55 F.3d 1567 (Fed. Cir. 1995) ................................................................................................10

*Dippin' Dots, Inc. v. Mosey*,
  476 F.3d 1337 (Fed. Cir. 2007) .................................................................................................8

*nCUBE Corp. v. SeaChange Int'l Inc.*,
  732 F.3d 1346 (Fed. Cir. 2013) ............................................................................................2, 9

*Pause Tech. LLC v. TiVo Inc.*,
  419 F.3d 1326 (Fed. Cir. 2005) .................................................................................................8

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) ........................................................................................3, 9, 10

**I.      INTRODUCTION**

SIMO has now had two bites at the apple to meet its burden to show that the redesign products infringe. SIMO failed both times. SIMO cannot show a single actual example of an accused device infringing by accessing two different networks, one for obtaining a cloud SIM and a different network for general Internet connectivity. SIMO cannot show this because it does not happen: technical documents, source code, experts, and raw data all show that the redesign products use the same network to obtain the cloud SIM and for general Internet connectivity 100% of the time.

The only way SIMO can argue for infringement is to rewrite this Court's claim constructions. For example, SIMO argues that when a redesign product disconnects from one network (such as when it cannot find a compatible cloud SIM for that network), that disconnected network is nevertheless still part of the "data communications link." This argument ignores this Court's claim construction, which stated that the "data communications link" must be one "capable of transmitting data." A disconnected link cannot transmit data. SIMO also ignores that the Court construed the "distinct" limitation as meaning "the data communication link is **not using** the local cellular communication network." Even in SIMO's hypothetical scenario where a redesign product changes from one network to another because no compatible cloud SIM is available for the first network, the device will undisputedly use the **same** network (the new network) both for obtaining the cloud SIM and for general connectivity, which cannot satisfy the Court's construction. The only way SIMO can avoid this result is by taking the incredible position that the "distinct" limitation in the claims does not apply to the data communication link in other parts of the same claim, and that the data communication link must "exclusively" use a single network. Both arguments fail: this Court never placed any temporal

restriction in its claim construction, and the Court never adopted an "exclusivity" requirement either.

By raising new claim construction disputes and new hypothetical infringement scenarios, SIMO only demonstrates why the redesign products should not be subjected to the original injunction. The Federal Circuit has said that a "colorable differences" test requires the parties and the Court to focus on "how the patentee in fact proved infringement" in the first instance. *See nCUBE Corp. v. SeaChange Int'l Inc.*, 732 F.3d 1346, 1351 (Fed. Cir. 2013). SIMO's new theories are very far from its infringement theories analyzed by this Court during summary judgment. This shows the redesign products are more than colorably different from the adjudged infringing devices, meaning the redesign products should not be covered by the injunction.

Finally, SIMO attacks the credibility of uCloudlink's witnesses, but it does so by selectively excerpting their words, and by downplaying the significant changes to uCloudlink's source code. These arguments show that SIMO seeks to confuse the issues rather than engaging on the merits.

uCloudlink has thoroughly explained how its redesign products operate. Its expert, Dr. James Olivier, has shown how the redesign products have been updated to ensure that they do not infringe. SIMO, by contrast, cannot show even a single instance of infringement, and does not have a viable infringement theory. The redesign products should not be covered by an injunction crafted for different devices, and the Court should maintain its tentative decision and lift the injunction as to uCloudlink's redesign products.

## II.     ARGUMENT

### A.     SIMO Still Fails to Show a Single Instance Where the Redesign Products Practice Any Asserted Claim of the '689 Patent

"[T]he party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011)).  SIMO contends that uCloudlink's statement that "the seed SIM and the cloud SIM always connect to the *same* network" is untrue.  [D.I. 297 (SIMO Br.) at 1.]  Yet even though SIMO has redesign products on-hand to test, SIMO has now twice failed to show even a single instance where a redesign product actually uses a data communication link that is distinct from a local cellular communication network in a manner that infringes the asserted claims of the '689 patent.

