**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
SIMO HOLDINGS INC.

               Plaintiff,

      v.                                      **Civil Action No.: 1:18-cv-5427 (JSR)**

HONG KONG UCLOUDLINK
NETWORK TECHNOLOGY LIMITED,
AND UCLOUDLINK (AMERICA), LTD.

               Defendants.

-------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PLAINTIFF SIMO HOLDINGS INC.'S**
**MOTION FOR RECONSIDERATION OF ORDER MODIFYING INJUNCTION**

## I.      <u>INTRODUCTION</u>

Pursuant to Local Civil Rule 6.3, Plaintiff SIMO Holdings, Inc. ("SIMO") respectfully requests that this Court reconsider its Order modifying the permanent injunction. Dkt. 299 (the "Modification Order"). SIMO was not permitted to respond to uCloudlink's substantive reply evidence, which, for the first time, presented conclusions regarding the technical interpretation of this Court's "data communication link" construction. uCloudlink's reply also presented misleading criticisms of the opinions of Mr. Eric Welch, SIMO's expert witness. Coupled with an apparent misapprehension of Mr. Welch's testimony (perhaps caused by uCloudlink's reply declaration), SIMO has suffered manifest injustice.

Mr. Welch explained that the redesigned uCloudlink devices still have the same capability to infringe in nearly the same way as before in certain, if infrequent, scenarios. In particular, the same network-changing functionality this Court previously found infringing persists through the purported redesign. As such, uCloudlink's redesign is not more than colorably different from the previous infringing design, and the prior permanent injunction should persist.

SIMO also respectfully requests that the Court provide clarification consistent with the posture of the present dispute. A factual record has not been developed as to whether uCloudlink still infringes the '689 Patent through its redesign. Dkt. 299, at 2. And as uCloudlink has consistently argued, the inquiry here is whether the redesign is more than colorably different from the infringing design—*not* whether the redesign infringes the '689 Patent. SIMO believes the redesigned devices still infringe and intends to pursue its right to prove that theory in an appropriate jurisdiction. However, maintaining the Court's Order implying that the redesign devices *do not infringe* (even contrary to uCloudlink's understanding of the current posture of this case) would cause SIMO to suffer manifest injustice. SIMO, at a minimum, requests clarification on this point.

II.     **ARGUMENT**

A Court may reconsider a prior order if the movant shows "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations omitted)). This standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 709 F.3d 255, 257 (2d Cir. 1995).

The procedure leading to the Modification Order has caused manifest injustice to SIMO because SIMO was not afforded the opportunity to investigate the evidence and address the opinions of uCloudlink's experts. Additionally, because the Modification Order indicates this Court overlooked the evidence presented by SIMO, especially in light of the unfair procedural concerns, SIMO will suffer manifest injustice whether or not this Court considered improperly presented evidence by uCloudlink. Reconsideration is thus appropriate.

A.      **SIMO Had No Opportunity to Respond to uCloudlink's New Evidence**

uCloudlink's reply (Dkt. 298–298-2) contains new opinions and argument not presented in the papers first presenting evidence of the redesign. Dkt. 292. The Court should not have considered these opinions and arguments, or at least should permit SIMO to cross-examine the evidence and respond. *See, e.g.*, *Liton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (1991) ("Where new evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion."). During this litigation, the Court

has demonstrated its unwillingness to accept untimely or unsupported expert opinions.[1] *See* Trial Tr. at 4:21–25, 8:13–21. Here, uCloudlink presented entirely new, post hoc justifications for Dr. James Olivier's unsupported opinions including those cited by this Court, and irrelevant criticisms of Mr. Welch's opinions. Those opinions are technologically inaccurate and misleading, and SIMO lacked the opportunity to cross-examine Dr. Olivier to demonstrate this to the Court.

SIMO is not using this motion as an "opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). SIMO had no opportunity to address Dr. Olivier's new arguments. The investigation and presentation of evidence has not been consistent with an interest in providing the parties with a full and fair opportunity to present the facts.

### B.      SIMO Did Not Have a Full and Fair Opportunity to Present Its Position

On September 30, 2019, after uCloudlink and SIMO first briefed this Court on the scope of an appropriate permanent injunction, this Court issued an Order noting that uCloudlink provided no evidence supporting its contended redesign. The Court instructed the parties to agree on additional discovery and a briefing schedule, after which the Court would set a date for a hearing on the redesign issue. Dkt. 273 (the "Discovery Order"). Crucial to the Discovery Order was this Court's refusal to modify the injunction. *Id.* at 3. Pursuant to the Discovery Order, the parties continued to conduct discovery and began scheduling source code review and depositions.

