**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SIMO HOLDINGS INC.,

        Plaintiff,

   v.

HONG KONG UCLOUDLINK NETWORK
TECHNOLOGY LIMITED and
UCLOUDLINK (AMERICA), LTD.,

        Defendants.

Civil Action No. 1:18-cv-05427 (JSR)

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT ..................................................................................................... 2

        A.      SIMO Does Not Meet the High Bar for Reconsideration....................... 2

                1.      SIMO Had a Full and Fair Opportunity to Argue its
                        Position ...................................................................................... 2

                2.      SIMO Never Sought the Discovery it Now Says it Needs ........ 5

                3.      The Court Did Not Overlook or Misunderstand SIMO's
                        Arguments .................................................................................. 6

                4.      SIMO's New Argument About Terminating
                        Communications Links Supports uCloudlink's Non-
                        Infringement Position.................................................................. 8

        B.      SIMO's Remaining Critiques of Dr. Olivier are Irrelevant and
                Wrong ................................................................................................... 10

        C.      Clarification of the Court's Memorandum Order is Unnecessary ........ 12

III.    CONCLUSION................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Delcor Asset Corp. v. Taro Pharm. Indus.*,
No. 17-cv-5405, 2019 U.S. Dist. LEXIS 129732 (S.D.N.Y. July 31, 2019)...........................6

*Fitzgerald v. City of Troy*,
No. 1:10-cv-451, 2013 U.S. Dist. LEXIS 139056 (N.D.N.Y. Sept. 27, 2013)....................1, 6

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*,
288 F. Supp. 2d 482 (S.D.N.Y. 2003)......................................................................................1

*Olle v. Columbia Univ.*,
No. 02 Civ. 8552, 2004 U.S. Dist. LEXIS 22965 (S.D.N.Y. Nov. 15, 2004) ..........................6

*Sigmon v. Goldman Sachs Mortg. Co.*,
No 1:12-cv-03367, 2019 U.S. Dist. LEXIS 32348 (S.D.N.Y. Feb. 28, 2019) .......................10

*Tho Dinh Tran v. Dinh Truong Tran*,
166 F. Supp. 2d 793 (S.D.N.Y. 2001).....................................................................................4

*Tri-Star Pictures v. Leisure Time Prods., B.V.*,
No. 88 Civ. 9127, 1992 U.S. Dist. LEXIS 15232 (S.D.N.Y. Oct. 6, 1992) ............................7

*Wingspan Records, Inc. v. Simone*,
No. 12 Civ. 2172, 2014 U.S. Dist. LEXIS 169493 (S.D.N.Y. Dec. 5, 2014).........................11

## I.   INTRODUCTION

SIMO does not come close to meeting the high standard for reconsideration.  SIMO identifies no new or changed law.  It identifies no new facts, instead dwelling upon the same declarations and evidence in the record and considered by the Court when it issued its previous order.  SIMO's legal arguments similarly repeat the positions it took in its prior briefing, which is improper on a motion for reconsideration.  While SIMO argues that the Court's ruling against it "suggests to SIMO that this Court overlooked [SIMO's expert's] explanation," in fact the Court did not misunderstand or overlook anything: it fully considered SIMO's explanations and properly rejected them.  Such "disagreement among litigants and the court is not a basis for reconsideration."  *See Fitzgerald v. City of Troy*, No. 1:10-cv-451, 2013 U.S. Dist. LEXIS 139056, at *18 (N.D.N.Y. Sept. 27, 2013).

What SIMO actually wants is not reconsideration but delay.  SIMO has persisted in issuing takedown requests to Amazon.com to have that retailer remove uCloudlink's redesign products from its listings.  uCloudlink has asked SIMO to cease this activity in light of the Court's order confirming that uCloudlink can resume selling its redesign devices, but SIMO stated it would not do so until the Court ruled on this motion for reconsideration.  Thus SIMO's motion is nothing more than an attempt to improperly extend its patent monopoly over non-infringing devices for another month, allowing SIMO to avoid competition from uCloudlink's redesign products.  This is an improper use of a reconsideration motion, which already taxes "scarce judicial resources."  *See Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 482, 483 (S.D.N.Y. 2003).

