# EXHIBIT D

Howard Chen (SBN 257393)
howard.chen@klgates.com
Harold H. Davis, Jr. (SBN 235552)
harold.davis@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Yang Liu (SBN 319390)
yang.liu@klgates.com
**K&L GATES LLP**
620 Hansen Way
Palo Alto, CA 94304
Telephone: +1 650 798 6700
Facsimile: +1 650 798 6701

Gina A. Jenero (admitted *pro hac vice*)
gina.jenero@klgates.com
**K&L GATES LLP**
70 W. Madison St. Suite 3100
Chicago, IL 60602
Telephone: +1 312 372 1121
Facsimile: +1 312 827 8000

Attorneys for Defendants and Counterclaimants
SIMO Holdings Inc., Skyroam, Inc., and
Shenzhen Skyroam Technology Co., Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONG KONG UCLOUDLINK NETWORK TECHNOLOGY LIMITED AND UCLOUDLINK (AMERICA), LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> SIMO HOLDINGS INC. AND SKYROAM, INC., <br><br> Defendants. | Case No.: 18-cv-05031 <br><br> **DEFENDANTS SIMO HOLDINGS INC.'S AND SKYROAM, INC.'S FIRST AMENDED ANSWER AND SIMO HOLDINGS INC.'S, SKYROAM, INC.'S AND SHENZHEN SKYROAM TECHNOLOGY CO., LTD.'S FIRST AMENDED COUNTERCLAIMS TO COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

SIMO Holdings Inc. ("SIMO"), Skyroam, Inc. (collectively, "Defendants"), and Shenzhen Skyroam Technology Co., Ltd. (all three entities collectively referred to as "Counterclaimants") hereby submit this First Amended Answer and Affirmative Defenses, and Counterclaims in response to Plaintiffs Hong Kong uCloudlink Network Technology Limited and uCloudlink (America), Ltd.'s (collectively, "Plaintiffs" or "uCloudlink") Complaint for Patent Infringement ("Complaint") as follows:

## PARTIES[1]

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint, and therefore deny them.

2. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint, and therefore deny them.

3. Defendants admit the allegations of Paragraph 3 of the Complaint.

4. Defendants admit the allegations of Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5. Defendants admit this is a patent infringement case.

6. Defendants admit that this Court has subject matter jurisdiction but denies that uCloudlink has any viable claim in this case.

7. Defendants admit that Defendants conduct business in California and that this Court has personal jurisdiction over Defendants. Defendants deny that they have committed any acts of direct or indirect infringement and deny the remaining allegations of Paragraph 7 of the Complaint.

8. Defendants admit that Defendants conduct business in California. Defendants deny that they have committed any acts of direct or indirect infringement and deny the remaining allegations of Paragraph 8 of the Complaint.

9. Defendants admit the allegations of Paragraph 9 of the Complaint.

---

[1] To avoid confusion, Defendants use the headings used by uCloudlink, but Defendants do not intend any admissions or endorsement of their contents.

2

10. Defendants admit that Skyroam has a principal place of business in California and that this Court has general personal jurisdiction over Skyroam. Defendants deny that Defendants have committed any acts of direct or indirect infringement and deny the remaining allegations of Paragraph 10 of the Complaint.

11. Defendants admit the allegations of Paragraph 11 of the Complaint.

## INTRADISTRICT ASSIGNMENT

12. Defendants admit the allegations of Paragraph 12 of the Complaint.

## PATENTS-IN-SUIT

13. Defendants admit that what purports to be a copy of U.S. Patent Number 9,432,066 ("the '066 patent"), which on its face includes a title of "Multi-Channel Communication Terminal" and an issue date of Aug. 30, 2016, is attached as Exhibit A to the Complaint. Defendants deny that the '066 patent was duly and legally issued by the United States Patent and Trademark Office.

14. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of the Complaint, and therefore deny them.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint, and therefore deny them.

16. Defendants admit that what purports to be a copy of U.S. Patent Number 9,548,780 ("the '780 patent"), which on its face includes a title of "Service Sharing System and Apparatus" and an issue date of Jan. 17, 2017, is attached as Exhibit B to the Complaint. Defendants deny that the '780 patent was duly and legally issued by the United States Patent and Trademark Office.

17. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Complaint, and therefore deny them.

18. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Complaint, and therefore deny them.

## ACCUSED PRODUCTS AND TECHNOLOGY

3

19.     Paragraph 19 consists of uCloudlink's subjective characterizations of Defendants' products and services and thus requires no response.  To the extent a response is required, Defendants admit that Skyroam's website (https://www.skyroam.com/how-it-works) states: "Simply turn on Skyroam Solis or Skyroam Hotspot and it'll automatically find the best local signal wherever you go, so you don't have to do the legwork."  Defendants deny the remaining allegations of Paragraph 19 of the Complaint.

20.     Defendants admit that Defendants' products are sold in this District but deny that any of Defendants' products or services infringe the '066 and '780 patents and deny the remaining allegations of Paragraph 20 of the Complaint.

## COUNT I — INFRINGEMENT OF U.S. PATENT NO. 9,432,066

21.     Defendants incorporate their Answers to Paragraphs 1 through 20 as if fully set forth herein.

22.     Defendants deny the allegations of Paragraph 22 of the Complaint.

23.     Defendants deny the allegations of Paragraph 23 of the Complaint.

24.     Defendants deny the allegations of Paragraph 24 of the Complaint.

25.     Defendants deny the allegations of Paragraph 25 of the Complaint.

26.     Defendants deny the allegations of Paragraph 26 of the Complaint.

27.     Defendants deny the allegations of Paragraph 27 of the Complaint.

28.     Defendants deny the allegations of Paragraph 28 of the Complaint.

29.     Defendants deny the allegations of Paragraph 29 of the Complaint.

30.     Defendants deny the allegations of Paragraph 30 of the Complaint.

31.     Defendants deny the allegations of Paragraph 31 of the Complaint.

32.     Defendants deny the allegations of Paragraph 32 of the Complaint.

33.     Defendants deny the allegations of Paragraph 33 of the Complaint.

34.     Defendants deny the allegations of Paragraph 34 of the Complaint.

35.     Defendants deny the allegations of Paragraph 35 of the Complaint.

36.     Defendants deny the allegations of Paragraph 36 of the Complaint.

4

Case 3:18-cv-05301-EMC Document 231-4 Filed 12/01/20 Page 6 of 44

37.     Defendants deny the allegations of Paragraph 37 of the Complaint.

38.     Defendants deny the allegations of Paragraph 38 of the Complaint.

39.     Defendants deny the allegations of Paragraph 39 of the Complaint.

40.     Defendants admit that Defendants became aware of the '066 patent upon receiving the Complainant.  Defendants deny the remaining allegations of Paragraph 40 of the Complaint.

41.     Defendants deny the allegations of Paragraph 41 of the Complaint.

42.     Defendants admit that Defendants became aware of the '066 patent upon receiving the Complainant.  Defendants deny any infringing acts and the remaining allegations of Paragraph 42 of the Complaint.

43.     Defendants deny the allegations of Paragraph 43 of the Complaint.

### COUNT II ─ INFRINGEMENT OF U.S. PATENT NO. 9,548,780

44.     Defendants incorporate their Answers to Paragraphs 1 through 43 as if fully set forth herein.

45.     Defendants deny the allegations of Paragraph 45 of the Complaint.

46.     Defendants deny the allegations of Paragraph 46 of the Complaint.

47.     Defendants deny the allegations of Paragraph 47 of the Complaint.

48.     Defendants deny the allegations of Paragraph 48 of the Complaint.

49.     Defendants deny the allegations of Paragraph 49 of the Complaint.

50.     Defendants deny the allegations of Paragraph 50 of the Complaint.

51.     Defendants deny the allegations of Paragraph 51 of the Complaint.

52.     Defendants deny the allegations of Paragraph 52 of the Complaint.

53.     Defendants deny the allegations of Paragraph 53 of the Complaint.

54.     Defendants deny the allegations of Paragraph 54 of the Complaint.

55.     Defendants deny the allegations of Paragraph 55 of the Complaint.

56.     Defendants deny the allegations of Paragraph 56 of the Complaint.

57.     Defendants deny the allegations of Paragraph 57 of the Complaint.

58.     Defendants deny the allegations of Paragraph 58 of the Complaint.

5

Case 3:18-cv-05031-EMC Document 130 Filed 02/29/20 Page 7 of 44

59. Defendants admit that Defendants became aware of the '780 patent upon receiving the Complaint. Defendants deny the remaining allegations of Paragraph 59 of the Complaint.

60. Defendants deny the allegations of Paragraph 60 of the Complaint.

61. Defendants admit that Defendants became aware of the '780 patent upon receiving the Complaint. Defendants deny any infringing acts and the remaining allegations of Paragraph 61 of the Complaint.

62. Defendants deny the allegations of Paragraph 62 of the Complaint.

## PRAYER FOR RELIEF

Defendants deny that uCloudlink is entitled to the requested relief as identified in the Prayer for Relief or any other relief requested.