SIMO cannot make such a showing because, since the time that the injunction began, the redesign products have used the same network both for obtaining a cloud SIM and for general Internet connectivity 100% of the time.  [D.I. 278 ¶¶ 14-15.]  In case there was ever any doubt, uCloudlink updated its raw data showing connections by redesign products.  As shown below, for the period spanning September 2019 to November 2019, the redesign products have **never** accessed two different networks for obtaining a cloud SIM and for general Internet connectivity:

3

| September 2019 – November 2019 | | | | | |
|---|---|---|---|---|---|
| Seed SIM U.S. Network | Number of Seed SIMs Using Network | Cloud SIM Using Same Network as Seed SIM | Ratio | Cloud SIM Using Different Network from Seed SIM | Ratio |
| AT&T | ■ | ■ | 100% | 0 | 0% |
| Cellular One | ■ | ■ | 100% | 0 | 0% |
| Choice Wireless | ■ | ■ | 100% | 0 | 0% |
| T-Mobile | ■ | ■ | 100% | 0 | 0% |
| Union Wireless | ■ | ■ | 100% | 0 | 0% |
| GCI Wireless | ■ | ■ | 100% | 0 | 0% |
| Indigo Wireless | ■ | ■ | 100% | 0 | 0% |
| Bug Tussel Wireless | ■ | ■ | 100% | 0 | 0% |
| Verizon | ■ | ■ | N/A | N/A | N/A |

The facts simply do not support SIMO's statement that "at least some of the time" the redesign products infringe the '689 patent.

**B.     SIMO's Contrived Data Communication Link Argument is Flawed and Does Not Satisfy Every Limitation of an Asserted Claim**

Instead of presenting actual evidence of infringement, SIMO attempts to focus on a hypothetical situation where a cloud SIM is not available for a network, arguing:

> [I]n a certain set of scenarios (e.g., where the uCloudlink device is unable to obtain a cloud SIM that is compatible with the seed SIM), even uCloudlink's expert concedes that the uCloudlink device *will* change its seed SIM network to match that of the cloud SIM.[1]

---

[1] 

4

[SIMO Br. at 3-4 (emphasis original).] While SIMO's argument is confusing, as best uCloudlink can understand it, SIMO is suggesting that switching the seed SIM network from, e.g., AT&T to, e.g., T-Mobile *before* obtaining a cloud SIM is an infringing use case.[2] [SIMO Br. at 6.] Specifically, SIMO contends that even though the redesign product has had its seed SIM completely disconnect from the first network (AT&T) and re-connect to a new, different network (T-Mobile) before obtaining any cloud SIM and before relaying any authentication information, there is still infringement because "there remains only one data communication link, and that data communication link uses multiple cellular communication networks, including at least one that is not *the* local cellular communication network." [SIMO Br. at 7 (emphasis original).] Put another way, SIMO's argument appears to be that the "data communication link" is the combination of *both* the prior, abandoned connection to the AT&T network *and* the new, active connection to the T-Mobile network. This new infringement argument fails for multiple reasons.

First, focusing on the time period where the redesign product is connected to the first network in SIMO's scenario (AT&T), there can be no infringement because the redesign products do not relay the local authentication request or obtain local authentication information via that network.[3] These steps, if they happen at all, will only happen once the device connects

---

[2] ████████████████████████████████████████████████████████████████████████

[3] Claim 8 of the '689 patent requires "relaying the local authentication information request to the remote administration system *via the data communication link* and obtaining suitable local authentication information from the remote administration system *via the data communication link*." If SIMO accused the AT&T link as *the data communication link*, this limitation is not satisfied because relaying the local authentication information request and obtaining suitable local authentication information does not happen over the AT&T seed SIM link.

to a different network (the T-Mobile network).  Specifically, Dr. Olivier explained that the redesign products make sure that the cloud SIM is compatible with the seed SIM network *before* relaying any authentication request to the backend server over the network.  [D.I. 293-1 ¶¶ 75-76; Ex. A[4] ¶ 19.]  Mr. Welch did "not offer[] an opinion as to whether this is true," [D.I. 297-2 ¶ 39], but SIMO implicitly accepts it as true when it states the redesign products "ultimately authenticat[e] themselves on a different, second seed SIM network (e.g., [T-Mobile]) for data communications," [SIMO Br. at 4].  Consequently, because no authentication information is sent over the first, disconnected network, there should be no dispute that uCloudlink's connection to that first network (e.g., AT&T) cannot infringe.