On October 16, 2019, at a hearing related to SIMO's claim for damages in anticipation of the entry of final judgment, SIMO explained to the Court that uCloudlink had been violating the

---

[1] It is not clear whether this Court considered uCloudlink's reply expert opinions. The only expert opinions identified in the Modification Order are the statements contained in paragraph 57 of Dr. Olivier's report to which SIMO's expert timely responded, and which uCloudlink never addressed in its initial briefing. SIMO briefly addresses these opinions herein and requests an opportunity to provide a full response after cross-examination.

injunction by continuing to enable the use of the devices in the United States, especially in light of the Discovery Order, which provided that the injunction applied to the redesigned products (Oct. 16, 2019 Hrg. Tr. 13:11–19). At that hearing, uCloudlink's Counsel raised, again without evidence, the same points as those previously raised and disregarded by this Court. (*Compare id.* at 12:15–19 ("[T]he basis for . . . infringement was that uCloudlink sometimes . . . used different networks and that was what the claims required and that was why they're infringement. So we've changed that so that they're only using the same network.") *with* Dkt. 275 (uCloudlink's Letter Brief) ("[T]he redesign works by forcing any Accused Devices operating in the United States to use the **same** cellular network both for retrieving the cloud SIM from the uCloudlink backend server and for general Internet connectivity using the cloud SIM.") (emphasis in original)).

Following that hearing, the Court ordered SIMO to "explain[] in technical detail why, notwithstanding defendants' representations, defendants are not <u>complying with the injunction</u>." Dkt. 282, at 1–2 (the "Compliance Order") (emphasis added). SIMO understood the straightforward Compliance Order to require it to explain how uCloudlink's current conduct, *i.e.* enabling the use of the devices, violated the injunction. This interpretation is reasonable because: (1) uCloudlink's hearing representations added nothing to the record that would have given SIMO any reason to think this Court was seeking an analysis of the infringement; (2) the Discovery Order already set the procedure for the evaluating the substantive infringement issue; and (3) the Compliance Order did not purport to modify the Discovery Order.

Even after the Compliance Order, the parties were actively engaged in discovery and planning for depositions, a briefing schedule, and hearings pursuant to the Discovery Order. As required by the Compliance Order, SIMO explained to the Court how uCloudlink, *technically*, continued to violate the Court's unmodified injunction. Dkt. 287 ("Until the parties complete the

Court-ordered discovery and briefing regarding the merits of uCloudlink's supplemental request to modify the Injunction Order, [] the Court-ordered status quo is that the data usage uCloudlink's counsel conceded uCloudlink is providing, even if provided pursuant to a purported redesign, has violated and continues to violate the Injunction Order."). Additionally, SIMO explained that pursuant to the Discovery Order, the parties were engaged in discovery to attempt to ascertain the technical merits to uCloudlink's position regarding the alleged redesign. Dkt. 287, n.3 ("Discovery has begun, and SIMO is currently performing an initial review of the uCloudlink source code to determine how much time will be necessary for such discovery and briefing.")

uCloudlink, on the other hand, provided no explanation as to whether or not it was in fact in compliance with the injunction because it had no defense. Instead, uCloudlink provided a purported <u>non-infringement</u> analysis as it relates to its redesign and cited an expert report uCloudlink presumably spent months preparing in conjunction with its coders and other fact witnesses. *See* Dkt. 240, Dkt. 292, 292-1.

After uCloudlink's briefing, the Court surprised SIMO with an Order that was likewise unrelated to the injunction compliance issues the parties and the Court discussed on October 16. Dkt. 296. The Court Ordered SIMO to respond to uCloudlink's redesign argument, which effectively precluded SIMO from completing the necessary discovery and briefing contemplated by the Discovery Order. Dkt. 296. Indeed, at the time of this Order, SIMO had only begun to understand the revised code of one of the four infringing devices and SIMO still intended to take the deposition of uCloudlink's corporate witness and expert declarant. Notably, uCloudlink was working with SIMO on the discovery issues and did not raise any concern of undue delay.

With approximately two weeks to respond, SIMO worked expeditiously to present an analysis of the information it had available to it and respond to uCloudlink's expert's opinions—

opinions SIMO understood (and expected) to be complete, especially given the time available to prepare. Notwithstanding the lack of complete information available to SIMO at the time of its briefing, SIMO addressed crucial flaws in Dr. Olivier's report. Dkt. 297.