This Court began the challenged order by stating that it was to be the "final in a series of post-judgment disputes."  [D.I. 299.]  Unfortunately that finality was illusory, but at least the

issue now before the Court is simple and can be easily resolved.  Because SIMO has no valid

basis for reconsideration, its motion should be denied.

## II.     ARGUMENT

### A.     SIMO Does Not Meet the High Bar for Reconsideration

As SIMO correctly notes, the standard for reconsideration is "strict, and reconsideration

will generally be denied unless the moving party can point to controlling decisions or data that

the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court."  [Mot. at 2 (citing *Shrader v. CSX Trans. Inc*., 70 F.3d 255,

257 (2d Cir. 1995)).]  Here, SIMO cannot meet this high standard.

SIMO identifies no new law, and no existing law that the Court overlooked.  SIMO also

identifies no new evidence in support of its arguments.  For example, SIMO does not show any

new evidence of redesign devices using "distinct" networks, nor does it cite any evidence that

contradicts the data and log files discussed in the prior briefing, which also show the redesign

devices have not infringed since the injunction was entered.  SIMO instead focuses entirely on

evidence and arguments previously before the Court.

SIMO raises only two bases for reconsideration.  First, SIMO says there is "manifest

injustice" because it had "no opportunity to respond" to arguments made in uCloudlink's reply

brief, and that it did not have a "full and fair opportunity to present its position."  [Mot. at 2-3.]

Second, SIMO argues that the Court "did not consider certain materials presented by SIMO and

misunderstood SIMO's argument."  [Mot. at 10.]  Both arguments are incorrect.

### 1.     SIMO Had a Full and Fair Opportunity to Argue its Position

SIMO argues that there has been a "manifest injustice" because it was unable to respond

to "new opinions and arguments" in uCloudlink's responsive brief.  In fact, there was nothing

"new" about any of uCloudlink's arguments or its expert's opinions.  The primary issue with

respect to the redesign products has always been whether they satisfy the "distinct" limitation, which requires that "the data communication link is not using the local cellular communication network." [D.I. 163 at 24-29.] uCloudlink's briefing consistently made the same argument: that its redesign products no longer satisfy this limitation because they now use the same network both for retrieving the Cloud SIM and for general connectivity. Indeed, uCloudlink made this argument on multiple occasions, including as early as July 2019. [*See, e.g.,* D.I. 240 at 8; D.I. 275; D.I. 292.] Thus SIMO is simply wrong to argue that uCloudlink took "new" positions or made "new" arguments in its reply.

Importantly, there is not even a dispute about how the redesign products operate—the facts surrounding those products were established by the time SIMO filed its brief. Specifically, both parties agree that in the "seed SIM switch" scenario (the only scenario SIMO now says is infringing), if the server cannot find a Cloud SIM capable of connecting with the local cellular communication network used by the Seed SIM, the server returns an error message and the redesign devices ***disconnect*** from the local cellular network before trying a different network. This scenario was covered both in Dr. Olivier's original declaration (*see* D.I. 293-1, ¶¶ 74, 91, 92, 95, 103, Exhibit A, Exhibit C p. 3), and in Dr. Gong's declaration served in September of 2019 (D.I. 278, ¶ 13). The only dispute is whether SIMO's claims cover this scenario. On that issue, SIMO had all the facts it needed to state its position before it filed its memorandum.

Notably, this Court gave SIMO not one but two opportunities to give an explanation for why the "seed SIM switch" scenario allegedly infringes. Specifically, the Court first asked for "a more technical explanation from both parties" regarding the redesign products on October 17th. [D.I. 282.] SIMO's response, filed on October 31st, ignored the Court's request for a "technical explanation," ignored Dr. Gong's declaration (served a month earlier), and ignored

Dr. Olivier's expert report (served on October 18th).  Even though SIMO failed to address any of this new evidence, the Court nevertheless gave SIMO a second chance to explain why the redesign products infringed.  [D.I. 296.]  If SIMO failed to raise any arguments in this second response, it cannot blame that failure on either uCloudlink or the Court.