## JURY DEMAND

Defendants demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## AFFIRMATIVE DEFENSES

Subject to the responses above, Defendants allege and assert the following defenses to the allegations of uCloudlink's Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the defenses described below, subject to their responses above, Defendants specifically reserve all rights to allege additional defenses that become known through the course of discovery.

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

The Complaint, and each purported claim asserted therein, fails to state a cause of action for which relief can be granted and/or fails to plead the allegations with sufficient particularity.

### SECOND AFFIRMATIVE DEFENSE
(Non-Infringement)

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

Defendants do not infringe and have not infringed (not directly, indirectly, contributorily, by inducement, jointly, willfully, or otherwise) any valid, enforceable claim of the '066 and '780 patents, either literally or under the doctrine of equivalents.

### THIRD AFFIRMATIVE DEFENSE
(Invalidity)

The claims of the '066 and '780 patents are invalid because they fail to satisfy the conditions of patentability specified in Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112. Particularly, to the extent that any features of the Accused Products infringe claims of the '066 and '780 patents, on information and belief, those claims are invalid at least for lacking novelty and/or being obvious over the prior art that contained similar features, including without limitation U.S. Patent Nos. 8,116,735 and 9,736,689, as well as related prior art, for non-enablement, for indefiniteness, and for lack of adequate written description. Defendants reserve the right to amend, supplement, and add further prior art references and invalidity contentions pursuant to the local rules.

### FOURTH AFFIRMATIVE DEFENSE
(Limitation on Damages)

uCloudlink's claim for damages is statutorily limited under 35 U.S.C. § 286.

### FIFTH AFFIRMATIVE DEFENSE
(Prosecution History Estoppel)

uCloudlink is barred, under the doctrine of Prosecution History Estoppel, from construing the claims of any of the '066 and '780 patents in such a way as may cover any of Defendants' products or processes by reasons of statements made to the United States Patent and Trademark Office during the prosecution of the applications that led to the issuance of the respective patents. uClodulink is also estopped from applying the doctrine of equivalents to the claims of the '066 and '780 patents in light of arguments and amendments that were made to the United States Patent and Trademark Office during the prosecution of the '066 and '780 patents. Defendants reserve the right to amend this defense pursuant to the local rules governing claim construction.

### SIXTH AFFIRMATIVE DEFENSE
(Equitable Estoppel, Waiver, Acquiescence, and Unclean Hands)

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

uCloudlink's claims for relief are barred in whole or in part by the equitable doctrines of estoppel, waiver, acquiescence, unclean hands, and/or other equitable doctrines, including the doctrine of inequitable conduct.

## SEVENTH AFFIRMATIVE DEFENSE
### (Substantial Non-Infringing Use)

Defendants' methods, systems, products, or services have substantial non-infringing uses so they do not contributorily infringe the '066 and '780 patents.

## EIGHTH AFFIRMATIVE DEFENSE
### (License and/or Exhaustion)

uCloudlink's claims are barred, in whole or in part, as a result of express or implied licenses to the '066 and '780 patents and/or other exhaustion defenses at least by virtue of license agreements it has entered into with third parties.

## NINTH AFFIRMATIVE DEFENSE
### (Marking and Notice)

On information and belief, uCloudlink's purported claims for relief are limited by failure to comply with the marking and notice requirements of 35 U.S.C. § 287(a). To the extent that uCloudlink or its predecessors in interest or its licensees in, to, or under the '066 and '780 patents failed to properly mark any of their relevant products as required by 35 U.S.C. § 287 or to otherwise give proper notice that Defendants' actions allegedly infringed the '066 and '780 patents, Defendants are not liable to uCloudlink for the acts alleged to have been performed before it received actual notice that it was allegedly infringing the '066 and '780 patents.

## TENTH AFFIRMATIVE DEFENSE
### (Limitation on Costs)

uCloudlink's request for relief is barred or otherwise limited pursuant to 35 U.S.C. § 288.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Adequate Remedy at Law)

uCloudlink is not entitled to injunctive relief because, *inter alia*, any injury to uCloudlink is not immediate or irreparable, and uCloudlink has an adequate remedy at law.

## TWELFTH AFFIRMATIVE DEFENSE
### (Attorneys' Fees)

8

Defendants have engaged in all relevant activities in good faith, thereby precluding uCloudlink, even if it prevails, from recovering its reasonable attorneys' fees and/or costs under 35 U.S.C. §285.

## RESERVATION OF ADDITIONAL DEFENSES

Discovery in this action has just begun and Defendants continue to investigate the allegations set forth in the Complaint. Defendants specifically give notice that they intend to rely upon such other defenses as may become available by law, or pursuant to statute, or discovery proceedings in this case, and hereby reserve the right to assert such additional defenses.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that the Court enter judgment as follows:

A.    Dismiss Plaintiffs' Complaint with prejudice;

B.    Adjudicate that Plaintiffs are not entitled to any relief, including any of the relief requested in their Complaint;

C.    Award Defendants their attorneys' fees and costs incurred herein; and

D.    Award Defendants such other relief as this Court may deem appropriate and just under the circumstances.

## COUNTERCLAIMS

Defendants and Counterclaimants SIMO Holdings Inc. ("SIMO"), Skyroam, Inc., and Shenzhen Skyroam Technology Co., Ltd. ("Skyroam Shenzhen") (Skyroam, Inc. and Skyroam Shenzhen are referred to hereinafter as ("Skyroam")) (SIMO, Skyroam, Inc., and Skyroam Shenzhen are referred to collectively hereinafter as "Counterclaimants"), by and through their counsel of record, assert the following counterclaims against Plaintiffs and Counterdefendants Hong Kong uCloudlink Network Technology Limited and uCloudlink (America), and allege as follows:

1.    Counterclaimants incorporate the allegations of their Answers as if set forth fully herein.

9

**NATURE AND BASES OF ACTION**

2.   This began as an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the United States Patent Act, 35 U.S.C. § 1 *et seq*.  In their original Answer and Counterclaims, SIMO and Skyroam, Inc. requested declarations that: (i) they do not infringe any valid, enforceable claim of U.S. Patent No. 9,432,066 ("the '066 patent") and U.S. Patent No. 9,548,780 ("the '780 patent"); and (ii) the claims of the '066 and '780 patents are invalid.  SIMO and Skyroam, Inc. still advance their patent claims here.

3.   Counterclaimants recently discovered, however, that the uCloudlink entities, including Counterdefendants and fellow uCloudlink entities Shenzhen uCloudlink Network Technology Co., Ltd. and uCloudlink (HK) Co., Ltd., have engaged in a systematic conspiracy to steal Counterclaimants' core confidential, proprietary, and trade secret technologies, and use those trade secret technologies to develop Counterdefendants' own products to directly compete with Counterclaimants.  Counterdefendants have also used Counterclaimants' trade secrets to illegally obtain patent protection in China on several of the trade secret technologies they blatantly conspired to steal from Counterclaimants.[2]

4.   Counterdefendants' theft of Counterclaimants' trade secrets starts with a Chinese citizen, Wang Bin.  Mr. Bin worked with Counterdefendants' CEO Gao Wen and other uCloudlink founders at the Chinese telecommunications company, Huawei.  Mr. Gao, and upon information and belief other individuals connected to Counterdefendants, left Huawei to form Counterdefendants in part to compete with Counterclaimants. Meanwhile Mr. Bin left his Huawei colleagues to join Counterclaimant Skyroam Shenzhen.

5.   Huawei is internationally infamous for its widespread culture of industrial espionage, including recently running a "bonus scheme" to encourage and incentivize workers to steal rival companies' technology.

---

[2] In addition to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the United States Patent Act, 35 U.S.C. § 1 *et seq.*, this case now arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.* and the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

6.     Mr. Bin worked for Skyroam Shenzhen from April 2013 until August 2013. During his short time at Skyroam Shenzhen, Mr. Bin had access to Skyroam's sensitive, top secret, confidential, proprietary, and trade secret information.

7.     Unbeknownst to Counterclaimants until very recently, Mr. Bin used his time at Skyroam Shenzhen to collect and purloin Counterclaimants' trade secrets for the purpose of using them at Counterdefendants to create products that compete with Counterclaimants'.

8.     Approximately one month after Mr. Bin left Skyroam Shenzhen, in September 2013, he joined his former Huawei colleagues at a uCloudlink entity as an employee.

9.     Counterclaimants were unaware of these facts until over the course of discovery in SIMO's affirmative patent infringement case in the Southern District of New York,[3] it became clear that Counterdefendants possessed numerous documents that indisputably contain Counterclaimants' confidential, proprietary, and trade secret information, related to the same general technology behind Counterdefendants' core Glocalme products, which directly compete with Counterclaimants' products.

10.    On October 12, 2018, Counterdefendants supplemented their response to Counterclaimants' interrogatories in the New York Patent Case, including an interrogatory that sought the identity of any former SIMO employees that subsequently joined uCloudlink. For the first time, Counterdefendants belatedly added Mr. Wang Bin as a current uCloudlink employee, who was formerly employed by Skyroam Shenzhen. Counterdefendants indicated that Mr. Bin might have information relevant to claims and/or defenses in that action.