Second, focusing on the part of SIMO's theory where a redesign product is unable to obtain a cloud SIM for the first network (AT&T) and then switches its seed SIM to a second network (T-Mobile), there is not *one* data communication link, there are *two separate links*.  As Dr. Olivier explained, the redesign product *disconnects* from the first network (e.g., AT&T) and then establishes a *new* connection with the second network (e.g., T-Mobile) using the seed SIM.  [D.I. 293-1 ¶ 57.]  The first data communication link is destroyed and data can no longer be transmitted over it.  [Ex. A ¶ 16.]  The seed SIM then creates a new data communication link over the second network.  [*Id.* ¶ 37.]  This is what must occur because the accused devices only have one cellular modem for the seed SIM, and that modem cannot connect to two networks simultaneously.  [*Id.* ¶ 16.]  It is thus simply false for SIMO to allege in this scenario that there is only *one* data communication link.

Importantly, SIMO's argument that there is only one link in this scenario contradicts the Court's claim construction for "data communication link."  This Court in its claim construction

---

[4] All exhibits correspond to the exhibits in the supporting declaration of Phillip W. Goter.

order adopted the parties' agreed-upon construction that a "data communication link" is a "communication link capable of transmitting data." [D.I. 60 at 2.] Once the device disconnects from the first network (e.g., AT&T), that link is no longer "capable of transmitting data." [Ex. A ¶¶ 32, 37.] In other words, it can no longer be a "data communication link." SIMO's theory also contradicts its own attorney argument. Specifically, in its brief SIMO states:

> There is no dispute here: *the* data communication link is created upon establishing a connection between the uCloudlink device and the uCloudlink server so they may transmit data among one another.

[SIMO Br. at 6 (emphasis original).] Using this logic, whenever a new connection is *established* after switching from one network to another, there must be a new data communication link. Notably, SIMO's argument would lead to illogical results. For example, SIMO effectively argues that it should be able to draw a box around any connection a redesign product has ever had to any network at any point in the past **whether or not that network connection still exists**, and SIMO considers these disconnected networks part of the "data communication link." Of course this is absurd—a "link" must be "capable of transmitting data," as the Court expressly held. Abandoned links that are closed and disconnected cannot satisfy this claim limitation.

Third, even assuming the Court allows SIMO to draw its box for infringement purposes around an amalgamation of two networks (such as AT&T and T-Mobile), and even if the Court lets SIMO include an inactive link within that box, this Frankenstein data communication link is still not **distinct** from the local cellular communication network under the Court's construction because, even there, the redesign products still use the **same** network for both obtaining a cloud SIM and for general Internet connectivity. The Court clearly held that the term "the data communication link is distinct from the local cellular communication network" in the asserted claims means "the data communication link is **not using** the local cellular communication network." [D.I. 60 at 2 (emphasis added).] Here, the redesign product is using the second

7

network (T-Mobile) both for obtaining the cloud SIM and for general Internet connectivity. In other words it "is using" the same network for both purposes, so it cannot satisfy the Court's claim construction.

Acknowledging this flaw in its argument, SIMO takes two incredible positions. First, SIMO argues that "[a]t the time the 'relaying…' limitation must be met, there is no longer a requirement in the claim that the data communication link be distinct from the local cellular communication network." [SIMO Br. at 5.] This is incorrect. The Court did not include any temporal limit on the "distinct from" limitation in its claim construction, and there is no such limitation in the claims themselves. [D.I. 60 at 2.] Effectively SIMO asks the Court to read the "distinct" limitation out of the claims, which is of course improper. *See Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005) ("[W]e must give each claim term the respect that it is due.").

Second, SIMO argues:

> [T]he relevant question is *only* whether the "data communication link" exclusively uses "the local cellular communication network." If the data communication link does not *exclusively* use the local cellular communication network, then the device is capable of operating according to the claims . . . .

[SIMO Br. at 6 (emphasis original).] But SIMO is rewriting the Court's adopted construction solely to suit its new infringement theory. The Court did not construe "distinct from" as meaning "does not **exclusively** use" the local cellular communication network, as SIMO now suggests. [*Id.*] SIMO pulls the "exclusively" limitation out of thin air. SIMO cannot be allowed to rewrite the Court's claim constructions in order to show infringement. *See Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007) (affirming summary judgment of non-infringement because accused irregularly shaped particles did not comport with the district court's adoption of beads as having a smooth, spherical appearance).

8

SIMO has no valid argument that the redesign products satisfy every limitation of the asserted claims of the '689 patent. It is thus past time to conclude that the redesign products do not belong under the scope of the current injunction.