In reply, uCloudlink presented yet *another* expert report, espousing new theories not raised in its initial brief. Dkt. 298. SIMO never had an opportunity to address the issues raised in the reply report because SIMO never had an opportunity to take Dr. Olivier's deposition and cross-examine him regarding the opinions in his initial report, much less his reply report. At such a deposition, SIMO would have questioned Dr. Olivier on the very points SIMO made in its responsive report and would have been able to demonstrate the flaws in Dr. Olivier's position.

Because SIMO was never able to properly investigate, brief, and argue its position regarding uCloudlink's redesign to this Court *as was originally ordered by this Court*, and because uCloudlink presented substantial new evidence (which SIMO was unable to cross examine) and argument in reply, SIMO has suffered manifest injustice. uCloudlink's tactics have unfairly confused the briefing schedule on this issue such that SIMO was not prepared to seek a response to uCloudlink's improper additional evidence, especially in light of uCloudlink's telephonic representations that they would not likely be filing an expert report with their reply to SIMO's brief. Not only has this process rendered meaningless the Discovery Order, which provided the parties with a fair procedure to identify whether uCloudlink's devices have more than colorably changed, but the process also changes the meaning of the Compliance Order. The Court will recall that the Compliance Order required SIMO to discuss injunction compliance (Dkt. 282, at 1–2). While the Modification Order's interprets the Compliance Order as requiring SIMO to "explain[] in technical detail why or why not uCloudlink's products are no longer infringing." Dkt. 299, at 2 (emphasis added).

SIMO therefore requests that the Court reconsider the Modification Order either by reversing course or at least permitting SIMO a fair opportunity to examine uCloudlink's evidence. If it does not, SIMO will continue to suffer manifest injustice because uCloudlink will continue selling infringing devices and data services following a successful, calculated effort to mislead the Court regarding its devices and sales.

### C.   uCloudlink's Rebuttal Report Contains Misleading and Irrelevant Evidence

#### 1.   Dr. Olivier Unreliably Cites an Unused Theoretical Model and Ignores Mr. Welch's Testimony About the Functional TCP/IP Implementation to Discount Mr. Welch's Explanation of "Data Communication Link"

Dr. Olivier criticizes Mr. Welch's discussion of an actual technology (TCP/IP) in favor of an academic model that has never been implemented in practice (the "OSI model"). The problem with this criticism is that the OSI model is a theoretical construct, and TCP/IP is what is actually in use today. *See* https://spectrum.ieee.org/tech-history/cyberspace/osi-the-internet-that-wasnt. Moreover, Dr. Olivier's explanation that the OSI standard is relevant to the Court's construction of data communication link—a term that was not fully briefed and argued, but instead agreed upon by the parties—is misplaced. Dr. Olivier essentially opines that because "link" is a claim term, the theoretical model layer called "link" layer should limit the Court's construction of the claim term. Without doing a fulsome claim construction analysis, uCloudlink apparently bases this conclusion on the unreliable extrinsic evidence it cites for the first time in reply relating to the OSI Model. There is no basis in the law for this conclusion (particularly given the threadbare evidentiary basis that is at odds with governing Federal Circuit law on claim construction), and it certainly was not a part of the parties' *Markman* briefing.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("We have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms . . .").

More fundamentally, SIMO was never able to elicit the cross-examination testimony it expects would have showed the technical unreliability of Dr. Olivier's apples to oranges comparison. Without the opportunity to take the deposition of Dr. Olivier or present this argument, SIMO has been prevented from fully protecting the interests vindicated by the Jury's verdict of willful infringement, and this Court's subsequent injunction order.