Also, as SIMO itself acknowledges in a footnote, the Court did not even rely on uCloudlink's responsive brief or Dr. Olivier's rebuttal declaration in arriving at its conclusion that the "seed SIM switch" scenario does not infringe.  Despite all of SIMO's arguments about the impropriety of Dr. Olivier's rebuttal declaration, there was no need for the Court to rely on it because the functionality of the redesign products is undisputed.  The only dispute is over how to interpret the claims, which is based on the intrinsic record.  Thus SIMO cannot meet the necessary predicate for reconsideration—it cannot show that any new arguments it wants to make, or that the new discovery it wants to take, would change the outcome of the Court's decision.

Finally, as discussed further below, even after reviewing uCloudlink's responsive brief and declaration, SIMO makes the same failed arguments it made in its prior briefing.  The fact that SIMO has nothing new to say demonstrates that it had a full and fair opportunity to present its arguments.  SIMO never sought leave to supplement its prior brief or to serve a sur-reply brief, and never filed a motion to strike uCloudlink's brief or declaration.  SIMO merely disagrees with the Court's resolution of the prior briefing, but that is not a valid basis for reconsideration.  *See Tho Dinh Tran v. Dinh Truong Tran*, 166 F. Supp. 2d 793, 798 (S.D.N.Y. 2001) ("[A] motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.").

4

## 2.      SIMO Never Sought the Discovery it Now Says it Needs

SIMO also argues that there has been "manifest injustice" because the Court allegedly short-circuited discovery SIMO was planning to take.  This too is wrong.

As an initial matter, any failure to take discovery is a problem of SIMO's own making. uCloudlink made its source code and other technical documents relating to its redesign products available for inspection in August of 2019, before the injunction was even in place.  [D.I. 293, Ex. D.]  uCloudlink also told SIMO that it would be providing a declaration, and asked if it wanted to depose its declarant, Dr. Gong.  [*Id*. at 2.]  SIMO never noticed Dr. Gong's deposition, nor did it ever ask for dates to depose Dr. Olivier, uCloudlink's expert.  SIMO's claim that the parties were "actively engaged in discovery and planning for depositions" is therefore false— there were no discussions, no plans, and no outstanding requests for information.[1]

Perhaps more importantly, SIMO does not say what it hopes to accomplish through additional discovery.  As noted, the functionality of the redesign products is undisputed.  The only dispute is one of claim interpretation.  Moreover, to the extent SIMO believes there is some aspect of the redesign products it needs to investigate, uCloudlink produced the source code for its redesign products to SIMO.  That source code specifies how the redesign products operate. SIMO can review that code and make whatever arguments it wishes to make.  The fact that SIMO raises only claim construction arguments shows that no further discovery is necessary.

SIMO was not diligent in pursuing discovery because delay worked in its favor.  SIMO knew that uCloudlink's redesign products did not infringe, so every day it could keep those

---

[1] Equally wrong is SIMO's statement that uCloudlink represented in a phone call it would not serve a responsive expert report.  [Mot. at 6.]  No such representation occurred.  In fact, uCloudlink told SIMO that it **likely would** serve a responsive expert report in reply because uCloudlink had yet to hear anything from SIMO regarding the merits of the redesign.

products off the market gave a windfall to SIMO.  Now that the injunction has been lifted, SIMO

complains about discovery it never sought.  Regret is not a valid basis for reconsideration.  *See*

*Olle v. Columbia Univ.*, No. 02 Civ. 8552, 2004 U.S. Dist. LEXIS 22965, at *11 (S.D.N.Y. Nov.

15, 2004).

Finally, SIMO makes the inflammatory statement that it will "suffer manifest injustice

because uCloudlink will continue selling infringing devices and data services following a

successful, calculated effort to mislead the Court regarding its devices and sales."  [Mot. at 7.]

SIMO does not explain how uCloudlink has purportedly "misled" the Court, an especially

curious assertion given that the facts surrounding the redesign products are not in dispute.  There

was no fraud here, only a dispute about claim scope.  Such claim construction disputes are

routine, and the Court should decline to reconsider its holding resolving them.  *See Delcor Asset*

*Corp. v. Taro Pharm. Indus.*, No. 17-cv-5405, 2019 U.S. Dist. LEXIS 129732 (S.D.N.Y. July 31,

2019), at *3-*7 (declining to reconsider claim construction).