11.    That same day, presumably in response to Counterclaimants' written discovery requests in the New York Patent Case seeking "documents relating to SIMO," Counterdefendants produced nearly thirty thousand pages of documents, which included over ten separate documents belonging to Counterclaimants. Many of these documents were marked internally as

---

[3] SIMO's affirmative patent case in the Southern District of New York, *SIMO Holdings Inc. v. Hong Kong Ucloudlink Network Technology Ltd., et al.*, Case No. 18-cv-5427(JSR), is referred to hereinafter as the "New York Patent Case."

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

Counterclaimants' "Confidentiality Level: Top Secret" and/or bore Skyroam's trademark. These documents are referred to collectively hereinafter as the "Skyroam Confidential Documents."

12.     One of the Skyroam Confidential Documents (Bates No. UCLOUDLINK0043869), by way of example, contains Counterclaimants' confidential, proprietary, and trade secret system design specifications that are indisputably not public information and that could only be obtained by improper means from Skyroam.

13.     Not so coincidentally, more than one of the Skyroam Confidential Documents, including UCLOUDLINK0043869 and UCLOUDLINK0043881, are authored by Wang Bin—the former systems architect at Skyroam—identified for the *first time* in Counterdefendants' supplemental interrogatory responses in the New York Patent Case as its current employee on *the same day* Counterdefendants served the massive production containing the Skyroam Confidential Documents.

14.     On October 19, 2018, at the parties' *Markman* hearing in the New York Patent Case, the New York Court asked Counterdefendants to explain the circumstances under which they came into possession of the Skyroam Confidential Documents.

15.     On the record before the Court, Counterdefendants immediately pointed the finger at Wang Bin. Counterdefendants' counsel stated that Wang Bin "used his personal computer with the work computer together while he work[ed] with Skyroam. So later on when he joined uCloudlink, he copied the same documents . . . to [his] uCloudlink work computer."

16.     Counterdefendants' attorneys also indicated that Wang Bin explicitly refused to cooperate with the forensic expert Counterdefendants hired to create an image and preserve the contents of Wang Bin's personal computer—the very computer that he admitted contained and, barring illegal spoliation of evidence, still contains Counterclaimants' confidential, proprietary, and trade secret information. Counterdefendants admitted that they sought to image Mr. Bin's personal computer which contained the Skyroam Confidential Documents, but Mr. Bin refused to allow a vendor hired and selected by his own company's lawyers.

17.     The Court was "trouble[d]" by this and recommended that Counterdefendants "bring[] more pressure to bear on Mr. [Bin] to give access to his personal computer because it is compromising his ability to be a useful employee, and that does affect the company."

18.     Ultimately, at a time unknown to Counterclaimants, but before November 12, 2018, an electronic image of Mr. Bin's personal computer was apparently taken.  Mr. Bin and Counterdefendants have refused to allow Counterclaimants access to this electronic image to learn of the extent of Mr. Bin's theft.

19.     After the October 19, 2018 hearing Counterclaimants discovered that Counterdefendants' counsel's statement that Mr. Bin came into possession of the Skyroam Confidential Documents due to his use of a personal computer while at Skyroam was misleading and incorrect.  Wang Bin later testified under oath that he used a thumb drive to steal the documents from Skyroam and to copy the documents to his home computer.

20.     On November 7, 2018, Wang Bin was deposed.

21.     When asked during his deposition about his theft of the Skyroam Confidential Documents, Mr. Bin initially refused to answer many related questions based on a vague assertion of "personal privacy" on at least 16 different occasions.  Counterclaimants moved to compel his testimony over the baseless objection, and the New York District Court granted Counterclaimants' motion.  The Court also prohibited Counterdefendants' counsel from making any statements other than "objection" due to what it deemed was inappropriate conduct by Counterdefendants' counsel at the first day of the deposition.

22.     On November 8, 2018, thirty minutes before the second day of Mr. Bin's deposition was to commence, Counterdefendants' counsel unilaterally cancelled the deposition asserting, incorrectly, that a conflict had "arisen" due to the Court's order compelling Mr. Bin's testimony. During a telephonic conference with the Court the following day, the Court noted that a conflict had not in fact "just arisen" due to its order compelling Mr. Bin's testimony, and that Counterdefendants knew or should have known about any such conflict no later than the October 19, 2018 hearing.

13

**FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT**

23.     Mr. Bin's second day of deposition was then rescheduled for several days later, on November 12, 2018.

24.     At the second day of the deposition, Counterclaimants again questioned Mr. Bin about his theft of Counterclaimants' trade secrets.  Rather than asserting a "privacy" objection or providing any response to these questions, Mr. Bin refused to answer and pleaded the Fifth Amendment of the United States Constitution.  Indeed, Wang Bin pleaded the Fifth Amendment to at least forty-one (41) separate questions, including to the question of whether "in [his] view is stealing wrong?"

25.     Mr. Bin would not provide an explanation of why he stole Counterclaimants' trade secrets or the extent of his theft.

26.     uCloudlink terminated Mr. Bin either immediately after the second day of his deposition or close in time thereto.

27.     Further investigation by Counterclaimants revealed that the Skyroam Confidential Documents, along with other of Counterclaimants' confidential, proprietary and trade secret information, were discussed by key uCloudlink employees and used by Shenzhen uCloudlink Network Technology Co., Ltd. ("uCloudlink Shenzhen"), an affiliate of Counterdefendants, in patent applications filed in China naming Wang Bin as one of the inventors.

28.     Significantly, Counterdefendants' CEO, Gao Wen, with whom Mr. Bin worked at Huawei before joining Skyroam Shenzhen, is named as a co-inventor on two of these patent filings that use and disclose some of Counterclaimants' trade secrets, and other senior executives at Counterdefendants are also named as co-inventors with Wang Bin on others of these patents.

29.     The only plausible explanation for Counterdefendants possession and use of Counterclaimants' trade secrets is that Counterdefendants' most senior executives conspired with Wang Bin to steal Counterclaimants' core trade secrets, and used these core trade secrets to unfairly compete with Counterclaimants.   This conclusion is further corroborated by Counterdefendants testimony that Wang Bin, uCloudlink's CEO Gao Wen, and—upon information and belief— additional executives at Counterdefendants, worked together at Huawei prior to joining uCloudlink.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

30. Subsequent internal technical documents drafted by uCloudlink employees as of November 24, 2016, expound upon the details disclosed in the Skyroam Confidential Documents and, therefore, evidence Counterdefendants' use and/or imminent intent to use the information contained within the Skyroam Confidential Documents in the development of Counterdefendants' WiFi hotspot devices.

31. Based on the production of the Skyroam Confidential Documents, Counterclaimants were able to identify at least one Chinese patent application, CN105491555A, that discloses the contents of the Skyroam Confidential Documents copied over from Wang Bin's Skyroam computer to his uCloudlink computer. The patent application lists Wang Bin and uCloudlink's CEO, Gao Wen, as co-inventors.

32. CN105491555A's technical disclosure, which lists Wang Bin as its author, includes large sections that *copied word for word* substantial passages from the stolen Skyroam trade secret document.

33. In addition, Counterclaimants have identified the following patents that uCloudlink entities applied for and own that list Wang Bin as an inventor and that, on information and belief, disclose Counterclaimants' stolen trade secrets: CN105282701-A (application publication date: Jan. 27, 2016), CN105228179-A (application publication date: Jan. 6, 2016), CN105979500-A (application publication date: Sept. 28, 2016), CN105813233-A (application publication date: July 27, 2016), CN106211119-A (application publication date: Dec. 7, 2016).

34. The Skyroam Confidential Documents reveal trade secrets that include, *inter alia*, key innovative and cost saving solutions to solving specific problems relating to roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system, and data link management for carrier re-authentication. uCloudlink's use of such information has caused and will continue to cause substantial and irreparable injury to Counterclaimants.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

35.     Counterdefendants continue to misappropriate Skyroam's trade secrets by selling products developed using Skyroam's trade secrets and that incorporate and embody Skyroam's trade secret technology.

36.     Counterclaimants bring this action to halt and remedy the intentional dissemination and use of their intellectual property, in violation of federal and state trade secret misappropriation laws and the federal patent laws of the United States.

### THE PARTIES

37.     SIMO is a company incorporated under the laws of Cayman Islands and has its principal place of business at Xihai Mingzhu Building, 1001 Nanshan District, Taoyuan Road Shenzhen City, Guangdong Province, China.

38.     Founded in 2008, SIMO is a worldwide leading provider of software-based mobile connectivity solutions. SIMO is a pioneer and innovator in the development of next-generation virtual SIM technology technologies which enable mobile communications worldwide through local connectivity.  SIMO's innovative technology is available in over 120 countries at over 500 retail locations worldwide.

39.     Skyroam, Inc. is a company incorporated under the laws of the state of California with a principle place of business at 180 Sansome Street, Suite 200, San Francisco, CA 94104.

40.     Skyroam Shenzhen is a company incorporated under the laws of the People's Republic of China and has its principal place of business at Block F, 710-716 Xihai Mingzhu Building, Taoyun Road, Nanshan District Shenzhen, 518052, China.