### C. The Redesign Products Are More Than Colorably Different

In *TiVo*, the Federal Circuit said that "[i]nstead of focusing solely on infringement, the contempt analysis must focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused product." 646 F.3d at 882. This analysis must focus "on how the patentee in fact proved infringement, not what the claims require." *nCUBE*, 732 F.3d at 1351. Here, SIMO never made any of its new arguments during claim construction or summary judgment: it never sought to include inactive links within the "data communication link" limitation, and it never tried to place temporal or exclusivity requirements on the Court's claim construction for the "distinct from" limitation. The fact that SIMO is raising these new arguments now only demonstrates that the redesign products are more than colorably different under the *TiVo* test.

Indeed, it should be undisputed that the redesign products are more than colorably different than the adjudged infringing devices. Mr. Welch, SIMO's expert, opined that "Dr. Olivier's [uCloudlink's expert's] summary is not factually inaccurate" when Dr. Olivier explained that the redesign products "no longer operate" in the way the adjudged infringing products operated at the time of the Court's summary judgement opinion. [D.I. 297-2 (Welch Rep.) ¶ 40.] Additionally, regarding Dr. Olivier's conclusion that the redesign products make sure the cloud SIM uses the same network that the seed SIM used, Mr. Welch stated, "I have not offered an opinion as to whether this is true." [*Id.* ¶ 39.] On these significant issues, SIMO's expert has either decided not to analyze the redesign or, more likely, he has concluded that Dr. Olivier's analysis is correct. As such, under Federal Circuit law, "the inquiry into whether the

9

[redesign] product actually infringes is irrelevant. Contempt is … inappropriate." *Tivo*, 646 F.3d at 882; *see also Arbek Mfg., Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995) ("Contempt, however, is not a sword for wounding a former infringer who has made a good-faith effort to modify a previously adjudged or admitted infringing device to remain in the marketplace.").

Since the redesign products are more than colorably different from the adjudged infringing devices, the appropriate next step (if SIMO wishes to pursue these products further) is for it to file a new action, and for there to be a new trial on infringement. *See Arbek*, 55 F.3d at 1570 ("[T]he modifying party generally deserves the opportunity to litigate the infringement questions at a new trial."). The redesign products should not be covered by an injunction that was drafted based upon facts surrounding products that no longer exist.

### D. SIMO's Remaining Arguments Are Sideshows

SIMO's remaining arguments attempt to undermine the credibility of uCloudlink's witnesses—namely, Dr. Gong and Dr. Olivier. SIMO does this by mischaracterizing statements, quoting material out of context, and criticizing uCloudlink for providing a thorough technical analysis. None of these extraneous arguments affect SIMO's failure to meet its burden to show that the redesign products infringe any asserted claim of the '689 patent.

#### 1. Dr. Gong's Second Declaration Is Clear: There Is Not a Single Data Communication Link Using Multiple Carriers

SIMO selectively quotes Dr. Gong's[5] second declaration as allegedly supporting its position that "the data communication link may use multiple local cellular communication networks." [D.I. 297 at 5.] In fact, when read in full, Dr. Gong was clear that the redesign products do not use two networks, they only connect to one network at a time:

---

[5] SIMO refers to Dr. Gong as "Mr. Gong" despite the fact that his declaration clearly states "Zhihui Gong, Ph.D." [SIMO Br. at 5; D.I. 278.]

> If no successful cloud SIM is found *for Cellular One, the device disconnects from Cellular One. The device may repeat the entire process, starting with the seed SIM* connecting to a network other than Cellular One, *if one is available*.

[D.I. 278 ¶ 13 (emphasis added to show words removed by SIMO in its brief on page 5).] To make its argument, SIMO simply omitted the portion of Dr. Gong's declaration stating that the redesign products *disconnect* the seed SIM from the first network. Nowhere does Dr. Gong admit that the data communication link uses multiple local cellular communication networks, or that it somehow uses two networks as part of the authentication process.

SIMO also states that "Dr. Gong's prior representations suggest that the devices cannot switch networks in the event the seed SIM and the cloud SIM do not share network compatibility." [SIMO Br. at 9.] In making this statement, SIMO ignores that Dr. Gong's September 10th declaration clearly spelled out this exact scenario:

> If, for some reason, the cloud SIM fails to connect to the Cellular One network on a roaming basis using the AT&T cloud SIM, the device does *not* try a different network. Rather, it requests a different cloud SIM from the backend server. This process repeats until a successful cloud SIM is returned. If no successful cloud SIM is found for Cellular One, the device disconnects from Cellular One. The device may repeat the entire process, starting with the seed SIM connecting to a network other than Cellular One, if one is available. **In the very unlikely scenario no network is available on which both the seed SIM and cloud SIM can use, the device is inoperable in that it has no connectivity.**

Dkt. 278 at 9 (emphases added).