### 2. Dr. Olivier's References to the Seed Switching, Server Code, and Historical Logs Are Irrelevant

#### a. *SIMO's Seed Switching Arguments Are Consistent with uCloudlink's*

Dr. Olivier's criticism of Mr. Welch's opinions regarding the manner in which the second seed network is selected once again contradicts the testimony of uCloudlink's corporate representative, and fails to take into consideration the operations described by code itself. Dr. Olivier is correct that one cannot select a specific network at the outset, but the devices are designed to effectuate the desired change by first asking the modem to change networks for the seed SIM. While it is true that if the seed SIM is using the desired network, the devices continues with the connection, uCloudlink's focus on this aspect is a red herring. The pre-reply evidence of record confirms that if the seed SIM received is *not* for the desired network, the device eventually requests a change in the network. Dkt. 297-2 at ¶¶ 37–43. This is consistent with the declaration of Zhihui Gong. Dkt. 278, at ¶ 13. ("If no successful cloud SIM is found for Cellular One, the device disconnects from Cellular One. The device may repeat the entire process, starting with the seed SIM connecting to a network other than Cellular One, if one is available.") It is also consistent with the original opinion of Dr. Olivier (with the exception of his unsupported construction of "Data Communication Link"). Dkt. 291-1 at ¶ 57 ("If no Cloud SIM is available that can use the same network used by the seed SIM, in this example AT&T, then the device disconnects the seed SIM from AT&T's network and [connects the] seed SIM to a new network, e.g. T-Mobile, to

obtain a Cloud SIM that will work on T-Mobile's network."); *see also id.* at ¶¶ 85, 92, 103 (referring to code indicating that the device reacts to the non-availability of a Cloud SIM by causing a switch of the network used by the Seed SIM. This is the path that permits the Seed SIM to use a network for which there is an available Cloud SIM).

Dr. Olivier's reply report on this point is especially troubling given that it is at odds with uCloudlink's own corporate testimony regarding its redesign. Mr. Welch's opinion is the only reliable way to view the redesign in light of uCloudlink's sworn testimony.

It is undisputed that the devices have the capability of using more than one cellular network to request, receive, and use a Cloud SIM.[2] Thus, consistent with the Court's claim construction, the devices' data communication links are still capable of using a network that is distinct from (not using) *the* local cellular communications network. For this reason, the "redesign" does not result in a device that is more than colorably different from the devices this Court already found infringe.

### b.   *Server Code Is Not Relevant to the Devices' Infringement*

Dr. Olivier's criticism of Mr. Welch for his failure to analyze uCloudlink's server code (Dkt. 298-2) also demonstrates that reliance on Dr. Olivier's reply testimony would work manifest injustice on SIMO. In particular, Dr. Olivier's criticism ignores the fact that claim 8 of the '689 Patent is directed to WiFi hotspots and phones and <u>not</u> to servers. The only question at summary judgment, at trial, and presently, is whether the devices themselves are <u>capable of infringing</u>. Dkt. 163, at 28 (citing *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) ("[A]n accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations. . .")). Mr. Welch's declaration shows that the *devices* remain capable of infringing

---

[2] The general functionality of the devices is substantially the same despite the fact that the S1 mobile phone has one modem and the three WiFi hotspots at issue have two.

under the same theory that previously convinced this Court. Server code is irrelevant to the analysis and Dr. Olivier's references to this code obscure the relevant issues.[3]

c.      <em>Historical Logs are Not Relevant; Device Functionality Is</em>

This Court's summary judgment opinion correctly notes that infringement can only be avoided if the device *never* permits infringement. SIMO evaluated the devices to determine whether they remain capable of infringing the '689 Patent. Dkt. 163, at 28. Dr. Olivier's reliance on device log files and his criticism of SIMO's decision to focus on the device functionality (Dkt. 298-2, at ¶¶ 20–26) is inconsistent with this Court's prior rulings and fail to support any conclusion that the devices are no longer capable of infringing. The fact that the limited amount of log data (which SIMO never had the opportunity to cross-examine) does not capture what appears to be a relatively rare occurrence does not move the needle at all, especially given Mr. Welch's testimony that the code would cause the requisite network switching some of the time. Indeed, given that the code enables infringement, the absence of historical evidence of an infringing event, is not evidence of the absence of infringement, especially in light of this Court's summary judgment ruling that a finding of infringement exists if the devices are capable of infringement.

### D.      <u>The Court Did Not Consider Certain Materials Presented by SIMO and Misunderstood SIMO's Argument</u>

The Court also committed clear error (and caused manifest injustice to SIMO) by failing to apply the parties' agreed construction of "data communication link." In the Modification Order, this Court identified two specific bases for refusing to adopt SIMO's argument regarding the scope of a "data communication link" and considering SIMO's arguments "implausible."

---

[3] This argument further underscores the manifest injustice SIMO suffered by the Court's changed process. The Court's revised schedule forced SIMO to prioritize its source code review of the device code, particularly without the aid of a corporate deposition. While this is the proper analysis given the way the claims are drafted, uCloudlink's attempt to disparage SIMO's expert's process should be seen for the sideshow it is.