### 3.    The Court Did Not Overlook or Misunderstand SIMO's Arguments

SIMO's final argument is that the Court either misunderstood or overlooked its

explanations for why the redesign products allegedly infringe.  [Mot. at 11.]  The Court did not

overlook or misunderstand SIMO's arguments, it rejected them.  [*See* D.I. 299 at 4-5.]  While

SIMO may disagree with the Court's conclusion, such "disagreement among litigants and the

court is not a basis for reconsideration."  *See Fitzgerald*, 2013 U.S. Dist. LEXIS 139056, at *18.

Ignoring the Court's reasoning, SIMO repeats its past argument that because the accused

devices communicate with uCloudlink's back-end server both before and after a "seed SIM

switch," there must be some "link" that remains.  This argument ignores unrebutted evidence that

the redesign products disconnect from the first network during a seed SIM switch.  [D.I. 293-1

¶ 57.]  The first link is destroyed, after which no data can be transmitted over it.  [D.I. 298-2 ¶

16.]  The products then create a new data communication link over a second network.  [D.I. 293-1 ¶ 57; D.I. 298-2 ¶ 37.]  This is what must occur because the accused devices only have one cellular modem for the seed SIM, and that modem cannot connect to two networks simultaneously.  [D.I. 298-2 ¶ 16.]  Under the Court's claim construction for "data communication link," which requires a "communication link capable of transmitting data" (D.I. 60 at 2), once the device disconnects from the first network that link is no longer "capable of transmitting."  [D.I. 298-2 ¶¶ 32, 37.]  In other words, the severed network can no longer be considered a "data communication link," and the devices must instead create a new link.

SIMO incorrectly suggests that uCloudlink's position is inconsistent with the trial testimony of its expert, Dr. Martin Feuerstein.  As an initial matter, this argument could have been raised previously, since it is based on the trial record.  As such, the Court should decline to consider it now on reconsideration.  *See Tri-Star Pictures v. Leisure Time Prods., B.V.*, No. 88 Civ. 9127, 1992 U.S. Dist. LEXIS 15232, at *9-10 (S.D.N.Y. Oct. 6, 1992) ("[A] party moving for reconsideration based on newly discovered evidence must, at a minimum, demonstrate that: (1) the proffered evidence was **unavailable** in spite of the exercise of due diligence in procuring evidentiary support." (emphasis added)).  Regardless, this argument is incorrect: the Patarkazishvili reference does not state that a link persists despite being disconnected from a network.  Indeed, Patarkazishvili does not even send SIM information over a cellular network and, on top of that, there is no network "switch" in Pastarkazishvili.  [*See* DX-25.]  Consequently, the reference sheds no light on the "seed SIM switch" scenario now in dispute.[2]

---

[2] Contrary to SIMO's suggestion, the "red line" in Patarkazishvili is not something uCloudlink added, it is found in the original figure.  [*See* DX-25, Figure 2.]

7

SIMO also ignores that the jury rejected uCloudlink's arguments regarding Pastarkazishvili, so SIMO can hardly claim now that this reference discloses the claimed "data communication link."

SIMO also refers (at 13) to the file history of the '689 patent, but here again, there is nothing about network switching and nothing suggesting a "data communication link" can encompass a network that is no longer in use.  Also, this is another piece of evidence that SIMO could have raised in its prior briefing, so it should be ignored on reconsideration.

Finally, none of SIMO's arguments address the fact that even if the Court were to change its decision and allow SIMO to accuse both the severed first network (e.g., AT&T) and the active second network (e.g., T-Mobile) as the "data communication link," this hybrid "link" would *still* not infringe because it would not be "distinct" from the "local cellular communication network" under the Court's construction.  Specifically, the redesign products would still use the *same* network (e.g., T-Mobile) both for obtaining a Cloud SIM and for general Internet connectivity. The Court held that the term "the data communication link is distinct from the local cellular communication network" in the asserted claims means "the data communication link is **not using** the local cellular communication network." [D.I. 60 at 2 (emphasis added).]  Under SIMO's argument, the redesign product does not satisfy this claim construction because the hybrid link would still be "using" the second network (e.g., T-Mobile) for both the "data communication link" and the "local cellular network."