41.     Founded in 2009, Skyroam Shenzhen is a leading provider of international roaming solutions for mobile phones and mobile broadband.

42.     According to Plaintiffs' Complaint, Plaintiff Hong Kong uCloudlink Network Technology Limited is a company incorporated under the laws of Hong Kong SAR, China, with a principal place of business at 29/F, One Pacific Centre, 414 Kwun Tong Road, Kwun Tong, KLN, Hong Kong.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

43. According to Plaintiffs' Complaint, Plaintiff uCloudlink (America), Ltd. is a company incorporated under the laws of the state of New York, with a principal place of business at 205 East 42nd Street, 20th Floor, New York, NY 10017.

## JURISDICTION AND VENUE

44. These Counterclaims arise under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., the United States Patent laws, 35 U.S.C. § 101 *et seq*, the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*, and the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*

45. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202. This Court also has personal jurisdiction over Counterdefendants because, among other reasons, Counterdefendants have asserted the '066 and '780 patents against Counterclaimants in its Complaint in this action in this jurisdiction.

46. uCloudlink (America), Ltd. directly and/or through its affiliates and agents provides products and services to travelers throughout the United States and in this judicial district and abroad.

47. In addition, this Court has personal jurisdiction over Counterdefendants because they, directly and or through its affiliates and agents, have conducted and do business within the United States and California. Due at least to their substantial business conducted in this forum, directly and/or through intermediaries, including (i) having solicited business in the Republic of California and in this District, transacted business within the Republic of California and in this District, and attempted to derive financial benefit from residents of the Republic of California and this District, including benefits directly related to the patent infringement and trade secret misappropriation claim set forth herein; (ii) having placed their products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in California and in this District; and (iii) either alone or in conjunction with others, having committed acts of trade secret misappropriation within California and in this District, as, on information and belief, Counterdefendants, directly and/or through intermediaries, have advertised (including through

17

websites), offered to sell, sold, and/or distributed products that use Counterclaimants' trade secrets, and/or have induced the sale and use of products that use Counterclaimants' trade secrets in the United States, California, and this District. Further, Counterdefendants have, directly or through their distribution network, purposefully and voluntarily placed such products in the stream of commerce knowing and expecting them to be purchased and used by consumers in California and in this District.

48. In addition, uCloudlink (America), Ltd. is subject to the Court's general jurisdiction by regularly doing or soliciting business, engaging in other persistent courses of conduct including utilizing the justice systems established and based in California, and/or deriving substantial revenue from goods and services provided to individuals in California and in this District.

49. Counterdefendants do one or more of the following with the Wi-Fi hotspot devices that embody Counterclaimants' patented and trade secret technology: (a) make these devices in the United States for sale to customers, including customers in California; (b) import these devices into the United States for sale to consumers, including consumers in California; (c) sell them or offer them for sale in the United States, including to customers in California; and/or (d) sell them to customers who incorporate them into products that such customers import, sell, or offer for sale in the United States, including in California.

50. Counterdefendants, directly or through intermediaries (including distributors, retailers, and others) ship, distribute, offers for sale, sell, and advertise products that use Counterclaimants' trade secrets in this District. For example, Counterdefendants have offered for sale and sold products that use Counterclaimants' trade secrets in this judicial District, including at least the Glocalme G2, G3 and U2 Series WiFi hotspot devices (see https://www.amazon.com/GlocalMe-Hotspot-Upgraded-Worldwide-International/dp/B072KKF37M/ref=sr_1_1?ie=UTF8&qid=1528265125&sr=8-1&keywords=ucloudlink; https://www.amazon.com/GlocalMe-Hotspot-America-Unlocked-Roaming/dp/B073PXFWBG/ref=sr_1_3?ie=UTF8&qid=1528265125&sr=8-3&keywords=ucloudlink) and the S1 mobile phone (see https://www.amazon.com/GlocalMe-

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

G1701-Unlocked-Smartphone-

Global/dp/B07BY2394H/ref=sr_1_1?ie=UTF8&qid=1534286109&sr=8-

1&keywords=ucloudlink+world+phone ).

51.     In addition, on information and belief, consumers from anywhere in the country, including California and this District, can purchase products that use Counterclaimants' trade secrets through, e.g., Amazon.com.  Counterdefendants have purposefully availed itself of the privileges of conducting business in the United States, and more specifically in this District.  Counterdefendants sought protection and benefit from the laws of California by placing products embodying Counterclaimants' trade secrets into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

52.     Venue is appropriate in this District under 28 U.S.C. § 1391(b)-(c) because Counterdefendants brought their Complaint for infringement of the '066 and '780 patents in this Court.

### FACTUAL ALLEGATIONS RELATED TO PLAINTIFF'S PATENT INFRINGEMENT CLAIMS

53.     According to Plaintiffs' Complaint, Plaintiff Hong Kong uCloudlink Network Technology Limited purports to be "the owner of the right, title and interest in and to the '066 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them."

54.     According to Plaintiffs' Complaint, Plaintiff Hong Kong uCloudlink Network Technology Limited purports to be "the owner of the right, title and interest in and to the '780 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them."

55.     According to Plaintiffs' Complaint, Plaintiff uCloudlink (America), Ltd. purports to be the exclusive licensee of the '066 and '780 patents.

56.     Counterclaimants do not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '066 and '780 patents.

19

57.   Upon information and belief, all claims of the '066 and '780 patents are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq*., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

## FACTUAL ALLEGATIONS RELATED TO COUNTERCLAIMANTS' TRADE SECRET MISAPPROPRIATION CLAIMS

58.   Skyroam is a global wifi device and service provider.  As alleged in Counterdefendants' Complaint, Skyroam and uCloudlink compete in the United States and in the Northern District of California.  Contrary to Counterdefendants' allegations, however, it is Counterdefendants —not Skyroam—that have stolen intellectual property.

**A.   The Origins of Skyroam as an Unconventional and Nimble Wifi Device and Service Provider**

59.   Skyroam is a leading global wifi device and service provider that keeps travelers connected around the world through mobile hotspots powered by its vSIM technology.[4]

60.   In 2008, SIMO founded and patented its virtual SIM technology, some of which is disclosed in the Asserted Patents discussed in the "Nature and Bases of Action" section, above.

61.   In 2013, SIMO launched its vSIM platform.  The vSIM platform delivers local data, internationally, allowing the user to connect to dozens of different cellular networks without changing his or her SIM card.

62.   Today, Skyroam offers consumers one of the best mobile wifi experiences available and is committed to delivering more great products and services in the future.

63.   Skyroam has created a trusted user experience that is a top choice amongst its 15 million users worldwide including travelers from the Americas, Europe, and Asia.

64.   In order to support the long-term direction of the company and its customers, Skyroam believes it is paramount to protect its intellectual property.

---

[4] SIMO is the holding company of Skyroam.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

65.  Skyroam's CEO, Jing Liu, has been quoted publicly, stating: "Since starting the company, our team has worked hard to create our proprietary breakthrough technology. . . . We have invested significant time and financial resources to push innovation within the industry. It is key that we protect the work of our team, in order to safeguard our commitment to users and stakeholders, as well as drive further disruption."

(https://www.businesswire.com/news/home/20180622005462/en/SIMO-Holdings-Holding-Company-Skyroam-Files-Infringement_).

66.  Skyroam receives considerable praise from its customers. By way of example, one of Skyroam's customers has commented: "The Skyroam device . . . just works! I travel a lot and it has been a game changer for me. I could become a rep. as I sell them to other travelers I meet who are still messing around with foreign SIM cards and holding their breath till they get to a wifi signal." https://www.skyroam.com/how-it-works.

67.  Another customer has commented: "I've used Skyroam all over the world with great success. I no longer have to wait in line then try to find the right SIM card for my countless mobile hot-spots, all while trying to overcome language barriers . . . I will not travel again without it." *Id.*

**B.    Skyroam Developed, Owns, and Protects its Trade Secrets**

68.  Skyroam is the owner of trade secrets and confidential information relating to solutions for optimizing the virtual SIM technology. Skyroam's trade secrets include, *inter alia*, methods and solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of the backend billing system, and data link management for carrier re-authentication.

69.  Skyroam's trade secrets are valuable and crucial to the implementation of its business and competitive market position and all Skyroam entities have invested substantial time, effort, and money in developing the trade secrets at issue in this case.

70.  Since 2008, Skyroam has invested and continues to invest substantial amounts of money into research and development and implementation of its trade secrets and other intellectual property.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

71.     Skyroam has devoted the bulk of its research and development efforts to create the most efficient and effective solution for optimizing the vSIM technology.

72.     These trade secrets derive independent value because they significantly increase the usability, reliability, and consistency of the connections required for mobile hotspot users through vSIM technology.

73.     Indeed, Skyroam has conducted cost/benefit analyses surrounding these very trade secrets and has concluded that their implementation is vital to the profitability of its business.

74.     Skyroam's ability to achieve success in the competitive marketplace hinges on its ability to protect its proprietary information from public disclosure and from further use outside of Skyroam and in particular, by its competitors.