[SIMO Br. at 8.] In the highlighted section, Dr. Gong explains that if no cloud SIM is found for the first network (Cellular One), the redesign product disconnects from that network. The redesign product then has its seed SIM connect to a different network (such as AT&T) to create a new link. Thus Dr. Gong included this seed SIM network change scenario in his declaration, which is entirely consistent with Dr. Olivier's own analysis. [D.I. 293-1 ¶ 74.] Dr. Gong concluded by noting that in the unlikely scenario where there is no network available that can accommodate both the seed SIM and the cloud SIM, the device is rendered inoperable. Far from

11

proving infringement, this explanation only underscores the length to which uCloudlink has gone in order to render its products incapable of using different networks for obtaining a cloud SIM and for general Internet connectivity.  SIMO's brief simply glosses over this substantial change.

       **2.**       **SIMO's Mischaracterizes the Changes to uCloudlink's Source Code**

SIMO also suggests that uCloudlink has engaged in misdirection by explaining source code changes made to its backend servers.  [*See* D.I. 297 at 9.]  Dr. Olivier included an analysis of the code running on uCloudlink's servers because, in its initial order, the Court stated that "the Court on reflection feels it would benefit from a more technical explanation from both parties."  [D.I. 282 at 1.]  To be thorough, Dr. Olivier included a technical explanation not only of the redesign products themselves, but of the servers they communicate with, which helps to understand how the redesign products operate from start to finish.  [D.I. 293-1 ¶¶ 81-85.]  This server code is relevant because the server is what checks the software version of the products to determine whether the product should be blocked from receiving a cloud SIM (e.g., if they are not upgraded), and because the server is responsible for choosing and sending the Cloud SIM.  [D.I. 293-1 ¶¶ 105-09.]  If Dr. Olivier had not included this information, SIMO undoubtedly would have argued that uCloudlink omitted material information about the redesign.  Regardless, SIMO's argument is effectively that uCloudlink's expert report was too thorough, which is hardly a meaningful critique.

SIMO also argues that "less than 0.1% of the pertinent (*i.e.*, requested for production) source code was changed in the redesigned uCloudlink devices."  [SIMO Br. at 3 n.3.]  This is a red herring.  As uCloudlink's expert, Dr. Olivier, explains, there are more than 40 specific instances where the software was modified spanning approximately 800 lines of code.  [Ex. A ¶ 6.]  Importantly, as Dr. Olivier further explains, the number of lines of code that are altered is not a valid proxy for understanding what actually changed.  [*Id.* ¶ 7.]  For example, a programmer

could write a single line of code that fundamentally alters the flow of a program. [*Id.*] As discussed above, there is effectively no dispute that the redesign products have been modified such that they no longer are able to use different networks for obtaining a cloud SIM and for general Internet connectivity. For the reasons discussed above and in uCloudlink's earlier brief, this change is substantial regardless of the number of lines of code it took to implement.

### III. CONCLUSION

For the second time SIMO has failed to meet its burden show why the redesign products should be covered by the original injunction. These products are more than colorably different from those found to infringe, and they are themselves non-infringing. For these reasons, the Court should maintain its tentative conclusion that the injunction should not be applied to the redesign products. The Court should lift the injunction as to the redesign products so that uCloudlink can resume their sales without fear of being held in contempt.

Date: December 4, 2019

**FISH & RICHARDSON P.C.**

By: */s/ Jonathan Lamberson*

Jonathan Lamberson (*pro hac vice*)
lamberson@fr.com
500 Arguello St., Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

Michael Zoppo (#4292678)
zoppo@fr.com
Excylyn Hardin-Smith (#4499208)
hardin-smith@fr.com
601 Lexington Ave., 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Phillip W. Goter (*pro hac vice*)
goter@fr.com
James Huguenin-Love (*pro hac vice*)
huguenin-love@fr.com
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Oliver Richards (*pro hac vice*)
orichards@fr.com
Cheryl Wang (*pro hac vice*)
cwang@fr.com
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Defendants*
*uCloudlink Network Technology Limited and*
*uCloudlink (America), Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 4th day of December, 2019, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Jonathan Lamberson*
Jonathan Lamberson