1.      **This Court Failed to Consider the Technical Evidence Regarding a "Data Communication Link"**

This Court's first opinion regarding the "implausibility" of SIMO's position relates to this Court's understanding of "data communication link" pursuant to the court's construction, which is "a communication *link* capable of transmitting data." Dkt. 60, at 2 (emphasis added).[4] This Court's repeated references to Dr. Olivier's unsupported explanation and lack of any reference to Mr. Welch's expert report suggests to SIMO that this Court overlooked Mr. Welch's explanation as to why the data communication link remains intact even if the devices change networks.

SIMO (through Mr. Welch) presented a graphical explanation of the Court's construction of "communication link capable of transmitting data":



The construction of . . . "data communication link" is . . . is met in the purportedly redesigned product in the situation where the original seed SIM cannot be reconciled with a received cloud SIM. . . . The link established in the first instance between the uCloudlink device and its back-end server (via AT&T in the example above) (yellow in the drawing for Data Communication link) is an example of the

_____

[4] In the Reconsideration Order, Court notes it "has already held that a 'data communication link' is 'a communication capable of transmitting data.'" Dkt. 299 at 4. If the omission of the word "link" from the articulated construction is not a typographical error, such that the Court considered a data communication link to be a discrete *communication*, it is understandable that the Court erroneously accepted Dr. Olivier's unsupported conclusions regarding the data communication link. Dkt. 299 at 5 (citing Olivier report at ¶ 57).

> claimed "data communication link" at the time that link is established. That link _persists_ as a TCP/IP link between these two endpoints throughout the entirety of the login and authentication process, including if a switch in the seed SIM network is needed to be a network compatible with a received cloud SIM.

Dkt 287-2, at 49 (emphasis added). Under this explanation, uCloudlink's devices still infringe for substantially the same reasons as previously persuaded the Court.

Unsurprisingly, Mr. Welch's opinion is consistent with the testimony of Dr. Martin Feuerstein, uCloudlink's trial expert on patent validity (_i.e._, when the motivation was to ascribe the proper breadth to the parties' agreed, broad construction). Dr. Feuerstein testified the data communication link is the concept that the devices/server can send data to one another:



> [O]n the left on the '689 [patent] is shown in red, that data communication link to get access to the SIM bank, the SIM cards, credentials.
>
> Then on the right, Patarkazishvili [the purported prior art], the red line, he calls it a wide area data network, So basically it has got to connect into the network. That's the data communication link where the virtual terminal of the device gets access to the borrowed SIM.

Trial Tr. at 390:18–25 (emphasis added). Dr. Feuerstein recognized at trial, under oath and subject to cross-examination, that the "data communication link" is a _functional concept_ illustrating that one endpoint (the device) communicates with the other endpoint (the server) through, for example, the internet. That is, the "data communication link" persists throughout the communications

between the device and the server. Moreover, the explanation that the data communication link is a logical association (as opposed to a statement of a network topology), is consistent with the patent examiner who, specifically analyzed the "data communication link" in light of the prior art's disclosures. Dkt. PX-229, at SIMO_0000866 (Trial Tr. 100:17-21) (("Zhang . . . includes data links between the wireless device . . . and the MSCs and the BTSs, connected as recited, where a 'data link' is a logical association (linking) of data . . .") (emphasis added)).

Notwithstanding the general understanding of "data communication link" Dr. Olivier suddenly contradicts the patent examiner and uCloudlink's own expert's trial testimony. He either ignored or failed to appreciate the language of the patent and the technology at issue in favor of a simplistic and unsupported (narrow) conclusion that the data communication link is destroyed once a new network is used. Dkt. 293-1 at ¶ 57. This is demonstrably false.

### 2.    The Court Is Mistaken Regarding Temporal Limits on Infringement

This Court's second conclusion regarding the "implausibility" of SIMO's interpretation is in relation to the fact that "SIMO's interpretation of a 'data communication link' would impose no temporal limit on when a device may connect to a new network." Dkt. 299 at 5.

The Court is incorrect in its apparent belief that it is SIMO's position that "once a device is connected to a network through its seed SIM, it could never connect to a different cloud network without infringing SIMO's patent." For example, pursuant to Mr. Welch's explanation of the data communication link, upon termination of the TCP/IP link, the data communication link between the device and server would be severed and the inquiry of whether infringement occurs would have to begin anew when the device is next connected to the network. It may be that Dr. Olivier assumed the redesigned uCloudlink devices terminate and reestablish the TCP/IP link, but because he failed to provide any support for his conclusions, the record does not establish this fact. Until uCloudlink implements a process to tear down that TCP/IP link during the use of its device, however, the "data

communication link" between the device and the server remains active while the device is in use (and while the TCP/IP link is active).