SIMO's attacks are incorrect, untimely, and ultimately futile.  The Court did not overlook them, it correctly rejected them.  SIMO gives no valid basis to reconsider those decisions.

### 4.    SIMO's New Argument About Terminating Communications Links Supports uCloudlink's Non-Infringement Position

SIMO argues that the Court additionally misunderstood its position on the temporal extent of the "data communication link" limitation.  This is not something the Court overlooked;

in fact, SIMO has changed its position.   Specifically, SIMO now acknowledges that closing a TCP/IP connection would be one example of terminating a "data communication link." [Mot. at 13-14.] SIMO then incorrectly concludes, without support, that this is the *only* method of terminating a "data communication link." The Court's prior constructions imposed no such limitation. As noted above, the Court construed a "data communication link" as a "communication link capable of transmitting data." [D.I. 60 at 2.] There are multiple ways a communications link could be terminated such that it can no longer transmit data. One way might be to close a TCP/IP connection, but as Dr. Olivier explained, another way would be to disconnect from the network entirely. [D.I. 293-1 ¶ 57.] In that scenario, the first data communication link can no longer be used for data transmission. [D.I. 298-2 ¶ 16.] Also, since the accused devices have only one cellular modem associated with the seed SIM, and since that modem can only be connected to one network at a time, the accused devices are not capable of transmitting data over the old, disconnected network. [*Id.*] These unrebutted facts demonstrate that the accused products create a new "data communication link" during the "seed SIM switch" scenario, avoiding any infringement of the '689 patent.

SIMO then pivots 180 degrees, arguing that the patent supports an argument that the "data communication link" can exist indefinitely. [Mot. at 14.] This too is false. The dependent claim SIMO refers to (claim 15) merely states that a second authentication request is sent via the data communication link. That says nothing about what happens when a link is disconnected. It certainly does not support construing the "data communication link" to cover closed, abandoned networks.

It was SIMO who sought a network-centric construction of its patents. [*See* D.I. 163 at 24.] SIMO now wants to move away from that position, arguing instead that its patent covers

TCP/IP links, even over networks to which the device is no longer connected.[3]  Nothing in the '689 patent supports this position and, more importantly, the Court has already rejected it. Nothing in SIMO's motion supports reconsidering that decision.

### B.      SIMO's Remaining Critiques of Dr. Olivier are Irrelevant and Wrong

In addition to arguing for reconsideration, SIMO's brief attacks the rebuttal report of uCloudlink's expert, Dr. James Olivier.  As courts in this District have noted, however, such attacks will only be considered on reconsideration if they show "the prior decision is 'dead wrong.'"  *See Sigmon v. Goldman Sachs Mortg. Co.*, No 1:12-cv-03367, 2019 U.S. Dist. LEXIS 32348, at *12 (S.D.N.Y. Feb. 28, 2019) (quoting *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, No. 02 MDL 1448, 2007 WL 4563485, at *1 n.1 (S.D.N.Y. Dec. 18, 2007)).  That is certainly not the case here.

First, SIMO argues that Dr. Olivier equated the "data communication link" in the '689 patent with the "link layer" in the OSI model, and that this was improper.  [Mot. at 7.]  This is a mischaracterization of Dr. Olivier's opinions.  What Dr. Olivier said in his rebuttal report was that the "data communication link" in the patent, as construed by the Court, must be a link that is capable of transmitting data; it cannot be some abstract association between two machines.  [*See* D.I. 298-2 ¶ 31.]  He discusses the similarities between the Court's construction and the "data link layer," but Dr. Olivier went on to analyze the limitation using the Court's construction, not any "academic model."  [*Id*. ¶ 32.]  As such his opinions were entirely appropriate.  Regardless, the Court's order clearly applied its own construction for "data communication link," which did not limit that term to TCP/IP, OSI, or any other communications model.

---

[3] Mr. Welch, SIMO's expert, mentions the idea of a TCP/IP link only once in his declaration (D.I. 297-2 ¶ 44), but even there he cites no evidence that such a link persists upon network termination.