75.     Skyroam's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.

76.     Skyroam takes diligent and reasonable steps to protect its proprietary information. These measures include, by way of example, password protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis.

77.     To protect its proprietary information internally, Skyroam requires each employee to review and sign a Technical Non-Disclosure Agreement.  The Technical Non-Disclosure Agreement is signed by the employee on the same date that the employee enters into his or her employment agreement with Skyroam.

78.     When an employee is terminated or voluntarily discontinues employment with Skyroam, he or she must attend an exit interview with Skyroam management.  At such interview, employees are required to return all Skyroam items and destroy any and all of Skyroam's confidential information in their possession.

79.     With regard to third parties, prior to any disclosure of confidential and/or proprietary information, Skyroam obligates third parties to sign a non-disclosure agreement.  Skyroam also marks any document that might be disclosed to a third party under a non-disclosure agreement "CONFIDENTIAL."

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

80.     Skyroam takes substantial steps to maintain electronic and computer security, as well. For example, Skyroam's policies, which are printed and disseminated to its employees, require employees to check documents into the central server upon usage.

81.     Further, documents with the highest confidentiality, such as the Skyroam Confidential Documents at issue here, are organized into subsystems. These subsystems are only available to relevant team members who have electronic privileges to view or download.

82.     Even more, the Skyroam server and computer that host documents of the highest sensitivity, like the Skyroam Confidential Documents, are located in an isolated network that is separate from the entire company's intranet.

83.     To protect its electronic systems from outside access, each Skyroam employee is issued a user name and password, which are required at several different levels to access Skyroam's proprietary information. Passwords are required to access different platforms.

84.     Finally, Skyroam employs several tiers of physical barriers to the access and use of proprietary and confidential information. For example, to access Skyroam's offices, an individual must go through multiple badged doors. Visitors are required to check in and register with a receptionist.

**C.  Counterdefendants' Unlawful Trade Secret Misappropriation**

85.     Skyroam employed Wang Bin as an integral member of its team, as Systems Architect, beginning on April 18, 2013.

86.     In this role, Wang Bin obtained detailed knowledge of Skyroam's confidential, proprietary, and trade secret information and worked side by side with key SIMO technical employees to create Skyroam's trade secrets, including solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system, and data link management for carrier re-authentication.

87.     Indeed, Wang Bin's involvement in this critical technical process led to the development of one of the several trade secrets that Counterdefendants conspired to misappropriate. This is evidenced by several email exchanges between Wang Bin and Skyroam's technical team. In

these emails, Skyroam's technical team, including Wang Bin, discuss the details of several techniques that Skyroam was testing to optimize its processes for the allocation of virtual SIM cards.

88. Moreover, as a system architect, Wang Bin participated in the conception, invention, research and development, and reduction to practice of Skyroam's trade secret solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system, and data link management for carrier re-authentication.

89. As a part of his employment, Wang Bin entered into a Technical Non-Disclosure Agreement with Skyroam.

90. Wang Bin's Technical Non-Disclosure Agreement with Skyroam existed to protect highly sensitive, confidential, proprietary, and trade secret information that belongs to Skyroam from public disclosure and from further use outside of Skyroam's four walls.

91. Pursuant to the Technical Non-Disclosure Agreement, Skyroam owns any intellectual property that Wang Bin creates during his employment with Skyroam.

92. The Technical Non-Disclosure Agreement defines the trade secrets as including operation secrets, management secrets, and technology secrets. The scope of trade secrets includes, *inter alia*, the work inventions, work results, results for researches and patented technologies of Wang Bin during the term of his employment contract.

93. While working for Skyroam, Wang Bin was substantially involved in creating Skyroam's solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system, and data link management for carrier re-authentication, which, according to the Technical Non-Disclosure Agreement, are technical and/or operation secrets that belong to Skyroam.

94. Wang Bin was knowledgeable and highly involved in the conception and attempted implementation of this virtual SIM optimization solution. Indeed, Wang Bin communicated frequently with key technical Skyroam employees to exchange ideas and develop feasibility studies, based on Skyroam's confidential and proprietary information.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

95.     While employed by Skyroam, Wang Bin authored numerous specification documents on Skyroam's behalf, including many of the Skyroam Confidential Documents.

96.     For example, UCLOUDLINK0043869—one of the documents produced by Counterdefendants in the New York Patent Case—indicates on its face that it is a "Top Secret" document authored by Wang Bin in the first instance on July 10, 2013, with subsequent revisions by Wang Bin on July 15 and July 17, 2013.

97.     Wang Bin drafted this "system design specification document" and noted that "its purpose is to describe the system design concepts to be used as guidance for development personnel in the process of development and testing personnel in the process of testing."

98.     Additionally, in his position as a system architect, Wang Bin had access to a substantial number of confidential and sensitive documents containing information about Skyroam's trade secrets even beyond the documents that he directly authored.

99.     Simply put, Wang Bin had access to the information required to draft a specifications roadmap for Skyroam's development and testing personnel to optimize Skyroam's proprietary vSIM technology.

100.     While employed by Skyroam and in direct violation of Skyroam's Technical Non-Disclosure Agreement and electronic usage policies, Wang Bin copied the Skyroam confidential, proprietary and trade secret materials, including but not limited to the Skyroam Confidential Documents, to a USB drive and then downloaded the Skyroam Confidential Documents to his personal computer.

101.     Upon information and belief, Wang Bin's misappropriation of Skyroam trade secrets was part of a conspiracy with senior management at Counterdefendants to obtain Skyroam trade secrets in order to unfairly compete with Skyroam.

102.     On August 20, 2013, little more than four months after he first joined Skyroam, Wang Bin suddenly resigned from Skyroam after his demand that his salary be significantly increased was reasonably rejected by Skyroam management.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

103.     Upon information and belief, Wang Bin's short tenure with Skyroam was manufactured as a part of the conspiracy he and several of the senior managers at Counterdefendants concocted during their prior employment together at Huawei.  This conspiracy was meant to send Wang Bin into Counterdefendants' main competitor, to learn Skyroam's trade secrets, and to subsequently use those trade secrets in order to compete with Skyroam at Counterdefendants.

104.     While Wang Bin's time at Skyroam was brief, his involvement in the development of and access to SIMO's confidential, proprietary, and trade secret information was deep.  Indeed, over the course of his four months of employment at Skyroam, Wang Bin spent nearly all of his time under the proverbial cloak of Skyroam's technical business.

105.     Upon his resignation, Wang Bin did not inform Skyroam whether he had found a new place of employment and if so, where that next place of employment would be.  According to Counterdefendants' discovery responses in the New York Patent Case, Wang Bin joined Shenzhen Netshun Technology Co., Ltd. just one month after leaving Skyroam, as a system engineer for testing, maintenance, and technical support of backend servers.

106.     Shenzhen Netshun Technology Co., Ltd. was an affiliate entity of Counterdefendants, and in fact Wang Bin interviewed for this position with Tan Zhu who was the Vice President of Hong Kong uCloudlink Network Technology Ltd.  Shenzhen Tenshun Technology Co., Ltd. was subsequently dissolved, and its business was merged into uCloudlink Shenzhen.

107.     According to Counterdefendants' discovery responses, Wang Bin joined uCloudlink Shenzhen on September 29, 2014, as the Director of Operation and Maintenance Department to support operation and maintenance of backend servers.

108.     According to Counterdefendants' discovery responses, on September 1, 2015 Wang Bin became the Director of Operation and Maintenance Department to support operation and maintenance of backend servers at uCloudlink Shenzhen.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

109.    Wang Bin was referred to as a "general manager" by other uCloudlink employees. This is the same title used internally for senior management at Counterdefendants, including their CEO Gao Wen.

110.    According to Counterdefendants' discovery responses, in March of 2017, Wang Bin began serving as the leader of the Security Group at uCloudlink Shenzhen, responsible for establishing information security systems, security compliance, and audit.

111.    While employed by uCloudlink Shenzhen, Wang Bin transferred at least some subset of the Skyroam Confidential Documents he stole from Skyroam to his uCloudlink work computer.

112.    Wang Bin disclosed Skyroam's trade secrets to other uCloudlink employees— including, but not limited to, the senior executives at Counterdefendants who are listed as co-inventors on the uCloudlink patents that disclose Skyroam trade secrets.

113.    Additionally, a document produced by Counterdefendants in the New York Patent case evidences that as of November 24, 2016, two other uCloudlink employees had knowledge of Skyroam's trade secrets.

114.    The Skyroam trade secrets disclosed by Wang Bin to others at Counterdefendants include, *inter alia*,  trade secrets related to solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system and data link management for carrier re-authentication.

115.    Perhaps most egregious is uCloudlink Shenzhen's Chinese patent application (CN105491555A) that discloses the contents of the Skyroam "top secret" document Wang Bin copied from his Skyroam computer. The patent application lists Wang Bin and the CEO Gao Wen as co-inventors. Indeed, the patent's technical disclosure, drafted by Wang Bin, ***copied word for word*** a substantial amount of passages from the stolen Skyroam trade secret document.