### 3. The Patent Contemplates an Ongoing Data Communication Link Regardless of Network

Even if it were SIMO's contention that there is no "temporal" limit to the infringement, this is not inconsistent with the '689 Patent (and thus with the parties' agreed construction of "data communication link"). Dependent Claim 15 of the '689 Patent contemplates instances where the device must send and receive data using "the [already established] data communication link" when the device "relay[s] a second local authentication information request to the remote administration system via the data communication link." '689 Patent, at 26:14–27 (emphasis added). In other words, if a device receives a second authentication request, potentially by a different cellular network because, for example, that second cellular network offers better signal characteristics in that location, the device relays that new local authentication information request to the server using the already established data communication link without tearing down the TCP/IP link.

### E. SIMO Requests Clarification of the Court's Order

If the Court denies SIMO's request for reconsideration as to the ultimate conclusion of whether there are colorable differences between the original devices and the redesigned devices, SIMO seeks a modification of the Modification Order. In particular, SIMO seeks clarification that notwithstanding the Court's statement that it "is persuaded that uCloudlink's redesigned products no longer infringe" (Dkt. 299, at 2), the Court is not actually making any decision regarding *infringement* by the redesigned devices. uCloudlink previously argued that under *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011), SIMO was not entitled analyze infringement under doctrine of equivalents at this stage. *See* Dkt. 298 at 12 (uCloudlink acknowledging that "the appropriate next step (if SIMO wishes to pursue these products further) is for it to file a new action,

14

and for there to be a new trial on infringement."). The parties therefore agree that the only appropriate ruling at this stage is that the devices "operate in a materially different manner from that contemplated by the injunction." Dkt. 299, at at 5.

Unmodified, the Court's ruling on the scope of the injunction is highly prejudicial to SIMO, as it seems to articulate what amounts to an apparent summary judgment that uCloudlink does not infringe. SIMO intends to pursue this issue in an appropriate future action, availing itself of the processes of fact and expert discovery that go along with patent infringement litigation. In the meantime, and at a minimum, the Modification Order should be altered to reflect the proper posture of the parties' instant dispute.

## III.   <u>CONCLUSION</u>

This Court issued a permanent injunction because SIMO demonstrated that uCloudlink's infringement caused SIMO irreparable harm. Now, after additional gamesmanship by uCloudlink such as: <u>refusing to comply with this Court's injunction,</u>[5] repeatedly misleading the Court on issues such as product sales and the technology at issue, and presenting evidence to which SIMO has not been permitted to respond, that irreparable harm – that manifest injustice – has been compounded.

SIMO requests that this Court reconsider the Modification Order. By failing to provide SIMO with an opportunity to respond to uCloudlink's reply report and new expert opinions, SIMO has suffered manifest injunstice. Furthermore, if this Court did not consider that evidence, this Court overlooked unrebutted expert testimony regarding the fact that the devices are still capable of infringing and are not more than colorably different than the original, infringing versions. At a minimum, SIMO requests that this Court clarify that its ruling is limited to a finding of whether or not the redesigned devices are more than colorably different than the original infringing devices.

---

[5] SIMO was forced to resort to seeking a takedown of the devices from Amazon, and uCloudlink never stopped enabling the use of the devices despite the clear language of the injunction.

Date: December 26, 2019                 Respectfully submitted,

                                        */s/ Matthew J. Weldon*

                                        Matthew J. Weldon
                                        **K&L Gates LLP**
                                        599 Lexington Avenue
                                        New York, NY 10022
                                        Tel: 212.536.4042
                                        Fax: 212.536.3901
                                        matthew.weldon@klgates.com

                                        Peter E. Soskin (Admitted *Pro Hac Vice*)
                                        **K&L Gates LLP**
                                        Four Embarcadero Center, Suite 1200
                                        San Francisco, CA 94111
                                        peter.soskin@klgates.com
                                        Tel: 415.882.8200
                                        Fax: 415.882.8220

                                        Benjamin E. Weed (Admitted *Pro Hac Vice*)
                                        Gina A. Jenero (Admitted *Pro Hac Vice*)
                                        **K&L Gates LLP**
                                        70 W. Madison Street
                                        Suite 3300
                                        Chicago, IL 60602
                                        benjamin.weed@klgates.com
                                        gina.jenero@klgates.com
                                        Tel: 312.372.1121
                                        Fax: 312.827.8000

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **SIMO HOLDINGS INC.**