SIMO also suggests that Dr. Olivier's responsive report is somehow inconsistent with Dr. Gong's declaration, but SIMO never explains how this is the case. Both Dr. Olivier reports and Dr. Gong's declaration provide nearly identical explanations for the "seed SIM switch" scenario. [*See, e.g.*, D.I. 293-1 ¶¶ 74, 85, 91-93, 95, 102-104; D.I. 298-2 ¶¶ 11-21; D.I. 278 ¶ 13.] Regardless, this is a point SIMO made in its original briefing (*see* D.I. 297 at 8-9), so the Court should decline to consider it for purposes of reconsideration. *See Wingspan Records, Inc. v. Simone*, No. 12 Civ. 2172, 2014 U.S. Dist. LEXIS 169493, at *11 (S.D.N.Y. Dec. 5, 2014) ("[R]econsideration is no occasion for a losing party to . . . repeat arguments that the Court previously considered and rejected.").

SIMO also argues that it is "undisputed that the [redesign] devices have the capability of using more than one cellular network to request, receive, and use a Cloud SIM." [Mot. at 9.] It is equally undisputed, however, that the devices can only access **one** network at a time, and when they cannot obtain a suitable Cloud SIM for the first seed SIM network, they terminate that connection. [*See* D.I. 298-2 ¶ 16.] This is again simply rearguing the "seed SIM switch" scenario, adding no new facts to the analysis, which is improper on reconsideration.

SIMO also re-raises issues considering server code. Again, this was an issue SIMO briefed before. [*See* D.I. 297 at 9.] SIMO makes no new arguments, and indeed the Court never even discussed server code in its order, so nothing SIMO says here changes that analysis.

Finally, SIMO suggests the Court should ignore logs that show there is no infringing activity because they do not "focus on device functionality." [Mot. at 10.] That is false. [*See* D.I. 298-2 ¶ 21 (explaining that the log file shows "the actual operation of an upgraded device" in a "seed SIM switch" scenario).] Regardless, SIMO does not explain why the Court should ignore relevant evidence. Effectively SIMO argues that the Court should rely solely on SIMO's

expert, but as discussed above, SIMO's expert analyzed the facts based on a flawed interpretation of the claims.  Once that claim construction dispute was resolved, the Court's decision to modify the injunction necessarily followed.

### C.  Clarification of the Court's Memorandum Order is Unnecessary

As an alternative remedy, SIMO requests that the Court clarify its Memorandum Order because it says it could be read as a "summary judgment [order] that uCloudlink does not infringe."  [Mot. at 15.]  There is nothing in the Court's Order that could be read that way.  The order was clear that it was "modif[ying] the injunction order to allow uCloudlink to sell the redesigned products described in its most recent briefing."  [D.I. 299 at 1; *see also id*. at 5 ("[T]he Court lifts the permanent injunction as to the redesigned devices.").]  There is nothing discussing summary judgment, finding of facts, conclusions of law, or anything else that is unclear or potentially misleading.  Notably, SIMO does not even indicate what precisely it wants the Court to say to "clarify" its Order.  Because the Court's order was clear as written, SIMO's motion should be denied.

### III.  CONCLUSION

The Court should deny SIMO's requests for reconsideration and clarification.

Date: January 6, 2020

**FISH & RICHARDSON P.C.**

By:  */s/ Jonathan Lamberson*

Jonathan Lamberson (*pro hac vice*)
lamberson@fr.com
500 Arguello St., Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

Michael Zoppo (#4292678)
zoppo@fr.com
Excylyn Hardin-Smith (#4499208)
hardin-smith@fr.com
601 Lexington Ave., 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Phillip W. Goter (*pro hac vice*)
goter@fr.com
James Huguenin-Love (*pro hac vice*)
huguenin-love@fr.com
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Oliver Richards (*pro hac vice*)
orichards@fr.com
Cheryl Wang (*pro hac vice*)
cwang@fr.com
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Defendants*
*uCloudlink Network Technology Limited and*
*uCloudlink (America), Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 6th day of January, 2020, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

_/s/ Jonathan Lamberson_

Jonathan Lamberson