116.    On October 23, 2015, several uCloudlink employees, including Gao Wen and Wang Bin, participated in a patent evaluation conference, discussing the contents of the proposed patent application that led to CN105491555A.  This email exchange makes clear that it was Wang Bin

27

who was responsible for drafting patent applications related to the **very same** technology he worked on at Skyroam, while employed by uCloudlink Shenzhen.

117. The patent application that led to CN105491555A, which contains a mirror image description as that contained in one of the Skyroam Confidential Documents that Wang Bin transferred from his Skyroam computer to his uCloudlink computer, was filed on December 15, 2015.

118. The patent application was published on April 13, 2016 as CN105491555A.

119. On May 11, 2016, the patent application that led to CN105491555A entered into substantive examination.

120. That Wang Bin not only disclosed the contents of the Skyroam Confidential Documents but also worked with multiple colleagues in order to file a patent application disclosing information from the Skyroam Confidential Documents while employed by uCloudlink Shenzhen, evidences Counterdefendants' knowledge of and participation in the conspiracy to steal and intent to use Skyroam's trade secrets.

121. Within a year of joining uCloudlink Shenzhen, Wang Bin was listed as the sole or co-inventor on at least seven new patent applications related to SIM technologies.

122. These patent applications include several Skyroam trade secrets that are either reflected in the Skyroam Confidential Documents Wang Bin misappropriated from Skyroam or relate directly to ongoing research and development that Wang Bin participated in during his employment with Skyroam.

123. Skyroam further identifies the following uCloudlink patents that also list Wang Bin as an inventor and disclose Skyroam's trade secrets: CN105282701-A  (application publication date: Jan. 27, 2016), CN105228179-A  (application publication date: Jan. 6, 2016), CN105979500-A (application publication date: Sept. 28, 2016), CN105813233-A (application publication date: July 27, 2016), CN106211119-A (application publication date: Dec. 7, 2016).[5]

---

[5] These patents are referred to collectively hereinafter as the "Bin Patents."

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

124. At least two of the Bin Patents— CN105282701-A and CN105228179-A—were granted on September 25, 2018.

125. Counterdefendants manufactures, offers for sale, and sells products in the United States that embody the Bin Patents, and therefore, are based, at least in part, on Skyroam's trade secrets and the Skyroam Confidential Documents.

126. Counterdefendants manufacture, offers for sale, and sales of the products that embody the Bin Patents is ongoing. (*See, e.g.*, https://www.amazon.com/GlocalMe-Hotspot-Upgraded-Worldwide-International/dp/B072KKF37M/ref=sr_1_1?ie=UTF8&qid=1528265125&sr=8-1&keywords=ucloudlink; https://www.amazon.com/GlocalMe-Hotspot-America-Unlocked-Roaming/dp/B073PXFWBG/ref=sr_1_3?ie=UTF8&qid=1528265125&sr=8-3&keywords=ucloudlink) and the S1 mobile phone (*see* https://www.amazon.com/GlocalMe-G1701-Unlocked-Smartphone-Global/dp/B07BY2394H/ref=sr_1_1?ie=UTF8&qid=1534286109&sr=8-1&keywords=ucloudlink+world+phone).

127. Not only are Counterdefendants' products sold to United States customers, but according to Counterdefendants' representatives in the New York Patent Case, Counterdefendants' customers, when traveling to the United States, connect to servers through Counterdefendants' products.

128. Counterdefendants' intentional offer for sale and use of Skyroam's trade secrets in the United States, therefore, is ongoing. Because the misappropriation is global in scale, it may not be possible to adequately compensate Skyroam at law and thus the misappropriation irreparably harms Counterclaimants.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of the '066 Patent)

129. Counterclaimants incorporate the allegations set forth in the foregoing paragraphs of these Counterclaims as if fully set forth herein.

130.     Plaintiffs have alleged in their Complaint that Defendants have directly and/or indirectly infringed the '066 patent and that Defendants will continue to engage in these acts.

131.     Defendants have not infringed, directly, contributorily, or by inducement, any valid, enforceable, properly construed claim of the '066 patent, either literally or under the doctrine of equivalents.

132.     There is an actual, substantial, and continuing justiciable controversy between Counterdefendants and Counterclaimants regarding the alleged infringement of the '066 patent.

133.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, directly or indirectly, any valid, enforceable, properly construed claim of the '066 patent.

134.     Counterdefendants know or should know that Counterclaimants have not and are not in any way infringing the '066 patent.  This is therefore an exceptional case entitling Counterclaimants to an award of their attorneys' fees pursuant to 35 U.S.C. § 285.

**SECOND COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '066 Patent)**

135.     Counterclaimants incorporate the allegations set forth in the foregoing paragraphs of these Counterclaims as if fully set forth herein.

136.     An actual controversy has arisen and exists between the parties regarding invalidity of the claims of the '066 patent because Plaintiffs assert in their Complaint that Counterclaimants infringe the patent, and that the patent was duly and legally granted.

137.     One or more claims of the '066 patent, as properly construed, are invalid for failure to comply with the requirements of the patent laws of the United States as set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.  Particularly, to the extent that any features of the Accused Products infringe claims of the '066 patent, on information and belief, those claims are invalid at least as to lacking novelty and/or being obvious over the prior art that contained similar features, including without limitation U.S. Patent Nos. 8,116,735 and 9,736,689, as well as related prior art, for non-enablement, for indefiniteness, and for lack of

30

**FIRST AMENDED ANSWER AND COUNTERCLAIMS TO**
**COMPLAINT FOR PATENT INFRINGEMENT**

adequate written description.  Counterclaimants reserve the right to amend, supplement, and add further prior art references and invalidity contentions pursuant to the local rules.

138.     Counterclaimants are entitled to a declaratory judgment that the claims of the '066 patent are invalid.

**THIRD COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of the '780 Patent)**

139.     Counterclaimants incorporate the allegations set forth in the foregoing paragraphs of these Counterclaims as if fully set forth herein.

140.     Plaintiffs have alleged in their Complaint that Defendants have directly and/or indirectly infringed the '780 patent and that Counterclaimants will continue to engage in these acts.

141.     Defendants have not infringed, directly, contributorily, or by inducement, any valid, enforceable, properly construed claim of the '780 patent, either literally or under the doctrine of equivalents.

142.     There is an actual, substantial, and continuing justiciable controversy between Counterdefendants and Counterclaimants regarding the alleged infringement of the '780 patent.

143.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, directly or indirectly, any valid, enforceable, properly construed claim of the '780 patent.

144.     Counterdefendants know or should know that Counterclaimants have not and are not in any way infringing the '780 patent.  This is therefore an exceptional case entitling Counterclaimants to an award of their attorneys' fees pursuant to 35 U.S.C. § 285.

**FOURTH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '780 Patent)**

145.     Counterclaimants incorporate the allegations set forth in the foregoing paragraphs of these Counterclaims as if fully set forth herein.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

146.     An actual controversy has arisen and exists between the parties regarding invalidity of the claims of the '780 patent because Plaintiffs assert in their Complaint that Defendants infringe the patent, and that the patent was duly and legally granted.

147.     One or more claims of the '780 patent, as properly construed, are invalid for failure to comply with the requirements of the patent laws of the United States as set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.  Particularly, to the extent that any features of the Accused Products infringe claims of the '780 patent, on information and belief, those claims are invalid at least as to lacking novelty and/or being obvious over the prior art that contained similar features, including without limitation U.S. Patent Nos. 8,116,735 and 9,736,689, as well as related prior art, for non-enablement, for indefiniteness, and for lack of adequate written description.  Counterclaimants reserve the right to amend, supplement, and add further prior art references and invalidity contentions pursuant to the local rules.

148.     Counterclaimants are entitled to a declaratory judgment that the claims of the '780 patent are invalid.

### FIFTH COUNTERCLAIM
### (Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)

149.     Counterclaimants incorporate the allegations set forth in the foregoing paragraphs of these Counterclaims as if fully set forth herein.

150.     The Defend Trade Secrets Act (the "DTSA") provides a federal private cause of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  It authorizes courts "to grant an injunction" to "prevent any actual or threatened misappropriation," including by "requiring affirmative actions . . . to protect the trade secret."  *Id.*  at § 1836(b)(3)(A)(i)–(ii).

151.     Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . formulas, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored," if (A) the trade-secret owner "has taken reasonable measures to keep such

32

information secret," and (B) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* at § 1839(3).

152.     Skyroam is the owner of trade secrets relating to, *inter alia*, solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system, and data link management for carrier re-authentication.  These trade secrets comprise unique compilations of information that include proprietary methods for establishing connections, allocating SIM profiles, billing management, and data links management.

153.     Skyroam's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.  Skyroam's trade secrets indisputably contribute to the monumental success Skyroam has seen in the last ten years, making Skyroam a top choice amongst its 15 million users worldwide including travelers from the Americas, Europe, and Asia.

154.     At all times, Skyroam has taken reasonable and extensive efforts to keep its trade secrets secret through the use of Nondisclosure and Confidentiality Agreements, employment agreements, and employee training.  As previously discussed in detail, all of Skyroam's trade secrets are stored on secure servers and are password-protected.  Additionally, documents containing Skyroam's trade secrets are clearly marked "Confidentiality: Top Secret."

155.     At no time did Skyroam consent to Counterdefendants' improper acquisition, use, or disclosure of its trade secrets or confidential information for any purpose.

156.     Skyroam's trade secrets constitute independent economic value.  Since 2008, Skyroam has invested and continues to invest millions of dollars into research and development and implementation of the trade secret protected systems, including its hotspot devices.  Skyroam has also invested and continues to invest significant economic resources into refining its products.

157.     Skyroam's trade secrets are crucial to the success of the implementation, operation, and maintenance of Skyroam's proprietary technology and provide a decisive competitive advantage

33

to SIMO and to anyone else with access to this information. Skyroam's trade secrets provide the company with a critical market advantage in attracting new customers, based on their connection speed and reliability, for example.

158. Wang Bin acquired Skyroam's trade secrets through a relationship of trust, in which he signed a Technical Non-Disclosure Agreement and an Employment Agreement that imposed upon him a duty to maintain the confidentiality of Skyroam's confidential information and trade secrets and to not improperly use and/or disclose the same.

159. Counterdefendants conspired with Wang Bin to improperly acquire Skyroam's trade secrets while knowing or having reason to know that Wang Bin owed a duty to Skyroam to maintain the information in secrecy.

160. Moreover, Counterdefendants' affiliate entities not only misappropriated Skyroam's trade secrets, but also improperly disclosed that information. For example, uCloudlink Shenzhen has applied for at least 6 Chinese patents listing Wang Bin as inventor that, on information and belief, disclose Skyroam's trade secrets that uCloudlink conspired with Wang Bin to steal from Skyroam: CN105491555-A (application publication date: April 13, 2016), CN105282701-A (application publication date: Jan. 27, 2016), CN105228179-A (application publication date: Jan. 6, 2016), CN105979500-A (application publication date: Sept. 28, 2016), CN105813233-A (application publication date: July 27, 2016), CN106211119-A (application publication date: Dec. 7, 2016). At least two of these patents— CN105282701-A and CN105228179-A issued on September 25, 2018.

161. Upon information and belief, Counterdefendants manufactures, offers for sale, and sells products that embody the Bin Patents, and therefore, are based, at least in part, on Skyroam's trade secrets and the Skyroam Confidential Documents.

162. Counterdefendants' misappropriation also concerns "product[s] and service[s] used in, or intended for use in interstate or foreign commerce," pursuant to the Defend Trade Secrets Act. Upon information and belief, Counterdefendants offers for sale and sells products that embody the Bin Patents, and therefore, are based, at least in part, on Skyroam's trade secrets and the Skyroam Confidential Documents, throughout the United States.

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

163.    Specifically Counterdefendants' acts are in furtherance of misappropriation that harms Skyroam in the United States, and specifically causes harm to Skyroam, Inc., which is incorporated under the laws of the state of California with a principle place of business at 180 Sansome Street, Suite 200, San Francisco, CA 94104.  Not only are Counterdefendants' products sold to United States customers in direct competition with Skyroam, but in addition Counterdefendants' customers who purchased products outside of the United States use these products and connect to Counterdefendants' servers when travelling within the United States.  Enabling such connections is a core feature and functionality of the misappropriated trade secrets as well as both the Skyroam's and Counterdefendants' competing products.

164.    This conduct is not only based on Skyroam's trade secrets but it also takes place in the United States and affects United States customers and a United States corporation.

165.    Counterdefendants manufacture, offers for sale, and sales of the products that embody the Bin Patents is ongoing.  (*See, e.g.*, https://www.amazon.com/GlocalMe-Hotspot-Upgraded-Worldwide-International/dp/B072KKF37M/ref=sr_1_1?ie=UTF8&qid=1528265125&sr=8-1&keywords=ucloudlink; https://www.amazon.com/GlocalMe-Hotspot-America-Unlocked-Roaming/dp/B073PXFWBG/ref=sr_1_3?ie=UTF8&qid=1528265125&sr=8-3&keywords=ucloudlink) and the S1 mobile phone (see https://www.amazon.com/GlocalMe-G1701-Unlocked-Smartphone-Global/dp/B07BY2394H/ref=sr_1_1?ie=UTF8&qid=1534286109&sr=8-1&keywords=ucloudlink+world+phone).

166.    Counterdefendants have also intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Skyroam and continues to do so.  Counterdefendants' use of Skyroam's trade secrets was the result of discovery by improper means by its employee Wang Bin. Skyroam has now discovered evidence that Wang Bin (1) acquired Skyroam's trade secrets by improper means when he copied them onto a USB drive without permission from anyone at Skyroam; (2) transferred some or all of the contents of the USB drive copies to his personal home computer; (3) further copied Skyroam's trade secrets to his

uCloudlink work computer; (4) disclosed Skyroam's trade secrets to other uCloudlink employees—including, but not limited to, the senior executives at Counterdefendants who are listed as co-inventors on the uCloudlink patents that disclose Skyroam trade secrets; (5) and authored patents now assigned to uCloudlink Shenzhen, founded upon Skyroam's trade secrets and confidential and proprietary information—all of which have resulted in the manufacture, offer for sale, and sale of products that embody Skyroam's trade secrets in the United States.

167.    Counterdefendants subsequently used this information in connection with its business activities, in a manner adverse to Skyroam's business interests.  Such use was and is without Skyroam's express or implied consent.

168.    uCloudlink Shenzhen's act of listing its senior executives, including but not limited to its CEO, on patent applications that contain Skyroam's misappropriated trade secrets is evidence that Counterdefendants conspired with Wang Bin to unfairly compete with and misappropriate Skyroam's trade secrets.  This conspiracy is further evidenced by Wang Bin's short tenure with Skyroam and subsequent immediate hire by uCloudlink Shenzhen, and the fact that both Wang Bin and several of the senior managers at Counterdefendants all previously worked together at Huawei.

169.    As a result, in violation of Skyroam's rights, Counterdefendants misappropriated, and continues to use, Skyroam's trade secret information in the improper and unlawful manner described above.  Counterdefendants' misappropriation of Skyroam's confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive. Counterdefendants have further attempted to and continues to attempt to conceal its misappropriation.

170.    Counterdefendants' possession, disclosure, and use of Skyroam's trade secrets in the same products accused of patent infringement in the instant litigation is the quintessential example of behavior that rises to the level of "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."

171.    As the direct and proximate result of Counterdefendants' conduct in the United States, Skyroam has suffered and, if Counterdefendants' conduct is not stopped, will continue to

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Skyroam's remedy at law is inadequate, Skyroam seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. Skyroam's business operates in a highly competitive market and will continue suffering irreparable harm absent injunctive relief.

172.    Skyroam has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

### SIXTH COUNTERCLAIM
### (Violation of the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*)

173.    Counterclaimants incorporate the allegations set forth in the foregoing paragraphs of these Counterclaims as if fully set forth herein.

174.    Under the California Uniform Trade Secrets Act, "trade secret" means "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code §§ 3426.1(d)(1)–(2).

175.    Skyroam is the owner of trade secrets relating to solutions for roaming SIM cards, protocol for upgrade designs, methods of use for proxy communication servers, virtual SIM allocation, design of backend billing system, and data link management for carrier re-authentication. These trade secrets comprise unique compilations of information that include proprietary methods for establishing connections, allocating SIM profiles, billing management, and data links management.

176.    Skyroam's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others. It is for this reason that Skyroam, a large multinational entity, has seen monumental success in the last ten years, making Skyroam a top

1   choice amongst its 15 million users worldwide including travelers from the Americas, Europe, and

2   Asia.

3         177.    At all times, Skyroam has taken reasonable and extensive efforts to keep its trade

4   secrets secret through the use of Nondisclosure and Confidentiality Agreements, employment

5   agreements, and employee training.  As previously discussed in detail, all of Skyroam's trade secrets

6   are stored on secure servers and are password-protected.  Additionally, documents containing

7   Skyroam's trade secrets are clearly marked "Confidentiality: Top Secret."

8         178.    At no time did Skyroam consent to Counterdefendants' improper acquisition, use, or

9   disclosure of its trade secrets or confidential information for any purpose.

10        179.    Skyroam's trade secrets constitute independent economic value.  Since 2008,

11   Skyroam has invested and continues to invest millions of dollars into research and development and

12   implementation of the trade secret protected systems, including its hotspot devices.  Skyroam has

13   also invested and continues to invest significant economic resources into refining its products.

14        180.    Skyroam's trade secrets are crucial to the success of the implementation, operation,

15   and maintenance of Skyroam's proprietary technology and provide a decisive competitive advantage

16   to SIMO and to anyone else with access to this information.  Skyroam's trade secrets provide the

17   company with a critical market advantage in attracting new customers, based on their connection

18   speed and reliability, for example.

19        181.    Wang Bin acquired Skyroam's trade secrets through a relationship of trust, in which

20   he signed a Technical Non-Disclosure Agreement and an Employment Agreement that imposed

21   upon him a duty to maintain the confidentiality of Skyroam's confidential information and trade

22   secrets and to not improperly use and/or disclose the same.

23        182.    Counterdefendants conspired with Wang Bin to improperly acquire Skyroam's trade

24   secrets while knowing or having reason to know that Wang Bin owed a duty to Skyroam to maintain

25   the information in secrecy.

26        183.    Moreover, Counterdefendants not only misappropriated Skyroam's trade secrets, but

27   also improperly disclosed that information.  For example, uCloudlink Shenzhen has applied for at

28

38

least 6 Chinese patents listing Wang Bin as inventor that, on information and belief, disclose
Skyroam's trade secrets that Counterdefendants conspired with Wang Bin to steal from Skyroam:
CN105491555-A (application publication date: April 13, 2016), CN105282701-A  (application
publication date: Jan. 27, 2016), CN105228179-A  (application publication date: Jan. 6, 2016),
CN105979500-A  (application publication date: Sept. 28, 2016), CN105813233-A (application
publication date: July 27, 2016), CN106211119-A (application publication date: Dec. 7, 2016).  At
least two of these patents— CN105282701-A and CN105228179-A issued on September 25, 2018.

184.     Upon information and belief, Counterdefendants' manufacture, offer for sale, and sell
products that embody the Bin Patents, and therefore, are based, at least in part, on Skyroam's trade
secrets and the Skyroam Confidential Documents.

185.     Skyroam, Inc. is a company incorporated under the laws of the state of California
with a principle place of business at 180 Sansome Street, Suite 200, San Francisco, CA 94104.

186.     Accordingly, by stealing trade secrets that belong to a United States entity,
Counterdefendants' acts in furtherance of the misappropriation injure a California corporation.

187.     Specifically Counterdefendants' acts are in furtherance of misappropriation that
harms Skyroam in the United States, and specifically causes harm to Skyroam, Inc., which is
incorporated under the laws of the state of California with a principle place of business at 180
Sansome Street, Suite 200, San Francisco, CA 94104.  Not only are Counterdefendants' products
sold to United States customers in direct competition with Skyroam, but in addition
Counterdefendants' customers who purchased products outside of the United States use these
products and connect to Counterdefendants' servers when travelling within the United
States.  Enabling such connections is a core feature and functionality of the misappropriated trade
secrets as well as both the Skyroam's and Counterdefendants' competing products.

188.     This conduct is not only based on Skyroam's trade secrets but it also takes place in
the United States and affects United States customers and a United States corporation.

189.     Counterdefendants' manufacture, offers for sale, and sales of the products that
embody the Bin Patents is ongoing.  (*See, e.g.*, https://www.amazon.com/GlocalMe-Hotspot-

Upgraded-Worldwide-

International/dp/B072KKF37M/ref=sr_1_1?ie=UTF8&qid=1528265125&sr=8-

1&keywords=ucloudlink; https://www.amazon.com/GlocalMe-Hotspot-America-Unlocked-

Roaming/dp/B073PXFWBG/ref=sr_1_3?ie=UTF8&qid=1528265125&sr=8-

3&keywords=ucloudlink) and the S1 mobile phone (see https://www.amazon.com/GlocalMe-

G1701-Unlocked-Smartphone-

Global/dp/B07BY2394H/ref=sr_1_1?ie=UTF8&qid=1534286109&sr=8-

1&keywords=ucloudlink+world+phone).

190.    Counterdefendants has also intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Skyroam and continues to do so.  Counterdefendants use of Skyroam's trade secrets was the result of discovery by improper means by its employee Wang Bin. Skyroam has now discovered evidence that Wang Bin (1) acquired Skyroam's trade secrets by improper means when he copied them onto a USB drive without permission from anyone at Skyroam; (2) transferred some or all of the contents of the USB drive copies to his personal home computer; (3) further copied Skyroam's trade secrets to his uCloudlink work computer; (4) disclosed Skyroam's trade secrets to other uCloudlink employees—including, but not limited to, the senior executives at Counterdefendants who are listed as co-inventors on the uCloudlink patents that disclose Skyroam trade secrets; (5) and authored patents now assigned to uCloudlink Shenzhen, founded upon Skyroam's trade secrets and confidential and proprietary information—all of which have resulted in the manufacture, offer for sale, and sale of products that embody Skyroam's trade secrets in the United States.

191.    Counterdefendants' subsequently used this information in connection with its business activities, in a manner adverse to Skyroam's business interests.  Such use was and is without Skyroam's express or implied consent.

192.    Counterdefendants act of listing their senior executives, including but not limited to its CEO, on patent applications that contain Skyroam's misappropriated trade secrets is evidence that Counterdefendants conspired with Wang Bin to unfairly compete with and misappropriate

Skyroam's trade secrets.  This conspiracy is further evidenced by Wang Bin's short tenure with Skyroam and subsequent immediate hire by uCloudlink Shenzhen, and the fact that both Wang Bin and several of the senior managers at Counterdefendants all previously worked together at Huawei.

193.    As a result, in violation of Skyroam's rights, Counterdefendants misappropriated, and continue to use, Skyroam's trade secret information in the improper and unlawful manner described above.  Counterdefendants' misappropriation of Skyroam's confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive. Counterdefendants have further attempted to and continues to attempt to conceal its misappropriation.

194.    Counterdefendants' possession, disclosure, and use of Skyroam's trade secrets in the same products accused of patent infringement in the instant litigation is the quintessential example of behavior that rises to the level of "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."

195.    As the direct and proximate result of Counterdefendants' conduct, Skyroam has suffered and, if Counterdefendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Skyroam's remedy at law is inadequate, Skyroam seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests.  Skyroam's business operates in a highly competitive market and will continue suffering irreparable harm absent injunctive relief.

196.    Skyroam has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants pray that the Court enter judgment as follows:

A.    That the Court declare that Counterclaimants and their products and processes do not infringe the '066 and '780 patents, either literally or under the doctrine of equivalents, and that

41

**FIRST AMENDED ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR PATENT INFRINGEMENT**

Counterclaimants have not actively induced or contributed to the infringement of the '066 and '780 patents;

B. That the Court declare that the claims of the '066 and '780 patents are invalid;

C. That the Court declare this an exceptional case under 35 U.S.C. § 285 and award Counterclaimants their attorneys' fees and costs of suit;

D. Enjoin Counterdefendants from using or otherwise disclosing Counterclaimants' confidential, proprietary, and trade secret information, including by selling products that embody such information;

E. Enjoin any destruction, deletion, transfer, copy, download, or other form of reproduction or deletion of any of Counterclaimants' confidential, proprietary, and/or trade secret information in Counterdefendants' possession, custody, or control, unless it is done under the supervision of Counterclaimants' third party forensic investigator;

F. Account for any and all Skyroam confidential, proprietary, and/or trade secret information currently or previously in Counterdefendants' possession, custody, or control and produce for immediate inspection and imaging all computers and other electronic devices belonging to or under control of, accessible to, or operated by Counterdefendants, including but not limited to Wang Bin's uCloudlink-issued work computer;

G. Award Counterclaimants damages adequate to compensate for Counterdefendants' misappropriation of Skyroam's trade secrets including, but not limited to, actual damages suffered as a result of the misappropriation, including reasonable royalties and any unjust enrichment as a result of the misappropriations;

H. Award punitive damages to Counterclaimants owing to the willful, wanton, and malicious nature of Counterdefendants' acts;

I. Award Counterclaimants the ownership of all Counterdefendants' patents and patent applications that have been or are obtained using Counterclaimants' confidential, proprietary, and/or trade secret information;

FIRST AMENDED ANSWER AND COUNTERCLAIMS TO
COMPLAINT FOR PATENT INFRINGEMENT

J.     Award Counterclaimants their prejudgment interest and post-judgment interest on their damages, attorneys' fees, and costs; and

K.     Award Counterclaimants such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Counterclaimants respectfully demand a trial by jury on all issues and claims so triable.

Dated:   February_25, 2019                Respectfully Submitted,


By:   /s/ Harold H. Davis, Jr.
      Howard Chen (SBN 257393)
      howard.chen@klgates.com
      Harold H. Davis, Jr. (SBN 235552)
      harold.davis@klgates.com
      **K&L GATES LLP**
      Four Embarcadero Center, Suite 1200
      San Francisco, CA  94111
      Telephone: +1 415 882 8200
      Facsimile: +1 415 882 8220

      Yang Liu (SBN 319390)
      yang.liu@klgates.com
      **K&L GATES LLP**
      620 Hansen Way
      Palo Alto, CA  94304
      Telephone: +1 650 798 6700
      Facsimile: +1 650 798 6701

      Gina A. Jenero (admitted *Pro Hac Vice*)
      gina.jenero@klgates.com
      **K&L GATES LLP**
      70 W. Madison St. Suite 3300
      Chicago, IL  60602
      Telephone: +1 312 372 1121
      Facsimile: +1 312 827 8000

      Attorneys for Defendants and Counterclaimants
      SIMO Holdings Inc., Skyroam, Inc., and
      Shenzhen Skyroam Technology Co., Ltd.

43